UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

Evis Neverlane Stephens,

                                Debtor.
----------------------------------------------------------------X

Evis Neverlane Stephens,

                               Plaintiff,

                          v.

Maxine Bonaparte, Lezantonio Woodburn,
12706 Holdings Inc., Charles L Mester, Esq.,
Planet Management Group, LLC, Planet Home
Lending LLC dba Planet Home Servicing,
Wilmington Savings Fund Society, FSB (WSF),
Verus Securitization Trust 2020-NPL1,

                               Defendants.
----------------------------------------------------------------X

Chapter 13

Case No.:  21-42857-jmm

Adv. Pro. No.:  22-01037-jmm

### MEMORANDUM DECISION ON THE DEFENDANT CHARLES MESTER'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Karamir Dahiya, Esq.
Dahiya Law Office LLC
75 Maiden Lane, Suite 606
New York, NY  10038

*Counsel for Plaintiff*

Clarles L. Mester, Esq.
c/o Wenig Saltiel LLP
321 Broadway, 2d Floor
New York, NY  10007

*Pro Se Defendant*

## INTRODUCTION

Evis Neverlane Stephens ("Plaintiff") alleges she is the victim of a scam that caused her to transfer her home to one of the defendants. She alleges her attorney Charles L. Mester ("Mester"), her real estate agent, and the home buyer's principal convinced her that transferring title to her home was the only way to save her home from foreclosure.

Mester moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the 20 causes of action Plaintiff asserts against him, including claims for fraud, malpractice, and civil RICO. For the reasons set forth below, the Court grants the motion, in part and, denies the motion in part.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York dated August 28, 1986, as amended by Order dated December 5, 2012. Many of Plaintiff's claims against Mester are non-core. Absent consent, a bankruptcy judge may not enter final judgment in non-core matters. 28 U.S.C. § 157(c)(1). A bankruptcy court, however, may handle all pretrial proceedings, including entering an interlocutory order dismissing some, but not all, non-core causes of action in an adversary complaint. *In re Suffolk Reg'l Off-Track Betting Corp.*, 591 B.R. 127, 129 (Bankr. E.D.N.Y. 2018).

## PROCEDURAL BACKGROUND

Plaintiff filed a complaint commencing this adversary proceeding on May 9, 2022. *Stephens v Bonaparte*, Adv. Pro. No. 22-01037 (the "Adv. Pro."), ECF No. 1. The complaint named Mester, Maxine Bonaparte ("Bonaparte"), Lezantonio Woodburn, ("Woodburn"), and 12706 Holdings, Inc. ("Holdings" and together with Bonaparte, Woodburn, and Mester, the "Original Defendants") as defendants. *Id.* Master moved to dismiss the complaint under Rule

12(b)(6) of the Federal Rules of Civil Procedure on August 3, 2022. *See* Mot. to Dismiss Adversary Proceeding, Certification of Charles L. Mester Esq. in Supp. of Mot. to Dismiss, Mem. of Law in Supp. of Mot. to Dismiss (the "Mester Mem."), Adv. Pro.[1], ECF No. 13, 13-1, 13-2. Plaintiff objected to the motion. *See* Affirmation in Opp'n to the Mot. to Dismiss, Adv. Pro., ECF No. 16, 17.

Subsequently, the Court granted Plaintiff's request to amend the complaint, primarily to add additional defendants. The Court afforded Mester the option of supplementing his Motion to Dismiss to respond to new allegations in any amended complaint as opposed to requiring Mester to file an entirely new motion to dismiss.

On December 28, 2022, Plaintiff filed an amended complaint (Adv. Pro., ECF No. 34 (the "Amended Complaint")). The defendants named in the Amended Complaint are the Original Defendants and Verus Securitization Trust 2020-NPL1, Wilmington Savings Fund Society, FSB (WSF), and Planet Home Lending LLC, dba Planet Home Servicing (the "Planet Defendants" and together with the Original Defendants, the "Defendants"). Am. Compl. at 1.

On January 26, 2023, Mester filed a Supplemental Memoradum of Law in Support of Pre-Answer Motion to Dismiss Amended Complaint ("Mester Supp. Mem."), Adv. Pro., ECF No. 41. On February 2, 2023, Plaintiff filed a response to the Mester Supp. Mem., Adv. Pro., ECF No. 42, 43.

---

[1] Citations to "Adv. Pro., ECF No. []" are to documents filed on the docket of this adversary proceeding.

## FACTUAL BACKGROUND

I.    **The Bankruptcy Case**

Plaintiff filed a voluntarily petition for relief under chapter 13 of title 11 of the United States Code (the "Bankruptcy Code") on November 15, 2021.  *In re Evis Neverlane Stephens*, Case No. 21-42857 (the "Bankruptcy Case"), ECF No. 1.

Holdings filed a proof of claim, identified on the claims register of the Bankruptcy Case as claim number 5-1 (the "Holdings POC") asserting a $55,000 unsecured claim for "Use and Occupancy" of a two-family home commonly known as 127-06 177th Street, Jamaica, New York (the "Residence").  The Holdings POC was disallowed and expunged in full because it was filed after the chapter 13 bar date.  Order Disallowing and Expunging Proof of Claim No. 5-1 of 12706 Holdings Inc., Bankr. Case[2], ECF No. 48.

On April 15, 2022, Holdings moved for relief from the automatic stay to permit Holdings to evict the Plaintiff from the Residence.  Mot. for Relief from Automatic Stay, Bankr. Case, ECF No. 25; Am. Mot. for Relief from Automatic Stay, Bankr. Case, ECF No. 29.  Holdings alleges it purchased the Residence in a short sale.  Bankr. Case, ECF No. 25 at ¶ 14.  Holdings claims it permitted the Plaintiff to remain at the Residence only until June 27, 2019, but the Plaintiff refused to vacate the Residence and occupied the Residence without paying use and occupancy charges, property taxes, or utilities  Bankr. Case, ECF No. 25 at ¶¶ 14, 18.

The Plaintiff objected to the motion and commenced this adversary proceeding.

II.    **This Adversary Proceeding**

By way of overview, Plaintiff claims the Defendants tricked Plaintiff into conveying the Residence to Holdings.  In that regard, Plaintiff alleges Bonaparte (Plaintiff's real estate agent),

---

[2] Citations to "Bankr. Case, ECF No. []" are to documents filed on the docket of the Bankruptcy Case.

Mester and Woodburn (Holding's principal) told her the transaction would protect the Residence from foreclosure and Woodburn and Bonaparte promised that Holdings would convey the Residence back to Plaintiff or her husband.  Plaintiff claims that after she deeded the Residence to Holdings, Woodburn and Bonaparte  harassed and threatened the Plaintiff and her family to force them to vacate the Residence.  Further, Plaintiff claims Mester counseled her to transfer the Residence to Holdings notwithstanding her desire to keep the house because he was working for Bonaparte and Woodburn and under Mester's retainer agreement, he would receive an additional fee if the Residence were to be refinanced after a short sale.  Plaintiff claims the Planet Defendants (the entity that provided financing for Holdings' purchase of the Property and its successors or assigns) knew the transaction was fraudulent but provided financing nonetheless.  Among other things, Plaintiff seeks to avoid the transfer of the Residence, to avoid the mortgage, an award of money damages, and treble damages.

<u>Events Leading to Foreclosure of the Residence</u>

The Plaintiff alleges that in 2006, she was defrauded by Osmond Decoteau ("Decoteau"). Am. Compl. at ¶ 20.  Decoteau represented himself as a real estate broker and arranged for Plaintiff to purchase the Residence.  Am. Compl. at ¶¶ 4, 20.  Plaintiff alleges Decoteau represented to Plaintiff that the monthly mortgage payments on the Residence would be $2,500.  Am. Compl. at ¶ 20.  In actuality, the monthly payments were $5,000.  *Id*.  Plaintiff alleges Decoteau stole her identity and purchased two other properties in her name without her knowledge or consent.  *Id*. The two properties are 1487 East 53 Street, Brooklyn, New York and 844 East 34th Street, Brooklyn, New York (together, the "Investment Properties").  *Id*.  Plaintiff alleges Decoteau was indicted for fraud but was not convicted due to Decoteau's diminished capacity.  *Id*.  Plaintiff claims she was unable to pay the mortgage on the Residence and faced foreclosure.  Am. Compl.

at ¶ 22.  She also claims the mortgages on the Investment Properties were in default.  Am. Compl. at ¶ 23.

<u>Plaintiff's Introduction to Bonaparte and Mester</u>

Plaintiff alleges she contacted several people she thought could help her save the Residence from foreclosure and was eventually introduced to Bonaparte.  *Id*.  Plaintiff alleges Bonaparte told Plaintiff she could save the Residence from foreclosure by transferring the mortgage obligations to Plaintiff's husband.  *Id*.  Plaintiff alleges she gave $1,500 to Bonaparte to run a credit check on Plaintiff's husband.  *Id*.  Plaintiff alleges Bonaparte told her the Residence's foreclosure sale was imminent and the only way to save the Residence would be to transfer it to Bonaparte's friend, who would transfer it back after it was "saved" from foreclosure.  Am. Compl. at ¶ 24.  Plaintiff alleges Bonaparte also proposed a strategy to save the Investment Properties.  *Id*.

Plaintiff alleges Bonaparte demanded $10,000 to save the Residence but represented the money would be returned to Plaintiff "once everything is under control".  Am. Compl. at ¶ 25.  Plaintiff alleges she wrote two checks, each for $5,000, and left the payee blank per Bonaparte's instructions.  *Id*.

Plaintiff alleges Bonaparte recommended Mester and told Plaintiff that Mester "is an expert in complex deals and he is going to help [Plaintiff] in saving her house."  *Id*.  Plaintiff alleges that in September 2018, Bonaparte took Plaintiff to Mester's office.  Am. Compl. at ¶ 26.  Plaintiff alleges Mester met Plaintiff briefly and then spoke privately with Bonaparte.  Am. Compl. at ¶ 26.  Plaintiff alleges Mester promised her he would save the Residence and the Investment Properties.  Am. Compl. at ¶ 27.

Plaintiff entered into an engagement letter (the "Engagement Letter"), dated September 21, 2018.  Am. Compl., Ex. C.  The Engagement Letter is addressed to both Plaintiff and Bonaparte

and both Plaintiff and Bonaparte signed the Engagement Letter as clients.  *Id.*  The Engagement

Letter provides, in relevant part:

> [Mester will] provide legal services to you in connection with your prosecution of civil litigation involving the [Investment Properties] and sale and leaseback of the [Residence].
>
> Fees for legal services will be determined on an hourly basis for the litigation and a flat fee basis for the transactional work.  In addition, if we are successful on the litigation and any of the properties involved in the litigation are ultimately sold by you, I will be entitled to a percentage of the sale price.

