UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

In re:

Evis Neverlane Stephens,

                        Debtor.

Chapter 13

Case No.:  21-42857

-----------------------------------------------------------------X

Evis Neverlane Stephens,

                    Plaintiff,

             v.

Maxine Bonaparte, Lezantonio Woodburn,
12706 Holdings Inc., Charles L Mester, Esq.,
Planet Management Group, LLC, Planet Home
Lending LLC dba Planet Home Servicing,
Wilmington Savings Fund Society, FSB (WSF),
Verus Securitization Trust 2020-NPL1,

                  Defendants.

Adv. Pro. No.:  22-01037

-----------------------------------------------------------------X

**MEMORANDUM DECISION ON MOTIONS TO DISMISS FILED BY (A) WILMINGTON SAVINGS FUND SOCIETY, FSB AND VERUS SECURITIZATION TRUST 2020 NPL1, AND (B) PLANET MANAGEMENT GROUP, LLC AND PLANET HOME LENDING, LLC d/b/a PLANET HOME SERVICING**

Karamvir Dahiya, Esq.
Dahiya Law Office LLC
75 Maiden Lane, Suite 606
New York, NY  10038

*Counsel for Plaintiff Evis Neverlane Stephens*

Edward Rugino, Esq.
Roach & Lin P.C.
6851 Jericho Turnpike, Suite 185
Syosset, NY 11791

*Counsel for Defendants Wilmington Savings Fund Society, FSB and Verus Securitization Trust 2020-NPL1*

Ryan P. Mulvaney, Esq.
Stevens & Lee, P.C.
669 River Drive, Suite 201
Elmwood Park, NJ 07407

*Counsel for Defendants Planet Management Group, LLC and Planet Home Lending, LLC d/b/a Planet Home Servicing*

## INTRODUCTION

Evis Neverlane Stephens ("Plaintiff") alleges she is the victim of a scheme that caused her to transfer her home to Defendant 12076 Holdings Inc. ("Holdings"). Defendant Lezantonio Woodburn ("Woodburn") owns Holdings. Defendant Maxine Bonaparte ("Bonaparte") was Plaintiff's real estate agent and introduced Plaintiff to Woodburn and Charles L. Mester, Esq. ("Mester"). Mester is the attorney that represented Plaintiff in connection with the sale/leaseback of Plaintiff's home to Holdings.

Plaintiff alleges that Bonaparte, Woodburn, and Mester told her they would help her save her home from foreclosure. Plaintiff alleges they did not help her save her home but tricked her into transferring her home to Holdings. Holdings then leased the home back to Plaintiff. Plaintiff alleges Bonaparte and Woodburn pressured and threatened her to vacate the Residence.

Plaintiff alleges that Planet Management Group ("Planet Management"), financed Holdings' acquisition of the property, Planet Home Lending, LLC d/b/a Planet Home Servicing ("Planet Servicing" and together with Planet Management, the "Planet Defendants") serviced the mortgage, and the Planet Defendants participated in the scheme to trick Plaintiff into selling her home to Holdings. Plaintiff alleges Planet Management assigned the mortgage loan to Wilmington Savings Fund Society, FSB and Verus Securitization Trust 2020-NPL1 (together, the "Wilmington Defendants"). Plaintiff asserts 18 causes of action against the Planet Defendants and the Wilmington Defendants, including claims under New York's Home Equity Transfer Protection Act and claims for fraud, fraudulent conveyance, and Civil Rico.

The Wilmington Defendants have moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Planet Defendants have moved to dismiss the Amended Complaint pursuant to Rules 12(b)(1), (b)(6) and 9(b) of the Federal Rules

of Civil Procedure.  For the reasons set forth below, the motions are granted in part and

Plaintiff's request for leave to amend the Amended Complaint is granted in part.

In Summary, Plaintiff is granted leave to amend the claims to avoid and recover

fraudulent conveyances that are set forth in the two causes of action labelled as the Fifteenth

Cause of Action, the Sixteenth Cause of Action and the first Seventeenth Cause of Action.

The Planet Defendants' motion to dismiss is granted to the extent that all remaining

causes of action are dismissed except the First and Second Causes of Action.  The Wilmington

Defendants' motion to dismiss is granted to the extent that all remaining causes of action are

dismissed except the First, Second, Third, and Tenth Causes of Action.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), 28

U.S.C. § 157(a), and the Standing Order of Reference entered by the United States District Court

for the Eastern District of New York dated August 28, 1986, as amended by the Order dated

December 5, 2012.  Some causes of action asserted by Plaintiff are not core matters.  Though a

bankruptcy judge may hear non-core proceedings that are related to the bankruptcy case, absent

consent of the parties, a bankruptcy judge may not enter a final judgment.  28 U.S.C. § 157(c)(1).

The bankruptcy court, however, may handle all pretrial proceedings, including entering an order

dismissing some, but not all, non-core causes of action in an adversary complaint.  *In re Suffolk*

*Reg'l Off-Track Betting Corp.*, 591 B.R. 127, 129 (Bankr. E.D.N.Y. 2018).

## PROCEDURAL BACKGROUND

Plaintiff filed a petition for relief under chapter 13 of the Bankruptcy Code on November

15, 2021 (the "Petition Date").  *In re Stephens*, Case No. 21-42857 (the "Bankruptcy Case"),

ECF 1.

Plaintiff commenced this adversary proceeding on May 9, 2022, against Bonaparte, Mester, Woodburn, and Holdings (collectively, the "Original Defendants"). *Stephens v. Bonaparte*, Adv. Pro. No. 22-01037 (the "Adv. Pro."), ECF No. 1.

On August 3, 2022, Mester filed his motion to dismiss this Adversary Proceeding. Mot. to Dismiss Adversary Proceeding, Adv. Pro., ECF No. 13.

On December 22, 2022, Plaintiff filed an amended complaint (Adv. Pro., ECF No. 34 (the "Amended Complaint")) that added the Planet Defendants and the Wilmington Defendants (the Planet Defendants, Wilmington Defendants and Original Defendants are referred to as the "Defendants").

On March 9, 2023, the Wilmington Defendants filed a Motion to Dismiss Adversary Proceeding. Adv. Pro., ECF No. 48. (the "Wilmington MTD"). On April 4, 2023, Plaintiff filed opposition to the Wilmington MTD. Affirmation in Opp'n, Adv. Pro., ECF No. 56. On April 11, 2023, the Wilmington Defendants replied. Reply Mem. of Law, Adv. Pro., ECF No. 61. The Wilmington Defendants subsequently amended their reply. Proposed Reply Mem. of Law (Revised), Adv. Pro., ECF No. 63.

On March 10, 2023, the Planet Defendants filed a Motion to Dismiss Adversary Proceeding. Adv. Pro., ECF No. 51 (the "Planet MTD"). On April 4, 2023, Plaintiff filed an Affirmation in Opposition to the Planet MTD. Affirmation in Opp'n, Adv. Pro., ECF No. 55. On April 14, 2023, the Planet Defendants filed their reply. Reply Mem. of Law in Further Supp. of Mot. to Dismiss, Adv. Pro., ECF No. 62.

On March 23, 2023, the Court issued a Memorandum Decision that granted Mester's Motion to Dismiss in part. Mem. Decision on the Def. Charles Mester's Mot. to Dismiss Pl.'s Am. Compl., Adv. Pro., ECF No. 54 (the "Mester Decision").

On April 24, 2023, the Court entered an order directing the parties to mediation.  Order Assigning Matter to Mediation, Adv. Pro., ECF No. 65.  On October 6, 2023, the mediators reported that the parties had reached an impasse.  Mediator's Rep., Adv. Pro., ECF No. 71.

## FACTUAL BACKGROUND

Plaintiff alleges she purchased 127-06 177th Street, Jamaica New York 11434 (the "Residence"), in 2006.  Am. Compl. at ¶¶ 4, 20.  Plaintiff was unable to pay the monthly mortgage payments and faced foreclosure.  Am. Compl. at ¶ 22.

Plaintiff alleges she contacted several people she thought could help her save the Residence from foreclosure and was eventually introduced to Bonaparte.  *Id*.  Plaintiff alleges Bonaparte told Plaintiff she could save the Residence from foreclosure.  *Id*.  Plaintiff alleges Bonaparte told her the Residence's foreclosure sale was imminent and the only way to save the Residence would be to transfer it to Bonaparte's friend, Woodburn, who would transfer it back after it was "saved" from foreclosure.  Am. Compl. at ¶ 24.

In September 2018, Bonaparte took Plaintiff to Mester's office.  Am. Compl. at ¶ 25, 26. Plaintiff alleges Mester met Plaintiff briefly and then spoke privately with Bonaparte.  Am. Compl. at ¶ 26.  Plaintiff entered into an engagement letter, dated September 21, 2018 (the "Engagement Letter").  Am. Compl., Ex. C.  The Engagement Letter named Plaintiff and Bonaparte as clients.  The Engagement Letter entitled Mester to a 20% fee from Plaintiff (in addition to his hourly rate) upon a refinancing of the Residence subsequent to a short sale. Engagement Letter at 2.

Plaintiff alleges that in March 2019, Bonaparte and Woodburn brought Plaintiff to a real estate closing that she thought was meant to save her ownership interest in the Residence.  Am. Compl. ¶ 28.  Plaintiff alleges she did not receive copies of the closing documents despite

requesting them from Bonaparte and Mester.  *Id.*  Plaintiff further alleges that Mester did not explain the closing documents, but only told Plaintiff where to sign.  *Id.*

Plaintiff alleges that Holdings borrowed money from one of the Planet Defendants to purchase the Residence from Plaintiff.  Am. Compl. ¶ 9.  Plaintiff alleges on "information and belief" that the Planet Defendants' agents were at the closing.  Am. Compl. ¶ 28.  Plaintiff alleges the Planet Defendants did not provide her with documentation or inform her that they financed Holdings' acquisition of the Residence.  *Id.*  Plaintiff alleges the Planet Defendants aided Bonaparte, Holdings, and Woodburn in their scheme to defraud the Plaintiff into thinking she was getting a loan modification.  Am. Compl. at ¶ 52.

