UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re:

Evis Neverlane Stephens,

Debtor.

21-42857-jmm

Chapter 13

Evis Neverlane Stephens,

Plaintiff,

v.

Maxine Bonaparte,
Lezantonio Woodburn,
12706 Holdings Inc.,
Charles L Mester, Esq.,
Planet Management Group, LLC,
Planet Home Lending LLC dba Planet Home Servicing,
Wilmington Savings Fund Society, FSB (WSF),
Verus Securitization Trust 2020-NPL1,

Defendants.

Adversary Proceeding
No. 22-01037

# DEFENDANT WILMINGTON'S MEMORANDUM OPPOSING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**AKERMAN LLP**
1251 Avenue of the Ams., 37th Floor
New York, New York 10020
Telephone: 212-880-3800

*Attorneys for Defendant Wilmington Savings Fund Society, FSB (WSFS), not in its individual capacity but solely as owner trustee for Verus Securitization Trust 2020-NPL1, wrongly sued herein as both Wilmington Savings Fund Society, FSB (WSF) and Verus Securitization Trust 2020-NPL1*

Dated: December 1, 2025

83552471;1

# TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| I. | | Introduction .................................................................................................... | 1 |
| II. | | Statement Of Facts and Procedural History ............................................... | 1 |
| III. | | Legal Standard ............................................................................................... | 2 |
| IV. | | Argument ........................................................................................................ | 2 |
| | A. | Ms. Stephens is Not Entitled to Cancel the Deed (First Cause of Action) ............. | 2 |
| | B. | The Deed Should Not Be Rescinded (Second Cause of Action) ........................... | 5 |
| | C. | Ms. Stephens Cannot Quiet Title (Third and Tenth Causes of Action) ................. | 8 |
| | D. | Ms. Stephens Cannot Void the Mortgage Under the Bankruptcy Code (Fifteenth, Sixteenth, and Seventeenth Causes of Action) ................................. | 10 |
| V. | | Conclusion ...................................................................................................... | 13 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Ackerman*,
 120 A.D.3d 1279, 993 N.Y.S.2d 53 (App. Div. 2014) .................................................................4

*Bentivegna v. People's United Bank*,
 14-CV-599, 2017 WL 3394601 (E.D.N.Y. Aug. 7, 2017) ..........................................................6

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986)......................................................................................................................2

*Del Turco v. Speedwell Design*,
 623 F. Supp. 2d 319 (E.D.N.Y. 2009) .........................................................................................3

*Dickerson v. Napolitano*,
 604 F.3d 732 (2d Cir. 2010).........................................................................................................2

*Faison v. Lewis*,
 25 N.Y.3d 220, 10 N.Y.S.3d 185 (2015) .....................................................................................3

*First Nat'l Bank of Odessa v. Fazzari*,
 10 N.Y.2d 394, 223 N.Y.S.2d 483 (1961) ..................................................................................3

*Fleming-Jackson v Fleming*,
 41 A.D.3d 175, 838 N.Y.S.2d 506 (App. Div. 2007) ................................................................6

*Great Eastern Bank v. Chang*,
 227 A.D.2d 589, 643 N.Y.S.2d 203 (App. Div. 1996) ..............................................................9

*Hetchop v. Woodlawn at Grassmere, Inc.*,
 116 F.3d 28 (2d Cir. 1997)...........................................................................................................3

*Hicks v. Baines*,
 593 F.3d 159 (2d Cir. 2010).........................................................................................................2

*In re Altmeyer*,
 268 B.R. 349 (Bankr. W.D.N.Y. 2001) ....................................................................................12

*In re Bernard L. Madoff Inv. Secs. LLC*,
 12 F. 4th 171 (2d Cir. 2021) ......................................................................................................12

*In re Coleman*,
 21 B.R. 832 (Bankr. S.D. Tex. 1982) .......................................................................................11

