UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re:

Evis Neverlane Stephens,                                    21-42857-jmm

Debtor.                                                     Chapter 13

Evis Neverlane Stephens,

Plaintiff,

v.

Maxine Bonaparte,                                           Adversary Proceeding
Lezantonio Woodburn,                                        No. 22-01037
12706 Holdings Inc.,
Charles L Mester, Esq.,
Planet Management Group, LLC,
Planet Home Lending LLC dba Planet Home Servicing,
Wilmington Savings Fund Society, FSB (WSF),
Verus Securitization Trust 2020-NPL1,

Defendants.

## DEFENDANT WILMINGTON'S RESPONSE TO RULE 7056-1 STATEMENT

In accordance with Rule 56.1 of the Local Civil Rules of this Court, made applicable here

through Local Bankruptcy Rule 7056-1, defendant Wilmington Savings Fund Society, FSB

(WSFS), not in its individual capacity but solely as owner trustee for Verus Securitization Trust

2020-NPL1 (**Wilmington**)[1] submits the following response to plaintiff Evis Stephens' Statement

of Undisputed Material Facts in Support of Plaintiff's Motion for Summary Judgment dated

October 24, 2025 (ECF Doc. 152-3).

---

[1] As noted in other filings in this action, debtor-plaintiff has improperly sued Wilmington Savings Fund Society, FSB
(WSF) in its individual capacity and the Verus Securitization Trust 2020-NPL1 separately. Defendants respond here
on behalf of the real party in interest, Wilmington Savings Fund Society, FSB, not in its individual capacity but solely
as owner trustee for Verus Securitization Trust 2020-NPL1.

Wilmington denies many of the purported undisputed facts that Ms. Stephens proffers on the basis that they are not supported by admissible evidence, in violation of the local rule. Where Ms. Stephens' counsel cites anything at all, it is generally only Ms. Stephens' unverified Revised Second Amended Complaint (ECF Doc. 93) and exhibits thereto. "It is blackletter law that an unverified complaint is not evidence that can be relied upon at summary judgment." *Caro Cap., LLC v. Koch,* 653 F.Supp.3d 108, 132 (S.D.N.Y. 2023); *see also Bentivegna v. People's United Bank*, No. 14-CV-599, 2017 WL 3394601, at *13 (E.D.N.Y. Aug. 7, 2017) ("[A]n unverified complaint is not admissible evidence."); *Continental Ins. Co. v. Atlantic Cas. Ins. Co.*, No, 07-CV-3635, 2009 WL 1564144, at *1 n.1 (S.D.N.Y. Jun. 4, 2009) (for summary judgment "allegations in an unverified complaint cannot be considered as evidence." (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995))).

## WILMINGTON'S RESPONSES TO PURPORTED FACTS

1.  Plaintiff Evis Neverlane Stephens is the debtor in Chapter 13 Case No. 21-42857 (E.D.N.Y. Bankr.), filed in 2021, and the plaintiff in this adversary proceeding. (Complaint, p. 1; Bankruptcy Docket.)

    **RESPONSE: Admitted.**

### The Home of the Debtor 127-06 177th Street, Jamaica, NY 11434

2.  The subject property is a two-family residence located at 127-06 177th Street, Jamaica, NY 11434 (Block 12527, Lot 93) (the "Real Property" or "House"). (Complaint, Brief Introduction & ¶¶ 1-2; Ex. 3, p. 1; Ex. 4, p. 1; Ex. 5, p. 1; Ex. 12, p. 1; Ex. 14, p. 1; Ex. 23, p. 1; Ex. 26, p. 1.)

    **RESPONSE: Admitted.**

3. Plaintiff purchased the Property in 2006 with a mortgage of approximately $630,000 from Novastar Mortgage, Inc., which was later assigned to Deutsche Bank National Trust Company. (Complaint, ¶¶ 1-3; Ex. 3, p. 1.)

