UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>EVIS NEVERLANE STEPHENS,<br><br>Debtor. | 21-42857-jmm<br><br>Chapter 13 |
| EVIS NEVERLANE STEPHENS,<br><br>        Plaintiff,<br>    v.<br><br>MAXINE BONAPARTE,<br>LEZANTONIO WOODBURN,<br>12706 HOLDINGS, INC.,<br>CHARLES L. MESTER, ESQ.<br>PLANET MANAGEMENT GROUP, LLC,<br>PLANET HOME LENDING, LLC d/b/a<br>PLANET HOME SERVICING,<br>WILMINGTON SAVINGS FUND<br>SOCIETY, FSB (WSF),<br>VERUS SECURITIZATION TRUST 2020-<br>NPL1<br><br>        Appellees. | Adversary Proceeding No. 22-01037(jmm) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION BY DEFENDANTS, COUNTERCLAIMANTS AND CROSSCLAIMANTS PLANET MANAGEMENT GROUP, LLC AND PLANET HOME LENDING, LLC d/b/a PLANET HOME SERVICING FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P. 56, FED.R.BANKR.P. 7056 AND L.BANKR.R 7056-1**

# TABLE OF CONTENTS

**Page**

POINT I THE DEED WAS NOT THE PRODUCT OF FRAUD OR FORGERY (First Cause of Action) ........................................................................................................................................5

POINT II THE DEED SHOULD NOT BE RESCINDED (Second Cause of Action) ...................9

POINT III PLAINTIFF CANNOT VOID THE COMMERCIAL MORTGAGE PURSUANT TO THE BANKRUPTCY CODE (Fifteenth, Sixteenth and Seventeenth Causes of Action) ............15

    A.   Neither PMG Nor PHL Holds The Commercial Mortgage And, As Such, Should Not Be Parties To Plaintiff's Claims Seeking To Void the Commercial Mortgage ..............................15

    B.   Plaintiff Cannot Void the Mortgage Pursuant to the Bankruptcy Code ............................16

POINT IV THE HOLDER OF THE MORTGAGE IS ENTITLED TO AN EQUITABLE LIEN ..................................................................................................................................................22

12/10/2025 SL1 3881547v1 117589.00002

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Altmeyer,*
    268 B.R. 349 (Bankr. W.D.N.Y. 2001) ...................................................................21

*In re Bernard L. Madoff Inv. Secs. LLC,*
    12 F. 4th 171 (2d Cir. 2021) ...........................................................................20

*Cathay Bank v. Bonilla,*
    No. 17-civ-3551, 2023 WL 6812274 (E.D.N.Y. Oct. 16, 2023) ...........................14

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ......................................................................................4

*In re CNB Intern., Inc.,*
    440 B.R. 31 (W.D.N.Y. 2010) .......................................................................16

*In re Coleman,*
    21 B.R. 832 (Bankr. S.D. Tex. 1982) ........................................................19,21

*In re Davis,*
    169 B.R. 285 (E.D.N.Y. 1994) ...............................................................16,17,18

*Del Turco v. Speedwell Design,*
    623 F. Supp. 2d 319 (E.D.N.Y. 2009) ..............................................................6

*Dickerson v. Napolitano,*
    604 F.3d 732 (2d Cir. 2010) ...........................................................................4

*In re Dobbs,*
    597 B.R. 74 (Bankr. E.D.N.Y. 2019) .............................................................16

*Hetchop v. Woodlawn at Grassmere, Inc.,*
    116 F.3d 28 (2d Cir. 1997) .............................................................................6

*Hicks v. Baines,*
    593 F.3d 159 (2d Cir. 2010) ...........................................................................5

*In re Orange Cnty. Sanitation, Inc.,*
    221 B.R. 323 (Bankr. S.D.N.Y. 1997) ...........................................................19

*Price v. Cushman & Wakefield, Inc.,*
    808 F.Supp.2d 670 (S.D.N.Y. 2011) .............................................................4,5

*In re Scott,*
    572 B.R. 429 (Bankr. S.D.N.Y. 2017)............................................................................16

*In re Sherman,*
    67 F.3d 1348 (8th Cir. 1995) ....................................................................................19

*In re Toscano,*
    799 F. Supp. 2d 230 (E.D.N.Y. 2011) ..........................................................................7

**State Cases**

*Ackerman v. Ackerman,*
    120 A.D.3d 1279, 993 N.Y.S.2d 53 (App. Div. 2014) ......................................................7

*Arbor Commercial Mortgage, LLC v. Assocs. at the Palm, LLC,*
    95 A.D.3d 1147, 945 N.Y.S.2d 694 (App. Div. 2012) ....................................................23

*Boston Trade Bank v. Kuzon,*
    154 Misc. 2d 217 (N.Y. Sup. Ct. 1992) ......................................................................22

*Faison v. Lewis,*
    25 N.Y.3d 220, 10 N.Y.S.3d 185 (2015)........................................................................5

*First Nat'l Bank of Odessa v. Fazzari,*
    10 N.Y.2d 394, 223 N.Y.S.2d 483 (1961) ......................................................................6

*Fleming-Jackson v Fleming,*
    41 A.D.3d 175, 838 N.Y.S.3d 506 (App. Div. 2007) .....................................................12

*Great Eastern Bank v. Chang,*
    227 A.D.2d 589, 643 N.Y.S.2d 203 (App. Div. 1996) ....................................................23

*Gross v Neiman,*
    147 A.D.3d 505 (1st Dep't 2017) ..............................................................................12

*King v. Pelkofski,*
    20 N.Y.2d 326, 282 N.Y.S.2d 753 (1967)....................................................................22

*Scott v. Fields,*
    85 A.D.3d 756, 925 N.Y.S.2d 756 (App. Div. 2011) .......................................................7

*Sorenson v. Bridge Capital Corp.,*
    52 A.D.3d 265, 861 N.Y.S.2d 280 (App. Div. 2008) .......................................................7

*Wells Fargo Bank, N.A. v. Dalfin,*
    169 A.D.3d 970, 94 N.Y.S.3d 375 (App. Div. 2019) .....................................................23

*Whitehead v. Town House Equities, Ltd.,*
    8 A.D.3d 367, 780 N.Y.S.2d 15 (App. Div. 2004) ..........................................................7

3

*WMC Mortgage Corp. v. Vandermulen*,
    204 A.D.3d 865, 166 N.Y.S.3d 507 (App. Div. 2022) .................................................. 14

*Zeidel v. Dunne*,
    215 A.D.2d 472, 626 N.Y.S.2d 509 (App. Div. 1995) .................................................. 23

**Federal Statutes**

11 U.S.C. § 522(g) ............................................................................................................ 17

11 U.S.C. § 522(g)(1)(A)-(B) ............................................................................................ 17

11 U.S.C. § 550 ........................................................................................................... 16,21

11 U.S.C. § 550(a) ............................................................................................................ 19

11 U.S.C. § 550(b)(1)-(2) .................................................................................................. 19

28 U.S.C. § 157(a) .............................................................................................................. 3

28 U.S.C. § 157(b)(2)(B) and (I) ........................................................................................ 3

28 U.S.C. § 1334(b) ............................................................................................................ 3

Bankruptcy Code §§ 522(h), 544, and 550 ........................................................... 15, 16, 17

**State Statutes**

DCL § 273 .......................................................................................................................... 17

DCL § 273(a) ...................................................................................................................... 17

DCL § 277(a) ...................................................................................................................... 17

