### FIRST CAUSE OF ACTION
#### Cancellation of Deed
#### Based upon Forgery or Fraud in Factum
#### (Against all Defendants)

64.    Plaintiff incorporates the allegations contained in paragraphs 1 through 57, inclusive, as though fully set forth at this place.

65.    Plaintiff did not sign the subject grant deed nor did she authorize anyone to sign same.

66.    Plaintiff never knowingly signed or intended to sign the subject grant deed. Plaintiff signed documents presented to her by Maxine, Woodburn, Mester, Planet Enterprise which they led her to believe were preliminary to an agreement of the parties, and did not intend to transfer title to her home at the time these documents were signed.

67.    Because of the forgery of plaintiff's name to the grant deed or the fraud in the factum in obtaining plaintiff's signature, the subject grant deed is null and void *ab initio*.

68.    Plaintiff intends service of the summons and complaint in this action to serve as a notice of cancellation of the subject grant deed.

69.    Plaintiff is under a reasonable apprehension that the subject grant deed will cause serious injury if left outstanding. Plaintiff now seeks to cancel the subject grant deed.

WHEREFORE, plaintiffs pray for judgment as follows:

a.    That this Court declare that the subject grant deed is null and void *ab initio* and of no effect;
b.    For costs of suit;
c.    For such other and further relief as this court deems just and proper.

### SECOND CAUSE OF ACTION
#### Rescission of Equity Purchase Contract and Grant
#### Deed, Declaratory Relief and Damages
#### (Against all Defendants)

70.    Plaintiff incorporates the allegations contained in paragraphs 1 through 69 inclusive, as though fully set forth at this place.

27

71.    All statutory references in this cause of action are to the NY Real Property Laws unless otherwise indicated.

72.    At all times herein mentioned plaintiff was an "equity seller" within the meaning of Section 265-a (2)(f).

73.    At all times herein mentioned Holdings was an "equity purchaser" within the meaning of Section 265-a (2)(e).

74.    At all times mentioned herein Woodburn, Maxine, Holdings, and Planet Enterprise are an "equity purchaser" within the meaning of Section 265-a, or the "representative" of an equity purchaser, namely Holdings, within the meaning of Section 265-a

75.    At all times herein mentioned the subject premises was a "residence in foreclosure" within the meaning of Section 265-a.

76.    Because Woodburn, Maxine, Mester are and were Holdings representative and the transaction related to the Real Property facilitated by Planet Enterprise's itself and through their agents, Woodburn, Maxine, Mester, Planet Enterprise are liable for all damages resulting from any action or omission of Woodburn, Maxine, Mester, Planet Enterprise regarding Holdings' acquisition of the subject premises pursuant to section 265-a.

77.    In the transaction involving the transfer of plaintiffs the subject premises in foreclosure, all Defendants took unconscionable advantage of plaintiff, in violation of section 265-a.

78.    Plaintiff is informed and believes and thereupon alleges that she was never presented with and never signed any equity purchase contract in the transaction involving plaintiff's home in foreclosure.

79.    If in fact plaintiff signed an equity purchase contract in the transaction involving plaintiff's home in foreclosure, which plaintiff denies, said equity purchase contract violates Section 265-a in the following ways that are listed by way of example and not limitation:

    a.    Plaintiff is informed and believes and thereupon alleges that said contract is not and was not fully completed and signed and dated by the equity seller and equity purchaser, in violation of Section 265-a.

    b.    Plaintiff is informed and believes and thereupon alleges that said contract did not and does not contain:  the name, business address, and telephone number of the equity purchaser; the address of the residence in foreclosure; the total consideration to be given by the equity purchaser; a complete description of the terms of payment or other consideration; the time at which possession would be transferred; the terms of any rental agreement, and the required notice that until plaintiff's right to cancel had ended that she could not have been asked to sign any deed or other document, all in violation of Section 265-a.

    c.    Plaintiff is informed and believes and thereupon alleges that said contract did not and does not contain a notice of cancellation, in violation of Section 265-a.

    d.    Defendants did not provide plaintiff with a copy of the equity purchase contract nor the notice of cancellation, in violation of Section 265-a

80.    The transaction involving the transfer of plaintiff's home in foreclosure violated section 265-a in the following ways which are listed by way of example and not limitation:

    a.    Prior to the expiration of the time plaintiff had to cancel the transaction, the Defendants: accepted from plaintiff and induced her to sign the subject grant deed, in violation of Section265-a, recorded the subject grant deed, in violation of section 265-a and encumbered the premises, in violation of Section 265-a.

