135. At all relevant times, each of the Defendants was, and is, a person that exists separate and distinct from the Enterprise.

136. From the time of the inception of the Enterprise, enterprise participated in the proceedings and activities as complaint of above. Accordingly, at all relevant times, the Enterprise was engaged in, and its activities affected, interstate and foreign commerce.

137. Between 2018 and the present, each of the Defendants engaged in a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1961(5), consisting of the predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1)(B) and 18 U.S.C. § 1961(1)(D) described in the aforesaid paragraphs and other predicate acts to be identified after further investigation and discovery herein.

138. Each of the Defendants engaged in two or more predicate acts of racketeering, and each committed at least one such act of racketeering after the effective date of RICO.

139. The predicate acts of racketeering activity were related in that they were committed for the purpose of (I) concealing or obfuscating real nature of the takeover/transfer of the house from Ms. Stephens to their entities; (II) taking over unlawfully the ownership of the house of the plaintiff; (III) taking away the inbuilt equity of the house from Ms. Stephens to themselves with fraudulent means; (IV) eliminating any chances for the recovery of the house from the Defendants; (V) saddling the property with a commercial lien and commercial mortgage with a high interest rate, despite the fact that it is a residence. These acts, and others to be identified after further investigation and discovery herein, shared a common or related purpose, goal, result, participants, victim, and method of commission.

140. Through such patterns of racketeering activity, each of the Defendants conducted or participated, directly or indirectly, in the conduct of the affairs of the Enterprise in violation of 18 U.S.C. § 1962(c).

141. As a direct and proximate result of RICO violations of 18 U.S.C. § 1962(c) by the Defendants, Ms. Stephens has been injured in her property interest suffering damages in an amount to be determined at trial. The damages to Ms. Stephens include, but are not limited to, loss of homeownership, fees from the sham closing of the house, the equity Ms. Stephens would have earned in the absence of the Defendants' unlawful conduct; other lost opportunities; and attorneys' fees and costs, including attorneys' fees and costs associated with exposing and pursuing redress for Defendants' criminal activities.

142. Pursuant to the civil remedy provisions of 18 U.S.C. § 1964(c), Ms. Stephens is thereby entitled to recover treble damages, together with the costs of this suit and reasonable attorneys' fees.

### TWELTH CAUSE OF ACTION
### (CONSPIRACY TO VIOLATE RICO, 18 U.S.C. § 1962(d))
### Against Defendants Maxine Bonaparte, Lezantonio Woodburn, 12706 Holdings Inc., Charles L Mester, Esq.)

143. The Plaintiff repeats and realleges paragraphs 1 through 142 as if fully set forth herein.

144. Defendants have unlawfully, knowingly, and willfully combined, conspired, confederated, and agreed together and with others to violate 18 U.S.C. § 1962(c) as described above, in violation of 18 U.S.C. § 1962(d).

145. By and through each of the Defendants' close business and employment relationships with one another, and their close coordination with one another in the affairs of Enterprise described above, each Defendant knew the nature of these enterprises and each Defendant knew that these enterprises extended beyond each Defendant's individual role. Moreover, through the same

connections and coordination, each Defendant knew that the other Defendants were engaged in a conspiracy to commit predicate acts, including those set forth above, and that the predicate acts were part of a pattern of racketeering activity, and each agreed to pursue the same criminal objective.

146. Each Defendant agreed to facilitate, conduct, and participate in the conduct, management, or operation of the affairs of the Association in fact Enterprise, and/or the Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d).

147. In particular, each Defendant was a knowing, willing, and active participant in one or more such Enterprises and their affairs, and each of the Defendants shared a common purpose, namely, the orchestration, planning, perpetuation, and execution of the scheme to victimize Ms. Stephens and take over her Home as a title holder or a lien holder.