Engagement Letter at 1.  The Engagement Letter goes on to say:

> Litigation:  Attorney's present hourly rate is $450.  Attorney will provide you with litigation services on an hourly basis in an effort to have the [Investment Properties] put into your name and/or remove all liens from the properties, and obtain clear title to same.  The retainers shall be $10,000 for each litigation.  In the event the litigation is ultimately successful, any hourly charges accrued above the retainer not already paid shall be paid at the time of the closing.
>
> Transactions:  In addition, if the litigation is successful, [Mester] **will provide you with transactional services involving the sale of each of the [Investment Properties] to Ms. Bonaparte or her designated entity** and any sale by Ms. Bonaparte or her designated entity either as a wholesale or rehab transaction.  In such case, **Attorney will obtain a separate and additional legal fee of 20% of the purchase price** being paid by the third-party prospective buyer.  In addition, any litigation fees not yet paid shall be paid at the time of the final closing.
>
> As for the short sale transaction, [Mester] will provide you with transactional services involving the short sale and leaseback of the [Residence] to you.  **[Mester] shall receive the legal fee of 20% upon the refinancing of the [Residence] subsequent to the short sale.**

Engagement Letter at 2 (emphasis provided).  Additionally, the Engagement Letter states:

> <u>Upon conclusion of the litigation and transactions, [Mester] shall have a lien on the sale proceeds from the sale of the Properties for any unpaid fees and expenses due under this Engagement Letter.  At his option, [Mester] may file a memorandum of contract against the Premises in order to securitize the balance of the fees owed herein.[3]</u>

Engagement Letter at 2 (emphasis in original).  Additionally, the Engagement Letter states:

---

[3]"Premises" and "Properties" are not defined in the Engagement Letter.

> There will be no appearance made on the court's record until the full Retainer has been paid, nor will there be a refund of any part of the Retainer once services have commenced.

Engagement Letter at 3.  Plaintiff did not pay any money to Mester because "she was told that Mester had an understanding with [Bonaparte]."  Am. Compl. at ¶ 29.

Plaintiff alleges, upon information and belief, that Mester represented Bonaparte and Woodburn in their businesses and other ventures and Mester, Bonaparte and Woodburn each have a beneficial interest in Holdings.  Am. Compl. at ¶¶ 29, 30.

<u>Plaintiff Transfers the Residence to Holdings</u>

Plaintiff alleges that in March 2019, Bonaparte and Woodburn drove her to a "closing to save her house."  Am. Compl. at ¶ 28.  Plaintiff alleges she did not receive copies of the closing documents despite requests to Mester and Bonaparte.  *Id.*  However, Plaintiff alleges the closing transaction involved a "Purchase and Sale Agreement and Transfer Ownership Agreement" prepared by Mester that transferred the Residence to Holdings.  Am. Compl. at ¶ 30.  Attached to the Amended Complaint are documents that appear to be from the closing[4]:

- Settlement Statement (HUD-1), signed by Plaintiff and Holdings (apparently by Woodburn), related to the transfer of the Residence from Plaintiff to Holdings.  Mester is identified as the Settlement Agent.  The statement represents the Contracted Sale Price is $375,000.  Am. Compl., Ex. 14.

- Affidavit of Arm's Length Transaction, dated March 27, 2019, concerning a contract, dated January 4, 2019, to purchase the Residence.  In the Affidavit, Plaintiff represented there are no agreements that Plaintiff will remain in the Residence as a tenant or later obtain title or ownership of the Residence.  Aff. of Arm's Length Transaction at (b).  The Affidavit's instructions direct it is to be signed by all borrowers, purchasers, real estate brokers and escrow/closing agents; however, the Affidavit appears to be signed only by Plaintiff.  Am. Compl., Ex. 15.

- Affidavit of Arm's Length Transaction, dated March 27, 2019, concerning a contract, dated February 25, 2019, to purchase the Residence.  Among other

---

[4] These documents also are attached to Holdings' motion for relief from stay.

things, each signatory represented there are no agreements that Borrower will remain in the Mortgaged Premises as a tenant or later obtain title or ownership of the Residence.  Aff. Of Arm's Length Transaction at (b).  The Affidavit is signed by Plaintiff as seller, Holdings as purchaser, and Bonaparte as agent for both seller and purchaser.  It appears Woodburn signed on behalf of Holdings. Am. Compl., Ex. 15.[5]

- Application of Suspense Funds Affidavit, dated March 27, 2019, signed by Evis Stephens, that authorized Ocwen Loan Servicing, LLC to apply $41.37 in available suspense funds as partial payoff for the existing loan for the Residence.  Am. Compl., Ex. 15.

- A Wire Transfer Request requesting a $337,500 transfer from Donaldson & Chilliest, LLP's IOLTA account to Ocwen Loan Servicing, LLC regarding Plaintiff's loan related to the Residence.  Am. Compl., Ex. 14.  It appears Donaldson & Chilliest, LLP represented Holdings at the closing.  Am. Compl. at ¶ 59.

Plaintiff alleges that at the closing, Mester showed her where to sign documents bud did not explain their contents except to tell Plaintiff the documents were to save the Residence.  Am. Compl. at ¶ 28.  Plaintiff alleges her only meetings with Mester were in September 2018, when she signed the Engagement Letter, and at the March 2019 closing.  Am. Compl. at ¶ 27.  Plaintiff alleges she signed the documents at the closing because she felt threatened that she would lose her home and she believed Mester was acting in her best interests and relied on his statements and assurances.  Am. Compl. at ¶ 30.

### Post-Closing Events

The Amended Complaint alleges Bonaparte directed Plaintiff to make $2,500 monthly mortgage payments for the Residence even though Holdings, not Plaintiff, owned the Residence. Am. Compl. at ¶ 31.  Subsequently, Bonaparte demanded Plaintiff also pay rent to Bonaparte for the Residence.  *Id.*  Plaintiff alleges she called Mester for advice and was told "[i]f you cannot afford to buy the house continue to pay the rent."  *Id.*  Plaintiff alleges she heard Bonaparte in the

---

[5] No explanation is offered as to why there are references to two contracts of sale; one dated March 27, 2019 and another dated February 25, 2019.

background.  *Id*.  Plaintiff alleges Bonaparte would make weekly visits to the Residence to threaten Plaintiff and her family to get them to leave the Residence.  *Id*.

Plaintiff alleges Woodburn also visited the Residence and accused Plaintiff of not paying the Mortgage in full.  Am. Compl. at ¶ 32.  Plaintiff alleges Woodburn instructed her to leave the house so he could perform renovations, notwithstanding Plaintiff was already fixing the sewer and boiler.  *Id*.  Plaintiff alleges Woodburn told Plaintiff she was not paying enough to stay in the Residence and pressured Plaintiff and her husband to sign occupancy agreements, which Woodburn unilaterally changed and then cancelled.  Am. Compl. at ¶¶ 32-36 and Ex. 5, 7, 8, 12.  Thereafter, Woodburn commenced an action to evict Plaintiff and her family.

Plaintiff alleges Bonaparte harassed Plaintiff by, among other things:  changing the locks to the Residence; telling Plaintiff's relatives that Bonaparte and Woodburn owned the house and they would have to pay $1,000 per month in rent and Plaintiff would have to pay at least $3,000 per month in rent; removing curtains and towels; renting a room to a third party; attempting to tow Plaintiff's car from the driveway; changing the utilities out of Plaintiff's name and then failing to pay the utility bills; and disabling the boilers.  Am. Compl. at ¶¶ 34, 41.

## DISCUSSION

### I.    Standards for Motions to Dismiss

"The purpose of a motion to dismiss under Rule 12(b)(6) is to assess the legal feasibility of the complaint, not to weigh the evidence which the plaintiff offers or intends to offer." *Citibank, N.A. v. K-H Corp.*, 745 F. Supp. 899, 902 (S.D.N.Y. 1990).  Accordingly, on a motion to dismiss a complaint under Fed. R. Civ. P. 12(b)(6), a court must accept all factual allegations in the complaint as true, even if the allegations are doubtful in fact. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1965, 167 L. Ed.2d 929, 940 (2007).  Additionally, the court must

draw all reasonable inferences in the plaintiff's favor. *Bellin v. Zucker*, No. 20-1463, 2021 WL 3197020 (2d Cir. July 29, 2021). Further, in determining a motion to dismiss, a court should be focused solely on whether a plaintiff's allegations state a plausible claim for relief. A court should not consider other explanations for a defendant's conduct, even if a defendant's explanation is more likely to be true. *See Houck v. Substitute Trustee Servs.*, 791 F.3d 473, 483–84 (4th Cir. 2015) (finding that a complaint stating a plausible claim for relief "survives a motion to dismiss under Rule 12(b)(6), regardless of whether there is a more plausible alternative explanation); 2 James Wm. Moore *et al.*, *Moore's Federal Practice* § 12.34 (3d ed. 2021).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974, 167 L.Ed. 2d at 949). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need not consider allegations that are conclusory or subjective characterizations. *Iqbal*, 556 U.S. at 663 ("threadbare recitals of elements of a cause of action, supported by mere conclusory statements are not sufficient."); *Twombly*, 550 U.S. at 545 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.").

On a motion to dismiss, the Court's review is confined to the pleadings, documents attached to, or incorporated by reference in the complaint, and matters of which judicial notice may be taken. *Aubrey v. New Sch.*, No. 21-CV-4915 (KMK), 2022 WL 3867832, at *1 (S.D.N.Y. Aug. 30, 2022).

## II.    <u>Application of Standards to Causes of Action</u>

**First Cause of Action**
**Cancellation of Deed Based upon Forgery or Fraud in Factum**
**(Against All Defendants)**

Plaintiff seeks a judgment against all Defendants declaring the deed transferring the Residence from Plaintiff to Holdings null and void *ab initio*, awarding the Plaintiff costs of suit, and other relief, on the grounds the deed was forged or resulted from fraud in factum.  Am. Compl. at ¶¶ 65-67.  The Residence was transferred to Holdings only.  Accordingly, Plaintiff's remedy as to Mester would be limited to costs of suit or other monetary damages.

Forgery encompasses both falsified signatures and "signatures obtained by artifice, trick or device."  *In re Grimes*, 147 B.R. 307, 313 (Bankr. E.D.N.Y. 1992) (citing *Marden v. Dorthy*, 160 N.Y. 39, 54, 54 N.E. 726, 730 (1899) ("[F]orgery may be committed by fraudulently procuring the signature of another to an instrument which he has no intention of signing.").  If the grantor is tricked into signing a deed believing it to be some other instrument, the signature is a forgery, and the deed is invalid to the same extent that it would have been if the grantor's signature had been actually forged by a third person." *Id.* (quoting 43 N.Y. Jur. 2d Deeds § 226, at 422–23 (1985)).  Similarly, fraud in the factum or fraud in the execution means "that the [party] was induced to sign something entirely different than what [the party] thought [he or] she was signing." *ABR Wholesalers, Inc. v. King*, 172 A.D.3d 1929, 1930–31, 99 N.Y.S.3d 846, 848 (N.Y. App. Div. 2019) (citing cases); *see also First Natl. Bank of Odessa v. Fazzari*, 10 N.Y.2d 394, 397, 223 N.Y.S.2d 483, 485, 179 N.E.2d 493, 495 (1961)) (finding fraud in the factum where party signed promissory note believing it to be a statement of wages earned); *Whitehead v. Town House Equities, Ltd.*, 8 A.D.3d 367, 368, 780 N.Y.S.2d 15, 17 (N.Y. App. Div. 2004) ("Fraud in the execution … arises where a party did not know the nature or the contents of the document being signed, or the consequences of signing it, and was nonetheless misled into doing so."); *JPMorgan*

*Chase Bank v. Kalpakis*, 30 Misc. 3d 1236(A), 927 N.Y.S.2d 816 (N.Y. Sup. Ct. 2011) (It is "well settled that deeds and encumbrances that are forged or executed under false pretenses are the result of fraud in the factum (a/k/a fraud in the execution) and are void *ab initio*."), *aff'd sub nom. JP Morgan Chase Bank, Nat. Ass'n v. Kalpakis*, 91 A.D.3d 722, 937 N.Y.S.2d 105 (N.Y. App. Div. 2012).