On March 27, 2019, Holdings granted a mortgage on the Residence to Planet Management and, in May 2022, Planet Management assigned that mortgage to the Wilmington Defendants. [1]

Plaintiff alleges that after the closing, Bonaparte directed Plaintiff to make monthly mortgage payments for the Residence even though Plaintiff no longer owned the Residence. Am. Compl. ¶ 31.  Plaintiff alleges that Bonaparte later demanded Plaintiff pay rent to Bonaparte for the Residence in addition to the mortgage payments.  *Id.*  Plaintiff alleges Bonaparte and Woodburn threatened Plaintiff and her family to coerce them to vacate the Residence.  *Id.*

---

[1] Plaintiff alludes to but does not specifically allege those facts in the Amended Complaint, however, the mortgage and assignment are a matter of public record.  *See* Detailed Document Information, Automated City Register Information System (May 12, 2022, 5:50 p.m.), https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentDetail?doc_id=2022050600306001; Detailed Document Information, Automated City Register Information (July 18, 2019, 4:28 p.m.), https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentDetail?doc_id=2019041000506001.  Where public records that are integral to a fraud complaint are not attached to it, the court, in considering a Rule 12(b)(6) motion, is permitted to take judicial notice of those records.  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

# DISCUSSION

## I.    Subject Matter Jurisdiction

The Planet Defendants seek to dismiss this case under Rule 12(b)(1) for lack of subject matter jurisdiction.  Planet MTD at 5-7.  However, in their reply, the Planet Defendants state they are seeking dismissal based on Plaintiff's lack of contractual standing because Plaintiff is not a party to the loan or mortgage.  Reply Mem. of Law Supp. Mot. to Dismiss, Adv. Pro., ECF No. 62 at 1-2.  The Planet Defendants admit the issue of contractual standing is distinct from Article III standing.  *Id.*  Also, the Planet Defendants admit that motions to dismiss for lack of contractual standing are made under Rule 12(b)(6) not 12(b)(1).  *Id.*  Therefore, it appears the Planet Defendants have abandoned the argument that the Amended Complaint should be dismissed, pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction.  The Planet Defendants' argument that Plaintiff's claims should be dismissed due to lack of contractual standing is addressed below.  *See Infra* at 28.

The Wilmington Defendants seek to dismiss the Amended Complaint because there is no "justiciable controversy."  Wilmington MTD at 6.  Whether there is a "case or controversy" implicates this Court's subject matter jurisdiction.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635, 643 (2016) ("Although the Constitution does not fully explain what is meant by '[t]he judicial power of the United States' … it does specify that this power extends only to 'Cases' and 'Controversies.'").  The Wilmington Defendants argue there is no controversy because the Amended Complaint "is devoid of allegations that the [Wilmington Defendants] were involved in the alleged foreclosure rescue scam and/or had knowledge of the underlying fraud."  Wilmington MTD at 6.  As discussed below, because the Wilmington Defendants are the Planet Defendants' assignees, the Wilmington Defendants' rights to enforce the mortgage hinge on whether the Planet Defendants may enforce the mortgage.  *See*

*Infra* at 17, 22, 23-24.  Therefore, Plaintiff need not plead facts concerning the Wilmington Defendants' bad acts for there to be a controversy between Plaintiff and the Wilmington Defendants.

## II.    Standards for Motions to Dismiss

"The purpose of a motion to dismiss under Rule 12(b)(6) is to assess the legal feasibility of the complaint, not to weigh the evidence which the plaintiff offers or intends to offer." *Citibank, N.A. v. K-H Corp.*, 745 F. Supp. 899, 902 (S.D.N.Y. 1990).  Accordingly, on a motion to dismiss a complaint under Fed. R. Civ. P. 12(b)(6), a court must accept all factual allegations in the complaint as true, even if the allegations are doubtful in fact.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929, 940 (2007).  Additionally, the court must draw all reasonable inferences in the plaintiff's favor.  *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021).  Further, in determining a motion to dismiss, a court should be focused solely on whether a plaintiff's allegations state a plausible claim for relief.  A court should not consider other explanations for a defendant's conduct, even if a defendant's explanation is more likely to be true.  *See Houck v. Substitute Trustee Servs.*, 791 F.3d 473, 483–84 (4th Cir. 2015) (finding that a complaint stating a plausible claim for relief "survives a motion to dismiss under Rule 12(b)(6), regardless of whether there is a more plausible alternative explanation"); 2 James Wm. Moore *et al.*, *Moore's Federal Practice* § 12.34 (3d ed. 2021).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974, 167 L. Ed. 2d at 949).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* A court need not consider allegations that are conclusory or subjective characterizations. *Iqbal*, 556 U.S. at 663, 129 S. Ct. at 1940, 167 L. Ed. 2d at 875 ("[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements are not sufficient."); *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65, 167 L. Ed. 2d at 940 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.").

On a motion to dismiss, the Court's review is confined to the pleadings, documents attached to, or incorporated by reference in the complaint, and matters of which judicial notice may be taken. *Aubrey v. New Sch.*, No. 21-CV-4915 (KMK), 2022 WL 3867832, at *1 (S.D.N.Y. Aug. 30, 2022).

## III.    The Causes of Action are Timely

The Planet Defendants argue the following causes of action are time barred:[2]

- Second Cause of Action for Rescission of Equity Purchase Contract and Grant Deed, Declaratory Relief and Damages.

- Third Cause of Action to Quiet Title.

- Fourth Cause of Action for Negligent and Intentional Infliction of Emotional Distress.

- Fifth Cause of Action for Violation of New York GBL § 349.

- Eleventh Cause of Action for Violation of 18 U.S.C. § 1962(c) (Civil RICO).

The Court addressed the timeliness of certain causes of action in the Mester Decision. Mester Decision, pp. 47–48. The Court held that most of Plaintiff's claims against Mester were

---

[2] The Wilmington Defendants do not raise statute of limitations defenses.

timely because New York State's former Governor enacted executive orders that tolled the statutes of limitations and Bankruptcy Code section 108 further extended Plaintiff's time to commence claims.  *Id*. at 48.

In their reply memorandum, the Planet Defendants argue the Mester Decision was wrong because the executive orders suspended, not tolled, the statutes of limitations.  Reply Mem. of Law Supp. Mot. to Dismiss, Adv. Pro., ECF No. 62, pp. 2–7.  "A toll suspends the running of the statute of limitations for a finite time period, whereas a suspension only delays the expiration of the time period until the end date of the suspension."  *Murphy v. Harris*, 210 A.D.3d 410, 411, 177 N.Y.S.3d 559, 561 (App. Div. 2022).  If the executive orders suspended the statutes of limitations, the claims would have expired on the later of the date set by applicable law and November 3, 2020.  If the executive orders tolled the statutes of limitations, the statute of limitations for each cause of action would have been extended by 228 days.

Based on the plain language of the original executive order, the executive orders tolled the statutes of limitations.  *See* Executive Order No. 202.6 (N.Y. Comp. Codes R. & Regs. Tit. 9, § 8.202.8, March 18, 2020) ("[A]ny specific time limit for the commencement, filing, or service of any legal action … is hereby tolled from the date of this executive order until April 19, 2020.").  This Court's interpretation is in keeping with the majority of decisions by New York courts.  *See* e.g., *Brash v. Richards*, 195 A.D.3d 582, 585, 149 N.Y.S.3d 560, 563 (App. Div. 2021); *Murphy v. Harris,* 210 A.D.3d 410, 411, 177 N.Y.S.3d 559, 561 (App. Div. 2022); *Matter of Roach v. Cornell Univ.,* 207 A.D.3d 931, 933, 172 N.Y.S.3d 215, 218 (App. Div. 2022); *Little v. Steelcase, Inc.,* 206 A.D.3d 1597, 1599–1600, 170 N.Y.S.3d 422, 425 (App. Div. 2022); *Reynolds-Sitzer v. EISAI, Inc.*, 586 F. Supp. 3d 123, 132 (N.D.N.Y. 2022); *Lopez-Motherway v.*

*City of Long Beach*, No. 2:20-CV-5652 (BMC), 2021 WL 965158, at *8 (E.D.N.Y. Mar. 15, 2021).

Bankruptcy Code section 108 provides:

(a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) two years after the order for relief.

(b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 60 days after the order for relief.

11 U.S.C. § 108.  Under Bankruptcy Code section 108(a), if the statute of limitations on a prepetition cause of action has not expired as of the date the debtor commences a bankruptcy case, the trustee has two years from the commencement of the bankruptcy case to commence the action.  Under Bankruptcy Code section 108(b), deadlines to cure defaults and perform other acts that have not expired as of the commencement date are extended by 60 days.

Bankruptcy Code section 108 expressly extends a trustee's time to commence an action but is silent respecting a chapter 13 debtor's entitlement to those extensions.  As such, a few Courts have held that a chapter 13 debtor may not avail herself of those

extensions. *Est. of Carr ex rel. Carr v. United States*, 482 F. Supp. 2d 842, 850 (W.D. Tex. 2007); *Ranasinghe v. Compton (In re Ranasinghe)*, 341 B.R. 556, 564–68 (Bankr. E.D. Va. 2006); *In re Craig*, 7 B.R. 864, 865–66 (Bankr. E.D. Tenn. 1980).

Most courts, however, hold that chapter 13 debtors may use Bankruptcy Code section 108 to extend the time to commence prepetition actions. *See Dawson v. Thomas (In re Dawson)*, 411 B.R. 1, 21 (Bankr. D.D.C. 2008) (collecting cases); *see also Milledge v. Carolina Acceptance (In re Milledge)*, 639 B.R. 334, 350 (Bankr. D. S.C. 2022) (Chapter 13 debtor's deadline to redeem vehicle was extended by Bankruptcy Code section 108(b)).

*In re Dawson* includes an exhaustive analysis supporting its holding that the extensions provided in Bankruptcy Code section 108 apply to claims brought by chapter 13 debtors. That analysis is briefly summarized as follows. Bankruptcy Code section 1303 grants the chapter 13 debtor the rights and powers of a trustee under Bankruptcy Code section 363(b). *Dawson*, 411 B.R. at 23. Bankruptcy Code section 363(b) grants the trustee the authority to use property of the estate. 11 U.S.C. § 363(b). Courts agree that prepetition causes of action are property of the chapter 13 estate. *See e.g. Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008). Because prepetition causes of action are property of the estate and the chapter 13 debtor may "use" property of the estate, chapter 13 debtors have standing to bring suit on prepetition causes of action. *Dawson*, 411 B.R. at 24; *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1209 n. 2 (3d Cir. 1991); *Cable v. Ivy Tech State Coll. (In re Cable)*, 200 F.3d 467, 472 (7th Cir. 1999); *Autos, Inc. v. Gowin*, 244 Fed. App'x. 885, 888–90 (10th Cir. 2007); *Crosby v. Monroe Cnty*, 394 F.3d 1328, 1331 n. 2 (11th Cir. 2004); *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 516 (2d Cir. 1998).[3] "The § 363 power to sue, when exercised by a chapter

---

[3] Courts disagree on whether the chapter 13 debtor has the exclusive authority to bring suit or whether the chapter 13 trustee also is vested with that power. *Compare Dawson*, 411 B.R. at 30 & 31 *with Wilson v. Dollar Gen. Corp.*,

13 debtor, is exercised in the words of § 1303 as 'a right [ ] and power[ ] of a trustee.'" *Dawson*, 411 B.R. at 25.  Accordingly, the chapter 13 debtor, standing in the shoes of the trustee, is afforded the Bankruptcy Code section 108 extensions as if the action had been brought by the chapter 13 trustee.  The Court agrees with *Dawson* and holds that Bankruptcy Code section 108 extended Plaintiff's time to commence actions on claims that had not expired as of the Petition Date.