*In re Dobbs*,
 597 B.R. 74 (Bankr. E.D.N.Y. 2019) ..................................................................................10

*In re Foster*,
 No. 08-2206, 2012 WL 764426, at *1-*2 (Bankr. D.N.J. Mar. 7, 2012) ................................12

*In re Orange Cnty. Sanitation, Inc.*,
 221 B.R. 323 (Bankr. S.D.N.Y. 1997) ................................................................................11

*In re Sherman*,
 67 F.3d 1348 (8th Cir. 1995) ..............................................................................................11

*In re Toscano*,
 799 F. Supp. 2d 230 (E.D.N.Y. 2011) ..................................................................................4

*Lugo v. City of Troy, N.Y.*,
 114 F.4th 80 (2d Cir. 2024) ..................................................................................................6

*Nurse v. Rios*,
 160 A.D.3d 888, 76 N.Y.S.3d 70 (App. Div. 2018) ..............................................................8

*Plotch v. U.S. Bank Nat'l Ass'n as Tr. for Asset-Backed Funding Corp., Asset-Backed Certificates, Series 2006-HE1*,
 No. 24-1308-CV, 2025 WL 1949987 (2d Cir. July 16, 2025) ...............................................8

*Price v. Cushman & Wakefield, Inc.*,
 808 F. Supp. 2d 670 (S.D.N.Y. 2011) ...................................................................................2

*Sorenson v. Bridge Capital Corp.*,
 52 A.D.3d 265, 861 N.Y.S.2d 280 (App. Div. 2008) ............................................................4

*WMC Mortgage Corp. v. Vandermulen*,
 204 A.D.3d 865, 166 N.Y.S.3d 507 (App. Div. 2022) ..........................................................8

*Zeidel v. Dunne*,
 215 A.D.2d 472, 626 N.Y.S.2d 509 (App. Div. 1995) ..........................................................9

**Statutes**

11 U.S.C. § 522 ..........................................................................................................................10

11 U.S.C. § 544 ..........................................................................................................................10

11 U.S.C. § 550 ................................................................................................................... 10-12

N.Y. REAL PROPERTY LAW § 265-a ........................................................................................2, 5

N.Y. R.P.A.P.L § 1501 ................................................................................................................8

**Rules**

Bankruptcy Local Rule 7056-1 ........................................................................................... 1, 9

Fed. R. Bankr. P. 7056 ....................................................................................................... 1, 2

Fed. R. Civ. P. 56 ................................................................................................................... 2

# I. INTRODUCTION[1]

Debtor-plaintiff Evis Neverlane Stephens moves for summary judgment on her remaining claims against Wilmington and others. She has not supported the motion with any admissible evidence, relying instead on her complaint. But even if she had offered evidence for her claims, she has made no effort to offer evidence disproving Wilmington's status as a good faith encumbrancer and subsequent transferee. At summary judgment, it is her burden to disprove Wilmington's good faith defenses, for which Wilmington has already argued in its earlier-filed summary judgment motion. Aside from wrongly claiming Wilmington obtained its interest after this bankruptcy proceeding started, Ms. Stephens' papers ignore this crucial issue. The evidence also shows Wilmington's predecessor provided funds used to pay off her loan. It received a mortgage for the full amount it disbursed to its borrower without any knowledge of the fraud Ms. Stephens contends tainted her transaction. At the very least, there are questions of fact precluding canceling the mortgage and quieting title in Ms. Stephens' favor, requiring denial of her motion.

# II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

For a recitation of the relevant facts as to its substantive arguments, Wilmington respectfully refers the Court to its response to Ms. Stephens' Local Rule 7056-1 Statement of Undisputed Facts, including its Counterstatement of Facts thereto.