**RESPONSE: Admitted, except the mortgage assignment was to Deutsche Bank National Trust Company as Trustee for Novastar Mortgage Funding Trust, Series 2006-5 Novastar Home Equity Loan Asset-Backed Certificates, Series 2006-5, as shown in the exhibit referenced by Ms. Stephens. It was that entity that ultimately released the mortgage after the payoff through the 2019 transaction and that was also the plaintiff in the foreclosure litigation against Ms. Stephens. *See* Smith Decl., Exs. B and G (ECF Docs. 150-3, 150-34.)**

### Pending Foreclosure of the Home

4. A foreclosure action ("Foreclosure Action") against the Property was commenced in Queens County Supreme Court (Index No. 704762/2015) by Deutsche Bank, with a Notice of Pendency filed on April 4, 2018. (Complaint, ¶¶ 4-5; Ex. 3, p. 1.).

**RESPONSE: Denied, except admits Deutsche Bank National Trust Company as Trustee for Novastar Mortgage Funding Trust, Series 2006-5 Novastar Home Equity Loan commenced the foreclosure action assigned index number 704762/2015 in Queens County Supreme Court. Transcript of the deposition of Evis Stephens (Tr.), previously submitted to the Court as ECF Doc 150-4 and 150-24, Ex. N; *cf.* Tr. at 236:11-20.**

5. Ms. Stephens the Debtor lives in her House with her daughters and other family members at all times including now.

**RESPONSE: Denied. This statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

### Efforts to Save Home and Bonaparte

6.  For defending the Foreclosure Action, Ms. Stephens was referred to one John Clark (Clark) running an office under his company Herkimer Realty One (Herkimer). (Complaint ¶ 23).

    **RESPONSE: Denied. This statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

7.  Maxine Bonaparte, as agent and partner of Lezantonio Woodburn (Woodburn) approached the Debtor to help her save her House.

    **RESPONSE: Denied. This statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

8.  "Clark introduced Ms. Stephens to Maxine Bonaparte (Maxine) in 2017/18. Maxine spoke to Ms. Stephens and told her that she would help her out from the mortgage issues and she offered to get the loan transactions transferred to Ms. Stephens's husband name if he had a good." Ibid.

    **RESPONSE: Denied. This statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

9.  In 2018 Ms. Stephens suffered a head stroke. Ms. Stephens also developed high blood pressure, as she was breaking down under the pressure of the mortgage payments. Ibid at ¶ 24.

84035164;1

**RESPONSE: Denied. This statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1. In her deposition testimony, Ms. Stephens mentioned having a stroke, Tr. at 8:2-18, but she did not attribute the stroke to high mortgage payments and stated she did not know or care to know the status of mortgages on the other properties. Tr. at 123:17-124:8.**

10.     The Debtor paid Bonaparte $10,000 as fees for her services. Complaint ¶ 24, Ex. B.

**RESPONSE: Denied. This statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

### Meeting Charles Mester

11.     Maxine Bonaparte took Ms. Stephens to attorney Charles L. Mester for saving her House. Complaint ¶ 26.

**RESPONSE: Denied. This statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1. Substantial evidence shows the purpose of the meeting with Mester was, among other things, to facilitate a sale of the property. (retention agreement). Tr. Ex. I (retention agreement dated September 21, 2018, setting out the scope of representation). In addition, Ms. Stephens testified that when she met with Mr. Mester, they never talked about her house in Queens, although she later stated, "Maybe. Maybe. But I can't recall that." Tr. at 141:4-22.**

12.     On September 21, 2018, An agreement is an agreement is signed by Charles L. Mester (Attorney, on behalf of his firm), Evis Stephens (Client), Maxine Bonaparte (Client). The agreement outlines the terms for retaining the attorney to provide legal services related to

the prosecution of civil litigation involving the following real properties: 1487 East 53rd Street, Brooklyn, New York, 844 East 34th Street, Brooklyn, New York, And the sale and leaseback of 12706 177th Street, Jamaica, New York. Ex. 2.