DCL § 277(b) ...................................................................................................................... 17

DCL § 277(b)(1)(ii)(A) ....................................................................................................... 17

N.Y. Real Property Law § 265-a ............................................................................. 8,10,11,12

New York Debtor and Creditor Law §§ 273, 275 ............................................................. 17

RPL § 265-a(2)(a) .............................................................................................................. 11

RPL § 265-a(2)(e) ......................................................................................................... 10,11

RPL § 265-a(2)(e)(i)-(vii) .................................................................................................. 10

RPL § 265-a(2)(e)(vii) ................................................................................................... 10,11

RPL § 265-a(2)(j) ........................................................................................................... 10

RPL § 266 ...................................................................................................................... 12

**Rules**

Fed.R.Civ.P. 56(a) ........................................................................................................... 4

12/10/2025 SL1 3881547v1 117589.00002

Defendants, Counterclaimants and Crossclaimants Planet Management Group, LLC ("Planet Management") and Planet Home Lending, LLC d/b/a Planet Home Servicing ("Planet Servicing") (collectively, the "Planet Defendants") respectfully submit this Memorandum of Law in support of their motion for summary judgment on the remaining claims asserted against them by Plaintiff and Counterclaim Defendant, Evis Neverlane Stephens, and on their Counterclaims against Plaintiff pursuant to Rule 56 of the Federal Rules of Civil Procedure, Rule 7056 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 7056-1.

## PRELIMINARY STATEMENT

Plaintiff defaulted on her 2006 mortgage and arranged a short sale to end a foreclosure case against her. Plaintiff alleges in her Revised Second Amended Adversary Complaint ("Revised SAC") that she was defrauded by Defendants Lezantonio Woodburn ("Woodburn"), Maxine Bonaparte ("Bonaparte"), and 12706 Holdings, Inc. ("12706 Holdings") (collectively, the "12706 Defendants"), as well as her then-lawyer, Defendant, Charles Mester ("Mester"), in connection with her March 27, 2019, short sale of property located at 127-06 177th Street, Jamaica, New York 11434 (the "Mortgaged Premises") to 12706 Holdings pursuant to a mortgage (the "Commercial Mortgage"), note (the "Note") and deed (the "Deed") (collectively, the "Commercial Mortgage Loan"). Plaintiff alleges that the 12706 Defendants, along with Mester, conspired with one another to dupe her into executing the Deed by fostering an impression that they were working to save her house when those parties unlawfully took title to her home for the benefit of 12706 Holdings. With no evidence of that much less any wrongdoing by the Planet Defendants and Defendants Wilmington Savings Fund Society, FSB ("Wilmington" or "WSF") and Verus Securitization Trust 2020-NPL1 ("Verus") (together with WSF, the "Verus Defendants"), Plaintiff claims that the Deed was the product of fraud or forgery, seeks to rescind the Deed, quiet title, and void the Commercial Mortgage.

1

Despite a two-hundred-plus page Revised SAC and voluminous record, the facts in the record boil down to: Plaintiff, a defendant in a 2006 foreclosure case facing the loss of the Subject Property, willingly and knowingly sold the Subject Property to 12706 Holdings to end the foreclosure case. Plaintiff admits to signing all the documents relevant to the sale and transfer of the Subject Property. Plaintiff also admits to having no idea who or what the Planet Defendants are and admits that neither of them attended the closing of the Commercial Mortgage Loan. Plaintiff admits that neither of the Planet Defendants (or WSF or Verus, for that matter) did anything wrong to or in relation to her.

Even if there were some question about what happened leading up to the closing of the Commercial Mortgage Loan on March 27, 2019, at which Plaintiff knowingly and willingly sold the Subject Property, the record shows that the Planet Defendants (and WSF and Verus, for that matter) are good faith encumbrancers and, some, subsequent transferees of an interest the new owner conveyed (a mortgage). PMG is simply the lender of a loan to 12706 Holdings used to finance the purchase of the Subject Property, and PHL is simply the mortgage servicer responsible for, among other things, collecting mortgage payments from 12706 Holdings. Even if Plaintiff could present some evidence questioning the legitimacy of the Commercial Mortgage Loan as a result of the alleged conduct of others, equity requires that PMG be granted an equitable lien on the Subject Property in the amount equal to the funds that it loaned to 12706 Holdings pursuant to the Commercial Mortgage Loan to satisfy Plaintiff's defaulted loan on the Subject Property. But for the use of those funds to pay off her 2006 mortgage, the foreclosure case action prosecuted by the prior mortgagee would have reached judgment and resulted in a foreclosure sale that would have divested Plaintiff of title to the Subject Property. Instead, Plaintiff's mortgage was satisfied,

allowing Plaintiff to remain in the Subject Property for another six years (and counting). Not to grant PMG an equitable lien would be to give Plaintiff an unconscionable windfall.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York dated August 28, 1986, as amended by the Order dated December 5, 2012. The Court may hear and determine this adversary proceeding because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (I).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

To avoid repetition, the Planet Defendants respectfully refer the Court to their Statement of Undisputed Material Facts pursuant to Local Rule 56.1 for a recitation of the relevant facts as to their substantive arguments.

## PROCEDURAL HISTORY

On November 15, 2021, Plaintiff filed a voluntary petition for chapter 13 bankruptcy. On May 9, 2022, Plaintiff commenced this Adversary Proceeding against only Defendants Bonaparte, Woodburn, 12706 Holdings, and Mester. (AP ECF Nos. 1 - 5). On November 1, 2022, Plaintiff filed a motion for leave to file an Amended Adversary Complaint, (AP ECF Nos. 22, 25), which the Court granted on December 1, 2022. (AP ECF Entry (Dec. 1, 2022)). On December 18, 2022, Plaintiff filed an Amended Adversary Complaint joining, among other new defendants, the Planet Defendants. (ECF No. 28). The Planet Defendants, among others, moved to dismiss the Amended Adversary Complaint. The Court granted in part, and denied in part, the Planet Defendants' motion by memorandum decision dated January 5, 2024, and an order dated January 12, 2024. (ECF Nos. 81, 83). The operative pleading is the Revised SAC, which Plaintiff filed on February 22, 2024. (ECF No. 93). On June 10, 2024, the Planet Defendants filed an Answer the Revised SAC

3

and asserted Counterclaims against Plaintiff on March 6, 2024, and Crossclaims against 12706 Holdings and Woodburn (some, only to the extent that the Commercial Mortgage and Deed are voided and rescinded). (ECF Doc. 102). Plaintiff's default was vacated on September 25, 2025. (ECF (Sept. 25, 2025)). Default was noted against 12706 Holdings and Woodburn as to the Planet Defendants' Crossclaims on November 5, 2024, and on December 12, 2024. (ECF No. (Nov. 5, 2024, Dec. 12, 2024)).[1] After the parties completed discovery, the Court set a briefing schedule for summary judgment, which was revised as to the Planet Defendants and Plaintiff on their claims and defenses against each other. (ECF No. 141, 157). The Planet Defendants now move for summary judgment on all causes of action against them and on their Counterclaims against Plaintiff.

## STANDARD OF REVIEW

Rule 7056 of the Federal Rules of Bankruptcy Procedure makes Rule 56 of the Federal Rules of Civil Procedure applicable in adversary proceedings. "A party is entitled to summary judgment when it shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering the motion, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the nonmoving party's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. *Price v. Cushman & Wakefield, Inc.*, 808 F.Supp.2d 670, 685 (S.D.N.Y.