81.    Defendants, violated Section 265-a in the following ways which are listed by way of example and not limitation by not taking the steps including that :

    a.    "The equity purchaser verifies by appropriate documentation that the equity seller has or is likely to have a reasonable ability to pay for the subsequent conveyance of an interest back to the equity seller. In the case of a lease with an option to purchase, payment ability also includes the reasonable ability to purchase the property within the term of the option to purchase."

    b.    by entering into an agreement which violates 265-a: "An equity purchaser shall not enter into repurchase or lease terms as part of the reconveyance arrangement that are unfair or commercially unreasonable, and is prohibited from engaging in any other unfair or unconscionable conduct,"

82.    Because of Defendants failure to comply with Section 265-a as described above, plaintiff elects to have the purported equity purchase contract, if one exists, declared void *ab initio*.

83.    As the result of the actions or inaction of Defendants described above, plaintiff was damaged in that a $550,000 in that she is lost that equity of the House.

84.    The conduct of Defendants as described herein was and continues to be willful, malicious, oppressive and constitutes an intentional scheme to defraud plaintiff with the intention of depriving her of her home and legal rights.  Defendants' actions constitute despicable conduct in conscious disregard of plaintiff's rights so as to justify an award of punitive damages from Defendants an amount to be determined at trial.

WHEREFORE, plaintiff prays for judgment as follows:
(a)    That this court declare that the equity purchase contract if any is null and void *ab initio*;
(b)    That this court declare that the subject grant deed is null and void and that defendants required to deliver same to the clerk of the court for cancellation;
(c)    For actual damages in the amount of $550,000 of loss equity and $25,000 penalty for each violation of section 265-a.
(d)    For exemplary damages against Defendants in an amount to be determined,
(e)    For reasonable attorneys fees and costs of suit;
(f)    For such other and further relief as this court deems just and proper.

### THIRD CAUSE OF ACTION
### Quiet Title
**(Against Defendants, Maxine Bonaparte, Lezantonio Woodburn,  12706 Holdings Inc., Wilmington Savings Fund Society, FSB (WSF), Verus Securitization Trust 2020-NPL1, and Does 1 through 200, inclusive)**

85.    Plaintiff incorporates the allegations contained in paragraphs 1 through 84, inclusive, as though fully set forth at this place.

86.    Defendant Holdings and Woodburn claims that they owns the subject premises in fee simple absolute pursuant to the subject grant deed.

87.    The Defendants claims that they have invested monies on the property in terms of repairs etc.

88.    Plaintiff owns the premises in fee simple absolute, and free and clear of any purported encumbrance created by the Defendants.

89. The claims of Defendants are without any right whatsoever and such defendants have no right, title, estate, lien or interest whatsoever in the subject premises, and never had any right, title, estate, lien or interest whatsoever in the subject premises, due to the fact that the subject grant deed is a forgery and is void *ab initio* or is voidable under Sections 265-a, and the Defendants were not and are not bona fide encumbrancers.

90. Plaintiff seeks to quiet title as of March 27, 2019, the date the subject grant deed was purportedly signed by plaintiff.

WHEREFORE, plaintiff prays for judgment as follows:

(a) That this Court declare that Defendants have no right, title, interest, estate, title or lien in the subject premises, and never had any right, title, interest, estate, lien or title in the subject premises, and that the subject grant deed conveyed no interest, estate, lien or title to the subject premises to Holdings and that the subject deed created no lien or encumbrance on the subject premises, and that as of March 27, 2019, and from that day forward, plaintiff was and is the owner in fee simple absolute of the subject premises which was and is not encumbered by the subject deed of trust;

(b) For such other and further relief as this Court deems just and proper.

### FOURTH CAUSE OF ACTION
### Negligent and Intentional Infliction
### of Emotional Distress
### (Against Maxine Bonaparte, Lezantonio Woodburn, 12706 Holdings Inc.,)

91. Plaintiff incorporates the allegations contained in paragraphs 1 through 90 inclusive, as though fully set forth at this place.

92. The conduct of Defendants described above was intentional and malicious and done for the purpose of causing plaintiffs to suffer humiliation, mental anguish, and emotional distress.

93. Defendants knew or should have known that their conduct, as described above, would cause plaintiffs to suffer severe emotional distress.

31

94.    As a direct and proximate result of defendants' conduct as herein alleged, plaintiff has

suffered extreme emotional distress.