148. The Defendants played the following roles besides other as mentioned in racketeering conspiracy:

    a. Maxine Bonaparte professed to be an expert in loan resolutions, and she made Ms. Stephens to hire her;

    b. Maxine Bonaparte took Ms. Stephens to Charles Mester to represent Ms. Stephens and provide a veneer of professionalism.

    c. Maxine Bonaparte acted as the agent for Ms. Stephens and 12706 Holdings, the buyer of the short-sale home.

    d. Mester actually represented the 12706 Holdings in the sale, though retainer with Stephens was that he will represent her.

    e. Lez Antonio Woodburn made himself as the front face of 12706 Holdings.

  f. Both Maxine and Woodburn threatened Ms. Stephens to leave her house and they made Ms. Stephens and her husband sign Use and Occupancy agreement.

  g. Maxine Bonaparte, Lez Woodburn, Charles Mester collectively led the enterprise to take over Ms. Stephens house to have loot monies distributed among each other.

  h. The Planet Enterprise assisted the other defendants in achieving the stated unlawful results as well entrenching itself as the lien holder over the property of the Debtor.

149. Further evidence of an agreement among the Defendants is particularly within the knowledge and control of the Defendants.

150. The participation and agreement of each of the Defendants was necessary to allow the commission of this pattern of racketeering activity.

151. Ms. Stephens has been and will continue to be injured in her property by reason of the Defendants' violations of 18 U.S.C. § 1962(d), in an amount to be determined at trial. The injuries to Ms. Stephens directly, proximately, and reasonably foreseeably resulting from or caused by these violations of 18 U.S.C. § 1962(d) include, but are not limited to loss of equity in her house; other lost business opportunities; and attorneys' fees and costs, including attorneys' fees and costs associated with exposing and pursuing redress for Defendants' criminal activities.

152. Pursuant to the civil remedy provisions of 18 U.S.C. § 1964(c), Ms. Stephens is thereby entitled to recover treble damages, together with the costs of this suit and reasonable attorneys' fees.

### THIRTEENTH CAUSE OF ACTION
(Unjust Enrichment)
(Against Maxine Bonaparte, Lezantonio Woodburn, 12706 Holdings Inc.,)

153. Plaintiffs repeat and reallege paragraphs 1 through 152 as though fully set forth herein.

154. As a result of the events described above, each of the Defendants has unjustly retained a benefit to Ms. Stephens detriment.

155. Specifically, each of the Defendants were on notice of Ms. Stephen's continuing ownership interest at a time when they took title to the Property, or took a lien hold interest in the Property, or cashed out a portion of Ms. Stephens equity.

WHEREFORE, Ms. Stephens ask this court to void the transfer of title to 12706 Holdings to require that each Defendant pay Plaintiffs the value of the equity in the Property unjustly received by that Defendants.

### FOURTEENTH CAUSE OF ACTION
### (Constructive Trust)
### (Against Maxine Bonaparte, Lezantonio Woodburn, 12706 Holdings Inc.,)

156. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

157. Undoubtedly Defendants took custody of Plaintiffs' property under a circumstance that would render it equitable for it to return such property to its rightful owner upon due demand.

158. Ms. Stephens approached Maxine and through Maxine, attorney Mester to help her save her house. Such relationship created a fiduciary relationship.

159. Ms. Stephens trusted Maxine and Mester with her property and thinking that it was a part of loan modification and that the property is being kept in trust for her, she signed all the papers whatever was given to her to sign by Maxine and Mester

160. Ms. Stephens had a confidential fiduciary relationship with the Defendants.

161. It is just and equitable that the court impress a constructive trust to attach to the res of Plaintiffs' property from the time it entered Defendants' possession.

162. Each transferee took possession under circumstances in which such transferee knew Plaintiffs had been despoiled, making it just and fair for the court to apply an equitable lien under the principles of equity.

163. Applying the doctrine of equitable servitudes to ownership of the house wrongfully obtained by transferees is fair and just under the circumstances.

164. Defendants would be unjustly enriched if permitted to retain the house or any of the benefits including any lien or equity accruing therefrom.

165. Plaintiffs have no adequate remedy at law.

166. Permitting the Defendants to retain property belonging to the Plaintiff is unfair and unjust and in light of the totality of the circumstance's warrants imposing a constructive trust under equitable principles of New York law.