To state a claim for fraud in the execution, Plaintiff must plead that "there is a 'misrepresentation as to the character or essential terms of a proposed contract,' and a party signs without knowing or having a 'reasonable opportunity to know of its character or essential terms.'" *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 31–32 (2d Cir.1997) (quoting Restatement (Second) of Contracts § 163 comment a (1981)).

The Amended Complaint alleges:

- Mester met with Plaintiff only twice; when Plaintiff signed the Engagement Letter and at the closing.  Am. Compl. at ¶ 27.

- At the closing, Mester told Plaintiff where to sign documents but did not explain the documents' contents, other than this was to save Plaintiff's house.  Am. Compl. at ¶ 28.

- Mester misrepresented the terms of the Purchase and Sale Agreement and Transfer Ownership Agreement to Plaintiff and urged her to sign them.  Am. Compl. at ¶ 30.

- Mester pressured Plaintiff to sign the documents.  Am. Compl. at ¶ 30.

- Plaintiff relied on Mester, as her attorney to protect her interests.  Am. Compl. at ¶ 30.

- The sale transaction was supposed to be a loan modification. Am. Compl. at ¶ 52.

Read in the light most favorable to Plaintiff, the complaint alleges both elements of a cause of action for fraud in factum.  First, there is an allegation that there is a misrepresentation as to the character or essential terms of a proposed contract.  In summary, Plaintiff alleges she was at the

closing to obtain a loan modification but transferred her home to Holdings.  Additionally, Plaintiff alleges she did not have a reasonable opportunity to know the character of the documents because she relied on Mester to explain the documents to her and he failed to do so.

Mester claims the cause of action must be dismissed because no misrepresentations were made to Plaintiff at the closing.  Mester MOL at 7.  Whether misrepresentations were made to Plaintiff at closing is a matter of fact that cannot be decided at the pleading stage. *Roth v. Jennings*, 489 F3d 499, 509 (2d Cir. 2007) ("a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact.").  Mester also claims there are no allegations that Plaintiff did not know what she was signing.  Mester MOL at 7.  That is incorrect, the Plaintiff alleges that she relied on Mester to explain the documents to her and Mester did not do that.  Plaintiff also alleges the closing was supposed to be for a loan modification, not a sale.  Am. Compl. at ¶¶ 28, 30, 52.  Additionally, the Engagement Letter incentivized Mester to counsel Plaintiff to sell the Residence because a sale would make Mester eligible for a fee equal to 20% upon the refinancing of the Residence after the short sale.  *See* Engagement Letter at 1, 2.

Citing *Countrywide Home Loans, Inc. v. Gibson*, 157 A.D.3d 853, 70 N.Y.S.3d 127 (N.Y. App. Div. 2018), Mester argues that fraud in factum "only arises 'if the signor is illiterate, blind, or not a speaker of the language in which the document is written.'"  Mester MOL at 7.  However, Mester misstates the *Countrywide* decision.  In that case, the court stated that fraud in factum cases "generally" involve instances of illiteracy, blindness, or lack of language proficiency.  *Countrywide,* 157 A.D. 853, 856, 70 N.Y.S.3d 580, 583.  The court did not say fraud in factum can only arise in such cases.

Further, *Countrywide* is distinguishable from this case.  The opinion affirmed the trial court's decision, made after trial, on a complete evidentiary record, that there was no fraud in

factum.   The Appellate Division found that there was no evidence presented at trial to support

plaintiff's theory of fraud in factum.  *Countrywide,* 157 A.D. 853, 856, 70 N.Y.S.3d 580, 583.  In

contrast, Mester is requesting a determination that there was no fraud based solely on the pleadings,

notwithstanding the Amended Complaint alleges the elements of fraud in factum.

Accordingly, Mester's motion to dismiss the First Cause of Action is denied.

<div align="center">

**Second Cause of Action**
**Recission of Equity Purchase Contract and Grant Deed, Declaratory Relief and Damages**
**(Against all Defendants)**

</div>

This cause of action is brought under the Home Equity Theft Prevention Act.  The act is:

> intended to prevent abusive and fraudulent practices by purchasers of distressed
> properties who falsely promise to "save" properties and to reconvey them to the
> homeowners at a future date.   The Act regulates certain sales of distressed
> properties, and imposes stringent procedural and substantive requirements for sales
> contracts ("covered contracts") between homeowners ("equity sellers") and
> purchasers ("equity purchasers"). However, because the Act is broadly worded,
> imposes potential civil and criminal penalties for violations on both equity
> purchasers as well as lending institutions, and creates a right of rescission extending
> for two years after a sale, lenders and title companies are reluctant to insure or lend
> funds to transactions falling within the Act.

N.Y. Real Prop. Law § 265-a (McKinney 2019).  The Home Equity Theft Prevention Act requires

that a contract of sale covered by the act include specific information, including the equity seller's

right to cancel.  N.Y. Real Prop. Law §§ 265-a(4), (6)(a) (McKinney 2019).  The act requires the

equity purchaser to provide each equity seller with two copies of the covered contract and notice

of cancellation.   N.Y. Real Prop. Law § 265-a(6)(b) (McKinney 2019).   The term "equity

purchaser" is defined in New York Real Property Law § 265-a(2)(e) as "[a]ny person who or entity

which acquires title to any residence in foreclosure or, where applicable, default,  **or the**

**representative of such person or entity** as defined in this subdivision."[6] (emphasis provided).  In

addition to rescission, the act also entitles the equity seller to monetary damages.  N.Y. Real Prop.

---

[6] The act excludes certain transactions; however, none of those exceptions are applicable here.

<div align="center">15</div>

Law § 265-a(9) (McKinney 2019) ("A court may award to a prevailing equity seller actual damages plus reasonable attorneys' fees and costs. … the court may … increase the award in an amount not to exceed three times the equity seller's actual damages.").

The Amended Complaint sufficiently alleges the transfer of the Residence to Holdings is a covered contract.  The Amended Complaint describes the documents as a sale-leaseback of the Residence and the transaction occurred after the commencement of a foreclosure action.  Am. Compl. ¶ 26.  Further, the Amended Complaint sufficiently alleges a violation of the act because it alleges that Mester did not provide Plaintiff with a notice of cancellation or copies of the contracts.  Am. Compl. at ¶ 28.

Mester argues the claim must be dismissed because Plaintiff has not set forth any specific factual statement or attached documents to the complaint showing that Mester was Holdings' representative.  Mester MOL at 8.  A Plaintiff, however, is not required to plead evidence.  *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 74 (1st Cir. 2014) ("[P]laintiffs are not required to submit evidence to defeat a Rule 12(b)(6) motion, but need only sufficiently allege in their complaint a plausible claim.").   Additionally, the Amended Complaint includes factual allegations that persuade the Court that Plaintiff should be permitted to present evidence that Mester is Holdings' agent, including that Mester would be entitled to receive a significant fee if the Residence were to be sold and refinanced.  Engagement Letter at 1.

Accordingly, Mester's motion to dismiss the Second Cause of Action is denied.

### Third Cause of Action
### Quiet Title
### (Against all Defendants and Does 1 through 200, inclusive)

"To maintain a cause of action to quiet title [to real property], a plaintiff must allege actual or constructive possession of the property and the existence of a removable cloud on the property, which is an apparent title to the property, such as in a deed or other instrument, that is actually

invalid or inoperative" *Nurse v. Rios*, 160 A.D.3d 888, 888, 76 N.Y.S.3d 70, 71 (N.Y. App. Div. 2018) (citing cases); *see also* N.Y. Real Prop. Acts. Law § 1515 (McKinney 2022) (requiring "quiet title" complaints to allege, among other things, "[t]hat the defendant claims, or that it appears from the public records or from the allegations of the complaint, that the defendant might claim an estate or interest in the real property, adverse to that of the plaintiff, and the particular nature of such estate or interest."). The Amended Complaint does not allege Mester is claiming any estate or interest in the Property.

Accordingly, Mester's motion to dismiss the Third Cause of Action is granted.

### Fourth Cause of Action
### Negligent and Intentional Infliction of Emotional Distress
### (Against all Defendants)

To state a claim for intentional infliction of emotional distress ("IIED") under New York law, the complaint must allege: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (citing *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699, 702 (1993)). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell*, 81 N.Y.2d at 122, 596 N.Y.S.2d at 353, 612 N.E.2d at 703 (internal quotation marks and citation omitted).

"[A]bsent a 'deliberate and malicious campaign of harassment or intimidation,' … an IIED claim is susceptible to a determination as a matter of law." *Nelson v. Ulster Cnty.*, New York, 789 F. Supp. 2d 345, 358 (N.D.N.Y. 2010) (citing *Nader v. Gen. Motors Corp.,* 25 N.Y.2d 560, 569, 307 N.Y.S.2d 647, 654, 255 N.E.2d 765, 770 (1970) and *Howell*, 81 N.Y.2d at 121, 596 N.Y.S.2d

at 350, 612 N.E.2d at 702 (with *Howell* stating "The first element ... serves the ... function of filtering out petty and trivial complaints that do not belong in court ....")).

The Amended Complaint does not allege Mester conducted a campaign of harassment or intimidation.  To the contrary, the Complaint alleges Plaintiff interacted with Mester on three occasions:  the initial meeting in September 2018, the closing in March 2019, and Plaintiff's phone call to Mester after the closing.  Am. Compl. at ¶¶ 26, 28, 31.  Therefore, the Amended Complaint fails to allege an IIED claim.  *See Lewis Fam. Grp. Fund LP v. JS Barkats PLLC,* No. 16CV5255AJNJLC, 2021 WL 1203383, at *12 (S.D.N.Y. Mar. 31, 2021*), report and recommendation adopted sub nom. Lewis Fam. Grp. Fund LP, v. JS Barkats PLLC,* No. 16-CV-5255 (AJN), 2021 WL 4341080 (S.D.N.Y. Sept. 23, 2021) (Plaintiffs failed to state an IIED claim against an attorney notwithstanding attorney:  failed to disclose his adverse interest to the client; misrepresented contents of the new retainer agreement with terms favorable to attorney; inserted provisions in agreements that essentially granted the attorney perpetual control of the client's family investment fund; used the fund's money for personal purposes; and repeatedly lied to the client and delayed providing an accounting.).