Respecting the Second and Third Causes of Action, the Planet Defendants argue the deadline for Plaintiff to commence those causes of action was two years from the date the deed conveying the Residence was recorded.  Planet MTD, p. 13.  The deed was recorded on July 29, 2019.  Due to the executive orders, Plaintiffs deadline to bring those causes of action was extended from July 29, 2021 to March 15, 2022.  As of the Petition Date, the statutes of limitations had not expired.  Under Bankruptcy Code section 108, the Debtor's time to commence an action was extended to November 15, 2023 (i.e., two years after the Petition Date).  Accordingly, the Second and Third Causes of Action are timely.

The Fifth Cause of Action asserts a claim under New York General Business Law section 349, which has a three-year statute of limitations.  *Williams-Guillaume v. Bank of Am., N.A.*, 130 A.D.3d 1016, 1018, 14 N.Y.S.3d 466, 469 (App. Div. 2015).  Plaintiff's alleged injury occurred on the March 27, 2019 closing date and the statute of limitations ran on March 27, 2022.  Therefore, that cause of action was timely as of the Petition Date and Bankruptcy Code section 108 extended the time for Plaintiff to bring the cause of action to November 15, 2023.  Therefore, Plaintiff's Fifth Cause of Action is timely.

---

717 F.3d 337, 343 (4th Cir. 2013) (finding a chapter 13 debtor possesses standing—concurrent with that of the trustee—to maintain a non-bankruptcy cause of action on behalf of the estate).

Plaintiff's Fourth Cause of Action asserts claims for negligent and intentional infliction of emotional distress.  The cause of action for negligent infliction of emotional distress is governed by a three-year statute of limitations.  *Yong Wen Mo v. Gee Ming Chan*, 17 A.D.3d 356, 358, 792 N.Y.S.2d 589, 591 (App. Div. 2005).  Therefore, like Plaintiff's Fifth Cause of Action, Plaintiff's claim for negligent infliction of emotion distress is timely.

Plaintiff's Fourth Cause of Action also asserts a claim for intentional infliction of emotional distress ("IIED").  IIED has a one-year statute of limitations.  *Powell v. Lab Corp.*, 789 F. App'x 237, 240 (2d Cir. 2019).  The statute of limitations for an IIED claim begins to run on the date of the injury.  *Id*.  The Planet Defendants argue the alleged injury occurred on the March 27, 2019 closing date.  Planet MTD, p. 20.  Plaintiff argues the injury did not occur until the commencement of the action to evict Plaintiff from the Residence, May 5, 2020.  Am. Compl. ¶ 36; Affirmation in Opp., Adv. Pro., ECF No. 55, ¶ 20.  "The Court may only dismiss an action based on the statute of limitations if, on the face of the complaint, it is clear the claim is untimely."  *Atl. Int'l Movers, LLC v. Ocean World Lines, Inc*., 914 F. Supp. 2d 267, 279 (E.D.N.Y. 2012) (internal citations omitted); *see also Staehr v. Hartford Fin. Servs. Grp., Inc*., 547 F.3d 406, 425 (2d Cir. 2008) (stating that dismissal under Rule 12(b)(6) is appropriate where "a defendant raises a statutory bar as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.") (internal citation omitted).  The burden is on the defendant to establish that a claim is time barred.  *See Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co.*, 239 F. Supp. 3d 761, 788 (S.D.N.Y. 2017); *Staehr*, 547 F.3d at 425.  It is not clear from the face of the Complaint that the IIED action is untimely, therefore, the Court will not dismiss this cause of action on the grounds the action is time barred.

Plaintiff's Eleventh Cause of Action is brought under section 1964(c) of chapter 96, title 18 of the United States Code (the "RICO Statute").  The executive orders only tolled the statutes of limitations for causes of action arising under New York State law, not federal law.  *See, e.g., Romero v. Manhattan and Bronx Surface Transit Operating Auth.*, No. 21-CV-4951 (LJL), 2022 WL 624451, at *5 (S.D.N.Y. Mar. 2, 2022) ("[T]he various executive orders issued throughout the COVID-19 pandemic 'did not purport to toll time periods prescribed by federal law.'") (quoting *O'Rourke v. Ehsan Food Corp.*, No. 19-CV-6162 (LJL), 2020 WL 6894663, at *3 (S.D.N.Y. Nov. 24, 2020))).  Accordingly, the executive orders did not toll Plaintiff's RICO claims against the Defendants.  Civil RICO claims have a four-year statute of limitations.  *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156, 107 S. Ct. 2759, 2767, 97 L. Ed. 2d 121, 134 (1987).  Assuming the RICO causes of action arose as of the March 27, 2019 closing, the four year statute of limitations had not run as of the Petition Date and Bankruptcy Code section 108 extended the deadline to assert the RICO claims for an additional two years.  Therefore, Plaintiff's Eleventh Cause of Action is timely.

## IV.    Application of F.R. Civ. P. 12(b)(6) to Specific Causes of Action

### First Cause of Action
### Cancellation of Deed Based upon Forgery or Fraud in Factum
### (Against All Defendants)

Plaintiff seeks a judgment against all Defendants declaring the deed transferring the Residence from Plaintiff to Holdings is null and void ab initio and awarding the Plaintiff costs of suit and other relief, because the deed was forged or resulted from fraud in factum.  Am. Compl. at ¶¶ 65-67.

Forgery encompasses both falsified signatures and "signatures obtained by artifice, trick or device."  *Grimes v. Green Point Sav. Bank (In re Grimes)*, 147 B.R. 307, 313 (Bankr.

E.D.N.Y. 1992) (citing *Marden v. Dorthy*, 160 N.Y. 39, 54, 54 N.E. 726, 730 (1899) ("[F]orgery may be committed by fraudulently procuring the signature of another to an instrument which he has no intention of signing."). If the grantor is tricked into signing a deed believing it to be some other instrument, the signature is a forgery, and the deed is invalid to the same extent that it would have been if the grantor's signature had been actually forged by a third person." *Grimes*, 147 B.R. at 313 (quoting 43 N.Y. Jur. 2d Deeds § 226, at 422–23 (1985)). Similarly, fraud in the factum or fraud in the execution means "that the [party] was induced to sign something entirely different than what [the party] thought she was signing." *ABR Wholesalers, Inc. v. King*, 172 A.D.3d 1929, 1930–31, 99 N.Y.S.3d 846, 848 (App. Div. 2019). *See also First Natl. Bank of Odessa v. Fazzari*, 10 N.Y.2d 394, 397, 223 N.Y.S.2d 483, 485, 179 N.E.2d 493, 495 (1961)) (finding fraud in the factum where party signed promissory note believing it to be a statement of wages earned); *Whitehead v. Town House Equities, Ltd.*, 8 A.D.3d 367, 368, 780 N.Y.S.2d 15, 17 (App. Div. 2004) ("Fraud in the execution … arises where a party did not know the nature or the contents of the document being signed, or the consequences of signing it, and was nonetheless misled into doing so."); *JPMorgan Chase Bank, Nat'l Ass'n v. Kalpakis*, 30 Misc. 3d 1236(A), 927 N.Y.S.2d 816 (Sup. Ct. 2011) ("[It is] well settled that deeds and encumbrances that are forged or executed under false pretenses are the result of fraud in the factum (a/k/a fraud in the execution) and are void *ab initio*."), *aff'd sub nom. JP Morgan Chase Bank, Nat'l Ass'n v. Kalpakis*, 91 A.D.3d 722, 937 N.Y.S.2d 105 (App. Div. 2012).

    To state a claim for fraud in the execution, Plaintiff must plead that "there is a 'misrepresentation as to the character or essential terms of a proposed contract,' and a party signs without knowing or having a 'reasonable opportunity to know of its character or essential

terms.'" *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 31–32 (2d Cir. 1997) (quoting Restatement (Second) of Contracts § 163 cmt. a (Am. L. Inst. 1981)).

As to the Planet Defendants the Amended Complaint alleges:

- Upon information and belief agents of the Planet Defendants were present at the closing.  Am. Compl. ¶ 28.

- The Planet Defendants' agents did not provide Plaintiff with paperwork.  *Id*.

- The Planet Defendants' agents did not disclose to Plaintiff that Planet was providing funding to Holdings.  *Id*.

- Plaintiff signed documents presented to her by Bonaparte, Woodburn, Mester, and the Planet Defendants which transferred title of the Residence to Holdings.  Am. Compl. ¶ 66.

Plaintiff does not allege the Planet Defendants made any representations to Plaintiff, much less misrepresentations respecting the documents Plaintiff signed at closing.  The Amended Complaint alleges no facts specific to the Wilmington Defendants regarding the First Cause of Action.

However, if Plaintiff obtains a judgment against Holdings that the deed conveying the Residence was obtained by fraud or fraud in factum, the mortgage conveyed by Holdings to the Planet Defendants would be void.  *Cruz v. Cruz,* 37 A.D.3d 754, 754, 832 N.Y.S.2d 217, 218 (App. Div. 2007) ("A deed based on forgery or obtained by false pretenses is void ab initio, and a mortgage based on such a deed is likewise invalid."); *First Nat. Bank of Nev. v. Williams*, 74 A.D.3d 740, 742, 904 N.Y.S.2d 707, 708 (App. Div. 2010) ("If documents purportedly conveying a property interest are void, they convey nothing, and a subsequent bona fide purchaser or bona fide encumbrancer for value receives nothing.").  Further, if the mortgage

conveyed by Holdings to the Planet Defendants were to be deemed void, the mortgage would be unenforceable by the Wilmington Defendants.  *Selene Fin., L.P. v. Jones*, 203 A.D.3d 1191, 1194, 166 N.Y.S.3d 639, 642 (App. Div. 2022) (holding that as deed obtained by false pretenses was void, the mortgage based on that deed and subsequently assigned was also void).