---

[1] Defendant Wilmington Savings Fund Society, FSB (WSFS), not in its individual capacity but solely as owner trustee for Verus Securitization Trust 2020-NPL1 (**Wilmington**) wrongly sued herein as both Wilmington Savings Fund Society, FSB (WSF) and Verus Securitization Trust 2020-NPL1, submits this memorandum of law in opposition to debtor-plaintiff Evis Stephens' motion, pursuant to Fed. R. Bankr. P. 7056, for summary judgment. This memorandum of law is accompanied by Wilmington's Response to Plaintiff's Statement of Undisputed Material Facts dated December 1, 2025, and the Supplemental Declaration of Mark Dellovo dated December 1, 2025, and exhibit thereto.

### III. LEGAL STANDARD

Fed. R. Bankr. P. 7056 makes Fed. R. Civ. P. 56 applicable in adversary proceedings. "A party is entitled to summary judgment when it shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering the motion, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the nonmoving party's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. *Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); *see also Price*, 808 F. Supp. 2d at 685 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.").

### IV. ARGUMENT

**A. Ms. Stephens is Not Entitled to Cancel the Deed (First Cause of Action)**

It is not entirely clear whether Ms. Stephens is moving for summary judgment on her first cause of action, but if she is, it must be denied. In her memorandum of law, Ms. Stephens characterizes the first cause of action as being for "rescission," and repeatedly cites N.Y. REAL

PROPERTY LAW § 265-a, neither of which is actually mentioned in the complaint's first cause of action. *See* Revised Second Amended Complaint, ¶¶ 64-69.

The first cause of action really seeks to cancel the deed based on forgery. A forged instrument is void *ab initio* and of no effect. *E.g.*, *Faison v. Lewis*, 25 N.Y.3d 220, 224, 10 N.Y.S.3d 185, 187-188 (2015). There is no evidence to support a claim the deed was forged—Ms. Stephens admits it was not. Stephens admitted at her deposition that she signed the deed. *See* Transcript of deposition testimony of Evis Stephens (**Tr**.)[2] at 196:6-20; 346:13-347:6; *see also* Certification of Charles Mester dated August 3, 2022 (**Mester Decl**.), previously submitted in this action as ECF Doc. 13-1, ¶ H (describing the routine closing on March 27, 2019).

As expected, Ms. Stephens now argues that although she signed the deed, she was misled as to the real meaning of the transaction. If a person is deceived into signing a document that she reasonably believes is something else, this is fraud in the factum (also called fraud in the execution) and the instrument is void. *E.g.*, First Nat'l Bank of Odessa v. Fazzari, 10 N.Y.2d 394, 397, 223 N.Y.S.2d 483, 485 (1961). To prevail on such a claim, Ms. Stephens would have to show the nature of the instrument was hidden from her and that she had no "reasonable opportunity to know of its character or essential terms." *Hetchop v. Woodlawn at Grassmere, Inc*., 116 F.3d 28, 31-32 (2d Cir. 1997) (quotation omitted); *see, e.g., Del Turco v. Speedwell Design*, 623 F. Supp. 2d 319, 335-336 (E.D.N.Y. 2009) (to show "excusable ignorance" a party is not absolved of her basic responsibility to read what she is signing). She makes no effort to meet his standard.

Ms. Stephens testified she knew what a deed was and its legal function, *i.e*., to transfer ownership of property. Tr. at 74:17-24, 132-20-133:7. She further testified she knew she was

---

[2] The complete transcript of the deposition (held over two sessions on June 3, 2025, and July 30, 2025) was attached as Exhibits C and D to the Declaration of Jordan M. Smith. ECF Docs. 150-4 and 150-5. The transcript is continuously paginated and for ease of reference cited as "Tr." throughout this memorandum and exhibits marked at the deposition are cited as "Tr. Ex. ___."