**RESPONSE: Admitted insofar as Ms. Stephens did sign a retainer agreement dated September 21, 2018, with Mester. See Tr., Ex. I.**

13.    For the sale of the House to Ms. Bonaparte or her designee, a 20% legal fee on the purchase price if paid by a third-party prospective buyer (not yet paid shall be paid at the time of final closing). For short sale/leaseback transactions, a legal fee of 20% upon refinancing of the property subsequent to the short sale. An initial retainer of $10,000 was required. Id.

**RESPONSE: Admitted insofar as Ms. Stephens did sign a retainer agreement with Mester. See Tr., Ex. I.**

14.    Debtor sought bankruptcy under chapter 13 with this Court on November 15, 2021. See Docket # 1 (Case No. 21-42857-206). (Complaint, p. 1).

**RESPONSE: Admitted.**

15.    On February 2, 2022, Schedule A and B were amended to reflect dispute on the title of the Real Property and a notice to the public. See Dkt # 15.

**RESPONSE: Admitted.**

16.    On Apirl (*sic*) 6, 2022 Schedule A/B amended again to show claims against the defendants. See Dkt # 20.

**RESPONSE: Admitted.**

17.    On April 7, 2022, the Contract for Occupancy of the House was filed with the Court. See Dkt # 24

**RESPONSE: Admitted.**

18. On November 18, 2021, the Debtor rescinded the conveyance of the Real Property to defendant 12706 Holdings Inc. and mailed a copy of the same via certified mail. Ex. 27.

   **RESPONSE: Denied. This statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1. In addition, the statement is a legal conclusion and not a statement of fact.**

19. On March 27, 2019, the House of the Debtor was sold to 12706 Holdings Inc. for a zero amount. It was a short sale. Ex. 12.

   **RESPONSE: Denied. This statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1. In any case, the sale was for an amount of $375,000. *See* Tr., Ex. T. Ms. Stephens signed the Settlement Statement at closing acknowledging this. *Id*. $337,500 of funds from that transaction were disbursed to Ocwen Loan Servicing to satisfy the mortgage on the property. *See* Tr., Ex. T; Tr. at 293:16-22 ("Listen to me carefully, when the house was transferred – you guys know what's going on. Ocwen never sent anything to me again."); Tr. at 294:8-11 ("Q: Was it your understanding at that point that your relationship with Ocwen was over because the loan has been paid off. A: Of course."); Declaration of Jordan M. Smith previously filed in this action (ECF Doc. 150-1), Ex. B; Smith Decl., Ex. F (affirmation of counsel for the foreclosing mortgagee identifying the reason for foreclosure discontinuance as "short fall pay off.").**

   **Incorporation and structure of 12706 Holding Inc.**

20. Defendant 12706 Holdings Inc. ("Holdings") was incorporated as a New York domestic business corporation on June 20, 2018, with its address at 66 Herkimer Street, Brooklyn,

NY 11216, and remained in good standing as of March 27, 2019. (Ex. 1, p. 1; Ex. 15, p. 1.) and thereafter the address for process was changed to 130-21 140th Street, Jamaica, NY 11436. Ex. I. In the Certificate of Incorporation, Woodburn reflected the process to be served at 55 West 116 Street, Suite 255, NY NY 10026, an address he kept and used for execution of several documents including mailing of tax identification for 12706 Holding Inc. Ibid. The BY-LAWS OF 12706 HOLDINGS INC reflected that "[]he principal office of the Corporation in the State of New York shall be located at 55 West 116th Street Suite 255 New York NY 10026." Id.

**RESPONSE: Denied, except admitted that 12706 Holdings Inc. was organized as a New York corporation on June 20, 2018. This statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1. Wilmington further denies on the basis that the statement is compound and seeks admissions as to many unrelated facts.**

21.   Defendant Lezantonio Woodburn is the President and 100% owner of Holdings. (Ex. 15, p. 1; Complaint, ¶ 7.)

**RESPONSE: Denied. This statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

22.   On July 11, 2018, Plaintiff was made to entered (*sic*) into a Contract of Sale to sell her house to 12706 Holdings, which was amended on December 11, 2018, confirming the sale terms without a down payment due to short sale status. (Ex. 4, p. 1; Complaint, ¶¶ 10-12.).