---

[1] The Planet Defendants separately move for judgment by default on its Crossclaims against 12706 Holdings and Woodburn, some only to the extent that the Commercial Mortgage and Deed are voided and rescinded.

12/10/2025 SL1 3881547v1 117589.00002

2011). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); *see also Price,* 808 F. Supp. 2d at 685 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.").

## ARGUMENT

## POINT I

## THE DEED WAS NOT THE PRODUCT OF FRAUD OR FORGERY
### (First Cause of Action)

Plaintiff pled that she either did not sign the deed to 12706 Holdings at all, or that if she did sign it, she did not intend to transfer title to the Subject Property. (Revised SAC ¶¶ 65-66). When deposed, however, Plaintiff admitted that she knew what she was signing and did so for a specific purpose: to avoid the foreclosure that would have imminently divested her of title. (Mulvaney Dec. Ex. D (Tr.D1 250:14 – 251:9, 253:14 – 255:12. Tr.D1 Ex. R), Ex. E (Tr.D2 282:18-24)). To the extent she had any confusion, it was because she went out of her way to avoid asking questions or give the documents she signed more than a cursory look despite attending a closing that lasted over two hours. (Mulvaney Dec. Ex. D (Tr.D1 172:18-174:2)). Plaintiff's first cause of action is belied by the evidence in the record.

The Revised SAC's allegation that Plaintiff did not sign the deed dated March 27, 2019, transferring title to 12706 Holdings is false. A forged instrument is void *ab initio* and of no effect. *E.g., Faison v. Lewis,* 25 N.Y.3d 220, 224, 10 N.Y.S.3d 185, 187-188 (2015). That rule has no

pertinence here. Plaintiff admitted that she signed the deed. (Mulvaney Dec. Ex. D (Tr.D1 196:6-20), Ex. E (Tr.D2 346:13 – 347:6), Ex. J (Certification of Charles Mester dated August 3, 2022 ("Mester Dec."), previously submitted in this action as ECF Doc. 13-1, ¶ H (describing the routine closing on March 27, 2019). To be sure, there was no forgery.

Plaintiff may attempt to argue that, although she signed the deed, she was tricked into doing so and thought the document was something else. (*See, generally*, Revised SAC ¶ 66 (alleging various defendants "led her to believe" documents were preliminary to some other agreement)). If a person is deceived into signing a document that she reasonably believes is something else, this is fraud in the factum (also called fraud in the execution) and the instrument is void. *E.g., First Nat'l Bank of Odessa v. Fazzari,* 10 N.Y.2d 394, 397, 223 N.Y.S.2d 483, 485 (1961). To prevail on such a claim, however, Plaintiff would have to show the nature of the instrument was hidden from her and that she had no "reasonable opportunity to know of its character or essential terms." *Hetchop v. Woodlawn at Grassmere, Inc.,* 116 F.3d 28, 31-32 (2d Cir. 1997) (quotation omitted); *see, e.g., Del Turco v. Speedwell Design,* 623 F. Supp. 2d 319, 335-336 (E.D.N.Y. 2009) (to show "excusable ignorance" a party is not absolve of her basic responsibility to read what she is signing). Plaintiff cannot meet that test because she knew what a deed was and its legal function, *i.e.*, to transfer ownership of property. (Mulvaney Dec. Ex. D (Tr.D1 74:17-24, 132-20 – 133:7)). Plaintiff further testified that she knew that she was going to a closing on March 27, 2019, and that the purpose of that closing was to transfer ownership of the Subject Property to someone else in an effort to avoid a sheriff's sale. (Mulvaney Dec. Ex. D (Tr.D1 157:7 – 159:8, 167:17-24, 171:17-172:7), Ex. E (Tr.D2 321:14 – 322:5 (stating she knew Mr. Woodburn would be "taking over" the house before the 2019 closing)). That is because, among other things, Plaintiff had signed a residential contract of sale back in July 2018, eight months before, (Mulvaney Dec. Ex.

D (Tr.D1 190:2-4, Tr.D1 Ex. J), as well as documents for her mortgage company as part of a short sale application. (Mulvaney Dec. Ex. D (Tr.D1 Ex. R), Ex. E (Tr.D2 Ex. Y)). Plaintiff further explained that she knew her mortgage with Ocwen was in foreclosure, and that she owed over $600,000.00 on the mortgage at that time. (Mulvaney Dec. Ex. D (Tr.D1 160:3-6 ("Q: Just remind me, what were they saving your house from? A: The foreclosure."), 161:11-16 (estimating Plaintiff owed "600-something thousand" on Ocwen mortgage). In connection with the short sale of her property, Plaintiff signed many documents, including a contract of sale from July 2018, and other documents referencing a contract to sell the property, which were submitted to Ocwen to gain its approval to allow her to sell the property without paying the full amount due under the mortgage. (Mulvaney Dec. Ex. D (Tr.D1 Ex. J), Ex. E (Tr.D2 Exs. R, T)).

There is no evidence to support the first cause of action because Plaintiff *knew* she was signing a deed to transfer ownership of the Subject Property. Plaintiff reaffirmed that knowledge repeatedly in her testimony. Plaintiff knew the character and essential terms of the agreement by which she transferred her title to 12706 Holdings. Such facts disprove a fraud claim. *See, e.g., Whitehead v. Town House Equities, Ltd.,* 8 A.D.3d 367, 780 N.Y.S.2d 15, 17 (App. Div. 2004) (plaintiff had no claim for fraud where she knew nature and consequences of document she signed, received fair value, and was an experienced real estate investor). Even if Plaintiff was not a real estate maven and did not understand what she was signing (despite her testimony conceding that she did know she was transferring title by signing a deed), that would not suffice. Plaintiff must prove not only that she did not know the contents of the deed but could not have discovered them. *E.g., Sorenson v. Bridge Capital Corp.,* 52 A.D.3d 265, 861 N.Y.S.2d 280, 282 (App. Div. 2008). A party is obligated to read a legal document and cannot avoid the legal consequences by not reading it. *In re Toscano,* 799 F. Supp. 2d 230, 245 (E.D.N.Y. 2011); *Scott v. Fields,* 85 A.D.3d

7

756, 925 N.Y.S.2d 756, 758 (App. Div. 2011); *Sorenson*, 861 N.Y.S.2d at 282 (plaintiff's negligent failure to read document prevented proving justifiable reliance, an element of fraud in execution). In *Ackerman v. Ackerman,* 120 A.D.3d 1279, 1280, 993 N.Y.S.2d 53, 55 (App. Div. 2014), the court rejected a claim of fraud in the factum where the plaintiff had signed a deed in an attorney's office and after it was explained to her. The court there noted the cause of action "generally only arises when the signor is illiterate, blind, or not a speaker of the language in which the document is written[.]" 120 A.D.3d at 1280, 993 N.Y.S.3d at 55. Here, no one prevented Plaintiff from reading the documents at the closing or asking questions about them, as she conceded in her deposition. (Mulvaney Dec. Ex. D (Tr.D1 169:13 – 178:16)). Plaintiff testified that she had no questions about what was happening and is "not that kind of person, who asks questions like that." (*Id.* (Tr.D1 173:20-21)). Plaintiff had six months between when she met Mr. Mester for the first time and the date of closing to ask him any questions she might have, but she never did. (*Id.* (Tr. 155:8-23, 157:4-6), Ex. J (Mester Dec. ¶¶ F-G)). Throughout that time, Plaintiff was also represented by an attorney in the ongoing foreclosure. (*Id.* (Tr.D1 114:22-25), Ex. E (Tr.D2 280:19 – 281:2)).