95.    The conduct of defendants as described herein was willful, malicious, oppressive and

constitutes an intentional scheme to defraud plaintiff with the intention of depriving her of her

home and legal rights. Defendants' actions constitute despicable conduct in conscious disregard

of plaintiff's rights so as to justify an award of punitive damages from each defendant in an amount

to be determined at trial.

WHEREFORE, plaintiff prays for judgment as follows:

a.    For general damages in the sum of Five Hundred Thousand Dollars ($500,000);
b.    For punitive damages according to proof;
c.    For costs of suit;
d.    For such other and further relief as this court deems just and proper.

### FIFTH CAUSE OF ACTION
### For Violation of New York GBL § 349
### (Against Defendants Maxine Bonaparte, Lezantonio Woodburn,
### 12706 Holdings Inc., Charles L Mester, Esq.,)

96.    Plaintiff incorporates the allegations contained in paragraphs 1 through 60, inclusive, as

though fully set forth at this place.

97.    Plaintiff is suing both in her individual capacity and on behalf of the general public.

98.    Plaintiff is informed and believes and thereupon alleges that beginning at an exact date

which is unknown to plaintiff, but from 2000, defendants have committed unfair and fraudulent

business practices as defined by New York GBL § 349, by engaging in the following unlawful

business practices:

a.    In the transaction involving the subject premises in foreclosure
defendants violated section 265-a of NY RPL, and engaged in
practices which operated as a fraud and deceit upon plaintiff, as set
forth above;
b.    Defendants have tricked elderly, disabled and unsophisticated
homeowners in foreclosure into unconscionable and fraudulent

32

          transactions involving their homes in foreclosure, and has thereby
          gained substantial monies, fees and profits for himself and/or their
          companies;

   c.     On information and belief, Maxine and Woodburn have routinely
          worked together to mislead the homeowners the banks to take over
          their properties.

   d.     Planet Enterprise unconscionably taking a lien over a residential
          home, converting a residential home related loan to a commercial
          setting up with a default interest of 24%.

   e.     Upon information and belief, Planet Enterprise routinely have
          advanced loans and obtained lien interests in the properties with
          full knowledge that the debtors would not able to service the debt.

   f.     Upon information and belief, Plane Enterprise routinely have
          advanced loans to the consumers in violation of state and federal
          consumer protections, by packaging the loans as commercial ones,
          despite knowledge that the loans are not for commercial purposes.

99.    The acts and practices described above were and are likely to mislead the public and

therefore constitute unfair or fraudulent business practices within the meaning of New York GBL

§ 349.

100.    Plaintiff is informed and believes that defendants unlawful, unfair and fraudulent business

practices described above present a continuing threat to members of the public and that defendants

continue to engage in the unfair and unlawful acts described above.

101.    Plaintiff seeks injunctive relief enjoining defendants from engaging in the unfair business

practices described above.. Defendants have engaged in deceptive acts and practices by conduct

including but not limited to: i) misrepresenting regarding their services; ii) misrepresenting that

they resolve the foreclosures issues of the homeowner; iii) failing to disclose takeover of the

houses; iv) misrepresenting that the agreements are enforceable when in fact they are void under

New York law;  v) misrepresenting their ability to help homeowners; vi) advancing loans and

obtaining lien on the houses of people who do not have the capacity to pay such debts.

102.    Injunctive relief is proper as plaintiff has no adequate remedy at law.  Monetary damages

will not compel defendants to cease to engage in the unfair business practices described in this

action. Plaintiff alleges that the benefit to the public good, as well as to the plaintiff, far outweighs

the inconvenience to the defendants of ceasing to engage in the unfair business practices.

WHEREFORE, plaintiff prays for judgment as follows:

a.  That this Court enter a preliminary and permanent injunction restraining and
    enjoining all defendants, and their agents, servants, employees, representatives,
    and anyone acting on their behalf or at their direction from engaging in,
    committing, permitting, or performing, directly or indirectly, any of the unfair
    business practices described above;
b.  For restitutionary damages in an amount equal $550,000, which is the amount of
    loss of equity;
b.  For reasonable attorneys' fees;
c.  For costs of suit;
d.  For such other relief as this Court deems proper and just.

### SIXTH CAUSE OF ACTION[5]
**(Violations of New York Judiciary Law§ 487 against defendant Charles Mester has been
dismissed pursuant to the Court's order)**

103.    The Debtor realleges and incorporates herein by reference each and every foregoing

paragraph of this Complaint as if set forth in full.