167. Plaintiff pray for an order impressing a constructive trust upon all holders and purchasers of Plaintiffs' property and their agents, past and present and ordering that all ownership be returned to Plaintiff and that any income, commissions or other benefits be disgorged and paid to Plaintiff.

### FIFTEENTH CAUSE OF ACTION--A
(Fraudulent conveyance, Section 273 of NYCD law, 11 U.S.C. §544)
(Against Maxine Bonaparte, Lezantonio Woodburn, 12706 Holdings Inc., Planet Management Group, LLC, Planet Home Lending LLC dba Planet Home Servicing, Wilmington Savings Fund Society, FSB (WSF), Verus Securitization Trust 2020-NPL1)

168. Plaintiff incorporates the allegations contained in paragraphs 1 through 167, inclusive, as though fully set forth at this place.

169. The debtor-plaintiff sought bankruptcy protection on November 11, 2021.

170. Section 544 of Title 11 states that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." New York Debtor and Creditor Law section

273 states: Every conveyance made, and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

171. The debtor has unsecured claims at the time of the filing of the case and at the time of transfer of the deed to the Defendants, especially

   i. Debtor had unsecured debts related to creditors so-called 'golden' or 'triggering' creditors such creditors included LVNV Funding, LLC, Jefferson Capital Systems LLC, Ashley Funding Services, LLC, National Grid (Triggering Creditors) at time of filing of petition and as well as on the date of the transfer of the Debtor's house to Holdings. The Triggering Creditors had a right to be paid from Debtor.

   ii. Triggering Creditors holds an allowable unsecured claim under section 502, and had different amount of claim as of the date of the transfer of the deed from the Debtor.

   iii. Triggering Creditors could avoid the transfers at issue under applicable New York State law.

172. Debtor owned Home and it exceeded $850,0000 in value in 2019.

173. On March 27, 2019, the Debtor was fraudulently induced to part with her house with the excuse that the same was necessary for loan modification.

174. The fraudulent parting of the house was designed by the defendant as a short sale for a sum of $350,000, but the value of the house exceeded $850,000.

175. Thus, the debtor was deprived of equity worth more than $500,000. This conveyance was made without fair consideration, rather there was no consideration and Debtor was made to pay monies for this transfer of her own property what she was thought was a loan modification. This transfer diminished the size of the debtor's estate and occurred at a time when the debtor was in a financial condition that made it impossible or unlikely that the debtor could satisfy the claims of all its creditors in full. For the said complained transaction, the transferees of the Real Property

did not provide fair equivalent value and did not act in good faith towards the Debtor. And the Debtor was generally not paying its debts as they came due.

176. As a result of this transfer, the Debtor was rendered insolvent and could not pay her bills.

177. The impugned transfer of the deed violated section 273 of New York Debtor & Creditor Law entitling the plaintiff as a debtor relief pursuant to 11 U.S.C. 544 and further (a) disregarding the conveyance of the Real Property and allowing and (b) awarding the value of the property, including interest or appreciation, to the maximum extent allowed by law and (c) awarding reasonable attorney's fees incurred in this action.

Wherefore, the Debtor now in bankruptcy, the March 27, 2019, transfer should be set aside.

### FIFTEENTH CAUSE OF ACTION--B
(Fraudulent conveyance, Section 275 of NYCD law, 11 U.S.C. §544)
(Against Maxine Bonaparte, Lezantonio Woodburn, 12706 Holdings Inc., Planet Management Group, LLC, Planet Home Lending LLC dba Planet Home Servicing, Wilmington Savings Fund Society, FSB (WSF), Verus Securitization Trust 2020-NPL1)

178. Plaintiff incorporates the allegations contained in paragraphs 1 through 177, inclusive, as though fully set forth at this place.

179. The debtor-plaintiff sought bankruptcy protection on November 11, 2021.

180. Section 544 of Title 11 states that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title."

181. New York Debtor and Creditor Law section 275 states: Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors. This transfer diminished the size of

the debtor's estate and occurred at a time when the debtor was in a financial condition that made it impossible or unlikely that the debtor could satisfy the claims of all its creditors in full. For the said complained transaction, the transferees of the Real Property did not provide fair equivalent value and did not act in good faith towards the Debtor. And the Debtor was generally not paying its debts as they came due.