A cause of action for negligent infliction of emotional distress ("NIED") "generally requires the plaintiff to show a breach of a duty owed to him or her which unreasonably endangered his or her physical safety, or caused him or her to fear for her own safety." *Doe v. Langer*, 206 A.D.3d 1325, 1331, 171 N.Y.S.3d 594, 600 (N.Y. App. Div. 2022) (quoting *A.M.P. v. Benjamin*, 201 A.D.3d 50, 57 (N.Y. App. Div. 2021)).  Unlike IIED, the high bar of extreme and outrageous conduct is not required to prove a case of NIED.  *Id.*  Plaintiff has alleged Mester owed a duty to Plaintiff by alleging Mester was retained as Plaintiff's attorney.  However, the Amended

Complaint does not allege Mester (as opposed to Woodburn or Bonaparte) endangered Plaintiff's physical safety or caused her to fear for her safety.

Therefore, Mester's motion to dismiss the Fourth Cause of Action is granted.

**Fifth Cause of Action**
**For Violation of New York GBL § 349**
**(Against all Defendants)**

To establish a claim under New York General Business Law § 349, the plaintiff must show: "(1) that the defendant's conduct is 'consumer-oriented'; (2) that the defendant is engaged in a 'deceptive act or practice'; and (3) that the plaintiff was injured by this practice." *Wilson v. Northwestern Mut. Ins. Co.*, 625 F .3d 54, 64 (2d Cir. 2010). "The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising." *Genesco Entm't v. Koch,* 593 F.Supp. 743, 751 (S.D.N.Y. 1984).

Regarding the first element, "the challenged practices 'must have a broad impact on consumers at large; [p]rivate contract disputes unique to the parties ... would not fall within the ambit of the statute.'" *Frederick v. Cap. One Bank (USA), N.A.*, No. 14-CV-5460 AJN, 2015 WL 5521769, at *10 (S.D.N.Y. Sept. 17, 2015) (quoting *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 320, 662 N.E.2d 763, 770 (1995)). However, the requirement that the practice have a broad impact on consumers does not require a plaintiff to allege the challenged practice affected a broad number of consumers. As stated by the Second Circuit Court of Appeals:

> Consumer-oriented conduct does not require a repetition or pattern of deceptive behavior. The statute itself does not require recurring conduct. Moreover, the legislative history makes plain that this law was intended to "afford a practical means of halting consumer frauds at their incipiency without the necessity to wait for the development of persistent frauds" (*see,* Mem. of Governor Rockefeller, 1970 N.Y.Legis.Ann., at 472–473). Plaintiff, thus, need not show that the defendant committed the complained-of acts repeatedly—either to the same plaintiff or to other consumers—but instead must demonstrate that the acts or practices have a broader impact on consumers at large.

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 532, 647 N.E.2d 741, 744 (1995). *See New York Univ.*, 87 N.Y.2d at 320, 662 N.E.2d at 770 ("[t]he conduct need not be repetitive or recurring.").  The Amended Complaint sufficiently alleges consumer related conduct because the alleged deceptive practices were in connection with residential mortgage assistance services that could have an impact on consumers at large.

Regarding the second element, "the deceptive practice must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances." *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000) (quoting *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 26, 623 N.Y.S.2d at 532, 647 N.E.2d at 744 (1995)).  The deceptive practice need not reach the level of common law fraud. *Id.* (citation omitted).  The alleged deceptive practice is Mester's alleged misrepresentations to Plaintiff to persuade her to transfer the Residence to Holdings and Mester's failure to explain the sale-leaseback transaction to Plaintiff. Specifically, the Amended Complaint alleges Mester promised "he is going to be saving Jamaica House and as well as other properties" but Mester never explained the sale-leaseback was intended to, and would result in, Plaintiff losing her house. Am. Compl. at ¶¶ 26, 28.  Considering Mester was Plaintiff's attorney who owed a fiduciary duty to Plaintiff, those allegations are sufficient to allege a deceptive practice and that a reasonable consumer acting reasonably under the circumstances would have been misled by the deceptive practice.

Regarding the third element, a plaintiff must prove 'actual' injury though not necessarily pecuniary harm. *In re Scott*, 572 B.R. 492, 531–32 (Bankr. S.D.N.Y. 2017).  The Amended Complaint alleges the Plaintiff suffered actual injury including the loss of $550,000 of equity in the Residence. *See* Am. Compl. at 34.

Therefore, the Amended Complaint adequately pleads a cause of action under New York

General Business Law § 349 and Mester's motion to dismiss the Fifth Cause of Action is denied.

**Sixth Cause of Action**
**For Violation of New York Judiciary Law § 487**
**(Against Charles S. Mester, Esq.)**

New York Judiciary Law section 487 states:

An attorney or counselor who:

1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or,

2. Willfully delays his client's suit with a view to his own gain; or, willfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,

Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

N.Y. Judiciary Law § 487 (McKinney 2023).  To establish a claim under New York Judiciary Law

§ 487(1), a plaintiff must show, at a minimum, "that defendan[t]: (1) [is] guilty of deceit or

collusion, or consent[ed] to any deceit or collusion; and (2) had an intent to deceive the court or

any party." *Bryant v. Silverman*, 284 F. Supp. 3d 458, 471 (S.D.N.Y. 2018) (citations omitted).

Section 487(1) only allows for claims against attorneys who engage in acts of deceit or

collusion that are directed at a court or that "occur during the course of a pending judicial

proceeding." *Schutz v. Kagan Lubic Lepper Finkelstein & Gold, LLP,* No. 12–9459(PAE), 2013

WL 3357921, at *10 (S.D.N.Y. July 2, 2013), *aff'd,* 552 Fed.Appx. 79 (2d Cir. 2014); *accord*

*O'Brien v. Alexander,* 898 F.Supp. 162, 168–69 (S.D.N.Y. 1995), *aff'd* 101 F.3d 1479 (2d Cir.

1996) ("Since no lawsuit was pending when the alleged representations in question were made ...

plaintiff's claim must be dismissed, for section 487 by its terms applies only to statements made to

the court or any party to a lawsuit."); *Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison*

*LLP*, 629 F. Supp. 2d 259, 265 (S.D.N.Y. 2007), *aff'd sub nom.*, *Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison L.L.P.*, 351 F. App'x 472 (2d Cir. 2009), and *aff'd sub nom. Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison L.L.P.*, 351 F. App'x 472 (2d Cir. 2009) ("the deceit must be of a party to a lawsuit in the course of a pending judicial proceeding"); *Henry v. Brenner*, 271 A.D.2d 647, 706 N.Y.S.2d 465, 466 (N.Y. App. Div. 2000)("[section 487] only applies to wrongful conduct by an attorney in a suit actually pending.").  The deceit or collusion "need not occur during a physical appearance in court," and may instead take place during "any oral or written statement related to a proceeding and communicated to a court or party with the intent to deceive." *Amalfitano v. Rosenberg*, 533 F.3d 117, 123 (2d Cir. 2008).

Although foreclosure actions were pending when Mester made his alleged misrepresentations, Mester did not make those misrepresentations in connection with any legal proceeding.  Therefore, the Amended Complaint fails to state a cause of action under New York Judiciary Law section 487(1).

Further, the Amended Complaint fails to state a claim under New York Judiciary Law section 487(2) because Plaintiff does not allege Mester delayed the Investment Properties litigations (or any other action) with a view to his own gain.  Nor does the Amended Complaint allege that Mester received any money from Plaintiff.

Therefore, Mester's motion to dismiss the Sixth Cause of Action is granted.

### Seventh Cause of Action
### For Fraud
### (Against All Defendants)

To plead a cause of action for fraud, a plaintiff must allege:  (1) a misrepresentation or material omission of fact known to be false by defendant; (2) made for the purpose of inducing the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation or

material omission; and (4) injury. *See Spector v. Wendy*, 63 A.D.3d 820, 821-22 (2d Dept. 2009) (collecting cases).

Under Fed. R Civ. P 9(b), fraud must be pled with particularity.  To plead fraud with particularity, a plaintiff must allege with specificity facts which give rise to the strong inference that defendants intended to defraud and knew the representations to be false when made.  *GSGSB, Inc. v. New York Yankees*, 862 F.Supp. 1160, 1177 (S.D.N.Y. 1994) (citations omitted).  To meet the particularity requirement, a pleading should set forth:  (1) precisely what statements or omissions were made and the documents or oral representations those statements were made through; (2) the time, place, and person responsible for making each statement; (3) the content of the statements and how those statements misled plaintiffs; and (4) what benefit defendants obtained as a result of the fraud. *Manela v. Gottlieb*, 784 F.Supp. 84, 87 (S.D.N.Y. 1992).

The Amended Complaint sufficiently alleges the elements of fraud.  First, the Amended Complaint alleges Mester made misrepresentations or material omissions in September 2018 by telling Plaintiff he would save the Residence and the Investment Properties and in March 2019 by telling Plaintiff she needed to sign the closing documents to save the Residence.  Am. Compl. at ¶¶ 27, 28.  Second, the Amended Complaint sufficiently alleges Mester knew his representations were false by alleging Mester prepared the closing documents, which included an agreement for Plaintiff to transfer the Residence to Holdings.  Am. Compl. at ¶ 30.  Third, the Amended Complaint sufficiently alleges Mester made the misrepresentations or omissions to induce reliance by Plaintiff by reference to the Engagement Letter, which provides for Mester to receive substantial additional fees if the Residence were to be conveyed and refinanced. Engagement Letter at 1, 2.  Fourth, the Amended Complaint sufficiently alleges Plaintiff's reliance was reasonable because Plaintiff alleged she signed the documents at the closing because she felt

threated that she would lose her home and she believed Mester was acting in her best interests. Am. Compl. at 30.  Last, the Amended Complaint sufficiently alleges injury by alleging the fair market value of the Residence was $850,0000, however, it was sold to Holdings for $350,000. Am. Compl. at ¶ 174.