Unless the Planet Defendants and the Wilmington Defendants are party to this action, findings or conclusions reached by this Court concerning Plaintiff's conveyance to Holdings might not be binding on the Planet Defendants or Wilmington Defendants in a future action to foreclose the mortgage.  *See Wash. Mut. Bank v. Sholomov*, 20 Misc.3d 773, 779–80, 862 N.Y.S.2d 890, 895 (S. Ct. 2008).  In *Sholomov*, a property seller commenced an action against the property purchaser to avoid the sale for fraud.  *Id*. at 775, 862 N.Y.S.2d at 891.  Property seller also requested a stay of the foreclosure action against property purchaser that had been commenced by the mortgage assignee.  *Id.*  The court in the foreclosure action noted the mortgage assignee was not named in property seller's action against property purchaser.  *Id.* The court in the foreclosure action denied the request for a stay reasoning that the findings and conclusions in property seller's action against property buyer would not be binding on the mortgage assignee.  *Id.*

Planet Servicing, as servicer for the Wilmington Defendants, has requested relief from the automatic stay to permit Planet Servicing to commence a foreclosure action respecting the Residence.  Bankruptcy Case, Mot. for Relief from Stay, ECF 53.  The Court has not ruled on the motion pending the outcome of this Adversary Proceeding.  If the Court dismisses this First Cause of Action against the Planet Defendants and the Wilmington Defendants, there is a risk the Plaintiff will be precluded from asserting her claims in Planet Servicing's foreclosure action against Holdings.  Alternatively, there is a risk Plaintiff's claims will be litigated in this Court

and in a state court foreclosure action, resulting in duplicative litigation, a waste of judicial

resources, and, potentially, inconsistent outcomes.  For those reasons, the Court will not dismiss

the First Cause of Action against the Planet Defendants or the Wilmington Defendants.

**Second Cause of Action**
**Recission of Equity Purchase Contract and Grant Deed, Declaratory Relief and Damages**
**(Against all Defendants)**

This cause of action is brought under the Home Equity Theft Prevention Act.  The act is:

> intended to prevent abusive and fraudulent practices by purchasers of distressed
> properties who falsely promise to "save" properties and to reconvey them to the
> homeowners at a future date.  The Act regulates certain sales of distressed
> properties, and imposes stringent procedural and substantive requirements for sales
> contracts ("covered contracts") between homeowners ("equity sellers") and
> purchasers ("equity purchasers").  [The Act] imposes potential civil and criminal
> penalties for violations on both equity purchasers as well as lending institutions,
> and creates a right of rescission extending for two years after a sale.

N.Y. Real Prop. Law § 265-a (McKinney 2019); *see also* N.Y. Real Prop. Law § 265-a(9)

(McKinney 2019) ("A court may award to a prevailing equity seller actual damages plus

reasonable attorneys' fees and costs. … the court may … increase the award in an amount not to

exceed three times the equity seller's actual damages.").  The Home Equity Theft Prevention Act

requires that a contract of sale covered by the act include specific information, including the

equity seller's right to cancel.  N.Y. Real Prop. Law §§ 265-a(4), (6)(a) (McKinney 2019).

The term "equity purchaser" is defined in New York Real Property Law § 265-a(2)(e) as

"[a]ny person who or entity which acquires title to any residence in foreclosure or, where

applicable, default, or the representative of such person or entity."  N.Y. Real Prop. Law § 265-

a(6)(b) (McKinney 2019).  The definition of "equity Purchaser" excludes "bona fide

encumbrancers for value."  N.Y. Real Prop. Law § 265-a (2)(e)(vii) (McKinney 2019).

A "bona fide encumbrancer for value" includes those providing an equity purchaser with

a mortgage, provided the mortgagee had no notice of the equity seller's continuing right to, or

equity in, the property prior to the acquisition of title or encumbrance, or of any violation of HETPA by the equity purchaser.  N.Y. Real Prop. Law § 265-a(2)(a) (McKinney 2019).

The rights of an encumbrancer "are protected 'unless it appears [they] had previous notice of the fraudulent intent of [its] immediate grantor, or of the fraud rendering void the title of such grantor.'" *In re Doresca*, No. 8-16-75006-LAS, 2023 WL 2639573, at *6 (Bankr. E.D.N.Y. Mar. 24, 2023) (quoting *Miller-Francis v. Smith-Jackson*, 113 A.D.3d 28, 34, 976 N.Y.S.2d 34, 38 (App. Div. 2013)).  "A mortgagee will be charged with constructive notice if it is 'aware of facts that would lead a reasonable, prudent lender to make inquiries of the circumstances of the transaction at issue.'" *Miller-Francis*, 113 A.D.3d at 34, 976 N.Y.S.2d at 38 (quoting *Mortg. Elec. Registration Sys., Inc. v. Rambaran*, 97 A.D.3d 802, 804, 949 N.Y.S.2d 694, 695 (App. Div. 2012)).  "If a 'reasonable inquiry' would reveal some evidence of fraud, then failure to 'make some investigation' will divest the mortgagee of bona fide encumbrancer status.  *Miller-Francis*, 113 A.D.3d at 34, 976 N.Y.S.2d at 38 (citations omitted).

The Amended Complaint sufficiently alleges the transfer of the Residence to Holdings is a covered contract because the Amended Complaint describes the documents as a sale-leaseback of the Residence and the transaction occurred after the commencement of a foreclosure action.  Am. Compl. ¶ 26.  Further, the Amended Complaint sufficiently alleges a violation of HETPA because it alleges that Holdings did not provide Plaintiff with a notice of cancellation or copies of the contracts.  Am. Compl. at ¶ 28.  The Amended Complaint alleges that the Planet Defendants were the mortgagee to Holdings, the equity purchaser.  Am. Compl. at ¶ 52.

The Planet Defendants argue that Plaintiff's claim must fail because the Planet Defendants are bona fide encumbrancers for value.  Planet MTD at 15.  The Planet Defendants contend the Amended Complaint fails to allege that they were aware of facts that would have put

them on notice of Plaintiff's continuing right in the Residence or of any violation of HETPA.  *Id.* at 16.  In that regard, the Planet Defendants argue the Affidavit of Arm's Length Occupancy confirms the Planet Defendants investigated the transaction and were unaware the transaction was a covered contract under HETPA.  *Id.*  In that affidavit, Plaintiff certified under penalty of perjury that "[t]here are no agreements, understandings or contracts between the parties that the [Plaintiff] will remain in the Mortgaged Premises as a tenant or later obtain tile [sic] or ownership of the Mortgaged Premises, except to the extent that the [Plaintiff] is permitted to remain as a tenant on the Mortgaged Premises for a short term, as is common and customary in the market, but no longer than ninety (90) days in order to facilitate relocation[.]"  Planet MTD at 17 (quoting Aff. of Arm's Length Occupancy ¶ (b), Am. Comp. Ex. 15.).

The Amended Complaint alleges an agent of the Planet Defendants was present at the closing (Am. Compl. at ¶ 28), the Residence was sold for less than fair market value (Am. Compl. at ¶ 174); and the documents were not explained to Plaintiff at the closing (Am. Compl. at ¶ 28).[4]  Although the facts are thin, the Court holds the allegations satisfy the requirement that Plaintiff plead that the Planet Defendants were not encumbrancers for value because they were on notice.  *See Lucia v. Goldman*, 68 A.D.3d 1064, 1066, 893 N.Y.S.2d 90, 92 (App. Div. 2009) (finding an allegation that mortgagee's agent was present at closing where transaction details were discussed was sufficient to allege that mortgagee was chargeable with notice of the alleged fraud and HEPTA violations).

The Wilmington Defendants contend all claims against them must be dismissed because they are good faith purchasers of the mortgage loan.  Wilmington MTD at 8.  However, if the

---

[4] There are two Affidavits of Arm's Length Occupancy, one that references a January contract of sale and another that references a February contract of sale.  Both affidavits were signed by Plaintiff on March 27, 2019.  *See Am. Comp.*, Ex, 15.  Query whether the existence of two contracts should have put the Planet Defendants on notice.

Planet Defendants are not good faith encumbrancers, the Wilmington Defendants may be precluded from enforcing their mortgage. *See Pennymac Corp. v. Dean-Phillips,* 189 A.D.3d 1603, 1604, 139 N.Y.S.3d 335, 336 (App. Div. 2020) (finding mortgagee was not bona fide encumbrancer for value based on failure to make inquiry. Mortgagee's assignee was not encumbrancer for value because "[a]n assignee stands in the shoes of the assignor and takes the assignment subject to any preexisting liabilities.").

Therefore, the Planet Defendants' and the Wilmington Defendants' motions to dismiss the Second Cause of Action is Denied. [5]

### Third Cause of Action
### Quiet Title
### (Against all Defendants and Does 1 through 200, inclusive)

### Tenth Cause of Action
### New York Real Property Actions and Proceedings Law, Article 15[6]

"To maintain a cause of action to quiet title [to real property], a plaintiff must allege actual or constructive possession of the property and the existence of a removable cloud on the property, which is an apparent title to the property, such as in a deed or other instrument, that is actually invalid or inoperative" *Nurse v. Rios*, 160 A.D.3d 888, 888, 76 N.Y.S.3d 70, 71 (App. Div. 2018) (collecting cases); *see Acocella v. Wells Fargo Bank, NA,* 139 A.D.3d 647, 649, 32 N.Y.S.3d 187, 189 (App. Div. 2016).

Under Article 15 of the New York Real Property Actions and Proceedings law, "a person [that] claims an estate or interest in real property … may maintain an action against any other person … to compel the determination of any claim adverse to that of the plaintiff which the

---

[5] Additionally, neither the Planet Defendants nor the Wilmington Defendants address Plaintiff's contention that whether a defendant is a good faith encumbrancer is an affirmative defense and Plaintiff is not required to plead defenses.

[6] The Amended Complaint does not identify the Defendants that are the subject of this cause of action.

defendant makes."  N.Y. Real Prop. Acts. Law § 1501 (McKinney 2023).  Claims under Article

15 are similar but not identical to actions to quiet title.  The differences are that in Article 15

proceedings, "the law permits the defendant, who has been brought in as a claimant, to set up its

own title and demand affirmative relief.  Moreover, the statutory action will not lie unless the

conditions prescribed in the statute have been satisfied."  17 Theodore Z. Wyman, J.D.,

Carmody-Wait § 101:4 (2d ed. 2023).

Plaintiff fails to allege a claim against the Planet Defendants to quiet title or under Article

15 because Plaintiff does not allege the Planet Defendants have a claim or interest in the

Residence that is adverse to the Plaintiff.  The Planet Defendants assigned any interest they had

in the Residence to the Wilmington Defendants.  Mot. to Dismiss Adversary Proceeding, Adv.