going to a closing on March 27, 2019, and that the purpose was to transfer ownership of the property to someone else. Tr. at 157:7-159:8; Tr: 167:17-24; Tr: 171:17-172:7; 321:14-322:5 (stating she knew Mr. Woodburn would be "taking over" the house before the 2019 closing). This is because, among other things, she had signed a residential contract of sale back in July 2018, eight months before, Tr. at 190:2-4, Tr. Ex. J, as well as documents for her mortgage company as part of a short sale application. Tr. Exs. R, Y. Ms. Stephens knew her mortgage with Ocwen was in foreclosure. Tr. at 160:3-6 ("Q: Just remind me, what were they saving your house from? A: The foreclosure."); Tr. at 161:11-16 (estimating she owed "600-something thousand" on the Ocwen mortgage). In connection with the short sale of her property, Ms. Stephens signed many documents, including a contract of sale from July 2018, and other documents referencing a contract to sell the property, which were submitted to Ocwen to gain its approval to allow her to sell the property without paying the full amount due under the mortgage. Tr. Exs. J, R, T.

Even if Ms. Stephens did not understand what she was signing (despite her testimony that she did know she was transferring title by signing a deed), this would not suffice. She must prove not only that she did not know the contents of the deed but could not have discovered them. *E.g.*, *Sorenson v. Bridge Capital Corp.*, 52 A.D.3d 265, 861 N.Y.S.2d 280, 282 (App. Div. 2008). A party is obligated to read a legal document and cannot avoid the legal consequences by not reading it. *E.g.*, *In re Toscano*, 799 F. Supp. 2d 230, 245 (E.D.N.Y. 2011); *Ackerman v. Ackerman*, 120 A.D.3d 1279, 1280, 993 N.Y.S.2d 53, 55 (App. Div. 2014) (rejecting the claim of fraud in the factum where the plaintiff had signed a deed in an attorney's office and after it was explained to her). No one prevented Ms. Stephens from reading the documents at the closing or asking questions about them, as she conceded in her deposition. Tr. 169:1177:25. She testified that she had no questions about what was happening and is "not that kind of person, who asks questions

like that." Tr. 173:20-21.  She had six months between when she met Mr. Mester for the first time and the date of closing, to ask him any questions she might have, but she never did.  Tr. 1555:8-23; 157:4-6; *see also* Mester Decl., ¶ F-G.  Throughout that time, she was also represented by an attorney in the ongoing foreclosure. Tr. at 114:22-25; 280:19-281:2.  After the closing, Ms. Stephens executed a contract with 12706 Holdings in which she recognized she had transferred her title.  Tr. Ex. X.  This also shows she knew she conveyed title.

To prevail at this stage, Ms. Stephens would have to show there was no question of fact that she was confused as to what she signed. The evidence supports a contrary conclusion.  At the very least, there is insufficient evidence to grant Ms. Stephens summary judgment.

**B.   The Deed Should Not Be Rescinded (Second Cause of Action)**

What Ms. Stephens addresses in Point I of her moving memorandum appears actually to be her second cause of action in the complaint, which pleads to cancel the sale to 12706 Holdings (and therefore the mortgage that company made) pursuant to N.Y. REAL PROPERTY LAW (**RPL**) § 265-a, the Home Equity Theft Protection Act.  She contends her agreement to sell the property to 12706 Holdings was a covered contract and that she did not receive certain notices required by the law.  Wilmington had nothing to do with the 2019 transaction.  Ms. Stephens can only obtain summary judgment against Wilmington on this claim if she proves both that the transaction violated HETPA and that Wilmington is not a bona fide encumbrancer for value.  Because she misunderstands when and how Wilmington took its interest, her argument against bona fide encumbrancer status fails.

Preliminarily, there is no competent evidence of any violation of the statute by anyone in Ms. Stephens' moving papers. She offered no sworn testimony, no declarations under 28 U.S.C. 1746, and she made no effort to authenticate the documentary evidence attached to her complaint on which her counsel relies.  All she does is point to her complaint and insist its allegations are

true. This is not acceptable evidence on which to base a summary judgment motion. *See, e.g.*, *Lugo v. City of Troy, N.Y.*, 114 F.4th 80, 87-88 (2d Cir. 2024); *Bentivegna v. People's United Bank*, 14-CV-599, [2017 WL 3394601, at \*13 (E.D.N.Y. Aug. 7, 2017)](#) ("[A]n unverified complaint is not admissible evidence.").³ Her contention that she "has provide (sic) enough heft to the complaint," Plaintiff's Memorandum of Law (ECF doc. 152-1) at 18, is simply wrong because she has ignored basic rules of evidence in offering her proof.