**RESPONSE: Denied. The statement that Ms. Stephens was "made" to enter into a contract of sale is not supported by citation to potentially admissible evidence as**

**required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

23. On or about January 2, 2019, Woodburn applies to Planet defendants for a loan. Ex. 6.

    **RESPONSE: Denied. This statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1. In addition, Woodburn did not apply for a loan in his personal capacity, although he served as a guarantor for the loan.**

24. Around the same time January 2nd 2019 to until the closing on the Real Property, Maxine Bonaparte, using the email orangeblue45@gmail.com, served as the closing coordinator for the seller (12706 Holdings Inc.) in the short sale transaction for the property at 127-06 177th Street, Jamaica, NY 11434. Her responsibilities included facilitating communication between the seller's team (e.g., Principal Gerald G. Smith), the buyer's attorney (Charles L. Mester, Esq.), the title company, and other parties to ensure a smooth closing on March 20, 2019. Ex. 7.

    **RESPONSE: Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1. The statement is also compound, involving numerous distinct, unrelated facts.**

25. On March 21, 2019, Planet Defendants prepared a Property Review Report and provided a finding that the value of the property exceeded $765,000. Ex. 8. An appraisal of the Property dated March 21, 2019, valued it at $765,000. (Ex. 5, p. 1; Complaint, ¶ 13.)

**RESPONSE: Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

### Closing of the conveyance of the Real Property, the Debtor's Home

26. On March 27, 2019, Ms. Stephens attended a real property closing wherein Mr. Mester appeared on behalf of Ms. Stephens. and Ms. Bonaparte. Ex. 9

   **RESPONSE: Admitted.**

27. On March 27, 2019, Holdings' board (via Woodburn) adopted resolutions authorizing the purchase of the Property, execution of all related documents (including mortgages and guaranties), and empowering Woodburn to make business decisions in connection there-with. (Ex. 15, p. 1.)

   **RESPONSE: Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

28. On March 27, 2019, Plaintiff executed a Bargain and Sale Deed transferring title to the Property to Holdings, acknowledging receipt of consideration and covenanting no encumbrances except as stated. (Ex. 12, p. 1; Complaint, ¶¶ 14-15.)

   **RESPONSE: Admitted.** *See* **Smith Decl., Ex. A.**

29. On March 27, 2019, Holdings executed a Promissory Note and Mortgage in favor of Defendant Planet Management Group, LLC ("Planet Management") for a $535,000 commercial loan secured by the Property, with a 24-month term, interest rates, and default provisions. (Ex. 10, p. 1; Ex. 13, p. 1; Complaint, ¶¶ 16-17.)

   **RESPONSE: Admitted.**

30. The March 27, 2019 closing involved Plaintiff as seller, Holdings as buyer/borrower, Planet Management as lender, and Mester as attorney for seller/borrower; settlement charges totaled $38,115.03, with the loan proceeds funding the transaction, including payoff of Plaintiff's prior mortgage. (Ex. 8, p. 1; Ex. 11, p. 1; Ex. 14, p. 1; Complaint, ¶ 18.)

**RESPONSE:  Denied, except admits the prior mortgage was paid off through funds used to purchase the property from Ms. Stephens. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

31. Holdings and Woodburn certified at closing that Holdings was the legal title holder, no material misrepresentations were made in loan documents, and all required consents were obtained. (Ex. 11, p. 1.)

**RESPONSE:  Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

32. On March 28, 2019, a $5,000 check was issued to Mester, consistent with closing disbursements. (Ex. 19, p. 1.)

**RESPONSE: Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

### After the Closing of the House

33. Effective January 1, 2020, Holdings and Plaintiff (along with Calvin Stephens and others) entered a Use and Occupancy Agreement, granting Plaintiff licensee status (not tenancy) in Unit 1 for $1,500/month plus utilities, with an option for ***Holdings to sell back the***

***Property after two years and three months*** (by April 1, 2022), and holding occupants liable for damages. (Ex. 23, p. 1; Complaint, ¶ 19.).