After the closing, Plaintiff executed a contract with 12706 Holdings in which she recognized she had transferred her title. (*Id.* Ex. E (Tr.D2 Ex. X)). Such an action would have been nonsensical if she had no idea she had conveyed title. Of course she knew.

Plaintiff transferred title to the Subject Property to avoid foreclosure, and she knowingly did so on March 27, 2019. There was no fraud.

Accordingly, the Planet Defendants are entitled to summary judgment on the first cause of action alleging forgery or fraud in the execution.

8

**THE DEED SHOULD NOT BE RESCINDED**
**(Second Cause of Action)**

Plaintiff's second cause of action is to cancel the sale pursuant to N.Y. Real Property Law ("RPL") § 265-a, the Home Equity Theft Protection Act, on the basis that her agreement to sell the Subject Property to 12706 Holdings was a covered contract and that she did not receive certain notices required by the law. In its decision to deny the Planet Defendants' motion to dismiss this claim, the Court found that "Plaintiff does not allege the Planet Defendants made any representations to Plaintiff, much less representations respecting the documents Plaintiff signed at closing[,]" but held that, "if Plaintiff obtains judgment against [12706] Holdings that the deed conveying the [Subject Property] was obtained by fraud or fraud in factum, the [Commercial] [M]ortgage conveyed by [12706] Holdings to the Planet Defendants would be void[ ]" and "would be unenforceable by the Wilmington Defendants." (Opinion pp. 17-18).

There are no facts alleged in the Revised SAC or evidence in the record to show, or even tend to show, that either of the Planet Defendants interacted with Plaintiff in any way or that either participated in, or had anything to do with or knowledge of the negotiations between 12706 Holdings and Plaintiff that led to 12706 Holdings' acquisition of the Subject Property and the alleged forgery of the Subject Deed. Indeed, Plaintiff conceded that she never heard of the Planet Defendants and confirmed that they did not attend the closing, which testimony belies the allegation in the Revised SAC that "[u]pon information and belief the Planet Enterprise was present throughs its agents." (*Compare* Mulvaney Dec. Ex. D (Tr.D1 215:23 - 216:17) *with* Revised SAC ¶ 28)). When asked for specifics about the Planet Defendants' alleged conduct, Plaintiff conceded "I don't know anything about them. I don't have anything." (Mulvaney Dec. Ex. D (Tr.D1 218:13 - 220:22)). Furthermore, Planet Servicing is not a mortgage originator or

lender; it is, as Plaintiff alleges, a mortgage servicer responsible for only routine mortgage servicing activities such as collecting payments and handling customer service on a mortgage loan. (Revised SAC ¶ 10); (Declaration of Thomas O'Connell ("O'Connell PHL Dec.") ¶¶ 1, 34-36).

The record reflects that the only involvement, indeed, minimal at best, that PMG had with respect to the Commercial Mortgage Loan was to disburse funds to 12706 Holdings, part of which paid and satisfied Plaintiff's 2006 mortgage. (Declaration of Janina Woods ("Woods PMG Dec.") ¶¶ 1, 53-57, 35-37, 42-43, Exs. H, I). And, PHL had nothing to do with originating the Commercial Mortgage Loan; it merely serviced the Commercial Mortgage by collecting mortgage payments from 12706 Holdings when payments were being made before 12706 Holdings' default. (O'Connell PHL Dec. ¶¶ 1, 34-36). The Planet Defendants are only involved in the second cause of action to the extent Plaintiff seeks to cancel the Deed and, therefore, the Commercial Mortgage. But, neither PMG (the original lender) nor PHL (the mortgage servicer) are holders of the Commercial Mortgage and they are not parties to the Subject Deed. (Woods PMG Dec. ¶¶ 44-47. Exs. J, K); (O'Connell PHL Dec. ¶¶ 30-33, Exs. G, H). Accordingly, there is no Deed or Commercial Mortgage to rescind as it pertains to the Planet Defendants.

Even if Plaintiff's factual allegations were correct, which the documentary record and testimony belie, the Court should not cancel the Deed to 12706 Holdings or the Commercial Mortgage originated by PMG and of which WSF is now mortgagee because PMG was (and now WSF is) a *bona fide* encumbrancer for value, which takes it outside the definition of an "equity purchaser" subject to the statute. *See* RPL § 265-a(2)(e)(vii).

HETPA defines the term, "equity purchasers," which is used throughout section 265-a whether for cancellation, rescission of covered contracts, to mean "any person who or entity which acquires title to any residence in foreclosure or, where applicable, default, or the representative of

10

such person or entity as defined in this subdivision[.]" RPL § 265-a(2)(e). That definition contains seven exceptions, the seventh being "a bona fide purchaser or encumbrancer for value." RPL § 265-a(2)(e)(i)-(vii). HETPA also defines a "representative" to mean:

> A person who in any manner solicits, induces, arranges, or causes any equity seller to transfer title or solicits any member of the equity seller's family or household to induce or cause any equity seller to transfer title to the residence in foreclosure or, where applicable, default to the equity purchaser.

RPL § 265-a(2)(j).

When it rendered its decision, this Court expressly found that "the facts are thin" on this claim. (Opinion p. 21). Aside from Plaintiff's lone conclusory legal conclusion disguised as a factual allegation in Paragraph 74 of the Revised SAC that "[a]t all times mentioned herein Woodburn, Maxine, [12706] Holdings, and Planet Enterprise are an 'equity purchaser' within the meaning of Section 265-a, or the 'representative' of any equity purchaser, namely [12706] Holdings, within the meaning of 265-a[,]" Plaintiff acknowledges in her own pleading that PMG funded the Commercial Mortgage Loan Transaction and that PHL is nothing more than a mortgage servicer. (Revised SAC ¶¶ 9, 10, 74). Notably, neither of the Planet Defendants acquired title of or to the Subject Property as required by RPL § 265-a(2)(e).

In denying the Planet Defendants' motion to dismiss this claim, the Court noted that the then-operative "Amended Complaint allege[d] that an agent of the Planet Defendants was present at the closing. (Opinion p. 21 (citing Am. Compl. ¶ 28 (now Revised SAC ¶ 28)). As previously noted, when asked at her deposition about the Planet Defendants, Plaintiff conceded that she never heard of them. (Mulvaney Dec. Ex. D (Tr.D1 215:16 - 216:17)). Moreover, Plaintiff testified that no one from either PMG or PHL attended the closing. (*Id.* (Tr.D1 252:19 - 253:13)). When asked what, if anything, the Planet Defendants did wrong to her, Plaintiff responded "I don't know anything about them. I don't have anything." (*Id.* (Tr.D1 218:13 - 220:2)).

11

Even if an RPL § 265-a claim can be had and the Deed is deemed voidable as a result, the Subject Mortgage should not be cancelled because the evidence demonstrates that PMG was a "bona fide encumbrancer[ ] for value" as contemplated by HETPA. *See* RPL § 265-a(2)(e)(vii) (defining "equity purchaser" and providing seven exceptions thereto); RPL § 265-a(2)(a) (defining "Bona fide purchaser or encumbrancer for value" as "anyone acting in good faith who purchases the residential real property from the equity purchaser for valuable consideration or provides the equity purchaser with a mortgage or provides a subsequent bona fide purchaser with a mortgage, provided that he or she had no notice of the equity seller's continuing right to, or equity in, the property prior to the acquisition of title or encumbrance, or of any violation of this section by the equity purchaser as related to the subject property"). The rights of an encumbrancer for value are protected "unless it appears that [the encumbrancer] had previous notice of the fraudulent intent of [its] immediate grantor, or of the fraud rendering void the title of such grantor." RPL § 266; *see Fleming-Jackson v Fleming*, 41 A.D.3d 175, 838 N.Y.S.3d 506 (App. Div. 2007).