104.    New York Judiciary Law§ 487 provides, in pertinent part, as follows: "An attorney or

counselor who ... [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with

intent to deceive the court or any party ... [i]s guilty of a misdemeanor, and in addition to the

punishment prescribed therefore by the penal law, he forfeits to the party injured treble damages,

to be recovered in a civil action."

105.    As set forth above, Mester engaged in an intentional pattern of collusion, wrongdoing, and

deceit with the intent to deceive Ms. Stephens. Ms. Stephens thought that she is a meeting a lawyer

and he would be assisting her in saving her property. However, he was the cementing factor of the

fraud, he gave the impression that he was helping Ms. Stephens save her property, rather he was

---

[5] This Sixth Cause of Action was dismissed against Charles Mester , however the same has been retained
here for formatting and as well as for appellate review .

helping the other defendants in unlawful takeover of her property. Mester assured Ms. Stephens that he will save her home from pending foreclosure. Ms. Stephens shared with him foreclosure actions papers which was pending in the Supreme Court, Queens County.

106.    As a result of the deceitful and fraudulent conduct of these Defendants as described in the foregoing paragraphs, Ms. Stephens have been looted of her home and thus has been injured in an amount to be established at trial.

107.    Because of the foregoing, Ms. Stephens is entitled to monetary damages against the attorney defendants and the law firm, treble damages, and reasonable attorneys' fees pursuant to judiciary Law § 487.

## SEVENTH CAUSE OF ACTION

### (Fraud against Maxine Bonaparte, Lezantonio Woodburn, 12706 Holdings Inc., Charles L Mester, Esq.,)

108.    The allegations of paragraphs 1 – 107 are incorporated herein as if fully set forth.

109.    Defendants procured title to plaintiff's home by fraud. The fraudulent conduct included: having the plaintiff sign paperwork transferring ownership with the pretext of saving it from foreclosure; misrepresenting the terms of the Purchase and Sale Agreement and that signing same was in plaintiff's best interests and was the only means of saving her home; misrepresenting the terms of the Transfer Ownership Agreement and that signing same was in plaintiff's best interests and the only means of saving her home; demanding that plaintiff pay $10,000 for their services for professional help; failing to inform plaintiff of the content and significance of the documents they had her sign; failing to advise plaintiff that she should have real estate documents reviewed by independent counsel; and upon ownership change, immediately suing her and her family to claim possession of the real property.

110.    Plaintiff relied on defendant's above-described fraudulent misrepresentations, and said reliance was reasonable under the circumstances.

111.    As direct and proximate results of defendant's fraud, plaintiff suffered monetary loss and severe emotional distress and mental anguish.

WHEREFORE, plaintiff prays that judgment be entered awarding her compensatory damages, interest, and costs of suit.

### EIGTH CAUSE OF ACTION
#### (Breach of Fiduciary Duty by Mester and Maxine)

112.    The allegations of paragraphs 1 – 111 are incorporated herein as if fully set forth.,

113.    As plaintiff's attorney Mester and foreclosure expert Maxine owed plaintiff the highest standard of care commensurate with their position as a fiduciary. Ms. Stephens trusted them and also gave $10,000 to Maxine for her professional expertise.

114.    Defendants breached said duty negligently and/or willfully by engaging in the conduct set forth herein and placing their own interests before those of plaintiff, then their client.

115.    As direct and proximate results of defendant's breach, plaintiff suffered financial loss and severe emotional distress and mental anguish.

WHEREFORE, plaintiff prays that judgment be entered awarding her compensatory damages, interest, and costs of suit.


### NINTH CAUSE OF ACTION
#### Unconscionability
#### (Against Maxine Bonaparte, Lezantonio Woodburn, 12706 Holdings Inc.)

116.    Plaintiffs repeat and reallege paragraphs 1 through 115 as though fully set forth herein.

117.    Throughout the course of the March 2019 mortgage/deed transaction, an enormous disparity in bargaining power existed between plaintiff and defendants.  Plaintiff is an ailing

minority woman, whereas defendants are seasoned players of the market. The defendants are experienced entities and individuals that sought to profit from the disparity in bargaining power and did so by deliberately targeting plaintiff with misinformation.