182. The debtor has unsecured claims at the time of the filing of the case and at the time of transfer of the deed to the Defendants.

    i. Debtor had unsecured debts related to creditors so-called 'golden' or 'triggering' creditors such creditors included LVNV Funding, LLC, Jefferson Capital Systems LLC, Ashley Funding Services, LLC , National Grid (Triggering Creditors) at time of filing of petition and as well as on the date of the transfer of the Debtor's house to Holdings.

    ii. Triggering Creditors holds an allowable unsecured claim under section 502, and had different amount of claim as of the date of the transfer of the deed from the Debtor and

    iii. Triggering Creditors could avoid the transfers at issue under applicable New York State law.

183. Debtor owned Home and it exceeded $850,0000 in value in 2019.

184. On March 27, 2019, the Debtor was fraudulently induced to part with her house with the excuse that the same was necessary for loan modification.

185. The fraudulent parting of the house was designed by the defendant as a short sale for a sum of $350,000, but the value of the house exceeded $850,000.

186. Thus, the debtor was deprived of equity worth more than $500,000. This conveyance was made without fair consideration.

187. As a result of this transfer, the Debtor was rendered insolvent and now she could not pay her debts in a regular course. When the transfer took place, the Debtor intended to incur, or believed or reasonably should have believed that that she has only one house and that is the house she lived in and that she would incur debts beyond her ability to pay as they mature.

188. The impugned transfer of the deed violated section 275 of New York Debtor & Creditor Law, entitling the plaintiff as a debtor (a) disregarding the conveyance and allowing and (b) awarding the value of the property, including interest or appreciation, to the maximum extent allowed by law, and (c) awarding reasonable attorney's fees incurred in this action.

Wherefore March 27, 2019, transfer should be set aside.

### FIFTEENTH CAUSE OF ACTION--C
(Homestead Exemption in the Fraudulently conveyed Section 273 and 275 of NYCD law, 11 U.S.C. §544)
(Against Maxine Bonaparte, Lezantonio Woodburn, 12706 Holdings Inc., Planet Management Group, LLC, Planet Home Lending LLC dba Planet Home Servicing, Wilmington Savings Fund Society, FSB (WSF), Verus Securitization Trust 2020-NPL1)

189. The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "188" as if set forth fully herein.

190. The debtor-plaintiff sought bankruptcy protection on November 11, 2021.

191. Section 544 of Title 11 states that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." New York Debtor and Creditor Law section 273 states: Every conveyance made, and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

192. In addition and as an alternative to section 544 of the Bankruptcy Code, section 522(h) state that the, "debtor may avoid a transfer of property of the debtor ... to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer . . .   if-(1) such transfer is avoidable by the trustee under

section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and(2) the trustee does not attempt to avoid such transfer."

193. Ms. Christa Preuss is the Chapter 13 Trustee appointed in this case, 11 U.S.C. § 1302. The Trustee could but has not attempted to avoid the transfer as alleged here.

194. The Debtor's transfer of Real Property was involuntary, as she never wanted to sell the Real Property.

195. The Debtor was made to sign the papers by misleading her that she was signing papers for her loan modification.

196. The Debtor continued to reflect her interest in the Real Property as her home in her bankruptcy filing.

197. The Debtor continues to in possession of the Real Property as her home.

198. If the title of the Real Property was in her name, as it was before the alleged fraudulent transfer to the defendants, the Debtor would be entitled to homestead exemption as guaranteed by New York state, NY CPLR 5206.

199. Now the Debtor seeks to exercise an avoidance power among others under 11 U.S.C. § § 522(h), 544.

200. The Real Property which was transferred to the defendants, could have been exempted if the trustee had avoided the transfer under the provisions of 11 U.S.C. §522(g). But the Trustee did not avoid the transfer.