Mester argues the Amended Complaint fails to state a cause of action for fraud because the closing documents clearly set forth the nature of the transaction, Plaintiff failed to allege she did not read the documents, and Plaintiff did not allege she was unable to read the documents or was prevented from reading the documents.  Defendant cites *Holder v. Folsom PL Realty, Inc.* as support for his position.  Mester Mem. at 12.  In that case, the plaintiffs alleged the defendant fraudulently procured the deed to property that the plaintiffs owned, by misrepresenting to them the nature of the documents the defendant arranged for them to sign.  *Holder v. Folsom PL Realty, Inc.*, 206 A.D.3d 801, 802, 168 N.Y.S.3d 338, 339 (N.Y. App. Div. 2022).  The trial court granted summary judgment to plaintiff.  *Id.*  The Appellate Court reversed stating:

> One of the documents that the plaintiffs submitted with their motion was the deed to the property that the plaintiffs signed.  The plaintiffs do not aver in their affidavits or in the complaint that they failed to read the documents they signed or that they were illiterate, blind, or did not read English, nor do they allege that they expressed any difficulty in understanding what they were signing (*see Anderson v. Dinkes & Schwitzer, P.C.,* 150 A.D.3d 805, 806, 56 N.Y.S.3d 127).  Instead, the plaintiffs contend that they were "overwhelmed by the paperwork" but do not allege any facts that would suggest that they were prevented from reading the documents prior to signing them or that they were forced to sign (*see Matter of Augustine v. BankUnited FSB,* 75 A.D.3d 596, 597, 905 N.Y.S.2d 652; *Cash v. Titan Fin. Servs., Inc.,* 58 A.D.3d at 788, 873 N.Y.S.2d 642).  Thus, the plaintiffs failed to establish, prima facie, that they were entitled to judgment as a matter of law on the causes of action alleging fraudulent inducement

*Holder*, 206 A.D.3d at 802–03, 168 N.Y.S.3d at 339.  The facts in this case are distinguishable.  In *Holder*, the defendant was the purchaser and purchaser had no obligation to ensure plaintiff/seller read the documents.  Here, the defendant is not the purchaser but Plaintiff's own attorney.  Plaintiff alleges she relied on Mester to explain the documents to her.  Her reliance on Mester to explain

the documents to Plaintiff was reasonable because Mester owed a fiduciary duty to Plaintiff. Further, Plaintiff alleges Mester was working to benefit Bonaparte, Woodburn, Holdings or himself. Plaintiff's allegation that Mester was working against Plaintiff's interests is supported by the Engagement Letter, which provides for Mester to receive an additional fee if the Residence were to be sold and refinanced. Engagement Letter at 2.[7]

Therefore, Mester's motion to dismiss the Seventh Cause of Action is denied.

<div align="center">

**Eighth Cause of Action**
**For Breach of Fiduciary Duty**
**(Against Mester and Bonaparte)**

</div>

To survive a motion to dismiss a claim for breach of fiduciary duty, a plaintiff must plead the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct. *See Ozelkan v. Tyree Bros. Envtl. Servs., Inc.*, 29 A.D.3d 877, 879 815 N.Y.S.2d 265, 267 (N.Y. App. Div. 2006); *Kurtzman v. Bergstol*, 40 A.D.3d 588, 590, 835 N.Y.S.2d 644, 646 (N.Y. App. Div. 2007).

Plaintiff sufficiently alleged the existence of a fiduciary relationship between Plaintiff and Mester by attaching the Engagement Letter to the Amended Complaint. Am. Compl. at Ex. C. The Amended Complaint sufficiently alleges Mester's misconduct. In that regard, the Amended Complaint alleges:

- Mester promised to save the Investment Properties but only met with Plaintiff twice and never commenced litigation. Am. Compl. at ¶¶ 26, 27.

- Mester promised to save the Residence. Am. Compl. at ¶ 26. Instead, Mester counseled Plaintiff to sign documents that resulted in the transfer of the

---

[7] The Engagement Letter contemplates that Mester would represent both Plaintiff and Bonaparte in a sale of the Investment Properties and Mester would receive a fee equal to 20% of the purchase price. Representing both buyer and seller is an improper conflict of interest. *Matter of Stella*, 193 AD.2d 235 (2d Dept. App. Div. 1993). A breach of a disciplinary rule by an attorney is not necessarily actionable. However, that Mester would represent both buyer and seller and receive a significant fee is consistent with Plaintiff's assertion that Mester was not acting solely in Plaintiff's best interests.

Residence to Holdings, without explaining the documents to Plaintiff. Am. Compl. at ¶ 28.

- Mester was incentivized to advise Plaintiff to transfer the Residence because the Engagement Letter contemplates Mester's receipt of a substantial additional fee if the Residence is sold and refinanced. Engagement Letter at 2.

Plaintiff sufficiently alleged she suffered damages, including alleging the transaction caused her to convey the Residence, which had a fair market value of $850,000, for $350,000. Therefore, the Amended Complaint alleges all elements of a breach of fiduciary duty.

As set forth below, Plaintiff also asserts a claim for attorney malpractice. Am. Compl.at ¶¶ 198-204. "Because the attorney-client relationship is both contractual and inherently fiduciary, a complaint seeking damages alleged to have been sustained by a plaintiff in the course of such a relationship will often advance one or more causes of action based upon the attorney's breach of some contractual or fiduciary duty owed to the client. The courts normally treat the action as one for legal malpractice only." *Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 56 A.D.3d 1, 8–9, 865 N.Y.S.2d 14, 20–21 (N.Y. App. Div. 2008). However, claims for breach of fiduciary duty are not *per se* duplicative of attorney malpractice claims. *See Id*. (Lower court's denial of motion to dismiss breach of fiduciary duty claim was not error because that claim was based on different facts than those underlying Plaintiff's claim for attorney malpractice.)

Here, the Engagement Letter contemplates that Mester would provide litigation services regarding the Investment Properties, transactional services regarding the Investment Properties, and transactional services regarding the Residence. Plaintiff should be permitted to offer evidence on her claim of breach of fiduciary duty because the claim may rest on facts differing from those underlying her claim for attorney malpractice.

Therefore, Mester's motion to dismiss the Eighth Cause of Action is denied.

**Ninth Cause of Action**
**For Unconscionability**
**(Against All Defendants)**

The Ninth Cause of Action appears to seek a determination that the sale-leaseback agreements and refinancing agreements are unenforceable because they are unconscionable. Am. Compl. at ¶¶ 117-118. Mester is not alleged to be a party to the sale-leaseback agreements or financing agreements related to the Residence.

Therefore, Mester's motion to dismiss the Ninth Cause of Action is granted.

**Tenth Cause of Action**
**New York Real Property Actions and Proceedings Law, Article 15[8]**

This cause of action seeks a declaration that Plaintiff is the sole owner of the Residence, the deed transferring the Residence from Plaintiff to Holdings is void, and any interest in the Residence asserted by any Defendant is void. The Plaintiff also seeks damages from Plaintiff's lost rents and other damages.

The Amended Complaint does not allege that Mester asserts an interest in the Residence or collected rents from the Residence.

Therefore, Mester's motion to dismiss the Tenth Cause of Action is granted.

**Eleventh Cause of Action**
**(Violation of RICO, 18 U.S.C. § 1962(c))**
**(Against All Defendants)**

Section 1964(c) of chapter 96, title 18 of the United States Code (the "RICO Statute") creates a private right of action for violations of the RICO Statute and states, in relevant part:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

---

[8] The Amended Complaint does not identify the Defendants that are the subject of this cause of action.

18 U.S.C.A. § 1964.  The RICO Statute "is to be read broadly." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346, 359 (1985); Pub.L. 91–452, § 904(a), 84 Stat. 947 (Stating the RICO Statute should be "liberally construed to effectuate [the statute's] remedial purposes").

To state a civil RICO claim under 18 U.S.C. § 1964, a complaint must plead (i) a violation of section 1962 of the RICO Statute; (ii) an injury to business or property; and (iii) that the injury was caused by the violation of section 1962.  *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (citations omitted); *see NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 196 (2d Cir. 2019).

i.    Violation of the RICO Statute

Respecting the first element, section 1962(c) of the RICO Statute states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962.

To plead a violation of RICO Statute section 1962, a complaint must allege that the defendant (1)(a) through the commission of two or more acts constituting a "pattern of racketeering activity" or (1)(b) through the "collection of unlawful debt" (2) directly or indirectly participated in or conducted (3) an "enterprise" (4) the activities of which affect interstate or foreign commerce. *See Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124-125 (2d Cir. 2018); *see also* 18 U.S.C. § 1964(c) (providing a private right of action for persons injured "by reason of" a substantive RICO violation).

1a.    Racketeering Activity

Section 1961(1) sets forth an exhaustive list of predicate acts that constitute "racketeering activity." See *Williams*, 889 F.3d at 124.  Plaintiff claims the enterprise's racketeering activity consists of mail or wire fraud, violations of the Hobbs Act, unlawful monetary transactions, and bankruptcy fraud.  Am. Compl. at ¶¶ 17, 126.

A.  Mail Fraud

"The elements of mail or wire fraud are (i) a scheme to defraud (ii) to get money or property (iii) furthered by the use of interstate mail or wires." *Williams*, 889 F.3d at 124.  These elements must be pled with particularity.  *Id.* (citing Fed. R. Civ. P. 9(b)).  To adequately state a claim for mail or wire fraud, a complaint must detail the specific statements that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.  *See id.*  The mail or wire communications themselves need not contain a false statement, but a plaintiff needs to allege a material misrepresentation as part of the defendant's scheme to defraud.  *See id.* at 125 (citations omitted).

The Amended Complaint alleges the first two elements of mail or wire fraud, namely that there was a scheme to defraud to get money or property.  Specifically, the Amended Complaint alleges certain Defendants made misrepresentations to Plaintiff to induce her to transfer the Residence to Holdings.  *See e.g.* Am. Compl. at 1 (Defendants convinced Plaintiff to transfer the Residence and charged her $10,000 with the promise that once the loan was modified they would transfer the Residence back to Plaintiff); Am. Compl. at ¶ 24 (Bonaparte told Plaintiff that Bonaparte could save the Residence and Plaintiff should put title to the Residence in Bonaparte's friend's name and it would be transferred back after the Residence is saved from foreclosure); Am. Compl. at ¶ 25 (Bonaparte told Plaintiff she would get her $10,000 back); Am. Compl. at ¶ 26 (Mester offered to help Plaintiff save the Residence and Investment Properties); Am. Compl. at ¶

29

28 (Mester told Plaintiff to sign the documents to save her Residence); Am. Compl. at ¶ 28 (Woodburn told Plaintiff he would give the Residence back to her).

The Amended Complaint also alleges the scheme to defraud was furthered by using interstate mail or wires. Specifically, the $350,000 wire transfer authorization is attached to the Amended Complaint. *See* Am. Compl. at Ex. 14. "[A]ny wire that 'is part of the execution of the scheme [to defraud] as conceived by the perpetrator at the time' satisfies the third element." *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 140 (2d Cir. 2018) (quoting *Schmuck v. United States,* 489 U.S. 705, 715, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989)).

Most other allegations of the use of interstate mail or wires are conclusory allegations the Court may not consider. *See, e.g.*, Am. Compl. at ¶ 130 (Defendants "caused matters and things to be placed in a post office or authorized depository"); Am. Compl. at ¶ 131 ("Defendants also used the interstate wires, United States mail, or private interstate commercial carrier to transfer illegally obtained funds").

Accordingly, the Amended Complaint adequately pleads one count of mail fraud.

## B.  The Hobbs Act, 18 U.S.C. § 1951

The Hobbs Act makes it a crime for a person to affect commerce, or to attempt to do so, by robbery or extortion. 18 U.S.C.A. § 1951(a). To establish a Hobbs Act violation, plaintiff must plead that (1) the defendant knowingly or willfully committed, or attempted or conspired to commit, robbery or extortion; and (2) the defendant's conduct affected interstate commerce. *U.S. v. Taylor*, 754 F.3d 217, 222 (4th Cir. 2014), *aff'd Taylor v. U.S.*, 579 U.S 301, 136 S. Ct. 2074, 195 L. Ed. 2d 456 (2016).