Pro., ECF No. 48, Ex. I.  As such, the Planet Defendants' motion to dismiss the Third and Tenth

Causes of Action is granted.  *Jacobs v. Wells Fargo Bank, N.A.*, No. 702246/2019, 2019 N.Y.

Misc. LEXIS 9180, at *4 (Sup. Ct. Oct. 7, 2019) (dismissing action to quiet title against

defendant that assigned its interest in mortgage prior to commencement of action).

Plaintiff adequately alleges claims to quiet title and under Article 15 as to the Wilmington

Defendants.  The Amended Complaint alleges Holding's deed to the Residence was obtained by

fraud.  If true, the Wilmington Defendants' mortgage is void.  *Jiles v. Archer*, 116 A.D.3d 664,

666, 983 N.Y.S.2d 283, 285 (App. Div. 2014); *see also* 43A N.Y. Jur. 2d Deeds § 218 ("A

forged deed is null and void, and conveys nothing, and a purchaser or mortgagee from the

grantee, even for value and without notice of the forgery, will not be protected.").  Further, if the

Planet Defendants are not good faith encumbrancers, the Wilmington Defendants may be

precluded from enforcing their mortgage.  *See Rambaran*, 97 A.D.3d 802, 804, 949 N.Y.S.2d

694, 696 (App. Div. 2012) (denying motion to dismiss complaint setting aside mortgage lien where mortgage assignee failed to establish that assignor was bona fide encumbrancer).

Accordingly, the Court will dismiss the Third and Tenth Causes of Action as to the Planet Defendants but will deny the Wilmington Defendants' motion to dismiss the Third and Tenth Causes of Action.

### Fourth Cause of Action
### Negligent and Intentional Infliction of Emotional Distress
### (Against all Defendants)

To state a claim for IIED under New York law, the complaint must allege: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (citing *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699, 702 (1993)).  The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell*, 81 N.Y.2d at 122, 596 N.Y.S.2d at 353, 612 N.E.2d at 703 (internal quotation marks and citation omitted).

"[A]bsent a 'deliberate and malicious campaign of harassment or intimidation,' … an IIED claim is susceptible to a determination as a matter of law." *Nelson v. Ulster Cnty.*, *New York*, 789 F. Supp. 2d 345, 358 (N.D.N.Y. 2010) (first quoting *Nader v. Gen. Motors Corp.,* 25 N.Y.2d 560, 569, 307 N.Y.S.2d 647, 654, 255 N.E.2d 765, 770 (1970); then citing *Howell*, 81 N.Y.2d at 121, 596 N.Y.S.2d at 350, 612 N.E.2d at 702 (with *Howell* stating "The first element ... serves the ... function of filtering out petty and trivial complaints that do not belong in court ....")).

Plaintiff alleges she *possibly* interacted with agents of the Planet Defendants on one occasion.  Am. Compl. at ¶ 28.  Plaintiff makes no factual allegations concerning the

24

Wilmington Defendants' conduct toward Plaintiff.  Therefore, Plaintiff's cause of action for IIED against the Planet Defendants and the Wilmington Defendants is dismissed for failure to allege extreme or outrageous conduct.

A cause of action for negligent infliction of emotional distress "generally requires the plaintiff to show a breach of a duty owed to him or her which unreasonably endangered his or her physical safety, or caused him or her to fear for his or her own safety." *Doe v. Langer*, 206 A.D.3d 1325, 1331, 171 N.Y.S.3d 594, 600 (App. Div. 2022) (quoting *A.M.P. v. Benjamin*, 201 A.D.3d 50, 57, 158 N.Y.S.3d 337, 342 (App. Div. 2021)).  Plaintiff does not allege that either the Planet Defendants or the Wilmington Defendants owed Plaintiff a duty or that the Planet Defendants or the Wilmington Defendants endangered Plaintiff's physical safety or caused her to fear for her safety.

Accordingly, the Planet Defendant's and the WFS Defendant's motions to dismiss the Fourth Cause of Action are Granted.

### Fifth Cause of Action
### For Violation of New York GBL § 349
### (Against all Defendants)

To establish a claim under New York General Business Law § 349, the plaintiff must show: "(1) that the defendant's conduct is 'consumer-oriented'; (2) that the defendant is engaged in a 'deceptive act or practice'; and (3) that the plaintiff was injured by this practice." *Wilson v. Nw. Mut. Ins. Co*., 625 F.3d 54, 64 (2d Cir. 2010).  "The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising." *Genesco Entm't v. Koch,* 593 F. Supp. 743, 751 (S.D.N.Y. 1984).

The Amended Complaint fails to make any factual allegations concerning any of the elements of this claim regarding the Planet Defendants or the Wilmington Defendants.

Accordingly, the Planet Defendants' and Wilmington Defendants' motions to dismiss the Fifth

Cause of Action are granted.

### Seventh Cause of Action
### For Fraud
### (Against All Defendants)

To plead a cause of action for fraud, a plaintiff must allege: (1) a misrepresentation or

material omission of fact known to be false by defendant; (2) made for the purpose of inducing

the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation

or material omission; and (4) injury. *See Spector v. Wendy*, 63 A.D.3d 820, 821–22, 881

N.Y.S.2d 465, 467 (App. Div. 2009) (collecting cases).

Under Fed. R. Civ. P. 9(b), fraud must be pled with particularity. *See Eternity Global*

*Master Fund Ltd. v. Morgan Guar. Trust Co*., 375 F.3d 168, 187 (2d Cir. 2004). To plead fraud

with particularity, a plaintiff must allege with specificity facts which give rise to the strong

inference that defendants intended to defraud and knew the representations to be false when

made. *GSGSB, Inc. v. New York Yankees*, 862 F. Supp. 1160, 1177 (S.D.N.Y. 1994) (citations

omitted). Rule 9(b) applies to allegations of fraudulent omission as well as fraudulent

misrepresentation. *See In re Delphi Corp*., No. 05-44481(RDD), 2008 WL 5146952, at *1, *3

(Bankr. S.D.N.Y. Nov. 19, 2008); *In re Monahan Ford Corp. of Flushing*, 340 B.R. 1, 21 (Bankr.

E.D.N.Y. 2006). To meet the particularity requirement respecting a misrepresentation, a

pleading should set forth:  (1) precisely what statements or omissions were made and the

documents or oral representations those statements were made through; (2) the time, place, and

person responsible for making each statement; (3) the content of the statements and how those

statements misled plaintiffs; and (4) what benefit defendants obtained as a result of the fraud.

*Manela v. Gottlieb*, 784 F. Supp. 84, 87 (S.D.N.Y. 1992).

To plead fraudulent omission with particularity, "the complaint must specify: 1) what the omissions were, 2) the person responsible for the failure to disclose, 3) the context of the omissions and the manner in which they misled the plaintiff, and 4) what defendant obtained through the fraud." *Delphi Corp*., 2008 WL 5146952, at *3 (citing *T.L.O. v. Monsanto Company*, 522 F. Supp. 2d 524, 533 (S.D.N.Y. 2007)).  An omission supports a cause of action for fraud only if the non-disclosing party had a duty to disclose.  *Id.*  (internal citations omitted).  The duty to disclose arises where the parties are in a fiduciary relationship.  *See id.*

Plaintiff fails to state a claim for fraud under the heightened pleading requirements of Fed. R. Civ. P. 9(b).  Plaintiff alleges the Planet Defendants were present at the closing, they did not provide Plaintiff with paperwork, and failed to disclose they were providing the funding to Holdings.  Am. Compl. ¶ 28.  Those allegations are insufficient to plead a claim for fraud because: (a) there is no allegation of a misrepresentation; and (b) although there is an allegation of an omission, there is no allegation that the Planet Defendants owed a duty of disclosure to the Plaintiff.  Plaintiff makes no allegations the Wilmington Defendants made a misrepresentation or a fraudulent omission.

Accordingly, the Seventh Cause of Action is dismissed as to the Planet Defendants and the Wilmington Defendants.

**Ninth Cause of Action**
**For Unconscionability**
**(Against All Defendants)**

The Ninth Cause of Action appears to seek a determination that the sale-leaseback agreements between Plaintiff and Holdings and the financing agreements between Holdings and Planet Management are unenforceable because they are unconscionable.  Am. Compl. at ¶¶ 117-118.

Generally, one who is not a party to a contract does not have standing to allege unconscionability, contract term claims or bargaining condition claims of such contract. *Am. Home Assur. Co. v. Levy*, 179 Misc.2d 773, 782, 686 N.Y.S.2d 639, 645 (Sup. Ct. 1999). Non-parties to a contract may assert their rights as a third-party beneficiary if they can establish "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *State of Cal. Pub. Employees' Ret. Sys. v. Shearman & Sterling,* 95 N.Y.2d 427, 434–35, 741 N.E.2d 101, 104 (2000) (citations omitted).

The sale-leaseback agreements are between Plaintiff and Holdings. Neither the Planet Defendants nor the Wilmington Defendants are parties to the sale-leaseback agreements. Therefore, Plaintiff has no claims against the Planet Defendants or the Wilmington Defendants respecting the sale-leaseback documents.

The Plaintiff is not a party to the financing agreements. Plaintiff does not allege facts suggesting she is a third-party beneficiary to the financing documents. Accordingly, the Planet Defendants' and Wilmington Defendants' motions to dismiss the Ninth Cause of Action are granted.

**Eleventh Cause of Action**
**(Violation of RICO, 18 U.S.C. § 1962(c))**
**(Against All Defendants)**

**Twelfth Cause of Action**
**(Conspiracy to Violate RICO, 18 U.S.C. § 1962(c))**
**(Against All Defendants)**

Section 1964(c) of chapter 96, title 18 of the United States Code (the "RICO Statute") creates a private right of action for violations of the RICO Statute and states, in relevant part:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C.A. § 1964. To state a civil RICO claim under 18 U.S.C. § 1964, a complaint must plead (i) a violation of section 1962 of the RICO Statute; (ii) an injury to business or property; and (iii) that the injury was caused by the violation of section 1962. *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (citations omitted); *see NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 196 (2d Cir. 2019). [7]

> Respecting the first element, section 1962(c) of the RICO Statute states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962. To adequately plead a cause of action under the RICO Statute, Plaintiff must allege the defendant directly or indirectly participated in or conducted an enterprise. *See Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124–25 (2d Cir. 2018). Although participation may be indirect, "an unwitting participant in a RICO enterprise is not within the ambit of the statute." *First City Nat'l Bank and Trust Co. v. Federal Deposit Ins. Co.*, 730 F. Supp. 501, 509 (E.D.N.Y. 1990) (collecting cases) (holding that for RICO purposes, the court could not impute knowledge upon defendants). "Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable as a result." *Wood v. Inc. Vill. of Patchogue of New York*,

---

[7] The reader is referred to the Mester Decision for this Court's discussion of the other pleading requirements and the sufficiency of the Amended Complaint to plead Civil RICO and RICO conspiracy claims against the other Defendants.