To defeat summary judgment, Wilmington need only show there is a question of fact as to whether it had bona fide encumbrance status, which would bring it outside the definition of an "equity purchaser" subject to the statute. *See* RPL § 265-a(2)(e)(vii). A bona fide encumbrancer for value is anyone who "provides the equity purchaser with a mortgage or provides a subsequent bona fide purchaser with a mortgage, provided that he or she had no notice of the equity seller's continuing right to, or equity in, the property prior to the acquisition of title or encumbrance, or of any violation of this section by the equity purchaser as related to the subject property." RPL § 265-a(2)(a). The rights of an encumbrancer for value are protected "unless it appears that [the encumbrancer] had previous notice of the fraudulent intent of [its] immediate grantor, or of the fraud rendering void the title of such grantor." RPL § 266; *see Fleming-Jackson v Fleming*, 41 A.D.3d 175, 838 N.Y.S.2d 506 (App. Div. 2007).

Wilmington, and Planet before it, had no actual knowledge of any fraud. Wilmington purchased what was, to all appearances, a loan made to finance rehabilitation and re-sale of property that 12706 Holdings was purchasing in unremarkable circumstances. Nothing in the loan documentation suggested any deed fraud. *See* Declaration of Mark Dellovo previously submitted

---

³ This flaw in Ms. Stephens' summary judgment proof applies to all of her claims against Wilmington.

in this action (ECF Doc. 150-36) (**Verus Decl**.), ¶¶ 6-7.  The documentation available to Verus when it acquired the loans showed nothing unusual.  The only information about Ms. Stephens in the material available to Verus were references to her as a prior owner, including information about her deed, mortgage, and the foreclosure action in a title report and a copy of the deed she executed to 12706 Holdings Inc.  *See id*., ¶ 6.  By the time Verus purchased the loan about a month after origination, Ms. Stephens had not taken any action to challenge the validity of the sale.  Her own argument is that she first did that through various filings in this bankruptcy beginning in 2022.  *See* Plaintiff's Memorandum of Law at 29-31.  This was long after Verus had purchased the loan and placed it into the trust that now owns it and for which Wilmington is trustee.  *See* Supplemental Declaration of Mark Dellovo submitted herewith, ¶¶ 6-7 (showing Wilmington owned the loan since 2020).

Ms. Stephens of course argues Wilmington (or Planet before it) were on actual or constructive notice, but the argument is conclusory.  See Plaintiff's Memorandum of Law at 26-29.  It consists of little more than citations to cases standing for general, uncontroversial legal concepts and statements that Wilmington had notice. *Id.*  Ms. Stephens does not point to any actual knowledge that Planet or Wilmington had about Ms. Stephens' circumstances.  As Mr. Dellovo set forth in his earlier declaration, his company had virtually no information about Ms. Stephens when it purchased the loan in 2019. Verus Decl., ¶ 6.  Why would it? She was merely the prior owner of the property and had no relationship to Wilmington or the prior owner of 12706 Holdings' loan.  Everything Verus received about the transaction was consistent with a purchase of a property that needed rehabilitation and was being bought with the idea of making repairs and re-selling it.  Verus Decl., ¶¶ 6-7.  The obligation to make a further inquiry only arises when the encumbrancer is aware of events that would lead a reasonable, prudent lender to make inquiries about the transaction.

*WMC Mortgage Corp. v. Vandermulen*, 204 A.D.3d 865, 866, 166 N.Y.S.3d 507 (App. Div. 2022). That information Verus had did not trigger any such obligation.