**RESPONSE: Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

34. On January 1, 2020, a "Contract - Use and Occupancy Agreement" was executed between 12706 Holdings Inc. (as owner) and Calvin Stephens, Evis Stephens, John Doe(s), and Jane Doe(s) (as occupants) for the property at 12706 177th Street, Jamaica, NY 11434. (Ex. D, p. 1).

**RESPONSE: Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

35. Under the Use and Occupancy Agreement, 12706 Holdings Inc. agreed to sell the property to the occupants in two years and three months (by April 1, 2022). (Ex. D, p. 1).

**RESPONSE: Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

36. The Use and Occupancy Agreement designated the occupants as licensees, not tenants, with no rights under landlord-tenant law. (Ex. D, p. 1).

**RESPONSE: Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

37.     The terms of the Use and Occupancy Agreement required the occupants to pay $1,500 per

month for Unit 1 from January 1, 2020, to April 1, 2022, plus gas and electric bills for Unit

1 and $150 every three months for the water bill. (Ex. D, p. 1).

**RESPONSE: Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

38.     The Use and Occupancy Agreement included rules for maintenance, such as keeping the

washer/dryer area clean, limiting basement use to specific items (sofa, TV, pantry, closet),

prohibiting storage in certain areas, and imposing a $1,000 fee for violations. (Ex. D, p. 1).

**RESPONSE: Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

39.     The Use and Occupancy Agreement prohibited children from writing on walls or hooking

basketball hoops, required cleanliness in kitchens and living rooms, and barred use of emp-

ty rooms or the backyard shed for storage. (Ex. D, p. 1).

**RESPONSE: Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

40.     The occupants were made responsible for all damages to the property, including the

backyard, during their stay. (Ex. D, p. 1).

**RESPONSE: Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

41.     On March 30, 2020, there is an amendment to the Use and Occupancy Agreement in-
        structing the Plaintiff and her family to remove washer and dryer from the basement
        banning use of backyard. And further informing that the Debtor time to financing the
        purchase back of the House has expired October 1, 2019 and if the financing is done with-
        in next 30 days, she will have to vacate her house. Ex. 29.

        **RESPONSE: Denied. The statement is not supported by citation to potentially
        admissible evidence as required by Local Civil Rule 56.1, made applicable here by
        Local Bankruptcy Rule 7056-1.**

42.     On September 25, 2020, Woodburn left a notice at the house: "You were told to not park
        in the driveway, Today is your Final Warning—You will not get another. The cars will be
        towed." Comp. ¶ 35 Ex. E.

        **RESPONSE: Denied. The statement is not supported by citation to potentially
        admissible evidence as required by Local Civil Rule 56.1, made applicable here by
        Local Bankruptcy Rule 7056-1.**

43.     On or about April 10, 2020 Woodburn through his company 12706 Holdings Inc. issued a
        "Cancellation of contract—Use and Occupancy Agreement." And asked the Debtor and
        her family to vacate the House. Complaint ¶ 35. Ex. F.

        **RESPONSE: Denied. The statement is not supported by citation to potentially
        admissible evidence as required by Local Civil Rule 56.1, made applicable here by
        Local Bankruptcy Rule 7056-1.**

44.     On May 5, 2020, August 28, 2020 and September 1, 2020 issued notice for the Debtor to
        vacate her House. Ex G.

**RESPONSE: Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

45. Maxine commenced an eviction proceeding against Ms. Stephens and her family with the Queens Housing Court (LT-058417-20/QU).