Pursuant to RPL § 266, the title of a *bona fide* purchaser or encumbrancer is not affected or impaired "unless it appears that he had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor." *Gross v Neiman*, 147 A.D.3d 505, 506 (1st Dep't 2017). Plaintiff has failed to produce any evidence that, before the Commercial Mortgage Loan to 12706 Holdings, either of the Planet Defendants had any knowledge or notice whatsoever of the fraud allegedly committed by the 12706 Defendants and/or Mester on Plaintiff, or that any violation of RPL § 265-a may have occurred. PMG simply disbursed funds to 12706 Holdings pursuant to a transaction that was, to all appearances, a simple commercial mortgage loan made to finance rehabilitation and re-sale of property that 12706 Holdings was purchasing in unremarkable circumstances. Nothing in the loan documentation suggested any

12

deed fraud. (Woods PMG Dec. ¶¶ 53-57). The documentation available to PMG during the loan application process showed nothing unusual. (*Id.* ¶¶ 56-57, Ex. M). The only information about Plaintiff in the material available to PMG were references to her as a prior owner, including information about her deed, 2006 mortgage, and the foreclosure action in a title report. (*Id.* ¶¶ 38-41, Exs. F, G); (O'Connell PHL Dec. ¶¶ 27-29, Exs. E, F). As to PHL, it merely serviced the Commercial Mortgage Loan after it closed and was funded. (O'Connell Dec. ¶ 36). Plaintiff first challenged the Commercial Mortgage Loan in 2022, three years after she sold the Subject Property and had her 2006 mortgage paid off, by commencing this Adversary Proceeding long after PMG funded the Commercial Mortgage Loan.

In addition, any claim that the Planet Defendants are not *bona fide* encumbrancers is belied by documents and testimony in the record and documents attached to the Revised SAC. Specifically, Exhibit N to the Revised SAC attaches copies of an "Affidavit of 'Arm's Length Transaction" dated January 4, 2019, and February 25, 2019, and executed by Plaintiff on March 27, 2019, in connection with the short-pay-off of Plaintiff's 2006 mortgage from the sale of the Subject Property to 12706 Holdings. Pursuant to the Affidavits of Arm's Length Transaction, Plaintiff certified under penalty of perjury that "[t]he sale of the Mortgaged Premises is an 'arm's length' transaction, between parties who are unrelated and unaffiliated by family, marriage or commercial enterprise[.]" (Revised SAC Ex. N (Aff. Of Arm's Length Transaction ¶ (a)). Plaintiff further certified under penalty of perjury that "[t]here are no agreements, understandings or contracts between the parties that the [Debtor] will remain in the Mortgaged Premises as a tenant or later obtain tile or ownership of the Mortgaged Premises, except to the extent that the [Debtor] is permitted to remain as a tenant on the Mortgaged Premises for a short term, as is common and customary in the market, but no longer than ninety (90) days, in order to

13

facilitate relocation[.]" (*Id.* (Aff. Of Arm's Length Transaction, ¶ (b)). When asked about that document in her deposition, Plaintiff conceded that Ocwen and the foreclosing plaintiff in the 2006 Foreclosure agreed, pursuant to the Affidavit of Arm's Length Transaction, to reduce the amounts owed to it based on representations made by Plaintiff in that document and in the January 4, 2019, agreement to sell the Subject Property. (Mulvaney Dec. Ex. D (Tr.D1 256:6-16)). Plaintiff further conceded that nowhere in the Affidavit of Arm's Length Transaction does it mention either of the Planet Defendants. (*Id.* (Tr.D1 257:2 - 11)).

When asked about the Application of Suspense Funds Affidavit, Plaintiff confirmed that it contained her signature and that it referenced a payoff quote that she received for her 2006 Mortgage. (*Id.* (Tr.D1 258:15, 260:6 - 12, 24 – 261:15)). Plaintiff again acknowledged that neither of the Planet Defendants appeared on the Application for Suspense Funds Affidavit. (*Id.* (Tr.D1 261:16-22)).

Correspondingly, the Revised SAC also attaches a Use and Occupancy Agreement that contains a repurchase provision, which was dated January 1, 2020, more than nine months *after* the closing of the Subject Transaction. By simple chronology alone, the existence of the Use and Occupancy Agreement could not have been known to PMG at the time of the Commercial Mortgage on March 27, 2019. Plaintiff conceded in her deposition that nowhere in the Use and Occupancy Agreement does it mention either of the Planet Defendants. (*Id.* (Tr.D1 257:2 - 11)).

Plaintiff will presumably contend argue that PMG was under some obligation to inquire as to the circumstances of the Commercial Mortgage Loan. But the obligation to make a further inquiry arises only when an encumbrancer is aware of acts that would lead a reasonable, prudent lender to make inquiries about the transaction. *WMC Mortgage Corp. v. Vandermulen*, 204 A.D.3d 865, 866, 166 N.Y.S.3d 507 (App. Div. 2022). The inquiry obligation arises when

14

there are actual facts known to the encumbrancer that suggest the underlying transaction is tainted by fraud. *See Cathay Bank v. Bonilla*, No. 17-civ-3551, 2023 WL 6812274, at *17-18 (E.D.N.Y. Oct. 16, 2023) (information known to defendant from bankruptcy filings, pending foreclosure, and knowledge a transfer was made without consideration obligated defendant to make further inquiry). Here, there was no information about Plaintiff that would raise a question. It is hardly unusual for a person facing foreclosure to sell her property at short-sale. (Woods PMG Dec. ¶¶ 56-57). Nothing available to PMG suggested any further investigation was needed.

Accordingly, the Planet Defendants are entitled to summary judgment on the second cause of action alleging forgery or fraud in the execution.

## POINT III

### PLAINTIFF CANNOT VOID THE COMMERCIAL MORTGAGE PURSUANT TO THE BANKRUPTCY CODE
### (Fifteenth, Sixteenth and Seventeenth Causes of Action)

A.     Neither PMG Nor PHL Holds The Commercial Mortgage And, As Such, Should Not Be Parties To Plaintiff's Claims Seeking To Void the Commercial Mortgage

Plaintiff was granted leave to, and did, replead causes of action under sections 522(h), 544, and 550 of the Bankruptcy Code, as her Fifteenth, Sixteenth, and Seventeenth causes of action. Plaintiff seeks to avoid the transfer of title to 12706 Holdings on March 27, 2019, and as a consequence, cancel the Commercial Mortgage that 12706 Holdings took out against the Subject Property with PMG (and that WSF now holds). PMG no longer owns and holds the Commercial Mortgage; WSF does pursuant to a transaction between PMG and WSF. (Woods PMG Dec. ¶¶ 44-47, Exs. J, K); (O'Connell Dec. ¶¶ 30-33, Exs. G, H). Accordingly, PMG and PHL should not be parties to the Fifteenth, Sixteenth and Seventeenth Causes of Action. Pursuant to a Master Mortgage Loan Sale and Servicing Agreement ("Master Servicing Agreement") between PMG and IRP Fund II Trust 1A, an affiliate of Verus Residential Loanco, LLC, IRP Fund II Trust 1A

purchased the Commercial Mortgage Loan from PMG on April 30, 2019. (Woods PMG Dec. ¶¶ 44-45, Ex. J); (O'Connell Dec. ¶¶ 30-31, Ex. G). As a result of that transaction, PMG is no longer the holder of the Commercial Mortgage. (Woods PMG Dec. ¶ 46); (O'Connell Dec. ¶ 32). Moreover, pursuant to an Assignment of Mortgage ("Assignment") that was recorded on May 12, 2022, the Commercial Mortgage was assigned to PHL, as servicer for Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as owner trustee for Verus Securitization Trust 2020-NPL1, which is the owner trustee of Verus Securitization Trust 2020-NPL1, the trust that now owns the Commercial Mortgage Loan and holds the Commercial Mortgage. (Woods PMG Dec. ¶¶ 46-47, Ex. K); (O'Connell Dec. ¶¶ 32-33, Ex. H).