118.    The terms of the March 2019 mortgage/deed transaction are so one-sided as to be abusive and unconscionable. Defendants exploited the disparity in bargaining power to induce plaintiffs to transfer title to her home and enter a highly disadvantageous equitable loan when plaintiff believed that they were applying for a new mortgage and helping her settle her bank debt and making mortgage more manageable. The defendants Planet Enterprise saddled the Real Property with an exorbitant interest loan with a default interest of 24%. The Defendant Planet Enterprise in collusion with the other defendants obtained inequitable lien on the Debtor's Home. Said procedural and substantive unconscionability renders void and unenforceable the March 2019 equitable mortgage/deed transfer.

**TENTH CAUSE OF ACTION**
**New York Real Property Actions and Proceedings Law, Article 15**
**(Against Maxine Bonaparte, Lezantonio Woodburn, 12706 Holdings Inc.,**
**Wilmington Savings Fund Society, FSB (WSF), Verus Securitization Trust 2020-NPL1)**

119.    Plaintiffs repeat and reallege paragraphs 1 through 118 as though fully set forth herein.

120.    Plaintiffs bring this claim pursuant to Article 15 of the New York State Real Property Actions and Proceeding Law to compel the determination of any claims adverse to those of plaintiffs in the subject premise, the Home. Through this action, plaintiffs seek to quiet title to the subject property by having declared as void the fraudulent deed transfer from plaintiffs to Holding.

121.    Plaintiffs was the sole owner of the Real Property. She had bought the subject property in 2006. Public records now suggest that defendant Holdings and Planet Enterprise claim an interest in the property. Their purported interest, and the documents upon which it rests, are void because they were obtained through a conspiratorial and fraudulent scheme that tricked plaintiff into conveying ownership of their home without her knowledge. Alternatively, the deed transfer constituted an equitable mortgage and not a deed transfer.

122.    Upon information and belief, no party who is or should be a defendant is or might be an infant, mentally retarded, mentally ill or an alcohol abuser.

123.    Upon information and belief, the judgment to be entered in this action will not affect a person or persons not in being or ascertained at the commencement of this action, who by any contingency contained in a devise or grant or otherwise, could afterward become entitled to a beneficial estate or interest in the property; moreover, every person in being who would have been entitled to such interest in the property if such contingency happened immediately prior to the commencement of this action are parties hereto.

124.    Accordingly, plaintiffs request that this Court issue:

a.   a declaration that plaintiff is the lawful sole owner of the subject property and are entitled to lawful, peaceable, and uninterrupted possession thereof as against all defendants herein, and as against anyone claiming under them;

b.   an injunction prohibiting all defendants, and every person claiming under them, from claiming an estate or interest in, or lien or encumbrance on, the property;

c.   a judgment declaring as void the fraudulent deed dated March 27, 2019 purporting to transfer plaintiffs' interest in the property to 12706 Holdings;

d.   a judgment declaring as void any interest or lien of the Defendants against the property;

e.   damages stemming from plaintiffs' lost rents and other damage in connection with the loss of their exclusive right to use the property in the manner of her choosing; and

f.   any other relief that this Court deems just and proper.

## ELEVENTH CAUSE OF ACTION
### (Violation of RICO, 18 U.S.C. 1962(c))

### (Predicate of Mail Wire fraud and Hobbs Act against Maxine Bonaparte, Lezantonio Woodburn, 12706 Holdings Inc., Charles L Mester, Esq.,)

125.   Plaintiffs repeat and reallege paragraphs 1 through 124 as though fully set forth herein.

126.   To carry out its unlawful scheme, the Defendants have conducted a criminal enterprise through a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d). Specifically, between 2018 and the present, the Defendants have knowingly and intentionally submitted false and materially misleading declarations under oath with Ocwen Bank, New York State Supreme Court, Queens County and civil court of the same county and as well as this bankruptcy proceeding. While professing to be safeguarding interest of the plaintiff, the Defendants preyed upon the vulnerabilities of the plaintiff and her family and by fraud had her transfer her deed to their own company 12706 Holdings Inc. and then had her signed paperwork under threat. Holdings and the other Defendants also offered her to sell back the house but without the benefit of the sum particular and also taking away the same option when they had fully entrenched with the property ownership. The defendants also violated Hobbs act by physically threatening the family members

39

to leave the house and forcibly turning off heat and changing locks and also making Ms. Stephens sign paperwork reducing them to licensee. In sum in executing its criminal enterprise, the Defendants crime have included: Mail fraud in violation of 18 U.S.C. § 1341; Wire fraud in violation of 18 U.S.C. § 1343; Hobbs Act in violation of 18 USC. 1951; Unlawful monetary transactions in violation of 18 U.S.C. §§ 1956 and 1957(a); and Bankruptcy fraud in violation of 18 U.S.C. §§ 152(2) and 152(3). The Planet Enterprises aided and abetted the rest of the Defendants in achieving their unlawful results as complained herein.