201. The Real Property is the home of the Debtor entitling her state guaranteed homestead exemption.

202. The debtor has unsecured claims at the time of the filing of the case and at the time of transfer of the deed to the Defendants.

53

  i. Debtor had unsecured debts related to creditors so-called 'golden' or 'triggering' creditors such creditors included LVNV Funding, LLC, Jefferson Capital Systems LLC, Ashley Funding Services, LLC, National Grid (Triggering Creditors) at time of filing of petition and as well as on the date of the transfer of the Debtor's house to Holdings. The Triggering Creditors had a right to be paid from Debtor.

  ii. Triggering Creditors holds an allowable unsecured claim under section 502, and had different amount of claim as of the date of the transfer of the deed from the Debtor and

  iii. Triggering Creditors could avoid the transfers at issue under applicable New York State law and could have avoided the instant transfer of the Real Property.

203. Debtor owned Home and it exceeded $850,0000 in value in 2019.

204. On March 27, 2019, the Debtor was fraudulently induced to part with her house with the excuse that the same was necessary for loan modification.

205. The fraudulent parting of the house was designed by the defendant as a short sale for a sum of $350,000, but the value of the house exceeded $850,000.

206. Thus, the debtor was deprived of equity worth more than $500,000. This conveyance was made without fair consideration, rather there was no consideration and Debtor was made to pay monies for this transfer of her own property what she was thought was a loan modification. This transfer diminished the size of the debtor's estate and occurred at a time when the debtor was in a financial condition that made it impossible or unlikely that the debtor could satisfy the claims of all its creditors in full. For the said complained transaction, the transferees of the Real Property did not provide fair equivalent value and did not act in good faith towards the Debtor. And the Debtor was generally not paying its debts as they came due. This involuntary transfer of the Real property also was fraudulent to the present and future creditors.

207. As a result of this transfer, the Debtor was rendered insolvent and could not pay her bills.

208. The impugned transfer of the deed violated section 273 and 275 of New York Debtor & Creditor Law entitling the plaintiff as a debtor relief pursuant to 11 U.S.C. §522(h), 544 and further

(a) disregarding the conveyance of the Real Property and its return to the Debtor and or (b) awarding the value of her property, including interest or appreciation, to the maximum extent allowed by law and (c) awarding reasonable attorney's fees incurred in this action.

Wherefore, the Debtor now in bankruptcy, the March 27, 2019, transfer should be set aside.

### SIXTEENTH CAUSE OF ACTION
(Avoidance Recovery of Fraudulent Transfer under 11 U.S.C. § 550 from 12706 Holdings)
(Against Maxine Bonaparte, Lezantonio Woodburn, 12706 Holdings Inc, Planet Management Group, LLC, Planet Home Lending LLC dba Planet Home Servicing, Wilmington Savings Fund Society, FSB (WSF), Verus Securitization Trust 2020-NPL1)

209.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "207" as if set forth fully herein.

210.    Section 550(a) of the Bankruptcy Code provides in relevant part: [T]o the extent that a transfer is avoided under section 544, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from ... the initial transferee of such transfer or the entity for whose benefit such transfer was made; or ... any immediate or mediate transferee of such initial transferee. 11 U.S.C. § 550(a).

211.    Under section 550(a) of the Bankruptcy Code, the Plaintiff may recover the Transfer or the value thereof from the initial transferee 12706 Holdings Inc., which had by virtue of title ownership to the Real Property full dominion and control over the Real Property.

212.    By reason of the foregoing, the Plaintiff is entitled to an order recovering the Transfer, or the value thereof, pursuant to section 550 of the Bankruptcy Code and a judgment against the Defendant, the initial transferee, 12706 Holdings Inc., in an amount as yet undetermined, but in no event believed to be less than $1million, plus interest thereon, attorneys' costs, or such other amount as may be determined by the Court.