Extortion is defined, for purposes of the Hobbs Act, as "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under

color of official right." 18 U.S.C. 1951(b)(2).  Extortion occurs when a person uses physical violence or the threat of violence to obtain property, whether or not the defendant has a claim to the property.  *Rennell v. Rowe*, 635 F.3d 1008, 1012 (7th Cir. 2011).  Because the Hobbs Act is meant to punish as extortion any effort to obtain property by inherently wrongful means, a defendant who uses actual or threatened violence to obtain property may be found guilty of extortion even if the property involved actually belongs to the defendant.  *U.S. v. Sturman*, 49 F.3d 1275, 1284 (7th Cir. 1995); *U.S. v. Zappola*, 677 F.2d 264, 269 (2d Cir. 1982).

Additionally, it is possible to commit Hobbs Act extortion without applying physical force to a person or his or her property. *U.S. v. House*, 825 F.3d 381, 387 (8th Cir, 2016).  In that regard:

> Under the Hobbs Act, the element of fear may be satisfied by a showing that the victim was placed in fear of economic harm. *United States v. Capo,* 817 F.2d 947, 951 (2d Cir.1987). The victim must have reasonably believed: "first, that the defendant had the power to harm the victim, and second, that the defendant would exploit that power to the victim's detriment." *Id.; see also United States v. Peterson,* 233 F.Supp.2d 475, 494 (E.D.N.Y.2002). Of course, the use of economic threats to obtain property is wrongful only if the defendant does not have a claim of right to that property. *See U.S. v. Jackson,* 180 F.3d 55, 68 (2d Cir.1999); *G–I Holdings, Inc. v. Baron & Budd,* 179 F.Supp.2d 233, 259 (S.D.N.Y.2001).

*Calabrese v. CSC Holdings, Inc.,* 283 F. Supp. 2d 797, 809 (E.D.N.Y. 2003).

The Amended Complaint alleges Bonaparte threatened Plaintiff and her family, including threatening physical violence.  *See* Am. Compl. at ¶ 126 ("defendants also violated [the] Hobbs [A]ct by physically threatening the family members to leave the house"); Am. Compl. at ¶ 129 ("Defendants also threatened [Plaintiff] with eviction if she did not sign the agreements which kept changing."); Am. Compl. at ¶ 31 (Bonaparte would make weekly visits "screaming and threatening the family members.").  The Amended Complaint also alleges Bonaparte attempted to gain possession of the Residence through otherwise wrongful means.  *See* Am. Compl. at ¶ 41 ("when [Plaintiff's] family wasn't there, [] Bonaparte came to the [Residence] and turned off the boilers

to forcibly evict the family from the house."); Am. Compl. at ¶ 15 (Once the Residence was transferred, the Defendants threatened the Plaintiff's family members to leave the house).

The Hobbs Act reaches any obstruction, delay, or other effect on commerce, even small ones, and its definition of commerce encompasses "all … commerce over which the United States has jurisdiction.". *Taylor*, 579 U.S. at 302, 136 S. Ct. at 2077, 195 L.Ed.2d at 461. The Amended Complaint alleges an effect on interstate commerce, albeit the allegations lack specificity. *See, e.g.*, Am. Compl. at ¶¶ 130, 131, 132.

Therefore, the Amended Complaint adequately pleads violations of the Hobbs Act by Bonaparte.

C. Unlawful Monetary Transactions, 18 U.S.C. §§ 1956, 1957(a)

Section 1956 of title 18, United States Code criminalizes money laundering and provides in pertinent part: "Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity … knowing that the transaction is designed in whole or in part … to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity …" commits a federal offense. *United States v. Ward*, 197 F.3d 1076, 1081 (11th Cir. 1999).

The Amended Complaint does not attempt to identify the financial transaction that allegedly violated 18 U.S.C. § 1956. Therefore, the Court cannot find that Plaintiff adequately pled a claim for money laundering. *Wu v. Tillerson*, No. 15-CV-1040 (EGS/GMH), 2017 WL 11665584 *12 n.5 (D.D.C. June 29, 2017) ("It is not . . . the Court's duty to scour the record in search of documents that support a claim that a plaintiff's complaint fails to even properly allege."); *Superior Kitchen Designs, Inc. v. Valspar Indus. (U.S.A.), Inc.*, 263 F. Supp. 2d 140, 148 (D. Mass.

2003) ("[W]hile the allegations of the complaint are construed favorably to the plaintiff, the court will not read causes of action into the complaint which are not alleged.").

    D.  <u>Bankruptcy Fraud, 18 U.S.C. §§ 152(2), 152(3)</u>

Section 152 of title 18 of the United States Code states, in relevant part that:

A person who—

    (2) knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11;

    (3) knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11;

shall be fined under this title, imprisoned not more than 5 years, or both.

18 U.S.C. § 152. Plaintiff alleges Holdings caused the Holdings POC to be filed to "extract monies for work not done" and for repairs to the Residence after it had been transferred to Holdings. Am. Compl. at ¶ 58.

Although the allegations are sparce, reading the Amended Complaint in the light most favorable to Plaintiff, the Court may infer that Plaintiff is alleging the Holdings POC was filed notwithstanding Holdings is not owed any money by Plaintiff.[9]

Therefore, the Amended Complaint sufficiently alleges a claim for bankruptcy fraud.

    E.  <u>Pattern of Racketeering Activity</u>

At least two acts of racketeering activity, or two predicate acts, are required to constitute a "pattern of racketeering activity." *See* 18 U.S.C. §1961(5). Although two acts of racketeering activity are necessary to constitute a pattern, two acts alone may not be sufficient to form a pattern. *See DeFalco*, 244 F.3d at 306 (citing *Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n.14, 87

---

[9] The Court takes judicial notice of its order disallowing and expunging the Holdings POC because it was not timely filed. *See Order Disallowing and Expunging Proof of Claim No. 5-1 of 12706 Holdings Inc.,* Bankr. Case, ECF No. 48. If Holdings fraudulently filed the Holdings POC, its expungement would not necessarily obviate a cause of action for bankruptcy fraud because the fraud would have occurred the moment the proof of claim was filed.

L.Ed.2d at 358–59 n.14).  To adequately plead a "pattern" of racketeering activity, in addition to pleading at least two predicate acts, a plaintiff must adequately allege that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity.  *See GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 465 (2d Cir. 1995) (citing 18 U.S.C. § 1961(5) and *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239, 109 S. Ct. 2893, 2900, 106 L. Ed. 2d 195, 208 (1989)).

To satisfy the "relatedness" requirement, a plaintiff must allege the "'[c]riminal acts have the "same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  *H.J. Inc.*, 492 U.S. at 240, 109 S. Ct. at 2901, 106 L. Ed. 2d at 208.

To satisfy the "continuity" requirement, a plaintiff must allege either an "open-ended" pattern of racketeering activity or a "close-ended" pattern of racketeering activity.  *See GICC Cap. Corp.*, 67 F.3d at 466.  An "open-ended" pattern of racketeering activity exists where there is past criminal conduct coupled with a threat of future criminal conduct.  *See id.*  An inherently unlawful predicate act that is performed at the behest of an enterprise whose business is racketeering activity automatically meets the open-ended continuity requirement.  *See id.*  Alternatively, a "close-ended" pattern of racketeering activity exists where there is a series of related predicate acts that extend over a substantial period of time.  *See id.* at 466-67.  Allegations that predicate acts occurred over a period of two years or more will typically satisfy the close-ended continuity time requirement, but a period of less than two years will not.  *See DeFalco*, 244 F.3d at 321 ("Since the Supreme Court decided *H.J., Inc. [in 1989],* this Court has never held a period of less than two years to constitute a 'substantial period of time'."); *see also Jacobson v. Cooper*, 882 F.2d 717, 720 (2d Cir. 1989) (concluding that predicate acts occurring over "a matter of years" satisfied the

continuity requirement); *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10, 18 (2d Cir. 1989) (concluding that allegations of predicate acts occurring over a "period of nearly two years" were sufficient to plead a pattern of racketeering activity).

Read in the light most favorable to Plaintiff, the Amended Complaint alleges both "relatedness" and "continuity." The Amended Complaint alleges relatedness because it alleges a common victim—the Plaintiff. Additionally, it alleges a common purpose—to obtain title and possession of the Residence. The Amended Complaint alleges continuity because the complaint alleges a "close-ended" pattern of racketeering activity over a period of more than two years. Specifically, the predicate acts (i.e., the wire fraud and Hobbs Act violations) occurred from March 2019 (the Residence closing date) through at least November 2021 (the commencement of the bankruptcy Case which stayed the eviction action).

### 1b.    Collection of Unlawful Debt

RICO defines "unlawful debt" as a "debt (A) . . . which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with . . . the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6).

To state a claim for an unlawful debt RICO violation, the complaint must plead (1) a debt existed, (2) it was unenforceable under New York's usury laws, (3) it was incurred in connection with the business of lending money at more than twice the legal rate, (4) the defendant aided collection of the debt in some manner, and (5) the defendant acted knowingly, willfully, and unlawfully. *See United States v. Biasucci*, 786 F.2d 504, 513 (2d Cir. 1986).

The Amended Complaint alleges the Defendants obtained a commercial loan with an interest rate that exceeds consumer loans usual interest rates, with a default rate of 24%. Am. Compl. at 3. However, the Amended Complaint does not allege a loan was made to Plaintiff or anyone else that is unenforceable under applicable State law. Therefore, the Amended Complaint does not allege a violation of 18 U.S.C. § 1961(6).

2.    Defendant's Participation

To adequately plead a cause of action under the RICO Statute, Plaintiff must allege the defendant directly or indirectly participated in or conducted an enterprise. *Williams*, 889 F.3d at 124-125. The Amended Complaint alleges Mester agreed to provide services to Bonaparte as well as Plaintiff related to the sale-leaseback of the Residence (Engagement Letter at 2), prepared the Purchase and Sale Agreement and Transfer Ownership Agreement (Am. Compl. at ¶ 30) and was present at the closing and purported to represent Plaintif (Am. Compl. at ¶ 28). Those allegations are sufficient to plead that Mester participated in the enterprise.

3.    Existence of an Enterprise

RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To state a claim for a RICO violation, a complaint must allege the existence of two distinct entities: (1) a "person" and (2) an "enterprise" that is not simply the same "person" referred to by a different name. *See Cedric Kushner Promotions, Ltd. V. King*, 533 U.S. 158, 161 (2001).

The Amended Complaint defines the enterprise as "all of the Defendants." Am. Compl. at ¶ 134. Simply stated, the alleged enterprise consists of the real estate broker (Bonaparte), purchaser (Holdings), purchaser's principal (Woodburn), real estate attorney (Mester), and the

entities financing the purchaser's purchase of the Residence (the Planet Defendants).  Am. Compl. at ¶¶ 134, 148.  Read in the light most favorable to Plaintiff, the Court may infer that the Defendants are a group of individuals associated in fact and constitute an enterprise and that Mester is a "person" for purposes of 18 U.S.C. § 1962(c), who is separate and distinct from the enterprise.