311 F. Supp. 2d 344, 356 (E.D.N.Y. 2004) (quoting *Univ. of Md. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993)).

Regarding conspiracy, section 1962(d) of the RICO Statute states "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).  To allege a cause of action for conspiracy to violate the RICO Statute, plaintiff must plead that each defendant agreed to commit at least two predicate acts of racketeering in furtherance of an endeavor which, if completed, would satisfy all the elements of a substantive RICO violation.  *See Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244–45 (2d Cir.1999).  "Conclusory allegations or bare statements . . . will not withstand a motion to dismiss, particularly where the alleged purpose of the conspiracy is to defraud."  *First City Nat'l Bank and Trust Co.*, 730 F. Supp. at 509 (first citing *United States. v. Bonanno Organized Crime Fam.*, 683 F. Supp. 1411, 1439 (E.D.N.Y. 1988); then citing *Grunwald v. Borndreund*, 668 F. Supp. 128, 133 (E.D.N.Y. 1987)).

The Amended Complaint alleges the Planet Defendants aided and abetted the Original Defendants in achieving the unlawful results complained of through their provision of funds. Am. Compl. ¶ 126.  Further, the Amended Complaint alleges the Planet Defendants and the Wilmington Defendants assisted the other Defendants in achieving the unlawful results as well as creating a lien on the Residence.  Am. Compl. ¶ 148(h).

The allegations are insufficient to plead a civil RICO claim or a RICO conspiracy claim because they fail to allege anything except that the Planet Defendants lent money to Holdings.

Plaintiff argues the Court should not dismiss the RICO claim and permit Plaintiff to take discovery because the Planet Defendants have exclusive knowledge of the facts that would support a RICO claim.  Affirmation in Opp. to Mot. Dismiss, ECF 55 ¶ 15.  In limited

circumstances, a court should not dismiss a RICO claim notwithstanding that the claim is not alleged with required particularity.  For example, in *New England Data Service, Inc. v. Becher*, cited by Plaintiff, the First Circuit Court of Appeals permitted plaintiff to take discovery and held that Rule 9(b) does not require plaintiff to plead the "details of just when and where the mail or wires were used" in RICO mail and wire fraud cases.  *New England Data Servs., Inc. v. Becher*, 928, F.2d 286, 290 (1st Cir. 1987).  However, in that case, "[t]he plaintiff clearly set out a general scheme, which very plausibly was meant to defraud the plaintiff."  *Id*. at 291.  *Accord Berk v. Tradewell, Inc.*, No. 01 Civ. 10068(MBM), 2003 WL 21664679, *13 (S.D.N.Y. 2003) (relaxing Rule 9(b) pleading standards where plaintiffs pleaded a complex fraud, provided numerous details as to how it worked, and defendant was corporate insider in possession of information).  This case is distinguishable from *Becher*, *Berk*, and the many other cases cited by Plaintiff.  Here, Plaintiff fails to make any factual allegations concerning the Planet Defendants or the Wilmington Defendants respecting the RICO claims or the RICO conspiracy claims.  Further, *United States v. International Longshoremen's Association*, cited by Plaintiff, declined to adopt the more liberal pleading standards advocated Plaintiff.  *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 480–81 (E.D.N.Y. 2007) ("[T]his Court would be reluctant in any case to adopt a reading of Rule 9(b) that appears inconsistent with the plain text of that rule and for which no Second Circuit authority can be cited.").

Accordingly, Plaintiff's Eleventh and Twelfth Causes of Action are dismissed as to the Planet Defendants and the Wilmington Defendants.

### Thirteenth Cause of Action
### (Unjust Enrichment)
### (Against All Defendants)

To plead a claim for unjust enrichment, a plaintiff must allege: (1) the defendant was enriched, (2) at the plaintiff's expense, (3) and it would be inequitable for the defendant to

remain so enriched. *Columbia Mem'l Hosp. v. Hinds*, 38 N.Y.3d 253, 275, 192 N.E.3d 1128, 1137 (2022). Courts also may consider other allegations, such as whether "a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent." *Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 421, 285 N.E.2d 695, 698 (1972).

Plaintiff alleges that the benefit conferred upon the Planet Defendants is the lien against the Residence and the funds received when the lien was transferred to the Wilmington Defendants. Affirmation Opp., Adv. Pro., ECF No. 55, ¶ 26. The Planet Defendants received a lien against the Residence in consideration of Holdings' obligations (not Plaintiff's obligations) to repay the Planet Defendants. Further, the Planet Defendants advanced funds that satisfied Plaintiff's debt to Deutsche Bank, which held the mortgage on the Residence. Am. Compl. at 2. Additionally, the Wilmington Defendants, not the Plaintiff, paid the Planet Defendants to transfer the lien. Therefore, Plaintiff fails to state a claim against the Planet Defendants for unjust enrichment, because she fails to allege the benefit conferred on the Planet Defendants was at Plaintiff's expense.

Plaintiff fails to make any factual allegations, as opposed to conclusory allegations, that the Wilmington Defendants were enriched at Plaintiff's expense or that it would be inequitable for the Wilmington Defendants to retain its mortgage lien on the Residence.

Accordingly, the Planet Defendants' and the Wilmington Defendants' motions to dismiss the Thirteenth Cause of Action are granted.

**Fourteenth Cause of Action**
**(Constructive Trust)**
**(Against All Defendants)**

A constructive trust is an equitable remedy that seeks to rectify situations in which one acquires property "in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest." *Galasso, Langione & Botter, LLP v. Galasso*, 176 A.D.3d 1176, 1183, 113 N.Y.S.3d 110, 119 (App. Div. 2019). Essentially, a constructive trust is used to right a wrong, but not to "enforce intent." *See Saulia v. Saulia*, 31 A.D.2d 640, 640, 295 N.Y.S.2d 980, 980 (App. Div. 1968). To establish a cause of action for constructive trust, a plaintiff must plead: "(1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment flowing from the breach of the promise." *Sanxhaku v. Margetis*, 151 A.D.3d 778, 779, 56 N.Y.S.3d 238, 240 (App. Div. 2017).

Plaintiff fails to allege the elements of constructive trust. Plaintiff acknowledges that there is no fiduciary or confidential relationship between Plaintiff, on the one hand, and the Planet Defendants or Wilmington Defendants on the other hand. *See* Affirmation Opp'n, Adv. Pro., ECF No. 55 ¶ 25. Further, the Amended Complaint does not allege a promise made by the Planet Defendants or the Wilmington Defendants to Plaintiff. Moreover, as set forth above, Plaintiff failed to state a claim for unjust enrichment.

The Plaintiff's Fourteenth Cause of Action is dismissed as to the Planet Defendants and the Wilmington Defendants.

**Fifteenth Cause of Action**
**(Fraudulent Conveyance, Section 273 of NY Debtor Creditor Law)**
**(Against All Defendants)**

**Fifteenth *[sic]* Cause of Action**
**(Fraudulent Conveyance, Section 275 of NY Debtor Creditor Law)**
**(Against All Defendants)**

**Sixteenth Cause of Action**
**(Recovery of Fraudulent Transfer under 11 U.S.C. § 550)**
**(Against All Defendants)**

**Seventeenth Cause of Action**
**Avoidance of and Recovery of Fraudulent Transfers from Planet Enterprise**
**(11 U.S.C. §§ 544 and 550)**

By the Fifteenth Causes of Action, the Plaintiff seeks to avoid and recover the Plaintiff's

transfer of the Residence to Holdings under New York Debtor and Creditor law sections 273 and

275.  Am. Compl. ¶¶ 168-188.[8]

UFCA section 273 states "[e]very conveyance made and every obligation incurred by a

person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to

his actual intent if the conveyance is made or the obligation is incurred without a fair

consideration."  N.Y. Debt. & Cred. Law § 273 (McKinney 2020).  UFCA section 275 states

"[e]very conveyance made … without fair consideration when the person making the

conveyance … intends or believes that he will incur debts beyond his ability to pay as they

mature, is fraudulent as to both present and future creditors."  N.Y. Debt. & Cred. Law § 275

(McKinney 2020).

By the Sixteenth Cause of Action, Plaintiff seeks judgment recovering the "[t]ransfer, or

the value thereof, pursuant to section 550 of the Bankruptcy Code and a judgment against

---

[8] In December 2019, New York's Fraudulent Conveyance Act (N.Y. Debt & Cred. Law) (the "UFCA") was repealed and replaced with the Uniform Voidable Transactions Act (the "UVTA").  The UVTA became effective on April 4, 2020 but does not apply to transfers occurring before the UVTA's effective date. N.Y. Debt. & Cred. Law § Ch. 12, art. 10, Refs Annos (McKinney 2020).  Accordingly, the Court analyzes these causes of action under the UFCA.

[Holdings] in an amount as yet undetermined, but in no event believed to be less than $550,000." Am. Compl. ¶ 189. The Seventeenth Cause of Action is asserted against the Planet Defendants pursuant to Bankruptcy Code sections 544 and 550.

Bankruptcy Code section 544 permits a "trustee" to stand in the shoes of a prepetition creditor to exercise the rights of that creditor, including standing to bring a state law fraudulent conveyance action. 11 U.S.C. § 544(a)(1), (a)(2). Bankruptcy Code section 550(a) permits the trustee to recover the avoided transfer from the initial transferee or any immediate or mediate transferee of the initial transferee. 11 U.S.C. § 550(a). A trustee is not required to avoid a transfer from the initial transferee before seeking recovery from subsequent transferees under § 550(a)(2). *Official Comm. Of Unsecured Creditors v. JPMorgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 394 B.R. 721, 743 (Bankr. S.D.N.Y. 2008). The trustee may sue the subsequent transferee in the first instance, and need prove only that the initial transfer was voidable.

In this case, Plaintiffs alleges she transferred the Residence to Holdings. Holdings conveyed a mortgage on the Residence to the Planet Defendants and the Planet Defendants assigned the mortgage to the Wilmington Defendants. Am. Compl. ¶¶ 11, 12, and 52. Therefore, Plaintiff seeks to use the powers conveyed to a "trustee" under Bankruptcy Code section 544 to avoid Plaintiff's transfer of the Residence. Under Bankruptcy Code section 550(a)(1), the Plaintiff seeks to recover the Residence from Holdings (i.e., the initial transferee). Under Bankruptcy Code section 550(a)(2), the Plaintiff seeks to recover the mortgage conveyed by Holdings to the Planet Defendants (i.e., the immediate transferee of the initial transferee).