Ms. Stephens' counsel argues Wilmington made a "late entry in 2022" because he wrongly believes it acquired its interest in the loan at the time of the recorded mortgage assignment. It did not. The loan was placed into the current trust in 2020 after being purchased by Verus in 2019. Verus Decl., ¶¶ 5-8; Supp. Decl submitted herewith, ¶¶ 6-7. Therefore, Ms. Stephens' argument that Wilmington had notice of her claims because she filed them in the bankruptcy proceeding in 2021 and early 2022, before Wilmington acquired the loan, is mistaken. Wilmington acquired its interest without notice of any issue several years before.

**C.      Ms. Stephens Cannot Quiet Title (Third and Tenth Causes of Action)**

Ms. Stephens purports to move for summary judgment on her quiet title causes of action. These are actually her third and tenth causes of action in the Revised Second Amended Complaint, though identified as the second cause of action in her current moving memorandum.

"To maintain a cause of action to quiet title [to real property], a plaintiff must allege actual or constructive possession of the property and the existence of a removable cloud on the property, which is an apparent title to the property, such as in a deed or other instrument, that is actually invalid or inoperative[.]" *Nurse v. Rios*, 160 A.D.3d 888, 888, 76 N.Y.S.3d 70, 71 (App. Div. 2018). N.Y. R.P.A.P.L § 1501 authorizes a similar cause of action to compel determination of adverse claims. *See, generally, Plotch v. U.S. Bank Nat'l Ass'n as Tr. for Asset-Backed Funding Corp., Asset-Backed Certificates, Series 2006-HE1*, No. 24-1308-CV, 2025 WL 1949987, at *4 (2d Cir. July 16, 2025).

For the reasons explained above, Ms. Stephens does not have a viable basis in fraud to undo her voluntary transfer of title, nor to cancel Wilmington's mortgage because of Wilmington's status as a good faith encumbrancer. Even if she did, Wilmington pled a counterclaim for an

equitable mortgage based on equitable subrogation. *See* Answer filed March 6, 2024 (ECF Doc. 97). Ms. Stephens has not moved for summary judgment on that counterclaim. It would be nonsensical to allow her to quiet title to the property, effectively eliminating that claim to an equitable lien, when she has not even sought judgment on the issue.[4]

Where "the funds of a mortgagee are used to discharge a prior lien upon the property of another, the doctrine of equitable subrogation applies to prevent unjust enrichment by subrogating the mortgagee to the position of the senior lienholder." *Great Eastern Bank v. Chang*, 227 A.D.2d 589, 589, 643 N.Y.S.2d 203 (App. Div. 1996); *see also Zeidel v. Dunne*, 215 A.D.2d 472, 473, 626 N.Y.S.2d 509 (App. Div. 1995) ("The court properly determined that the bank should be subrogated to the rights of the prior mortgagees to the extent that its funds were used to discharge those obligations"). Ms. Stephens admits the facts that prove that equitable claim. She contends in her Bankruptcy Rule 7056-1 Statement of Undisputed Material Facts that loan proceeds funded the transaction through which she sold the property to 12706 Holdings, Inc., and such loan funds were used for, among other things, for "payoff of Plaintiff's prior mortgage." ECF Doc. 152-3, ¶ 30; *see also* Tr. at 293:16-22 ("Listen to me carefully, when the house was transferred – you guys know what's going on. Ocwen never sent anything to me again."); Tr. at 294:8-11 ("Q: Was it your understanding at that point that your relationship with Ocwen was over because the loan has been paid off. A: Of course."). The HUD-1 settlement statement that Ms. Stephens signed at closing in 2019 showed a line item for payoff of the mortgage. Tr. 275:8-20, Tr. Ex. T. That settlement statement shows where funds were to be disbursed and, and as relevant here, shows in section 504 a line item of $337,500.00 being allocated for "payoff of first mortgage lien." Tr. Ex. T. Ms. Stephens was wise not to seek summary judgment dismissing the equitable mortgage counterclaim,

---

[4] Wilmington moved for summary judgment on this counterclaim in its own motion filed on October 17, 2025. ECF Doc. 150.

as the evidence for that counterclaim is overwhelming. For the same reason, she cannot quiet title to eliminate Wilmington's interest.