    **RESPONSE: Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

46. On October 2, 2020, a summons was filed in the Supreme Court of the State of New York, County of Queens (Index No. 717483/2020), by plaintiffs 12706 Holdings Inc. and LezAntonio Woodburn against defendants Evis Stephens, Calvin Stephens, Jane Doe(s), and John Doe(s). (Ex. H, p. 1). The summons required the defendants to appear within 20 days (if served personally in New York) or 30 days, with default judgment possible for failure to appear. (Ex. H, p. 1). The summons was signed by LezAntonio Woodburn, with an address at 130-21 140th Street, South Ozone Park, NY 11436. (Ex. H, p. 1).

    **RESPONSE: Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1. Wilmington further notes the statement is compound, seeking admissions as to many different, unrelated facts.**

47. On November 9, 2020, Ms. Stephens and her daughter filed an order to show cause for a finding of harassment and for a restraining order with the Housing Court. The Court found conduct of the defendants as harassing and restrained the defendants Maxine and Woodburn from acting in an improper manner. Ex. I.

**RESPONSE: Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

48.    On or about April 19, 2022, the family of the Debtor realizing that there was no heat in the house went to the basement to check the boilers, they found out that the two boilers have been turned off. It was found when Debtor's family wasn't there, Ms. Bonaparte came to the House and turned off the boilers to forcibly evict the family from the house. Complaint ¶ 41.

**RESPONSE:  Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

**The bankruptcy filing**

49.    On November 15, 2021, Evis Neverlane Stephens filed a Chapter 13 bankruptcy petition in the U.S. Bankruptcy Court for the Eastern District of New York (Case No. 21-42857¬206). (Complaint, p. 1).

**RESPONSE: Admitted.**

50.    In her February 2, 2022 amended bankruptcy Schedule A/B, Plaintiff claimed an "equitable interest" in the Property valued as "Unknown," describing the deed transfer as fraudulent. (Ex. 24, p. 1.)

**RESPONSE: Admitted.**

51.    In her April 19, 2022 further amended bankruptcy Schedule A/B, Plaintiff reported no ownership or interest in any real property, including the Property, (Ex. 25, p. 1.) and in highlighted wordings mentioned the following:

**Debtor's prime residence 12706177th Street Jamaica, NY 11434 house taken away from her by false pretense and fraud, Two family house deed taken by Woodburn, Bonaparte, 12706 Holdings Inc with assistance of Charles L Mester, Esq using fraud and rescue scam. Debtor has also is-sued rescission notice about the deed transfer under NY RPL 265-1(8). Also, the Debtor is commencing adversary.**

**RESPONSE: Admitted.**

52. On April 7, 2022, the Debtor filed the Contract-Use and Occupancy Agreement For 12706 17th Street, Jamaica, NY 11434 with the Court. Ex. 23.

**RESPONSE: Admitted.**

### Dealings with Planet Defendants

53. On February 23, 2021, Defendant Planet Home Lending LLC (dba Planet Home Servicing, "Planet Servicing") notified Holdings that the loan had matured with a balance of $654,801.76, requiring payment by March 25, 2021, to cure default, and offering loss mitigation options. (Ex. 20, p. 1; Complaint, ¶ 20.)

**RESPONSE:  Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

54. On March 8, 2022, Planet Servicing issued an acceleration notice to Holdings, declaring the full loan balance due and payable. (Ex. 21, p. 1.).

**RESPONSE: Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1. In any case, the statement that a notice constituted "acceleration" is one of law, and not fact, particularly as here the loan in question had already matured, making acceleration superfluous.**

55.     As of August 4, 2022, the Loan amount on the subject Real Property crossed a million dol-

        lars ($1,012,101.37, with default interest rate of 24% from October 1, 2019, additional fees

        of 10%, $53,500). Ex.

        **RESPONSE: Denied. The statement is not supported by citation to potentially**

        **admissible evidence as required by Local Civil Rule 56.1, made applicable here by**

        **Local Bankruptcy Rule 7056-1.**


**Second Round of Short Sale Fraudulent Attempts by Defaulting Defendants**

56.     Woodburn incorporates Defendant 22 Rockaway Holdings Inc. (22 Rockaway) was

        incorporated on November 17, 2020, with the same address as he used for 12706 Holdings

        (Ex. 18, p. 1.)