B.     Plaintiff Cannot Void the Mortgage Pursuant to the Bankruptcy Code

Section 522(h) allows a debtor to avoid a property transfer when it is avoidable by the trustee under sections 544 or 548, the trustee does not attempt to avoid the transfer, the debt could exempt the property if the trustee recovered it under section 550, the transfer was involuntary, and the debtor did not conceal the property. *E.g.*, *In re Davis,* 169 B.R. 285, 290 (E.D.N.Y. 1994). Section 544 in turn gives power to the trustee to avoid any fraudulent transfer of interest that would be voidable under state law. *In re CNB Intern., Inc.*, 440 B.R. 31 (W.D.N.Y. 2010).

In its decision dated January 5, 2024, the Court declined to decide whether Plaintiff had standing to bring an action to avoid the transfer of her title pursuant to Section 544 of the Bankruptcy Code. As the Court noted, the statute expressly grants the trustee the right to bring such a claim and most courts hold a chapter 13 debtor does not have standing to sue. (ECF Doc. 81 at p. 41). The Second Circuit does not appear to have passed on the issue yet. The majority, based on the plain language of the statute, vests the power to proceed under Section 544 only in the trustee. Applying the majority rule, Plaintiff cannot proceed, as she purports to do, under Section 544. *See In re Dobbs,* 597 B.R. 74, 80 (Bankr. E.D.N.Y. 2019) (following majority view).

16

The Court also stated that no courts "holding that chapter 13 debtors may not use Bankruptcy Code section 544 discuss whether fraudulent conveyance actions are property of the estate." But in *In re Scott,* 572 B.R. 429 (Bankr. S.D.N.Y. 2017), the court determined that the Bankruptcy Code did not authorize a chapter 13 debtors to step into the shoes of a trustee and pursue avoidance actions pursuant to Section 544 of the Bankruptcy Code. *Id.* at 514. The court also found that the other claims asserted by debtor constituted causes of action which would become property of the estate pursuant to Section 541. *Id.* at 520. This reasoning suggests that the fraudulent transfer causes of action would still be property of the estate and do not upset a finding that a Chapter 13 debtor does not have standing to stand in the shoes of a trustee.

Assuming Plaintiff has standing, she is using Section 544 to sue under New York Debtor and Creditor Law ("DCL") §§ 273, 275. DCL § 273 applies by reference to Bankruptcy Code Section 544. *Id.* at 290. A transfer made is voidable as to a creditor if the debtor made the transfer or incurred the obligation 1) with actual intent to hinder, delay or defraud any creditor of the debtor or 2) without receiving reasonably equivalent value in exchange for the transfer or obligation, and the debtor was either engaged in a business for which the remaining assets of the debtor were unreasonably small, or intended to incur debts beyond the debtor's ability to pay as they became due. DCL § 273(a). It is Plaintiff's burden to make that showing. *See In re Davis*, 169 B.R. at 295. If a transfer is avoidable, a judgment may be taken for value of the asset transferred. DCL § 277(b). A transfer or obligation is not voidable against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee. DCL § 277(a). Judgment may not be entered against a good faith transferee for value. DCL § 277(b)(1)(ii)(A).

Plaintiff claims the sale of the Subject Property was involuntary because the trustee could have avoided it under 11 U.S.C. § 522(g). That provision allows a debtor to claim an exemption

17

in property the trustee recovers as long as the debtor's transfer was not "voluntary" and the debtor did not conceal the property. 11 U.S.C. § 522(g)(1)(A)-(B). Plaintiff cannot prevail on her claim because her transfer of the Subject Property was voluntary. Plaintiff alleges in the Revised SAC that she thought she was signing papers "necessary for a loan modification" on March 27, 2019, (Revised SAC ¶ 173), but that allegation is belied by Plaintiff's own testimony - a true reflection of the actual events rather than manufactured allegations. As Plaintiff's deposition testimony and the documents show, Plaintiff knew she was transferring title to 12706 Holdings and not doing a loan modification with Ocwen. (*E.g.*, Mulvaney Dec. Ex. E (Tr.D2 333:13-15; 343:20-23)). Plaintiff was well-acquainted with what a loan modification involves, having entered into a loan modification with Ocwen several years before. (*Id.* Ex. D (Tr.D1 112:5-10, 122:25-123:4, Tr.D1 Exs. H, N at 7)). As Plaintiff testified, when she completed a loan modification with Ocwen, there was no closing in an attorney's office, just documentation sent to her by mail at her house. (*Id.* (Tr.D1 168:7-22)). That is radically different from a real estate closing, as she knew from having attended a closing before. At the closing on March 27, 2019, Plaintiff was not seeking to modify her loan but to sell the Subject Property to 12706 Holdings to avoid and end a foreclosure. In fact, Plaintiff conceded that she understood that, as a result of the payoff of the 2006 Mortgage, a release was recorded and that the Subject Property was purchased in that transaction. (*Id.* Ex. E (Tr.D2 271:14 - 272:4)). Although Plaintiff claims she would somehow get the property back, Plaintiff could not point to any document in the record or even explain when or how that was to happen. (*Id.* (Tr.D2 299:4-19)). This case is distinguishable from *In re Davis*, 169 B.R. 285, cited by this Court in its prior decision as supportive of a potential claim by Plaintiff. In *Davis*, there was a sale and leaseback arrangement pursuant to which the debtor conveyed title to real property. However, there, the debtor showed there was substantial equity in the property and further demonstrated she

18

had repeatedly stated she did not want to transfer the title but was cajoled by a false promise that she would immediately obtain the title back after closing. The Court concluded the Davises did not know the material facts of the transaction and concluded there were under substantial pressure to transfer the property, making the conveyance "involuntary" as a matter of law. Here, Plaintiff cannot point to any aspect of the transaction about which she did not know, nor that she did not have an opportunity to learn about in the six months between when she first met with Mr. Mester and the closing on March 27, 2019. Nor was she rushed at the closing, which lasted about two hours. (Mulvaney Dec. Ex. D (Tr.D1 172:8-10), Ex. J (Mester Decl., ¶ H)). In *Davis,* the Court credited the testimony of Mrs. Davis that she was rushed and "didn't have a chance to read nothing." By contrast, Ms. Stephens stated she "looked at" the documents at the closing but did not ask any questions about them. (*Id.* (Tr.D1 172:18-174:2)).