127.    Ms. Stephens is direct victim and target of Defendants unlawful scheme. Defendants' criminal enterprise has caused Ms. Stephens to lose her house with a profit/equity of a sum exceeding $500,000.

128.    Ms. Stephens hired to two professionals, Maxine and Mester for dire situation with the home loan. However they saw this as an opportunity to make money and they used unlawful means to achive the same result.  Instead of conforming to these requirements fiduciary, Defendants affirmatively misrepresented its disinterestedness and unlawfully concealed its disqualifying connections to parties with clear financial interests in the outcome of the work they had undertaken on behalf of the plaintiff. Mester appeared for both Ms. Stepehns and Maxine Bonaparte. Maxine appeared as the agent for both  Ms. Stepehes and her company 12606 Holdings along with Woodburn.  Also, Maxine and Woodburn regularly visited the house of Ms. Stephens and threatened her and her family members to leave on every visit to the House.

129.    The Defendants engaged in a scheme to defraud Ms. Stephens and other family members through falsity, concealment, and obfuscation of disqualifying conflicts of interest, which thereby deprived Ms. Stephens of a reduced mortgage and her ownership of the house. To achieve complete ownership of the house, with no possibility of reversion of the house back to Ms.

40

Stephens, the defendants made buy agreement without the benefit of the sale price and as well as reducing the buy back period utilitarianly. The Defendants also forcibly managed to took over physical ownership of the part of the house by putting in their own friend in one of the rooms of the house. The Defendants also threatened Ms. Stephens with eviction if she did not sign the agreements which kept changing and were one sided. Ms. Stephens through deception engineered by the defendants lost her house to the Defendants.

130.    In furtherance of the scheme, besides threats of violence and eviction, and as described herein, the Defendants prior to the ownership of the house, transmitted, or caused to be transmitted, by means of wire communication in interstate or foreign commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343, and also caused matters and things to be placed in a post office or authorized depository or deposited or caused to be deposited matters or things to be sent or delivered by a private or commercial interstate carrier, in violation of 18 U.S.C. § 1341. The Defendants' specific mailings and interstate wirings in furtherance of the scheme to defraud included, but are not limited to, the aforementioned, rather there are other numerous mailing undertaken by Maxine and Mester which are solely within the custody and control of the defendants. The mailing was initially undertaken for the purposes of loan modification [or rather short sale] in the name of the plaintiff, but solely for their own ulterior design to takeover the house. The Planet Enterprise assisted rest of the Defendant to achieve their unlawful results including its own lien on the Home of the Debtor.

131.    Upon information and belief, the Defendants also used the interstate wires, United States mail, or private interstate commercial carrier to effectuate ownership change of the house of Stephens Evidence of such transactions is peculiarly within the Defendants' knowledge and control and will be proven at trial following discovery.

132.    The Defendants also used the interstate wires, United States mail, or private interstate commercial carrier to transfer illegally obtained funds within the United States for the purpose of furthering the objectives of the Defendants. These transfers include the movement of funds in connection with fees of the loan modification, taking money with the sham excuse of making mortgage payments.

133.    Each of the Defendants, through their direct or indirect control of the various functionaries, participated in, numerous acts of mail and wire fraud. In particular, each of the Defendants, through their control of and/or participation. Each of the said defendants sent or caused to be sent numerous mail or wire communications, or acted with knowledge that mail or wire communications would follow in the ordinary operation of loan modifications with Ocwen  or could reasonably have foreseen that the mails or wires would be used in the ordinary course of business as a result of the Defendants' acts in furtherance of the transactions discussed above, including the uses of the mails and interstate wires Also, Maxine and Woodburn threatened evictions to elicit agreements signatures on the Agreements regarding Use and Occupancy and also acknowledgement of expenses which were never undertaken, solely done to make it impossible for Ms. Stephens to buy back her home. And said fraud was completely sealed by the Planet Enterprise obtaining lien on the house of the Debtor with default interest rate of 24% and or exceeding the usurious cap.

### The RICO Enterprise

134.    From October 2018 (said date being approximate and inclusive) and continuing to the present, all Defendants collectively have constituted an enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) or, alternatively, an *association-in fact enterprise* within the meaning of those provisions (the "**Enterprise**").

42