### SEVENTEENTH CAUSE OF ACTION
Avoidance and Recovery of Fraudulent Transfers from the Planet Management Group, LLC, Planet Home Lending LLC and Wilmington Savings Fund Society, FSB, Verus Securitization Trust 2020-NPL1
(11 U.S.C. §§ 544 and 550)

213.   The Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

214.   The defendants, Ms. Bonaparte and Mr. Woodburn unlawfully misleading the Debtor with the complained of transaction, transferred the Deed and incurred obligations thereby granting the immediate transferees, the Planet Management Group, LLC, Planet Home Lending LLC, and then the mediate transferees Wilmington Savings Fund Society, FSB, Verus Securitization Trust 2020-NPL1, security interest and made the same for no consideration to the Debtor. The initial transferee, immediate transferee and mediate transferee acted in combination or coordination and or in mutual interest to cement their dominion and control over the Real Property of the Debtor.

215.   The Debtor received no value in exchange for incurring, granting and/or making the engineered transfer [by Ms. Bonaparte and Mr. Woodburn] of her Home and or having a lien of Planet Enterprise and or the Wilmington Savings Fund Society, Verus Securitization Trust 2020-NPL1 with a default interest rate exceeding 24%.

216.   The Debtor was insolvent, became insolvent, or intended or believed she would incur debts beyond its ability to pay as such debts matured at the time the Planet Enterprise or Wilmington Savings Fund Society, FSB, Verus Securitization Trust 2020-NPL1, the lien or interest in the Real Property were incurred, granted and/or made.

216.   The Planet Enterprise Defendants are the initial transferees of the impugned transfer for the encumbrance put on the Real Property, followed by Wilmington Savings Fund Society, FSB,

56

Verus Securitization Trust 2020-NPL1, the entity or person for whose benefit the said transfer were made, or the immediate or mediate transferees of the initial transferee receiving the transfers. The said encumbrances on the Real Property were not borne of good faith, as Planet Defendants. had full knowledge of the underlying transactions and details—i.e. continued occupation of the house by the Debtor, and value of the Real Property itself [property value exceeding $850,000 being transferred for a sum of $350,000 (as sum reduced as a projected short sale)] was notice enough to put any lender to an inquiry. The Planet defendants knew and thus had reasonable basis to know of the debtor's insolvency or of the fraudulent intent of the other defendants underlying the transfer.

217. Wilmington Savings Fund Society, FSB, Verus Securitization Trust 2020-NPL1 at the time of transfer of the Note or the Mortgage etc. to the trust knew about the nature of the transaction, had knowledge of the voidability of the transfer, as the Debtor continued to occupy the Real Property as her residence and her pending bankruptcy [a public document listing claims against the defendants]. The Debtor had filed in her petition a notice of rescission of the deed to defendants, which Wilmington Savings Fund Society and Verus Securitation Trust 2020-NPL1 knew.

218. Based on the foregoing, the Plaintiff is entitled to recover the value of the transfers and or return of her Home pursuant to sections 522, 544 and 550 of the Bankruptcy Code.

WHEREFORE, the Plaintiff respectfully requests the entry of a judgment against Planet Management Group, LLC, Planet Home Lending LLC and Wilmington Savings Fund Society, FSB, Verus Securitization Trust 2020-NPL1 avoiding their lien interest in the property and awarding the Plaintiff costs, pre- and post-judgment interest and such other relief the Court deems equitable and just.

## EIGHTEENTH CAUSE OF ACTION
### (Disallowance of Claims)
### (Against Maxine Bonaparte, Lezantonio Woodburn, 12706 Holdings Inc., )

219. The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "218" as if set forth fully herein.

220. To the extent the Defendants are found liable for any of the transfers subject to avoidance and recovery as alleged herein, any claims the Defendants may assert against the estate pursuant to section 502(h) of the Bankruptcy Code or otherwise must be disallowed unless and until the Defendants pay the estate or the Debtor the amount of such liability and make the Debtor whole.

## NINETEENTH CASUE OF ACTION
### (Legal Malpractice Against Mester)

221. The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "220" as if set forth fully herein.

222. Ms. Stephens had her Home in foreclosure proceeding. She wanted to save her home. She was referred to Mr. Mester. Ms. Stephens approached him for saving her home. By signing a retainer agreement and reposing her trust, Ms. Stephens established a client attorney relationship with Mester.