4.    Effect on Interstate Commerce

A complaint need only plead that the activities of the enterprise affect interstate commerce.  *See DeFalco*, 244 F.3d at 309 (citing *U.S. v. Barton*, 647 F.2d 224, 233 (2d Cir. 1981).  A minimal effect on interstate commerce is enough.  *See id.*

The Amended Complaint alleges the enterprise's activities affected interstate commerce.  Am. Compl. at ¶ 136.  Although the Amended Complaint fails to explain the impact, the pleading standard for this element appears low and Plaintiff should have the opportunity to present evidence on this element.

ii.    Damages

The Plaintiff adequately alleges damages resulting from the predicate acts, including: (a) the loss of her ownership interest in the Residence; (b) the $10,000 she paid to Bonaparte; and (c) the payments made on Holdings' mortgage on the Residence.  Am. Compl. at ¶¶ 25, 32, 47.

iii.    Causation

To sustain a RICO claim, a plaintiff must show the injury to Plaintiff's business or property was "by reason of" the RICO violation.  18 U.S.C. § 1964(c).  "By reason of" requires the RICO Plaintiff to allege causation.  *Sedima.,* 473 U.S. at 496, 105 S.Ct. at 3285, 87 L.Ed.2d at 358–59.  Causation is not established by alleging only that the defendant violated 18 U.S.C. § 1962, the plaintiff was injured, and the defendant's violation was a 'but for" cause of plaintiff's injury.  Rather, the plaintiff must allege the predicate offense was both the "but for cause" and the

"proximate cause" as well.  *Holmes v. Securities Investor Protection Corp., 503 U.S. 258,* 268–71, 112 S.Ct. 1311, 1317–19, 117 L.Ed.2d 532, 544–46 (1992).

Plaintiff alleges she is the direct victim on the wire fraud, Hobbs Act, and bankruptcy fraud. As such she has alleged both "but for" and proximate cause.

Accordingly, Plaintiff sufficiently alleges a claim for treble damages under the RICO Statute and Mester's motion to dismiss the Eleventh Cause of Action is Denied.

<div align="center">

**Twelfth Cause of Action**
**(Conspiracy to Violate RICO, 18 U.S.C. § 1962(c))**
**(Against All Defendants)**

</div>

Section 1962(d) of the RICO Statute states "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). To allege a cause of action for conspiracy to violate the RICO Statute, plaintiff must plead that each defendant agreed to commit at least two predicate acts of racketeering in furtherance of an endeavor which, if completed, would satisfy all the elements of a substantive RICO violation. *See Cofacredit, S.A. v. Windsor Plumbing Supply Co*., 187 F.3d 229, 244–45 (2d Cir.1999).   The Amended Complaint does not allege that Mester agreed to violate the Hobbs Act or to commit wire or mail fraud or other predicate acts of racketeering.   However, as stated by the Supreme Court of the United States:

> A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. See *United States v. Socony–Vacuum Oil Co.,* 310 U.S. 150, 253–254, 60 S.Ct. 811, 858–859, 84 L.Ed. 1129 (1940). The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other. *See Pinkerton v. United States,* 328 U.S. 640, 646, 66 S.Ct. 1180, 1183–1184, 90 L.Ed. 1489 (1946) ("And so long as the partnership in crime continues, the partners act for each other in carrying it forward"). If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators. As Justice Holmes observed: "[P]lainly a person may conspire for the commission of a crime by a third person." *United States v. Holte,* 236 U.S. 140, 144, 35 S.Ct. 271, 272, 59 L.Ed. 504 (1915). A

person, moreover, may be liable for conspiracy even though he was incapable of committing the substantive offense. *United States v. Rabinowich,* 238 U.S. 78, 86, 35 S.Ct. 682, 684, 59 L.Ed. 1211 (1915).

*Salinas v. United States*, 522 U.S. 52, 63–64, 118 S. Ct. 469, 477, 139 L. Ed. 2d 352, 366 (1997).

The Amended Complaint sufficiently alleges Mester and the other Defendants agreed to pursue the same criminal objective—the transfer of title to, and possession of, the Residence to Holdings—and that Mester supported his co-conspirators' efforts.  *See e.g.*, Engagement Letter at 2 (In which Mester agreed to perform services related to the sale-leaseback of the Residence and would receive a fee of 20% upon the refinancing of the Residence after the sale); Am. Compl. at ¶ 30 (alleging Mester prepared the Purchase and Sale Agreement and Transfer Ownership Agreement); Am. Compl. at ¶ 28 (alleging Mester was present at the closing and purported to represent Plaintiff at the closing); and Am. Compl. at ¶ 29 (Mester represented Bonaparte, Woodburn, and their business interests).

Therefore, Mester's motion to dismiss the Twelfth Cause of Action is denied.

### Thirteenth Cause of Action
### (Unjust Enrichment)
### (Against All Defendants)

To plead a claim for unjust enrichment, a plaintiff must allege: (1) the defendant was enriched, (2) at the plaintiff's expense, (3) and it would be inequitable for the defendant to remain so enriched. *Columbia Mem'l Hosp. v. Hinds*, 38 N.Y.3d 253, 275, 192 N.E.3d 1128, 1137 (2022). Courts also may consider other allegations, such as whether "a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent." *Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 421, 285 N.E.2d 695, 698 (1972).

There are no allegations in the Amended Complaint that Plaintiff conferred a benefit on Mester.  Rather, the Amended Complaint alleges Plaintiff paid Bonaparte $10,000 and made payments to Bonaparte for utilities and use and occupancy charges that benefitted Holdings and Woodburn.  (Am. Compl. at ¶¶ 25, 59, Ex. 7).  Plaintiff also alleges she conveyed the Residence to Holdings and made mortgage payments for the Residence that benefitted Holdings.  (Am. Compl. at ¶¶ 31, 59).

Therefore, Mester's motion to dismiss the Thirteenth Cause of Action is granted.

<div align="center">

**Fourteenth Cause of Action**
**(Constructive Trust)**
**(Against All Defendants)**
</div>

A constructive trust is an equitable remedy that seeks to rectify situations in which one acquires property "in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest." *Galasso, Langione & Botter, LLP v. Galasso*, 176 A.D.3d 1176, 1183 113 N.Y.S.3d 110, 119 (N.Y. App. Div. 2019).  Essentially, a constructive trust is used to right a wrong, but not to "enforce intent."  *See Saulia v. Saulia*, 31 A.D.2d 640, 640, 295 N.Y.S.2d 980, 980 (N.Y. App. Div. 1968).  To establish a cause of action for constructive trust, a plaintiff must plead: "(1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment flowing from the breach of the promise." *Sanxhaku v. Margetis*, 151 A.D.3d 778, 779, 56 N.Y.S.3d 238, 240 (N.Y. App. Div. 2017).

As set forth in the discussion on Plaintiff's Cause of Action for Unjust Enrichment, the Amended Complaint does not allege a transfer to Mester from Plaintiff.

Therefore, Mester's motion to dismiss the Fourteenth Cause of Action is granted.

**Fifteenth Cause of Action**
**(Fraudulent Conveyance, Section 273 of NY Debtor Creditor Law)**
**(Against All Defendants)**

**Fifteenth *[sic]* Cause of Action**
**(Fraudulent Conveyance, Section 275 of NY Debtor Creditor Law)**
**(Against All Defendants)**

**Sixteenth Cause of Action**
**(Recovery of Fraudulent Transfer under 11 U.S.C. § 550)**
**(Against All Defendants)[10]**

**Eighteenth Cause of Action**
**(Disallowance of Claims)[11]**

The Amended Complaint alleges the Plaintiff's transfer of the Residence to Holdings was an intentional fraudulent conveyance or a constructive fraudulent conveyance.  Plaintiff seeks to avoid the transfer and recover the Residence for the benefit of the estate under New York Debtor and Creditor Law sections 273 and 275.[12]  Additionally, pursuant to Bankruptcy Code section 550, Plaintiff is seeking to recover the value of the Residence, as opposed to the Residence itself.  Am. Compl. at ¶¶ 168–88.

The Plaintiff does not allege she transferred the Residence or any interest in the Residence to Mester.  Accordingly, Plaintiff fails to state a cause of action to avoid and recover the Residence from Mester under New York Debtor and Creditor Law.  *See  Fed. Deposit Ins. Corp. v. Porco,* 75 N.Y.2d 840, 841–42, 552 N.E.2d 158, 159 (1990) ("the traditional rule in this State rejects any cause of action for mere participation in the transfer of a debtor's property prior to the creditor's obtaining a judgment or a lien on that property"); *Roselink Investors, LLC v. Shenkman,* 386

---

[10] The Seventeenth Causes of Action, to avoid and recover the mortgage on the Residence, is asserted only against the Planet Defendants and not against Mester.

[11] The Amended Complaint does not identify the Defendants that are subject to the Eighteenth Cause of action.

[12] In December 2019, New York's Fraudulent Conveyance Act (N.Y. Debt & Cred. Law) was repealed and replaced with the Uniform Voidable Transactions Act (the "UVTA").  The UVTA became effective on April 4, 2020 but does not apply to transfers occurring before the UVTA's effective date. N.Y. Debt. & Cred. Law § Ch. 12, art. 10, Refs Annos (McKinney 2020).

F.Supp.2d 209, 226–27 (S.D.N.Y.2004) ("New York law does not recognize 'a creditor's remedy for money damages against parties who, like defendants here, were neither transferees of the assets nor beneficiaries of the conveyance.' This is because '[t]he creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance ....' Therefore, there can be no action for damages against a party who did not receive any of the property sought by the creditors.") (citations omitted) (alteration and omission in original).  Therefore, Plaintiff has failed to state a cause of action under New York Debtor & Creditor Law sections 273 or 275 and cannot seek to recover the Residence or its value from Mester under Bankruptcy Code section 550.

The Eighteenth Cause of Action seeks to disallow claims filed by any Defendant until all voidable transfers are returned to the bankruptcy estate under Bankruptcy Code section 502(h). The Court takes judicial notice that Mester has not filed a proof of claim in the Bankruptcy Case and there is no claim to disallow.

Therefore, Mester's motion to dismiss the Fifteenth Cause of Action, the other Fifteenth Cause of Action, the Sixteenth Cause of Action, and the Eighteenth Cause of Action is granted.

### Nineteenth Cause of Action
### (Legal Malpractice)
### (Against Mester)

"The elements of a claim of legal malpractice under New York law are: (1) an attorney-client relationship at the time of the alleged malpractice; (2) attorney negligence; (3) proximate causation and (4) actual damage to the client."  *Bryant v. Silverman*, 284 F. Supp. 3d 458, 470 (S.D.N.Y. 2018).

The Amended Complaint alleges an attorney client relationship.  The Engagement Letter names Plaintiff as client and Mester as attorney.  Am. Compl. at Ex C.

Regarding the second element—attorney negligence:

> To properly plead negligence, a party must aver that an attorney's conduct "fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of his profession." *Grago v. Robertson,* 49 A.D.2d 645, 646, 370 N.Y.S.2d 255 (1975). A complaint that essentially alleges either an "error of judgment" or a "selection of one among several reasonable courses of action" fails to state a claim for malpractice. *Rosner,* 65 N.Y.2d at 738, 492 N.Y.S.2d 13, 481 N.E.2d 553. Generally, an attorney may only be held liable for "ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action." *Bernstein v. Oppenheim & Co.,* 160 A.D.2d 428, 430, 554 N.Y.S.2d 487 (1990).

*Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328, 337 (2d Cir. 2006).

The Amended Complaint adequately pleads negligence. In that regard, the Amended Complaint alleges:

- Mester was retained to commence litigation to recover the Investment Properties and did not do so. Am. Compl. at ¶ 27.

- Mester did not explain the contents of the documents Plaintiff signed at the closing. Am. Compl. at ¶ 28.

- Mester prepared the Purchase and Sale Agreement and Transfer Ownership Agreement or caused them to be prepared. Mester misrepresented the terms of the Purchase and Sale Agreement and the Transfer Ownership Agreement, urged Plaintiff to sign those documents, and did not counsel her to have the documents reviewed by independent counsel. Am. Compl. at ¶ 30.

- Mester did not provide Plaintiff with copies of the documents Plaintiff signed at the closing (which would include the Notice of Cancellation required by the Home Equity Theft Prevention Act). Am. Compl. at ¶ 28.

These allegations are significant because the Engagement Letter entitles Mester to additional compensation upon consummation of the sale-leaseback of the Residence. As such, Mester was economically incentivized to advise the Plaintiff to agree to the sale-leaseback, regardless of whether the transaction was in the Plaintiff's best interests.

"[T]o plead causation adequately in a legal malpractice claim, the plaintiff must show that but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome. . . . This causation requirement, a high bar to attorney malpractice liability, seeks to

insure a tight causal relationship exists between the claimed injuries and the alleged malpractice." *Flutie Bros. v. Hayes*, 2006 WL 1379594, at *5 (S.D.N.Y. May 18, 2006) (internal citations and quotations omitted). The Amended Complaint adequately pleads causation because it alleges that Plaintiff would not have signed the documents at closing transferring the Residence had Mester not counseled her to do so. *See* Am. Compl. at ¶ 30 ("plaintiff signed the documents in reliance on Attorney's statements and assurances.").

Under New York law, a plaintiff's recovery for legal malpractice is limited to pecuniary damages as opposed to damages related to emotional distress. *See Bryant v. Silverman*, 284 F. Supp. 3d 458, 471 (S.D.N.Y. 2018); *Galu v. Attias*, 923 F. Supp. 590, 597 (S.D.N.Y. 1996). The Amended Complaint adequately pleads pecuniary damages. In that regard, the Amended Complaint alleges the Residence was sold at a short sale for $350,000 even though it was worth $850,000. Am. Compl. at ¶ 59.

Mester claims this cause of action must be dismissed because it is duplicative of Plaintiff's cause of action for breach of fiduciary duty. Mester. Supp. Mem. at 6. As set forth above, due to the various services that were to be provided by Mester (including both litigation services and services related to two different transactions), it would be premature for the Court to conclude that the two causes of action are duplicative. *See infra* at 28.

Mester argues, the malpractice claim must be dismissed because "there is no private cause of action for legal malpractice based upon an alleged conflict of interest or any finding of an ethical or professional responsibility violation." Supp. Memo. at 7. Mester cites *Arkin Kaplan LLP v. Jones*, 42 A.D.3d 362, 366, 840 N.Y.S.2d 48, 51 (N.Y. App. Div. 2007) in support of his contention. In that case, Arkin Kaplan represented Jones against his former employer, Citibank, and achieved a $5 million settlement in favor of Jones. Arkin Kaplan sued Jones for nonpayment

of fees and Jones counterclaimed for, among other things, a violation of the Code of Professional Responsibility. The trial court granted Arkin Kaplan's motion for summary judgment on the counterclaim. *Id.* at 363, 840 N.Y.S.2d at 49. The appellate court affirmed the trial court stating "even if a violation of the Code of Professional Responsibility had occurred, that, in itself, would not create a private right of action. *Arkin Kaplan LLP*, 42 A.D.3d at 365–66, 840 N.Y.S.2d at 51–52.

*Arkin Kaplan LLP v. Jones* is distinguishable. Although Plaintiff notes the conflict of interest, the Amended Complaint does not rely on the ethical violation as the sole fact underlying her malpractice claim. Rather, as set forth above, Plaintiff alleges Mester failed to explain the sale-leaseback documents to Plaintiff and counseled her to consummate that transaction to her detriment because the transaction would result in Mester's entitlement to additional legal fees.

Mester makes several additional arguments that the Amended Complaint fails to state a malpractice claim. First, Mester claims Plaintiff's damages are speculative and unsupported by the allegations. Mester Supp. Mem. at 7. The Amended Complaint, however, alleges the Plaintiff sold the Residence for $350,000 when it was worth $850,000 due to Mester's malpractice. Therefore, the damages are not speculative.

Second, Mester argues Plaintiff fails to state a cause of action for malpractice because "[a]ttorneys acting in good faith" are not liable for the actions of their clients or nonclients. Mester Supp. Mem. at 7. Whether Mester was acting in good faith, however, is a question of fact that should not be decided at the pleading stage.

Third, Mester argues an attorney has no duty to investigate and discover an alleged fraud perpetrated upon its clients by others. Mester Supp. Mem. at 7. The Amended Complaint,

however, alleges more than Mester's failure to investigate others. Rather, the Amended Complaint alleges Mester participated in the fraud.

Fourth, Mester argues the majority of allegations in the Amended Complaint concern the other Defendants or other third parties and admits the Plaintiff only met with Mester twice. Mester. Supp. Mem. at 8. The existence of co-defendants does not obviate a claim of malpractice. Further, Mester's admittedly limited interaction with Plaintiff could support Plaintiff's claim that Mester was neglectful.

Fifth, Mester erroneously claims the malpractice claims must be dismissed because he performed the services contemplated by the Engagement Letter, namely facilitating a sale-leaseback of the residence. Mester Suppl. Mem at 9. *Allegrino v. Ruskin Moscou Falticheck, P.C.*, 2021 WL 429121 (S.D.N.Y. February 8, 2021) cited by Mester in support of his contention is distinguishable. In *Allegrino*, the plaintiff sued his attorneys for malpractice for failing to appear in his appeal. *Id*. at *6. The retainer agreement stated, "the engagement was 'for the limited purpose' of reviewing the record and conducting research to determine whether to pursue an appeal … '[t]o be clear, neither [the law firm] nor you are committed hereby to (a) pursue the Appeal." *Id*. There is nothing in the *Allegrino* opinion to support Mester's contention that his alleged negligent performance of services is not actionable because the retainer agreement described the services to be performed. If Mester is arguing he can't be sued for malpractice for assisting in a sale-leaseback of the Residence because the Engagement Letter contemplates a sale-leaseback, the argument is not persuasive because the Amended Complaint alleges Mester did not explain the Engagement Letter's reference to the sale-leaseback to Plaintiff. *See e.g.* Am. Compl. at ¶ 26 (alleging Mester and Bonaparte spoke privately, after which Bonaparte was "made to sign the Engagement Letter). Additionally, the Amended Complaint alleges Mester did not adequately

represent Plaintiff in connection with the sale-leaseback by, among other things, failing to furnish closing documents to her.  Am. Compl. at ¶ 28.

Sixth, Mester argues he cannot be liable for malpractice for failing to represent the Plaintiff in the foreclosure action for the Plaintiff's Residence because the Engagement Letter did not engage Mester to perform those services.  Mester Supp. Memo at 9.  Mester is correct that he could not be liable for malpractice for failing to defend Plaintiff in the foreclosure action as that service was not contemplated by the Engagement Letter.

Finally, Mester erroneously claims the malpractice cause of action must be dismissed as it is time barred.  The statute of limitations for legal malpractice is three years.  N.Y. C.P.L.R. § 214(6) (McKinney 2021).  Mester alleges any claim would have arisen in March 2018 on the date of the closing on the Residence.  Mester Supp. Mem. at 13.  This adversary proceeding was not commenced until May 9, 2022, more than three years after the closing.

Plaintiff claims the cause of action is not time barred due (a) to the COVID-10 moratoria on commencing actions, and (b) Bankruptcy Code section 108(a).

On March 20, 2020, Governor Cuomo issued executive order 202.67 tolling all procedural deadlines.  *See* Executive Order No. 202.6 (N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.8, March 18, 2020) ("[A]ny specific time limit for the commencement, filing, or service of any legal action … is hereby tolled from the date of this executive order until April 19, 2020.").  Additional executive orders extended the toll.  On November 3, 2020, the governor lifted the toll for civil cases, including the toll of all statutes of limitations.  *See* Executive Order No. 202.72 (N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.8, November 3, 2020).  Ordinarily, "toll," in the context of a time prescription, means that the limitations period is suspended, or stops running, and then starts

running again when the tolling period ends, picking up where it left off. *See Bermudez Chavez v. Occidental Chem. Corp.*, 35 N.Y.3d 492, 505 n.8, 158, N.E.3d 93, 102 n.8 (2020).

As of the March 20, 2020, executive order, approximately two years remained on the statute of limitations. When the toll expired on November 3, 2020, the deadline for the Plaintiff to commence her malpractice action was October, 2022. This adversary proceeding was commenced in May 2022, five months prior to the expiration of the statute of limitations. Further, the Debtor commenced her bankruptcy case on November 15, 2021. Under Bankruptcy Code section 108(a), the deadline for the Plaintiff to commence an action was extended by two years. Therefore, the cause of action is timely.

Accordingly, Mester's motion to dismiss the Nineteenth Cause of Action is denied.

### Seventeenth *[sic]* Cause of Action
### Preliminary and Permanent Injunction
### (Against All Defendants)

This cause of action seeks to enjoin the Defendants from selling the Residence.

A party seeking a preliminary injunction must ordinarily establish (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party"; and (3) that a preliminary injunction is in the public interest."

*New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (internal quotations omitted).

A permanent injunction may issue only when the movant demonstrates

 (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 1839, 164 L.Ed.2d 641, 646 (2006).

Plaintiff has failed to plead she is entitled to a preliminary injunction or a permanent injunction because she has failed to plead irreparable harm. Holdings is the sole record owner of the Residence and Plaintiff has not alleged Mester has the power or authority to sell the Residence. Accordingly, Plaintiff has not alleged sufficient facts to show she is likely to suffer irreparable harm if the court fails to preliminarily or permanently enjoin Mester from selling the Residence.

Therefore, Mester's motion to dismiss this Seventeenth Cause of Action is granted.

## **CONCLUSION**

For the reasons stated herein, the following Causes of Action are dismissed against Mester: Third Cause of Action, Fourth Cause of Action, Sixth Cause of Action, Ninth Cause of Action, Tenth Cause of Action, Thirteenth Cause of Action, Fifteenth Cause of Action, Fifteenth Cause of Action (other), Sixteenth Cause of Action, Seventeeth Cause of Action, and Eighteenth Cause of Action.

The Court will enter an order consistent with this memorandum.

**Dated: March 23, 2023**
**Brooklyn, New York**

Jil Mazer-Marino
United States Bankruptcy Judge