The Planet Defendants contend these causes of action must be dismissed because Bankruptcy Code section 544 vests the chapter 13 trustee, not the chapter 13 debtor, with

standing to bring state law avoidance claims. Plaintiff has two responses. First, Bankruptcy

Code section 522(h) authorizes a chapter 13 debtor to bring actions under Bankruptcy Code

section 544. Affirmation Opp'n, Adv. Pro., ECF No. 55 ¶ 27. Second, that avoidance actions

are property of the estate and Bankruptcy Code section 1303 vests the chapter 13 debtor with the

power to assert actions under 544. *Id*. at ¶ 28.

    <u>Fraudulent Conveyance Claims Under Bankruptcy Code Section 522(h)</u>

    Bankruptcy Code sections 522(g) and (h) state:

> (g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if--

> (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

> (B) the debtor did not conceal such property; or

> (2) the debtor could have avoided such transfer under subsection (f)(1)(B) of this section.

> (h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if--

> (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

> (2) the trustee does not attempt to avoid such transfer.

11 U.S.C.A. § 522. Under those sections:

> [A] debtor may avoid a transfer if 1) it is avoidable by the trustee under sections 544 or 548; 2) the trustee does not attempt to avoid the transfer; 3) the debtor could exempt the property if the trustee recovered it under section 550; 4) the transfer was involuntary; and 5) the debtor did not conceal the property.

*Davis v. Suderov (In re Davis)*, 169 B.R. 285, 290 (E.D.N.Y. 1994). The Amended Complaint

does not reference Bankruptcy Code section 522(h). The Amended Complaint, however, does

make factual allegations supporting most of the elements of a Bankruptcy Code section 522(h) claim.

> Would the transfer be voidable by a trustee
> under Bankruptcy Code sections 544 or 548?

As stated by Judge Louis Scarcella in *In re APCO Merch. Servs., Inc.*:

> The power given to a trustee under § 544(b) to avoid a transfer or obligation is derivative, that is, there must be an actual existing creditor holding an allowable unsecured claim who would have had that right outside of bankruptcy. "In order for a trustee to maintain an action for avoidance of a fraudulent conveyance, the trustee must show that at least one of the present unsecured creditors of the estate holds an allowable claim, against whom the transfer or obligation was invalid under applicable state or federal law." *quoting Young v. Paramount Commc'ns Inc. (In re Wingspread Corp.)*, 178 B.R. 938, 945 (Bankr. S.D.N.Y. 1995). Although defendant did not raise the issue of plaintiff's standing to bring this action, "[t]he Court is obligated to raise an issue implicating standing *sua sponte*, even if the parties fail to raise it, because it implicates the Court's subject matter jurisdiction.

*Mendelsohn v. Kovalchuj (In re APCO Merch. Servs., Inc.*), 585 B.R. 306, 314 (Bankr. E.D.N.Y. 2018). A plaintiff is not required to identify in the complaint a specific creditor holding an allowable unsecured claim at the time of the transfer. *Picard v. Estate of Stanley Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 445 B.R. 206, 234 (Bankr. S.D.N.Y. 2011); *Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.)*, 398 B.R. 761, 780 (Bankr. S.D.N.Y. 2008). A plaintiff, however, "must at least provide facts from which it can be plausibly concluded that there is at least one legitimate creditor of the estate." *In re Refco, Inc. Sec. Litig.*, No. 07 MDL 1902 GEL, 2009 WL 7242548, at *10 (S.D.N.Y. Nov. 13, 2009) (report of special master), *report and recommendation adopted sub nom. In re Refco Sec. Litig.*, No. 07 MDL 1902 (JSR), 2010 WL 5129072 (S.D.N.Y. Jan. 12, 2010); *see also In re RCM Glob. Long Term Cap. Appreciation Fund, Ltd.*, 200 B.R. 514, 524 (Bankr. S.D.N.Y. 1996) (finding that plaintiff could survive a motion to dismiss by pleading, generally, the existence of a triggering creditor and may provide proof of such creditor's existence later in the case).

Here, Plaintiff has not alleged the existence of a "golden creditor" nor has Plaintiff alleged any facts from which this Court may infer that such creditor exists.

The Amended Complaint alleges the remaining elements of a fraudulent conveyance under N.Y. Debt & Cred. Law 273 and 275 because it alleges the Plaintiff transferred the Residence to Holdings for less than fair consideration (Am. Compl. at ¶ 174); the Plaintiff was insolvent at the time of the transfer (Am. Compl. at ¶ 176); and, the Plaintiff believed she would incur debts beyond her ability to pay (Am. Compl. at ¶ 181). *See Sharp Int'l Corp. v. State Street Bank and Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 53–54 (2d Cir. 2005); *Liberty Mut. Ins. Co. v. Horizon Bus Co.*, No. CV 10-0449(JS)(WDW), 2011 WL 1131098, at *5 (E.D.N.Y. Feb. 22, 2011).

That the Amended Complaint does not allege the Plaintiff transferred any money or property to any of the Planet Defendants is not fatal to her claim. Holdings conveyed a mortgage to one of the Planet Defendants, which is a subsequent transfer of Plaintiff's interest in property. If Plaintiff's transfer to Holdings is avoided as a constructive fraudulent conveyance under Bankruptcy Code section 544, then, subject to certain defenses, the Plaintiff may recover the mortgage that Holdings conveyed to the Planet Defendants under Bankruptcy Code section 550(a)(2).

<u>Did the chapter 13 trustee attempt to avoid the transfer</u>?

The Plaintiff does not allege in the Amended Complaint that the chapter 13 trustee has not commenced an action to avoid the transfer of the Residence. The Court may take judicial notice of the docket in Plaintiff's chapter 13. The docket reflects that the chapter 13 trustee has not commenced an action to avoid the transfer of the Residence, which is some evidence the trustee has not commenced any avoidance actions.

> Could Plaintiff exempt the Residence if
> recovered under Bankruptcy Code section 550?

Under Bankruptcy Code section 522(b)(2) and NY CPLR 5206, a debtor may exempt a dwelling "not exceeding one hundred fifty thousand dollars, owned and occupied as a principal residence."  N.Y. C.P.L.R. § 5206 (McKinney 2019).

The Amended Complaint alleges the Residence was owned and occupied by the Plaintiff, and continues to be occupied by the Plaintiff.  Am. Compl. ¶ 20.  Therefore, the Plaintiff could exempt the equity in the Residence if the Residence were to be recovered by a trustee; albeit, it would be a question of fact as to whether there was equity in the Residence as of the Petition Date.

> Was the transfer involuntary?

"Courts recognize that an involuntary transfer of property may occur under circumstances that, although not beyond the debtor's control, involve fraud, material misrepresentation or coercion."  *Davis*, 169 B.R. at 296.  *See In re Reaves,* 8 B.R. 177, 181 (Bankr. D.S.D. 1981) (holding that a transfer is involuntary if a "creditor has concealed or failed to inform a debtor of the essential facts necessary for the debtor to make an intelligent decision on whether to transfer the property to the creditor. This is especially true where a debtor can show that she would not have made the transfer had she been informed of all the essential facts.").  *See also In re Corwin,* 135 B.R. 922, 924 (Bankr. S.D.N.Y. 1992) ("[A] transfer would not be voluntary if the Debtors either (1) were subjected to an outside influence which overcame their free will or (2) lacked knowledge of all facts essential to their decision to grant the transfer."); *In re Hoffman,* 96 B.R. 46, 47–48 (Bankr. W.D.Pa. 1988) (finding a transfer was involuntary where judicial lien holder would not permit the transfer with clean title without receipt of sale proceeds); *In re Seidel,* 27 B.R. 347, 352 (Bankr. E.D.Pa. 1983) ("[A] voluntary transfer of property does not occur where a

debtor does not have knowledge of all of the essential facts pertaining to the transfer, the creditor to whom the transfer is made fails to inform the debtor of any essential facts within the creditor's knowledge, and the debtor would not have made the transfer had he been aware of all of the essential facts.").

In *Davis*, a bankruptcy court held that a sale/leaseback was involuntary for purposes of Bankruptcy Code section 522(g) because, among other things, the homeowner:  stated she did not want to sell her house; transferred the house based on purchaser's misrepresentations that the homeowner would get the house back after the closing; was under the erroneous impression the existing mortgagee required the house be sold to transferee as a formality; and, was under pressure due to a threatened foreclosure.  *Davis*, 169 B.R. at 296, 297.

The Amended Complaint alleges:

- Bonaparte told Plaintiff the Residence was to be sold and Bonaparte could save it. Am. Compl. at ¶ 24.

- Bonaparte suggested the Residence be transferred to Bonaparte's friend or a company and Bonaparte would have it transferred back to Plaintiff once the Residence was saved from foreclosure.  *Id.*

- Bonaparte introduced Plaintiff to Mester.  Am. Compl. at ¶ 24.  Mester was retained by both Bonaparte and Plaintiff.  Am. Compl., Ex C.  Mester was paid a retainer by Bonaparte.  Am. Compl. at ¶ 29.  Mester was to receive additional compensation if the purchaser refinanced the Residence.  Am. Compl. at Ex. C.

- At the closing, Mester told Plaintiff where to sign but did not explain the documents.  Am. Compl. at ¶ 28.

- Mester pressured Plaintiff by, among other things, having her sign the documents under the threat of losing her home.  Am. Compl. at ¶ 30.

- After the closing, Woodburn promised to convey the Residence back to Plaintiff. Am. Compl. at ¶ 28.

Those allegations sufficiently allege that Plaintiff's conveyance of the Residence to Holdings was involuntary because they tend to show Plaintiff did not have knowledge of all essential facts concerning the transfer, was under pressure due to the impending foreclosure, and was subject to an outside influence.

<u>Did Plaintiff conceal the Residence?</u>

The Court may take judicial notice that Plaintiff's alleged interests in the Residence and her transfer of the Residence are disclosed in Plaintiff's Schedules.  Bankruptcy Case, Schedule A/B, ECF No. 9 at 4; Bankruptcy Case, Schedule E/F, ECF No. 9 at 13.

<u>Conclusion</u>

The Amended Complaint does not reference Bankruptcy Code section 522 or allege the existence of a "golden creditor."  However, Plaintiff makes factual allegations that otherwise plead a cause of action under Bankruptcy Code section 522(h).  Therefore, the Court will grant Plaintiff leave to amend the Amended Complaint to assert a cause of action under Bankruptcy Code section 522(h).