**D.  Ms. Stephens Cannot Void the Mortgage Under the Bankruptcy Code (Fifteenth, Sixteenth, and Seventeenth Causes of Action)**

Ms. Stephens was granted leave to, and did, replead causes of action under sections 522(h), 544, and 550 of the Bankruptcy Code, as her fifteenth, sixteenth, and seventeenth causes of action. As relevant to Wilmington, she seeks summary judgment on her causes of action to avoid the transfer of title to 12706 Holdings Inc. on March 27, 2019, and therefore the associated mortgage Wilmington now holds. There is at least a substantial question as to Wilmington's status as a good faith transferee, precluding summary judgment in her favor. She has offered no evidence disproving Wilmington's status as a good faith transferee.

As noted in Wilmington's memorandum of law supporting motion for summary judgment, the Court declined to decide whether Ms. Stephens had standing to bring an action to avoid the transfer of her title pursuant to Section 544 of the Bankruptcy Code in its January 5, 2024 order. The majority rule vests the power to proceed under Section 544 only in the trustee. Applying the majority rule, Ms. Stephens cannot proceed under Section 544. *See In re Dobbs*, 597 B.R. 74, 80 (Bankr. E.D.N.Y. 2019) (following the majority view).

Even if Ms. Stephens had made a prima face showing of the ability to avoid her voluntary transfer of her property in 2019, despite her failure to offer any competent evidence, she cannot be granted summary because she cannot disprove Wilmington's status as a good faith transferee. As set forth above, Wilmington had no information at all about Ms. Stephens' particular circumstances or the details of any negotiation leading to her sale of the property and satisfaction of her mortgage. *See* Verus Decl., ¶¶ 6-7. It is simply a downstream owner of the mortgage loan 12706 Holdings executed with original lender/mortgagee Planet. Pursuant to 11 U.S.C. § 550(a), to the extent a

transfer is avoided, the trustee may recover the property transferred or the value of the property from the initial transferee, or any immediate or mediate transferee of the initial transferee. But a trustee may not seek recovery from an immediate or mediate transferee of the initial transferee (*i.e*., subsequent transferee) if the transferee "takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided," or any "immediate or mediate good faith transferee of such transferee." 11 U.S.C. § 550(b)(1)-(2). If a mediate or immediate transferee of the initial transferee has shown it took the transfer for value, in good faith, and with no knowledge of the transfer's voidability, then subsequent transferees need only show good faith. *In re Coleman*, 21 B.R. 832, 836 (Bankr. S.D. Tex. 1982). Knowledge, as used in Section 550(b), is a "stronger term than notice," and a transferee has knowledge if he knew facts that would lead a reasonable person to believe the property transferred was recoverable." *In re Sherman*, 67 F.3d 1348, 1357 (8th Cir. 1995). And the value given by the subsequent transferee is not value that goes to the debtor, and the reference to "value" goes to what the transferee gave up rather than what the debtor received. *In re Orange Cnty. Sanitation, Inc.*, 221 B.R. 323, 328 (Bankr. S.D.N.Y. 1997). Ms. Stephens admits that Wilmington is a subsequent transferee. SAC, ¶ 214 (identifying Wilmington as a mediate transferee).