        **RESPONSE: Denied. The statement is not supported by citation to potentially**

        **admissible evidence as required by Local Civil Rule 56.1, made applicable here by**

        **Local Bankruptcy Rule 7056-1.**

57.     On February 8, 2021, Woodburn authorized Bonaparte to pursue a short sale of the Proper-

        ty. (Ex. 22, p. 1.)

        **RESPONSE: Denied. The statement is not supported by citation to potentially**

        **admissible evidence as required by Local Civil Rule 56.1, made applicable here by**

        **Local Bankruptcy Rule 7056-1.**

58.     On December 9, 2021, an email from "orangeblue456@aol.com" (Maxine Bonaparte) to

        Planet Servicing requested a short sale of the Property for $525,000. (Ex. 16, p. 1.)

        **RESPONSE:  Denied. The statement is not supported by citation to potentially**

        **admissible evidence as required by Local Civil Rule 56.1, made applicable here by**

        **Local Bankruptcy Rule 7056-1.**

84035164;1

59.    A new short sale contract is drafted by Defaulting Defendants and Mester for short sale of the Home from 12706 Holdings to 22 Rockaway. Ex. 17.

**RESPONSE: Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

60.    The new Short Sale attorney is Charles Mester as the counsel for 22 Rockaway. Ex. 17.

**RESPONSE:  Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

61.    The Purchase Price: $550,000, Downpayment: $55,000 (payable on signing by purchaser's good check, held in escrow until closing), Balance at Closing: $495,000 (paid by purchase money mortgage or bank check) are the terms of new Short Sale Contract. Ex. 17.

**RESPONSE: Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.**

62.    On May 9, 2022, Evis Neverlane Stephens initiated an adversary proceeding (No. 22-01037) in the bankruptcy court against defendants Maxine Bonaparte, Lezantonio Woodburn, 12706 Holdings Inc., Charles L. Mester, Esq., Planet Management Group, LLC, Planet Home Lending LLC dba Planet Home Servicing, Wilmington Savings Fund Society, FSB (WSF), and Verus Securitization Trust 2020-NPL1. (Complaint, p. 1).

**RESPONSE:  Admitted.**

63.    The Complaint references exhibits (Ex. A through N), including documents related to Maxine Bonaparte (Ex. A), a check for services to a Maxine-related company (Ex. B), an

attorney retainer (Ex. C), a use and occupancy contract (Ex. D), a final notice regarding parking (Ex. E), cancellation of contract (Ex. F), a 10-day notice (Ex. G), a Supreme Court summons (Ex. H), a court order to show cause (Ex. I), a residential loan application (Ex. J), an amendment to use and occupancy (Ex. K), cancellation of use and occupancy (Ex. L), a HUD statement (Ex. M), and an affidavit for Ocwen Loan Servicing (Ex. N). (Complaint, p. 1 (footnote); various exhibits).

**RESPONSE: Denied, but admitted only insofar as the original complaint did attach purported exhibits as stated herein and the Revised Second Amended Complaint incorporated those exhibits by reference.**

64.  As of the 2022/23 tax year, New York City Department of Finance records list Holdings as the Property's owner, with a market value of $715,000 and assessed value of $42,960. (Ex. 26, p. 1.)

**RESPONSE:  Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1. Not is it clear what Exhibit 26 is.**

65.  The Defendants Wilmington Savings Fund Society, FSB, and Verus Securitization Trust 2020-NPL1(WSF) took over the loan in 2022, i.e. after the filing of bankruptcy and after the default on the underlying Promissory Note by 12706 Holdings. WSF Pleadings

**RESPONSE: Denied. The statement is not supported by citation to potentially admissible evidence as required by Local Civil Rule 56.1, made applicable here by Local Bankruptcy Rule 7056-1.  An affiliate of Verus, IRP Fund II Trust 1A (IRP), purchased the loan from Planet in 2019, and it or an affiliate assigned the loan to the**

**Verus Securitization Trust 2020-NPL1 in 2020. Declaration of Mark Dellovo (Verus Decl.), previously submitted (ECF Doc. 150-36), ¶¶ 5-8.**

## COUNTERSTATEMENT OF FACTS[2]

1.  Verus Residential Loanco LLC (**Verus**) is the administrator of a trust called IRP Fund II Trust 1A (**IRP**). Verus Decl., ¶ 3, Ex. A.