Even if Plaintiff could make a *prima facie* showing of the ability to avoid her voluntary transfer of her property in 2019, the Court should grant the Planet Defendants summary judgment on these claims because neither Planet Defendant had information about Plaintiff's particular circumstances or the details of any negotiation leading to her sale of the property and satisfaction of her mortgage. (Woods PMG Dec. ¶¶ 17, 53); (O'Connell Dec. ¶¶ 34, 36). PMG is simply the provider of a mortgage loan to 12706 Holdings, which PMG transferred to Wilmington, and that PHL serviced. (Woods PMG Dec. ¶¶ 1, 56-57); (O'Connell Dec. ¶¶ 1, 35-36). Moreover, nothing provided to PMG during the application process showed anything untoward about the loan that would have caused PMG to undertake any sort of investigation. (Woods PMG Dec. ¶¶ 53-57, Ex. M). Pursuant to 11 U.S.C. § 550(a), to the extent a transfer is avoided, the trustee may recover the property transferred or the value of the property from the initial transferee, or any immediate or mediate transferee of the initial transferee. But a trustee may not seek recovery from an immediate

19

or mediate transferee of the initial transferee (*i.e.,* subsequent transferee) if the transferee "takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided," or any "immediate or mediate good faith transferee of such transferee." 11 U.S.C. § 550(b)(1)-(2). If a mediate or immediate transferee of the initial transferee has shown it took the transfer for value, in good faith, and with no knowledge of the transfer's voidability, then subsequent transferees need only show good faith. *In re Coleman*, 21 B.R. 832, 836 (Bankr. S.D. Tex. 1982). Knowledge, as used in Section 550(b), is a "stronger term than notice," and a transferee has knowledge if he knew facts that would lead a reasonable person to believe the property transferred was recoverable." *In re Sherman*, 67 F.3d 1348, 1357 (8th Cir. 1995). And the value given by the subsequent transferee is not value that goes to the debtor, and the reference to "value" goes to what the transferee gave up rather than what the debtor received. *In re Orange Cnty. Sanitation, Inc.*, 221 B.R. 323, 328 (Bankr. S.D.N.Y. 1997). Plaintiff admits that the Planet Defendants were subsequent transferees. (Revised SAC ¶ 214 (identifying PMG and PHL as immediate transferees)).

To evaluate the good faith defense, the court must conduct a three-step inquiry. First, a court must examine what facts the defendant knew, which is a subjective inquiry. Second, a court determines whether the facts known put the transferee on inquiry notice, that is, whether the facts would have led a reasonable person to conduct further inquiry into a debtor-transferor's possible fraud. Third, if the court determined that a transferee was on inquiry notice, the courts must inquire whether diligent inquiry would have uncovered the fraudulent purpose of the transfer. *In re Bernard L. Madoff Inv. Secs. LLC*, 12 F. 4th 171, 191-92 (2d Cir. 2021).

Plaintiff cannot prevail against the Planet Defendants (or WSF) due to Bankruptcy Code Section 550(b)(1) because, as Plaintiff testified, PMG provided substantial value and benefit to

Plaintiff, did so in good faith, and without knowledge of the voidability of the transfer avoided. (Mulvaney Dec. Ex. D (Tr.D1 250:14 – 251:9, 253:14 – 255:12. Tr.D1 Ex. R), Ex. E (Tr.D2 282:18-24)). As discussed at length herein, the 2006 Mortgage was paid off with funds provided by PMG, giving, as security, the Commercial Mortgage that PMG held and that WSF now holds, and that the corresponding foreclosure case was dismissed. (Woods PMG Dec. ¶¶ 35-43, Exs. F, G, H, I, J); (O'Connell PHL Dec. ¶ 24-29, Exs. D, E, F). Plaintiff acknowledges as much. (Mulvaney Dec. Ex. E (Tr.D2 274:23 – 275:3, 281:15 – 282:24, 283:8 – 284:11, Exs. T, W)). As previously discussed, there was nothing in the information available to PMG at the time it made the loan to suggest that the underlying Commercial Mortgage Transaction was a product of fraud. (Woods PMG Dec. ¶¶ 53-57, Ex. M). PMG never had knowledge, or inquiry notice, of any fraud before loaning funds to 12706 Holdings. (*Id.*). So too PHL, which became involved only after the loan was funded to service it; chronologically, it could not have had knowledge, or inquiry notice, that the loan was the product of any fraud before the funds were disbursed to 12706 Holdings by PMG. (O'Connell PHL Dec. ¶¶ 1, 34-36).

In *In re Foster,* the plaintiff came to the court with a similar claim of fraudulent transfer through a sale-leaseback transaction when she faced foreclosure. No. 08-2206, 2012 WL 764426, at *1-*2 (Bankr. D.N.J. Mar. 7, 2012). HSBC was a holder in due course of the note that resulted from the transaction and became the holder as part of a mortgage-backed securities transaction. *Id.* at *7. The court denied the plaintiff's request to cancel the lien of the mortgage pursuant to Section 550. "The Court need not address whether Plaintiff can sustain a claim for fraudulent transfer . . . . Rather, the issue is whether Plaintiff can recover from HSBC/MERS under 11 U.S.C. § 550." *Id.* at *14. "HSBC/MERS took the [loan] for value and had no knowledge of [the allegedly fraudulent transaction] with Plaintiff." *Id.* Just so here. PMG provided value to Plaintiff with no

21

indication of what led to 12706 Holdings' purchase from Plaintiff. (Mulvaney Dec. Ex. D (Tr.D1 250:14 – 251:9, 253:14 – 255:12. Tr.D1 Ex. R), Ex. E (Tr.D2 282:18-24)); (Woods PMG Dec. ¶¶ 53-57). That Plaintiff had been in foreclosure did not present any issue or reason to investigate further. (Woods PMG Dec. ¶ 57). The facts did not provide the Planet Defendants with "knowledge" of the voidability of the transfer, because the fact the prior owner - Plaintiff - was in distressed circumstances was not unusual. This is not a case where the loan characteristics obviously give the lender knowledge. *Cf. In re Altmeyer,* 268 B.R. 349, 355 (Bankr. W.D.N.Y. 2001) (mortgage lender to whom debtor's spouse mortgaged property was not insulated under Section 550(b) when the initial transferee purchased property for $1.00.)

Nor may Plaintiff prevail to recover the Subject Property pursuant to section 550(b)(2). Any good faith transferee of a transferee who took for value, in good faith, and without knowledge of the voidability of the transfer, is protected under the Bankruptcy Code. *Coleman,* 21 B.R. at 836. PMG received its conveyance, which it later transferred to WSF, from 12706 Holdings, the recipient of the conveyance of title to the Subject Property from Plaintiff. PMG provided substantial value in that the 2006 Mortgage, which was in foreclosure, was paid off, the foreclosure case was dismissed, and Plaintiff had no further obligations under the 2006 Mortgage. As PMG has shown that it acted in good faith, it (and WSF) is (are) protected pursuant to Section 550(b)(2).

## POINT IV

## THE HOLDER OF THE MORTGAGE IS ENTITLED TO AN EQUITABLE LIEN

As noted above, Plaintiff seeks to obtain the Subject Property free and clear of any obligations – to be sure, a massive windfall. (Mulvaney Dec. Ex. E (Tr.D2 301:12, 22 ("I want back my property"), 301:24 ("I'm not paying anyone for it."). The law, however, does not countenance such an inequitable result. Even Plaintiff seems to admit such a result would be wrong. Indeed, Plaintiff then testified, "I continue to pay the mortgage. That's what the agreement

22

was," although she later stated she did not know if there was a mortgage on the property now. (*Id.* (Tr.D2 302:2-11)).