223. Mr. Mester owed a duty of care to Ms. Stephens. He had assured her that he will save her house.

224. Mr. Mester failed to exercise required care, rather he abused Ms. Stephens trust by colluding with others depriving Ms. Stephens of her home with a substantial equity as said in the foregoing part of the Amended Complaint.

225. Mr. Mester was expected to proceed in a manner reasonably calculated to advance a client's lawful objectives, as defined by the client after consultation. He was expected to act with reasonable competence and diligence. He was expected to comply with obligations concerning the

client's confidences and property, avoid impermissible conflicting interests, deal honestly with the client, and not employ advantages arising from the client-lawyer relationship in a manner adverse to the client; and fulfill valid contractual obligations to the client. Mr. Mester breached said duties and obligation. This failure to exercise due care and abuse of trust caused the complained of injury to Ms. Stephens.

226. Ms. Stephens lost her home because of active collusion and deception of Mr. Mester.

227. Ms. Stephens damages and deprivation of her home and humiliation has been caused by Mr. Mester breach of obligation with active collusion with other defendants.

Wherefore Ms. Stephens is entitled to be compensated for the damages owing to Mr. Mester's conduct.

## TWENTIETH CAUSE OF ACTION
### Preliminary and Permanent Injunction
(Against the Defendants Maxine Bonaparte, Lezantonio Woodburn, 12706 Holdings Inc.,)

228. Plaintiff incorporates the allegations contained in paragraphs 1 through 204 inclusive, as though fully set forth at this place.

229. The Defendants are now seeking to sell the subject premise. Said conduct is wrongful because the subject grant deed to them is void.

230. The Defendants having record title, may seek at any time to evict plaintiff, or to transfer or encumber the premise and they are already doing the same.

231. The Defendants' wrongful conduct unless and until enjoined and restrained by order of this Court will cause great irreparable injury to plaintiff in that plaintiff will suffer loss of her home which will cause personal suffering, including potential homelessness for plaintiff and her grandchildren, which cannot be compensated for by monetary damages.

232. Plaintiff has no adequate remedy at law for the threatened conduct by defendants.

59

WHEREFORE, plaintiff prays for judgment against defendant, as follows:

a. For a preliminary and permanent injunction restraining and enjoining the Defendants and their agents, servants, employees, representatives, and anyone acting on their behalf or at their direction from committing, permitting, or performing, directly or indirectly, any of the following acts regarding the premises:

(1) Contracting for, purchasing, leasing, exchanging, granting, conveying, mortgaging, transferring in trust, encumbering or hypothecating the subject premises;

(2) Attempting to contract for, purchase, lease, exchange, grant, convey, mortgage, transfer in trust, encumber or hypothecate the subject premises;

(3) Serving any notices terminating tenancy or filing any unlawful detainer actions or prosecuting any unlawful detainer actions against plaintiff;

(4) Seeking in any fashion to dispossess plaintiff from the premises.

## PRAYER FOR RELIEF
(Debtor demands trial by jury on all causes of action)

**WHEREFORE**, Plaintiff prays for relief and judgment as follows:

(a) Judgment in favor of plaintiff on all counts;
(b) General and compensatory damages according to proof at trial;
(c) Treble damages pursuant to 18 U.S.C. § 1964(c); NY RPL 265-a; NY Judiciary law § 487;
(d) Disgorgement of all moneys received by Defendants as a result of their unlawful activities;
(e) An award of Plaintiffs reasonable attorneys' fees and costs and expenses, pursuant to 18 U.S.C. § 1964(c);
(f) Punitive damages;
(g) Prejudgment interest;
(h) Voidance of Lien or any interest obtained by the Defendants on the Debtor's home;
(i.) Reconveyance of the Real Property title to the Debtor plaintiff and
(h) Such other and further relief as the Court deems just and proper.

Dated: February 22, 2024
New York New York

*/s/Karamvirdahiya*
Karamvir Dahiya
Dahiya Law Offices, LLC
75 Maiden Lane Suite 606
New York New York 10038
Tel: 212 766 8000