<u>Plaintiff's Standing to Bring Fraudulent Conveyance Claims Under Bankruptcy Code Section 1303</u>

Most courts hold a chapter 13 debtor does not have standing to use Bankruptcy Code section 544's avoiding powers.  *See e.g., Knapper v. Bankers Trust Co. (In re Knapper)*, 407 F.3d 573, 583 (3d Cir, 2005); *Hansen v. Green Tree Servicing LLC (In re Hansen)*, 332 B.R. 8, 16 (10th Cir. BAP 2005); *In re Dobbs*, 597 B.R. 74, 80, (Bankr.

E.D.N.Y. 2019); *Pruitt v. Gramatan Investors Corp. (In re Pruitt)*, 72 B.R. 436, 439

(Bankr. E.D.N.Y. 1987); *In re Binghi*, 299 B.R. 300, 306 (Bankr. S.D.N.Y. 2003)

(collecting cases).

Generally, those Courts conclude a chapter 13 debtor may not use Bankruptcy

Code section 544 based on the United States Supreme Court's decision in *Hartford*

*Underwriters Ins. Co. v. Union Planters Bank, N.A.* In that case, an administrative

expense creditor moved under Bankruptcy Code section 506(c) to surcharge a secured

creditors' collateral for costs associated with administering a chapter 11 case. *Hartford*

*Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 4 & 5, 120 S. Ct. 1942,

1946, 147 L. Ed. 2d 1, 6 (2000). Bankruptcy Code section 506(c) states "[t]he trustee

may recover from property securing an allowed secured claim the reasonable, necessary

costs and expenses of preserving, or disposing of, such property to the extent of any

benefit to the holder of such claim." 11 U.S.C. § 506(c). The Supreme Court held in

*Hartford Underwriters* that the creditor could not seek to surcharge collateral and the

trustee had the exclusive authority to seek recoveries under 506(c) because the statute

plainly states it is the trustee who is empowered to seek this relief. *Hartford*

*Underwriters Ins. Co.*, 530 U.S. at 6, 120 S. Ct. at 1947, 147 L. Ed. 2d. at 7. Like 506(c),

Like Bankruptcy Code section 506(c), Bankruptcy Code section 544 also plainly states

that the trustee may enforce the rights granted in that section. Therefore, based on the

Supreme Court's reasoning in *Hartford Underwriters*, most courts interpret Bankruptcy

Code section 544 to grant the chapter 13 trustee the exclusive right to bring avoidance

actions.

As set forth above, Bankruptcy Code section 1303 vests the chapter 13 debtor with the powers of a trustee to use property of the estate to the extent set forth in Bankruptcy Code section 363(b).  If a trustee's avoidance powers under Bankruptcy Code section 544 are property of the estate, it follows that Bankruptcy Code section 1303 would authorize a chapter 13 debtor to bring actions under Bankruptcy Code section 544.  It does not appear that any cases holding that chapter 13 debtors may not use Bankruptcy Code section 544 discuss whether fraudulent conveyance actions are property of the estate.

Many Circuit Courts of Appeal have held that causes of action that may be brought under Bankruptcy Code section 544(b) constitute property of the estate.  *See Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 258–61 (5th Cir. 2010); *Morley v. Ontos, Inc. (In re Ontos, Inc.)*, 478 F.3d 427, 431 (1st Cir. 2007) ("The Bankruptcy Code broadly defines the property of the estate to be comprised of all 'legal or equitable interests of the debtor in property as of the commencement of the case.' It is well established that a claim for fraudulent conveyance is included within this type of property.") (citation omitted); *Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani)*, 325 B.R. 282, 287 (B.A.P. 9th Cir. 2005) ("Causes of action owned by the trustee are intangible items of property of the estate that may be sold."); *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774, 781 (9th Cir. 1999)); *Briggs v. Kent (In re Prof. Inv. Props. of Am.)*, 955 F.2d 623, 626 (9th Cir. 1992), *cert. denied*, 506 U.S. 818 (1992); 5 Richard Levin & Henry J. Sommer eds, Collier on Bankruptcy ¶ 541.12 (16th ed. 2023) (avoiding power causes of action (at least those asserted under the strong-arm powers of section 544) are assets of the estate); *see also Artesanias Hacienda Real S.A. de C.V. v. N. Mill Cap., LLC (In re Wilton Armetale, Inc.)*, 968 F.3d 273, 285 (3d Cir. 2020) (clarifying that the Third Circuit Court of Appeals has not yet ruled on whether avoidance actions are property that

43

can be transferred by a trustee); *Nat'l Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 708–09

(7th Cir. 1994) (stating, in dicta, that the right to "recoup a fraudulent conveyance, which outside

of bankruptcy may be invoked by a creditor, is property of the estate."); *Knoll, Inc. v. Zelinsky*,

No. 05-CV-1499 (GLS/DRH), 2008 WL 11504632, at *6 (N.D.N.Y. Apr. 8, 2008) (interpreting

the Second Circuit Court of Appeal's decision in *United States v. Sabbeth*, 262 F.3d 207 (2d Cir.

2001) as indication that avoidance actions are property of the estate that can be assigned).  *But*

*see Rubera v. Rubera (In re Rubera)*, 289 B.R. 520, 523 (Bankr. D. Conn. 2003) ("[A]n estate's

fraudulent conveyance cause of action does not qualify as property of the estate, but is subject to

the automatic stay pursuant to Bankruptcy Code § 362(a)(1)."); *In re Morning Treat Coffee Co.,*

*Inc.*, 77 B.R. 62, 65 (Bankr. M.D. La. 1987) ("[T]he right to avoid a transfer under § 544(b) (as

distinguished from the property recovered upon exercise of that power) is not property of the

estate.").

The Second Circuit Court of Appeals acknowledged the debate as to whether fraudulent

conveyance claims are property of the debtor's estate stating:

> Whether, and to what degree, fraudulent conveyance claims become the property of
> a bankrupt estate was, at the time of Section 546(e)'s enactment, and now, anything
> but clear.  The principal Supreme Court precedent held that such claims are the
> property of the debtor's estate. *Trimble v. Woodhead*, 102 U.S. 647, 649, 26 L. Ed.
> 290 (1880).  It is a very old decision but has not been expressly overruled.
> Subsequent court of appeals decisions are bountiful in contradictory statements
> regarding the property issue.

*In re Trib. Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 88–89 (2d Cir. 2019).  The Second Circuit

Court of Appeals declined to rule on the issue.  *Id.*  This Court will not rule whether avoidance

actions are property of the estate on this record.  As set forth above, the state law causes of action

may not be viable unless Plaintiff can allege the existence of a creditor that has standing to assert

fraudulent conveyance claims.[9]  Accordingly, the Court will grant Plaintiff leave to amend the causes of action alleged under Bankruptcy Code sections 544 and 550 and the UFCA and address whether Plaintiff has standing to assert avoidance claims only if viable claims are stated and if appropriate.

Therefore, Plaintiff is granted leave to amend the Complaint to replead causes of action to avoid and recover the Residence pursuant to Bankruptcy Code sections 522(h), 544, and 550.

### Eighteenth Cause of Action
### (Disallowance of Claims)[10]

The Eighteenth Cause of Action seeks to disallow claims filed by any Defendant until all voidable transfers are returned to the bankruptcy estate under Bankruptcy Code section 502(h). The Court takes judicial notice that neither the Planet Defendants nor the Wilmington Defendants have filed a proof of claim in the Bankruptcy Case and the last date to file claims has passed.  *See* Bankruptcy Case Docket, Nov. 15, 2021 (bar date to file proofs of claim was January 24, 2022).

Therefore, the Planet Defendants' and the Wilmington Defendants' motions to dismiss the Plaintiff's Eighteenth Cause of Action are granted.

### Seventeenth *[sic]* Cause of Action
### Preliminary and Permanent Injunction
### (Against All Defendants)

This cause of action seeks to enjoin the Defendants from selling the Residence.

A party seeking a preliminary injunction must ordinarily establish (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation,

---

[9] Considering that Plaintiff's chapter 13 case has been pending for over a year and the small number of proofs of claim filed, Plaintiff should be able to identify the golden creditor in any amended complaint.

[10] The Amended Complaint does not identify the Defendants that are subject to the Eighteenth Cause of action.

plus a balance of the hardships tipping decidedly in favor of the moving party"; and (3) that a preliminary injunction is in the public interest."

*New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (internal quotations omitted).

A permanent injunction may issue only when the movant demonstrates:

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641, 646 (2006).

Plaintiff has failed to plead she is entitled to a preliminary injunction or a permanent injunction because she has failed to plead irreparable harm.  The automatic stay protects Plaintiff from attempts by the Planet Defendants or the Wilmington Defendants to foreclose on the residence.  Although Planet Servicing and the Wilmington Defendants have moved for relief from stay, the motion has been held in abeyance pending resolution of this adversary proceeding.

Therefore, the Planet Defendants' and the Wilmington Defendants' motions to dismiss this Seventeenth Cause of Action are granted.

## CONCLUSION

For the reasons stated herein, the following Causes of Action are dismissed against the Planet Defendants:  Third Cause of Action, Fourth Cause of Action, Fifth Cause of Action, Seventh Cause of Action, Ninth Cause of Action, Tenth Cause of Action, Eleventh Cause of Action, Twelfth Cause of Action, Thirteenth Cause of Action, Fourteenth Cause of Action, Fifteenth Cause of Action, Fifteenth Cause of Action (other), Sixteenth Cause of Action,

Seventeenth Cause of Action, Seventeenth Cause of Action (other), and Eighteenth Cause of Action.

For the reasons stated herein, the following Causes of Action are dismissed against the Wilmington Defendants:  Fourth Cause of Action, Fifth Cause of Action, Seventh Cause of Action, Ninth Cause of Action, Eleventh Cause of Action, Twelfth Cause of Action, Thirteenth Cause of Action, Fourteenth Cause of Action, Fifteenth Cause of Action, Fifteenth Cause of Action (other), Sixteenth Cause of Action, Seventeenth Cause of Action, Seventeenth Cause of Action (other), and Eighteenth Cause of Action.

Plaintiff is granted leave to file an amended complaint solely to assert claims to avoid and recover the Residence and the mortgage under Bankruptcy Code sections 522(g) and (h), 544, and 550.  Any amended complaint must be filed within fourteen days of entry of this memorandum decision.

The Court will enter an order consistent with this memorandum.



Dated: January 5, 2024
       Brooklyn, New York

Jil Mazer-Marino
United States Bankruptcy Judge