To prevail against Wilmington, and so cancel the mortgage, she would have to show Wilmington could not prevail under the three-step inquiry. First, she would have to show what Wilmington knew, about which she has offered nothing but an erroneous claim that Wilmington acquired its interest through an assignment of mortgage after she filed her bankruptcy. Mr. Dellovo's prior declaration and the authenticated documents attached to it disproved that before she even filed her motion. *See also* Suppl. Decl., ¶¶ 6-7 (showing Wilmington owned the loan since 2020). Second, Ms. Stephens would have to prove Wilmington was on inquiry notice of a

possible fraud. But Wilmington has shown what information was available to it, all of which was anodyne, raising no concerns. Third, Ms. Stephens would have to show that a diligent inquiry would have uncovered the fraudulent purpose of the transfer. *In re Bernard L. Madoff Inv. Secs. LLC*, 12 F. 4th 171, 191-92 (2d Cir. 2021). She has not offered any explanation how Wilmington would have uncovered that.

Ms. Stephens does not address Wilmington's protections under Bankruptcy Code Section 550(b)(1). Wilmington (through predecessor Verus) took for value, in good faith, and without knowledge of the voidability of the transfer avoided. Even Ms. Stephens agrees Wilmington's predecessor provided value to her by paying off her loan. And Wilmington never had knowledge, or inquiry notice, of any fraud.

In *In re Foster*, the plaintiff came to the court with a similar claim of fraudulent transfer through a sale-leaseback transaction when she faced foreclosure. No. 08-2206, 2012 WL 764426, at *1-*2 (Bankr. D.N.J. Mar. 7, 2012). HSBC was a holder in due course of the note that resulted from the transaction, and became the holder as part of a mortgage-backed securities transaction. *Id.* at *7. The court denied the plaintiff's request to cancel the lien of the mortgage pursuant to Section 550. "The Court need not address whether Plaintiff can sustain a claim for fraudulent transfer . . . . Rather, the issue is whether Plaintiff can recover from HSBC/MERS under 11 U.S.C. § 550." *Id.* at *14. "HSBC/MERS took the [loan] for value and had no knowledge of [the allegedly fraudulent transaction] with Plaintiff." *Id.* The situation is much the same here. This is not a case where the loan characteristics obviously give the lender knowledge. *Cf. In re Altmeyer*, 268 B.R. 349, 355 (Bankr. W.D.N.Y. 2001) (mortgage lender to whom debtor's spouse mortgaged property was not insulated under Section 550(b) when the initial transferee purchased property for $1.00.)

There is extensive evidence of Wilmington's good faith transferee status and no evidence offered to disprove it. Ms. Stephens has not met her burden at summary judgment on the fifteenth through seventeenth causes of action as they relate to Wilmington and its mortgage.

## V. CONCLUSION

Ms. Stephens chose to sell the property to resolve her mortgage debt rather than go through a judicial foreclosure. In moving for summary judgment on her affirmative claims (but not against Wilmington's counterclaim), she offers no evidence disproving Wilmington's status us a good faith encumbrancer and transferee. As such, there is at least a question of fact as to her claims to cancel the 2019 mortgage and quiet title to the property. Even if she could prevail on summary judgment, she all but admits Wilmington must have an equitable lien based on its predecessor's funds being used to pay off Ms. Stephens' default mortgage. As such, it would be absurd and unjust to allow her to quiet title and effectively eliminate any other interest in the property before Wilmington's counterclaim has been adjudicated. Ms. Stephens' partial summary judgment motion should be denied against Wilmington.

[signature on following page]

Dated: December 1, 2025

        Respectfully submitted,

        **AKERMAN LLP**

By:    /s/ *Jordan M. Smith*
        Jordan M. Smith (jordan.smith@akerman.com)
        Jason St. John (jason.stjohn@akerman.com)
        1251 Avenue of the Americas, 37th Floor
        New York, NY 10020
        (212) 880-3800

*Attorneys for Defendant Wilmington Savings Fund Society, FSB (WSFS), not in its individual capacity but solely as owner trustee for Verus Securitization Trust 2020-NPL1 wrongly sued herein as both Wilmington Savings Fund Society, FSB (WSF) and Verus Securitization Trust 2020-NPL1*