2.  IRP is an affiliate of Verus. Verus Decl., ¶ 4.

3.  IRP entered into a Master Mortgage Loan Sale and Servicing Agreement with Planet in 2018, pursuant to which IRP would periodically purchase loans Planet originated. Verus Decl., ¶ 4, Ex. B.

4.  IRP purchased the 12706 Holdings loan from Planet on April 30, 2019. Verus Decl., ¶ 5, Exs. C, D.

5.  In connection with the purchase of the loan from Planet, Verus received many documents related to the loan as part of its due diligence process. Verus Decl., ¶ 6.

6.  The only documents referring to Ms. Stephens that Verus received from Planet, prior to purchasing the 12706 Holdings Inc. loan, were a title report dated March 12, 2019, and documents showing the transfer of title to the property at 127-06 177th Street in Jamaica, New York, to 12706 Holdings Inc. Verus Decl., ¶ 6, Exs. E, F.

7.  Before acquiring the loan, Verus did not receive any documents related to the negotiation process through which 12706 Holdings Inc. purchased the property from Ms. Stephens. Verus Decl., ¶ 6.

---

[2] Items 1 through 9 in this Counterstatement are identical to items 30 through 38 in Wilmington's own Local Rule 56.1 (Local Bankr. Rule 7056-1) statement in support of its previously filed motion for summary judgment. ECF Doc. 150-49.

84035164;1

8. Verus also received a copy of the title insurance policy associated with the March 27, 2019, loan to 12706 Holdings Inc. prior to purchasing the loan from Planet. Verus Decl., ¶ 7, Ex. H.

9. Verus's due diligence review of the documentation of the 2019 loan, prior to purchasing the loan, revealed no unusual characteristics that suggested Ms. Stephens might have been a victim of fraud. Verus Decl., ¶ 7.

10. Verus Securitization Trust 2020-NPL1 was formed in 2020 to be the issuer of a securitization of non-performing mortgage assets. Verus Decl., ¶ 8.

11. Wilmington is the trustee of the Verus Securitization Trust 2020-NPL1. Verus Decl., ¶ 9.

12. The 2019 loan to 12706 Holdings Inc. was one of the loans the ownership of which was transferred to Verus Securitization Trust 2020-NPL1 upon its formation in 2020. Verus Decl., ¶ 8; Supplemental Declaration of Mark Dellovo dated December 1,2025, submitted herewith, ¶ 6.

13. The assignment of mortgage dated May 2, 2022, from Planet to Wilmington Savings Fund Society, FSB (WSFS), not in its individual capacity but solely as owner trustee for Verus Securitization Trust 2020-NPL1 was recorded to align the recorded interest in the mortgage with its actual ownership in the public records. Verus Decl., ¶ 10.

14. The assignment of mortgage dated May 2, 2022, did not change the ownership interest in the loan, as Verus Securitization Trust 2020-NPL1 had already owned the loan for two years at the time of that assignment. *See* Supp. Decl., ¶ 6.


[signature on following page]

Dated: December 1, 2025
New York, New York

**AKERMAN LLP**


By: _____/s/ *Jordan M. Smith*_____
Jordan M. Smith
1251 Avenue of the Americas, 37th Floor
New York, NY 10020
(212) 880-3800
jordan.smith@akerman.com

*Attorneys for Defendant Wilmington Savings Fund Society, FSB (WSFS), not in its individual capacity but solely as owner trustee for Verus Securitization Trust 2020-NPL1 wrongly sued herein as both Wilmington Savings Fund Society, FSB (WSF) and Verus Securitization Trust 2020-NPL1*

84035164;1