If Plaintiff were to succeed in canceling the Deed and Commercial Mortgage, the Court should equitably subrogate the present holder of that Commercial Mortgage – WSF, which took from PMG – into the position of the 2006 Mortgage. The mortgagee of the 2006 Mortgagee accepted the funds provided by PMG (WSF's predecessor-in-interest) as satisfaction for the 2006 Mortgage. (Mulvaney Dec. Exs. B (Release of Mortgage), H (Motion to Discontinue), I (Order (May 17, 2019)), Ex. E (Tr.D2 Exs. S, V, W)). PMG, as predecessor-in-interest to WSF, is therefore entitled to summary judgment on its counterclaim for an equitable mortgage for the benefit of WSF.

Equitable subrogation "plays upon notions of fairness to preclude situations where a party might be unjustly enriched by the acts of another in discharging an existing lien, placing another unknown lienholder in a superior position." *King v. Pelkofski*, 20 N.Y.2d 326, 332-333, 282 N.Y.S.2d 753 (1967); *Boston Trade Bank v. Kuzon*, 154 Misc.2d 217 (N.Y. Sup. Ct. 1992) (citing *King v. Winkelman v. Excelsior Ins. Co.*, 85 N.Y.2d 577, 581, 612 N.Y.S.2d 994 (1995) (doctrine liberally applied for protection of those who are its natural beneficiaries)); *see also Arbor Commercial Mortgage, LLC v. Assocs. at the Palm, LLC*, 95 A.D.3d 1147, 1149, 945 N.Y.S.2d 694 (App. Div. 2012).

Where, as here, "the funds of a mortgagee are used to discharge a prior lien upon the property of another, the doctrine of equitable subrogation applies to prevent unjust enrichment by subrogating the mortgagee to the position of the senior lienholder." *Great Eastern Bank v. Chang*, 227 A.D.2d 589, 589, 643 N.Y.S.2d 203 (App. Div. 1996); *see also Zeidel v. Dunne*, 215 A.D.2d 472, 473, 626 N.Y.S.2d 509 (App. Div. 1995) ("The court properly determined that the bank

should be subrogated to the rights of the prior mortgagees to the extent that its funds were used to discharge those obligations").

Courts have affirmed that equitable subrogation applies even when the underlying transaction was tainted by fraud, as Plaintiff alleges here. In *Carver Federal Savings Bank v. Baptiste*, the Appellate Division, Second Department, affirmed the grant of summary judgment on an equitable subrogation claim by the plaintiff mortgagee, which had expended funds to pay off a prior mortgage. The plaintiff therefore held an equitable lien even if the written mortgage was a product of forgery (and so void). *See* 180 A.D.3d 748, 749, 118 N.Y.S.3d 667 (App. Div. 2020); *accord Wells Fargo Bank, N.A. v. Dalfin*, 169 A.D.3d 970, 972, 94 N.Y.S.3d 375 (App. Div. 2019) (even if defendant's signature on mortgage was forged, "plaintiff could still recover against him on the theory of equitable subrogation based upon its payoff of the prior mortgage and liens against his property at the closing of the subject mortgage").

Plaintiff acknowledged the facts demonstrating the entitlement to an equitable lien based on equitable subrogation. First, Plaintiff testified that she signed a mortgage on the Subject Property to secure a loan dated August 29, 2006. (Mulvaney Dec. Ex. D (Tr.D1 88:9-1, Tr.D1 Exs. G, L), Ex. E (Tr.D2 293:16 – 295:4)). At the time of the 2019 closing, the 2006 Mortgage loan was serviced by Ocwen. (*Id.* (Tr.D1 105:17-21)), Ex. E (Tr.D2 293:2-7)). That mortgage was in foreclosure status, with the loan's owner, Deutsche Bank National Trust Company as Trustee for Novastar Mortgage Funding Trust, Series 2006-5 Novastar Home Equity Loan Asset-Backed Certificates, Series 2006-5, then pursuing foreclosure in state court. (*Id.* Ex. D (Tr.D1 Exs. N, Q)). Second, Plaintiff testified that, after attending the closing through which she transferred title in 2019, she never heard from Ocwen again and that the Ocwen mortgage had been satisfied. (*Id.* Ex. E (Tr.D2 293:16-22) ("Listen to me carefully, when the house was

24

transferred – you guys know what's going on. Ocwen never sent anything to me again."); Tr. At 294:8-11 ("Q: Was it your understanding at that point that your relationship with Ocwen was over because the loan has been paid off. A: Of course."). That testimony is consistent with the documentary evidence, which shows the 2006 loan was satisfied through the funds disbursed by PMG to 12706 Holdings on the very same day in 2019. (Woods PMG Dec. ¶¶ 35-43, Exs. F, G, H, I); (O'Connell PHL Dec. ¶¶ 24-25, Ex. D). The documentation includes a HUD-1 settlement statement that Plaintiff and 12706 Holdings signed at closing in 2019. (Mulvaney Dec. Ex. E (Tr.D2 275:8-20, Tr.D2 Ex. T)). That HUD-1 shows where funds were to be disbursed and, and as relevant here, shows in section 504 a line item of $337,500.00 being allocated for "payoff of first mortgage lien." (Woods PMG Dec. ¶¶ 42-43, Exs. H, I); (O'Connell PHL Dec. ¶¶ 24-25, Ex. D); (Mulvaney Dec. Dec. Ex. E (Tr.D2 Ex. T)). There is also a separate HUD-1 showing the loan to 12706 Holdings that same day, and a mortgage from 12706 Holdings to PMG that same day in the amount of $535,000, an amount just slightly below the listed balance in the attorney IOLA account from which the wired funds to pay off Ocwen were transmitted. (Mulvaney Dec. Ex. E (Tr.D2 Ex. U (attorney account with balance of $552,797.70 used to wire funds to Ocwen on March 29, 2019))). Disbursement records show the disbursement of PMG's funds to 12706 Holdings' attorney on March 27, 2019. (Woods PMG Dec. ¶¶ 42-43, Ex. I). In addition, the documentary evidence shows that shortly after the March 27, 2019, closing of the Subject Property sale and mortgage loan transactions, Ocwen discontinued its foreclosure action against Plaintiff and filed a release of the 2006 Mortgage. (Mulvaney Dec. ¶¶ 12-15, Exs. B, G, H, I, E (Tr.D2 Ex. S)). The $337,500.00 to pay off Ocwen came from funds provided by PMG. (Woods PMG Dec. ¶ 35). Those facts present the classic equitable subrogation scenario.

## **CONCLUSION**

For the aforementioned reasons, the Planet Defendants respectfully request that the Court grant its motion for summary judgment.

STEVENS & LEE, P.C.

Dated: December 10, 2025
New York, New York

By: /s/ Ryan P. Mulvaney
Ryan P. Mulvaney, Esq.
669 River Drive
Suite 201
Elmwood Park, New Jersey 07074
and
485 Madison Avenue
20th Floor
New York, New York 10022
Telephone: (201) 857-6777
Facsimile: (610) 371-8597
ryan.mulvaney@stevenslee.com
*Counsel for Defendants,*
*Planet Management Group, LLC and Planet Home*
*Lending, LLC d/b/a Planet Home Servicing*

26