# EXHIBIT E

*Loan # 710100106?*

| NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER<br><br>This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | <br><br>2019041000506001007ED556 |

## RECORDING AND ENDORSEMENT COVER PAGE — PAGE 1 OF 14

**Document ID:** 2019041000506001  **Document Date:** 03-27-2019  **Preparation Date:** 07-18-2019
**Document Type:** MORTGAGE
**Document Page Count:** 13

| PRESENTER: | RETURN TO: |
|---|---|
| UNITED AMERICAN TITLE AGENCY, LLC<br>101-05 LEFFERTS BLVD.<br>SUITE 201A<br>RICHMOND HILL, NY 11419<br>718-441-2027<br>INFO@UATITLEAGENCY.COM | PLANET MANAGEMENT GROUP, LLC<br>105 MAXESS ROAD<br>SUITE N107<br>MELVILLE, NY 11747 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 12527 | 93 | Entire Lot | 127-06 177TH STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN_____ or DocumentID_____ or _____Year____ Reel____ Page_____ or File Number_____

### PARTIES

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| 12706 HOLDINGS INC<br>130-21 140TH STREET<br>JAMAICA, NY 11436 | PLANET MANAGEMENT GROUP, LLC<br>105 MAXESS ROAD, SUITE N107<br>MELVILLE, NY 11747 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 535,000.00 | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 535,000.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 2,675.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 6,018.75 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 1,337.50 | | |
| MTA: | $ | 1,575.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 11,606.25 | | |
| Recording Fee: | $ | 102.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**
Recorded/Filed   07-18-2019 16:28
City Register File No.(CRFN): 2019000227660

*Jannette M Hill*
*City Register Official Signature*

PLANET-00552

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

PLANET MANAGEMENT GROUP, LLC
105 MAXESS ROAD, SUITE N107
MELVILLE, NY 11747

# MORTGAGE, SECURITY AGREEMENT, AND FIXTURE FILING

By

12706 HOLDINGS INC

as Borrower

For the benefit of

PLANET MANAGEMENT GROUP, LLC

as Lender

Dated

**MARCH 27, 2019**

Property Location:

**127-06 177TH STREET, JAMAICA, NY 11434**

COUNTY: QUEENS

DISTRICT:

SECTION:

BLOCK: 12527

LOT: 93

1

PLANET-00553

# MORTGAGE, SECURITY AGREEMENT, AND FIXTURE FILING

THIS MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS, AND FIXTURE FILING (this "Mortgage") is made and entered into effective as of MARCH 27, 2019, by and between 12706 HOLDINGS INC, a NEW YORK Corporation ("Borrower"), with an address 130-21 140TH STREET, JAMAICA, NY 11436, for the benefit of PLANET MANAGEMENT GROUP, LLC, a Limited Liability Company ("Lender"), with an address of 105 MAXESS ROAD, SUITE N107, MELVILLE, NY 11747, .

## RECITALS

A. Lender and Borrower have entered into that certain Loan Agreement (the "Loan Agreement") and Borrower has executed and delivered to Lender that certain Secured Promissory Note (the "Note"), each dated MARCH 27, 2019, pursuant to which Lender has agreed to loan to Borrower a principal amount of up to FIVE HUNDRED THIRTY-FIVE THOUSAND DOLLARS and 00/100 Dollars ($535,000.00) (the "Loan"). All capitalized terms used herein without definition shall have the meanings given to such terms in the Loan Agreement.

C. Pursuant to the Loan Agreement, Borrower has agreed to grant Lender, this Mortgage securing the Loan Agreement, the Note and the other Secured Obligations (as defined in Section 1.4 hereof).

NOW, THEREFORE, in consideration of the premises and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower hereby warrants, represents, covenants and agrees as follows:

## ARTICLE I
### Granting Clauses

Section 1.1  **Grant of Real Estate Security.** Borrower hereby irrevocably GRANTS, BARGAINS, SELLS, MORTGAGES, WARRANTS, TRANSFERS, CONVEYS, ASSIGNS, SETS OVER AND PLEDGES TO LENDER, WITH POWER OF SALE, AND GRANTS TO LENDER A SECURITY INTEREST IN, all of the following described property (collectively, the "Property"):

(a) The real property located in the City of JAMAICA, County of QUEENS, State of NEW YORK, described on Exhibit A, attached hereto and incorporated herein, and all and singular tenements, hereditaments and appurtenances thereto, together with all right, title and interest of Borrower in all easements, rights-of-way, gores or strips of land, surface waters, ground waters, watercourses, mineral interests and subsurface rights, alleys, streets and sidewalks, whether now owned or hereafter acquired, either in law or in equity, adjacent or appurtenant to or adjoining such real property (the "Land");

(b) Any and all buildings and improvements now or hereafter erected or located on the Land, including all right, title and interest of Borrower in and to all fixtures, attachments, appliances, equipment, machinery and other articles attached to such buildings and improvements (the "Improvements");

2

(c) All right, title and interest of Borrower in and to all tangible personal property now owned or hereafter acquired by Borrower and now or at any time hereafter located on the Land or within the Improvements and used in connection therewith, including all building materials stored on the Land, all machinery, motors, elevators, fittings, radiators, awnings, shades, screens, all plumbing, heating, lighting, ventilating, refrigerating, incinerating, air conditioning and sprinkler equipment, all furniture, furnishings, equipment and other personal property owned by Borrower and used in connection with the operation of the Property, and all renewals and replacements thereof (the "Personal Property"), all of which property shall, so far as permitted by law, be deemed to form a part and parcel of the real property and for the purpose of this Mortgage to be real estate and covered by this Mortgage;

(d) All of Borrower's interest in all existing and future accounts, contract rights, general intangibles, files, books of account, agreements, permits, licenses and certificates necessary or desirable in connection with the acquisition, ownership, construction, leasing, operation or management of the Property, whether now existing or entered into or obtained after the date hereof, including the "Leases" and "Rents" (as hereinafter defined);

(e) All leases, subleases, lettings, and licenses and other agreements for use and occupancy of any part of the Property, now existing or hereafter entered into, including any and all extensions or modifications thereto (the "Leases"), and all of the rents, royalties, security deposits, income, receipts, revenues and other sums now due or which may hereafter become due to Borrower under any Lease or arising from the use, enjoyment and occupancy of any part of the Property, and the right to enforce, whether at law or in equity or by any other means, all rights and remedies which Borrower may have against any party under the Leases including, without limitation, any guarantees of the obligations owed Assignor thereunder (the "Rents");

(f) All the estate, interest, right, title or other claim or demand with respect to the proceeds of insurance and any and all awards made for the taking of any part of the Property by the power of eminent domain, or by any proceeding or purchase in lieu thereof; and

(g) All of Borrower's interest in and to any deposits made with or other security given to utility companies by Borrower with respect to the Property.

TO HAVE AND TO HOLD the Property unto Lender and its successors and assigns, forever.

Section 1.2  Grant of Security Interest.

(a) With respect to any portion of the Property which constitutes personal property, fixtures or other property or interests governed by the Uniform Commercial Code of the State of New York (the "UCC"), this Mortgage shall constitute a security agreement between Borrower, as the debtor, and Lender, as the secured party, and Borrower hereby GRANTS TO LENDER A SECURITY INTEREST in such portion of the Property. Borrower agrees to execute and deliver to Lender all financing and continuation statements and other information which are from time to time required to establish and maintain the validity and priority of the security interests herein granted. Upon the occurrence of an Event of Default, Lender shall have all of the rights and remedies of a secured party available under the UCC with respect to the property encumbered by the security interests; provided, however, Lender may, at its option, dispose of such property in accordance with Lender's rights and remedies under this Mortgage, in lieu of proceeding under the UCC.

(b) This Mortgage shall also constitute a Financing Statement for purposes of the UCC and shall constitute a "fixture filing" under such statutes and shall be filed in the real estate records of the

3

PLANET-00555

County in which the Land is located. Borrower hereby authorizes Lender to file all Financing Statements evidencing the security interest granted to Lender in the Property in all appropriate filing jurisdictions.

For such purposes the name and address of the "Debtor" and the "Secured Party" are as set forth below:

| | |
|---|---|
| Debtor: | 12706 HOLDINGS INC<br>130-21 140TH STREET<br>JAMAICA, NY 11436 |
| Secured Party: | PLANET MANAGEMENT GROUP, LLC<br>105 MAXESS ROAD, SUITE N107<br>MELVILLE, NY 11747 |
| Address of Property: | 127-06 177TH STREET, JAMAICA, NY 11434 |

Section 1.3    Assignment of Leases and Rents.

(a)    Assignment.  Borrower hereby absolutely and unconditionally assigns, sells, transfers and conveys to Lender all of its right, title and interest in and to all Leases, whether now existing or hereafter entered into, and all of its right, title and interest in and to all Rents. This assignment is an absolute assignment and not an assignment for additional security only. So long as no Event of Default shall have occurred and be continuing, Borrower shall have a revocable license from Lender to exercise all rights extended to the landlord under the Leases, including the right to receive and collect all Rents and to hold the Rents in trust for use in the payment and performance of the Secured Obligations (as defined in Section 1.4 hereof) and to otherwise use the same. The foregoing license is granted subject to the conditional limitation that no Event of Default shall have occurred and be continuing. Upon the occurrence and during the continuance of an Event of Default, whether or not legal proceedings have commenced, and without regard to waste, adequacy of security for the Secured Obligations or solvency of Borrower, the license herein granted shall automatically expire and terminate, without notice to Borrower by Lender (any such notice being hereby expressly waived by Borrower to the extent permitted by applicable law).

(b)    Perfection Upon Recordation.  Borrower acknowledges that Lender has taken all actions necessary to obtain, and that upon recordation of this Mortgage, Lender shall have, to the extent permitted under applicable law, a valid and fully perfected, present assignment of the Rents arising out of the Leases and all security for such Leases. Borrower acknowledges and agrees that, upon recordation of this Mortgage, Lender's interest in the Rents shall be deemed to be fully perfected, "choate" and enforced as to Borrower and to the extent permitted under applicable law, all third parties, including, without limitation, any subsequently appointed trustee in any case under Title 11 of the United States Code (the "Bankruptcy Code"), without the necessity of commencing a foreclosure action with respect to this Mortgage, making formal demand for the Rents, obtaining the appointment of a receiver or taking any other affirmative action.

(c)    Bankruptcy Provisions.  Without limitation of the absolute nature of the assignment of the Rents hereunder, Borrower and Lender agree that (a) this Mortgage shall constitute a "security agreement" for purposes of Section 552(b) of the Bankruptcy Code, (b) the security interest created by this Mortgage extends to property of Borrower acquired before the commencement of a case in bankruptcy and to all amounts paid as Rents and (c) such security interest shall extend to all Rents acquired by the estate after the commencement of any case in bankruptcy.

Section 1.4    Secured Obligations.

4

PLANET-00556

(a) This Mortgage shall secure the following indebtedness and obligations, including all replacements, renewals, amendments, extensions, substitutions and modifications thereof:

(1) Payment of all indebtedness and performance of all obligations and covenants of Borrower under or pursuant to (i) the Loan Agreement; (ii) the Note; (iii) this Mortgage; and (iv) all other Loan Documents (as defined in Section 1.4(c)); and

(2) Payment of all future advances and all sums advanced by Lender to protect the Property or otherwise pursuant to the terms of the Loan Documents, with interest on all of the foregoing at the Default Rate from the date of Lender's advance to the date of Borrower's repayment of same.

(b) The obligations secured by this Mortgage which are described in paragraph (a) above are herein collectively referred to as the "Secured Obligations."

(c) This Mortgage, the Loan Agreement, the Note, and any other writing or instrument given to evidence or secure the payment or performance of any of the Secured Obligations (but not the Guaranty) are herein collectively referred to as the "Loan Documents." For the avoidance of doubt and notwithstanding anything to the contrary contained in this Mortgage or any other Loan Document, the Secured Obligations shall not include and this Mortgage shall not secure the obligations of Guarantor under the Guaranty.

## ARTICLE II
### Payments and Performance

Section 2.1 Payment of Secured Obligations. Borrower shall pay all sums it is obligated to pay under the Loan Documents without offset, counterclaim or defense, as and when the same shall become due. Borrower shall fully and faithfully observe and perform all of the obligations of Borrower to be observed and performed under the Loan Documents.

Section 2.2 Payments after Default. Upon the occurrence and during the continuance of an Event of Default, interest on the outstanding principal balance of the Loan and, to the extent permitted by applicable Law, overdue interest and other amounts due in respect of the Loan, shall accrue at the Default Rate, calculated from the date of the underlying Default without regard to any grace or cure periods contained herein, and shall be payable immediately on demand from Lender. Interest at the Default Rate shall be computed from the occurrence of the Default until the actual receipt and collection of the Loan (or that portion thereof that is then due). To the extent permitted by applicable Law, interest at the Default Rate shall be added to the Loan, shall itself accrue interest at the same rate as the Loan, and shall be secured by the Security Instrument. This paragraph shall not be construed as an agreement or privilege to extend the date of the payment of the Loan, nor as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default and Lender retains its rights under the Note to accelerate and to continue to demand payment of the Debt upon the happening of any Event of Default.

## ARTICLE III
### Events of Default

Section 3.1 Remedies. Upon the occurrence of an Event of Default under the Loan Agreement, Lender shall have the right to take any one or more of the following actions:

5

PLANET-00557

(a) Declare all Secured Obligations to be due and payable, and the same shall thereupon become due and payable without any presentment, demand, protest, notice of protest or dishonor, notice of intent to accelerate the maturity thereof, notice of acceleration of the maturity thereof or any other notice of default of any kind, all of which are hereby expressly waived by the Borrower;

(b) Commence an action to foreclose this Mortgage in accordance with applicable law by judicial order or power of sale, or specifically enforce any of the covenants of this Mortgage;

(c) Exercise any or all of the remedies available to Lender as a secured party under the UCC;

(d) Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court, and without regard to the adequacy of its security, enter upon and take possession of the Property or any part thereof and do any acts which it deems necessary or desirable to protect and preserve Lender's security, without liability for trespass, damages or otherwise;

(e) Enter and take possession of the Property and manage and operate the same, make repairs, alterations and improvements, and complete any construction on the Property, in such manner and form as Lender deems appropriate, exercise all rights and powers of Lender with respect to the Property, whether in the name of Borrower or otherwise, and perform such other acts in connection with the management and operation of the Property as Lender, in its sole discretion, deems appropriate, and demand. Any income so derived from the Property shall be applied by Lender, in such order and amounts as Lender shall elect, to the costs of any expenses as Lender shall determine and to satisfy the Debt;

(f) Without notice to Borrower or anyone claiming under Borrower, and without regard to the value of the Property, to obtain from any court having jurisdiction the appointment of a receiver or receivers of the Property, and Borrower hereby irrevocably consents to such appointment and waives notice of any application therefor. Any such receiver or receivers shall have all of the usual powers and duties of receivers in like or similar cases and all powers and duties of Lender in case of entry as provided in Section 3.5 hereof;

(g) Bring appropriate action, from time to time, to recover any sum or sums which constitute a part of the Debt as the same become due, without prejudice to the right of Lender thereafter to bring an action of foreclosure, or any other action, for a default by Borrower; or

(h) Exercise any other right or remedy otherwise available to Lender for the payment of Debt in such order and manner as Lender, in its sole discretion, may elect.

Section 3.2 Remedies Not Exclusive; No Waiver. Except as may be prohibited by applicable law, every power or remedy given Lender by any of the Loan Documents, or to which Lender otherwise may be entitled, may be exercised without prejudice to any other power or remedy, concurrently, independently, in any order or any manner from time to time and as often as may be deemed expedient by Lender. No remedy or power is intended to be exclusive of any other remedy or power, and Lender may pursue inconsistent remedies. The acceptance by Lender of the payment or performance of any Secured Obligation after the same shall be due shall not constitute a waiver of Lender's right to the prompt payment or performance of same, or to declare a default as herein provided. The acceptance by Lender of any sum in an amount less than the sum then due shall not constitute a waiver of Borrower's obligation to pay the entire sum, and such failure shall continue to be a default by Borrower notwithstanding Lender's acceptance of such partial payment. Consent by Lender to any action or inaction of Borrower which is subject to consent or approval shall not be deemed a waiver of any other or future right of Lender to consent under

6

PLANET-00558

this Mortgage. Nothing set forth in this Mortgage shall be construed to constitute Lender as a "mortgagee in possession" in the absence of its actual taking of possession of the Property pursuant to the powers granted herein.

Section 3.3    Waivers.  To the extent permitted by law, Borrower hereby agrees that it shall not at any time insist upon, plead, claim or take any benefit or advantage, in any way whatsoever, whether now or in the future, and Borrower hereby irrevocably waives, all of the following, whether the same exists under federal or state law, or otherwise at law or in equity:

   (a)    Any right of redemption of any of the Property after sale under this Mortgage;

   (b)    All rights and claims it may have in or to any of the Property as a "homestead exemption," or similar exemptions;

   (c)    Any stay, extension or moratorium law which may extend the period for enforcement of this Mortgage or any period of redemption;

   (d)    Any and all right to require the marshaling of assets in connection with the exercise of any of Lender's remedies under this Mortgage, it being agreed that Lender shall have the right to determine, in its sole discretion, the order in which any of the Property shall be sold, or the order in which any Secured Obligations are satisfied from the proceeds of such sale;

   (e)    Any law providing for the valuation or appraisal of all or any part of the Property prior to or after any sale or sales made pursuant to this Mortgage;

   (f)    Personal service of process in any action or proceeding at any time commenced to enforce this Mortgage or any of the Loan Documents, Borrower hereby agreeing that such process shall be deemed properly and adequately served if sent to Borrower as provided in Section 5.2 hereof;

   (g)    All notices not herein specifically required of Borrower's default under any of the Loan Documents, or of Lender's exercise, or election to exercise, any right, option or election under this Mortgage;

   (h)    Any and all technical or procedural errors, defects and imperfections in any of the Loan Documents or any proceedings instituted by Lender under this Mortgage;

   (i)    Any and all rights of set off that Borrower may have against Lender.

Section 3.4    Preservation of Security.  Notwithstanding the provisions of this Article III, and in addition to any other rights or remedies of Lender under this Mortgage, should Borrower at any time fail to make any payment or perform any obligation under any Loan Document, which failure continues beyond any applicable cure period, Lender, in its sole discretion, without obligation to do so and without notice to or demand upon Borrower, and without releasing Borrower from any Secured Obligation or waiving any of Lender's rights under the Loan Documents, may cure such default of Borrower in such manner and to such extent as Lender may deem necessary to protect the security of this Mortgage. In connection therewith, without limiting its general powers, Lender shall have and is hereby given the right, but not the obligation:

   (a)    To enter upon and take possession of the Property;

7

(b) To direct Borrower to terminate any management agent and employ such management agent as Lender may reasonably determine;

(c) To make additions, alterations, repairs and improvements to the Property which Lender may consider necessary or proper to keep the Property in good condition and repair;

(d) To appear and participate in any action or proceeding affecting or which may affect the security hereof or the rights or powers of Lender;

(e) To pay, purchase, contest or compromise any encumbrance, claim, charge, lien or debt which, in the judgment of Lender, may affect the security of this Mortgage or be prior or superior hereto; and

(f) In exercising such powers, to pay necessary expenses, including employment of counsel or other necessary or desirable consultants.

All costs and expenses incurred by Lender in connection with the exercise of the foregoing rights, including costs of evidence of title, court costs, appraisals, surveys and reasonable attorneys' fees, shall be secured by this Mortgage, be reasonable in amount and be repayable by Borrower upon demand, with interest at the Default Rate.

Section 3.5 **Right of Setoff; Security Interest.** As additional security for the payment and performance of the Debt, Lender shall have, to the fullest extent permitted by Law, a contractual possessory security interest in and a contractual right of setoff against, and Borrower hereby assigns, pledges and grants to Lender a security interest in, (i) Borrower's deposit accounts (whether general or special, time or demand, provisional or final, and including escrow accounts and reserve accounts) at any time held by or with Lender, all accounts, contract rights and general intangibles and other rights and interests pertaining thereto, and all replacements, substitutions and proceeds thereof, and (ii) without duplication, Borrower's right, title and interest in and to, all of Borrower's deposits, moneys and other property now or hereafter in the possession of, on deposit with or in transit to Lender. If an Event of Default shall have occurred and be continuing, Lender is hereby irrevocably authorized at any time and from time to time, to the fullest extent permitted by Law, to charge such deposit accounts, and set off any and all such deposits, moneys and other property and any and all other obligations at any time owing by Lender to or for the credit or the account of Borrower, and to apply the same to any and all of the Debt (including, without limitation, amounts due and payable under the Loan Documents) in such manner as Lender shall deem appropriate in its sole discretion, notwithstanding that such Debt may be unmatured. Every such security interest and right of setoff may be exercised without demand upon or notice to Borrower.

ARTICLE IV
Environmental

Section 4.1 **Indemnity.** Borrower shall indemnify, defend and save and hold harmless Lender from and against any and all losses, liabilities, damages, costs and expenses (including costs of remediation or cleanup, loss of property value or defects in title to the Property, and the reasonable fees and disbursements of Lender's counsel) asserted against or suffered or incurred by Lender and in any way relating to or arising out of the generation, storage, manufacturing, refining, releasing, transportation, treatment, disposal or other presence of any Hazardous Substance on or about or removed from the Property, which indemnity shall survive: (i) the foreclosure of this Mortgage; (ii) any conveyance of the Property in lieu of such foreclosure; (iii) the payment and performance of the Secured Obligations, (iv) the release of the lien of this Mortgage; and (v) any other transfer of Borrower's title to or interest in the Property.

8

PLANET-00560

## ARTICLE V
## General Covenants

Section 5.1  Due on Sale.  If, without the Lender's prior written consent: (i) the Property or any part thereof or any interest in the Property or Borrower, including beneficial interests, is sold or conveyed; (ii) title to the Property or any interest therein is divested; (iii) the Property or any ownership interest in Borrower, including beneficial interests, is further encumbered or pledged (other than with respect to ownership interests, to the extent permitted by the Loan Agreement); or (iv) any lease of the Property or grant to any party of an option to lease or purchase the Property or any part thereof is entered into, Lender shall, at its sole discretion, be entitled to accelerate all sums due and payable under the Note and Loan Agreement to be immediately due and payable and exercise all remedies available to Lender under this Mortgage or any of the other Loan Documents.

Section 5.2  Notices.  All notices, demands, requests, and other communications desired or required to be given hereunder shall be in writing and shall be given in accordance with the terms of the Loan Agreement.

Section 5.3  Legal Existence.  If Borrower is a limited liability company, partnership, limited liability company or other entity, Borrower shall preserve and keep in full force and effect its legal existence and all franchises, rights and privileges under the laws of the state of its in limited liability company or formation and its standing and/or qualification to do business in the State of New York.

Section 5.4  Liens.  Borrower shall not create, permit to accrue or suffer to exist upon any of the Property, any security interest (other than in respect of Subordinated Debt consented to by Lender in accordance with the Loan Agreement), judgment lien, mechanic's or materialman's lien, or any other lien, encumbrance, charge, retention or reservation of title, pledge, hypothecation or assignment as security, and shall promptly pay, when the same shall become due, all claims and demands of contractors, subcontractors, mechanics, materialmen, laborers and others which claims, if unpaid, might result in or permit the creation of a lien upon the Property, and Borrower shall cause any such lien to be promptly paid and discharged, whether by payment, bonding or otherwise, within thirty (30) days after the filing of same.

Section 5.5  No Occupancy.  Borrower shall not, nor shall Borrower permit any other person to, occupy the Property.

Section 5.6  Successors.  The terms and provisions of this Mortgage shall be binding upon Borrower and its successors and assigns and shall inure to the benefit of Lender and its successors and assigns.

Section 5.7  Governing Law; Venue.  This Mortgage and the Loan Documents are being delivered, and are intended to be performed, in the State of New York and the laws of the State of New York and of the United States of America shall govern the rights and duties of the parties hereto and the validity, construction, enforcement and interpretation of this Mortgage and the other Loan Documents. Any action for foreclosure of this Mortgage may be brought in the county where the Property is located, at Lender's option, and Borrower hereby irrevocably submits generally and unconditionally for itself and in respect of its property to the jurisdiction of any such court and hereby irrevocably waives, to the fullest extent permitted by applicable law, any objection that Borrower may now or hereafter have to the laying of venue in any such court and any claim that such court is an inconvenient forum.

Section 5.8  Discharge of Mortgage.  Upon payment and performance in full of all of the Secured Obligations, Lender shall, upon demand of Borrower but in no event later than the time prescribed

9

PLANET-00561

by applicable law, discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied recording the discharge in the proper official records. Borrower agrees to pay a fee for the discharge of this Security Instrument if Lender so requires. Lender may require that Borrower pays such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law. The Borrower will pay all costs of recordation, if any. The recitals in such conveyance of any matters or facts shall be conclusive of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

Section 5.9    Lender's Approval. Unless another standard is specified, in any instance under this Mortgage in which Lender's approval shall be required, such approval may be given or withheld by Lender in Lender's discretion. The granting of any approval by Lender shall not be deemed a waiver of such right of approval to any future matter, and all approvals by Lender must be in writing.

Section 5.10    Severability. If any term or provision of this Mortgage or the application thereof to any person or circumstance shall, to any extent, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof or any other circumstance or situation with respect to this Mortgage, and each remaining term and provision of this Mortgage shall be valid and be enforced to the fullest extent by law.

Section 5.11    Waiver of Jury. EACH OF BORROWER, HAVING HAD AN OPPORTUNITY TO CONSULT WITH COUNSEL, AND LENDER, HEREBY KNOWINGLY AND VOLUNTARILY WAIVES AND FOREVER FORGOES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHTS IT MAY HAVE TO A TRIAL BY JURY OF ANY CLAIM, DEMAND OR CAUSE OF ACTION, OR IN ANY ACTION OR PROCEEDING, DIRECTLY OR INDIRECTLY ARISING OUT OF OR IN ANY WAY RELATING OR INCIDENTAL TO (A) ANY OF THE SECURED OBLIGATIONS, THIS MORTGAGE OR THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED THEREBY OR (B) THE DEALINGS OF BORROWER AND LENDER OR ANY OF THEM WITH RESPECT TO ANY OF THE SECURED OBLIGATIONS OR THE TRANSACTIONS RELATED THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY. BORROWER (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND ANY OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS MORTGAGE BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION. EACH OF BORROWER AND LENDER HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, CAUSE OF ACTION OR PROCEEDING, SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT EITHER PARTY MAY FILE THIS MORTGAGE OR A COPY THEREOF WITH ANY COURT AS WRITTEN EVIDENCE TO THE CONSENT OF THE OTHER TO THE WAIVER OF RIGHT TO A TRIAL BY JURY.

ARTICLE VI
State Specific Provisions

Section 6.1    Principals of Construction. In the event of any inconsistencies between the terms and conditions of this Article 6 and the other terms and conditions of this Mortgage, the terms and conditions of this Article 6 shall control and be binding.

Section 6.2    New York.

10

PLANET-00562

(a) <u>Real Property</u>. Borrower represents that this Mortgage encumbers real property principally improved or to be improved by one or more structures containing in the aggregate not more than six residential dwelling units, each having its own separate cooking facilities.

(b) <u>Maximum Principal Indebtedness</u>. Notwithstanding anything to the contrary contained herein, the maximum amount of principal indebtedness secured by this Mortgage or which under any contingency may be secured by this Mortgage is $535,000.00

(c) <u>Insurance Proceeds</u>. The provisions of subsection 4 of Section 254 of the Real Property Law of New York covering the insurance of buildings against loss by fire shall control.

(d) <u>Trust Fund</u>. Pursuant to Section 13 of the lien law of New York, Borrower shall receive the advances secured hereby and shall hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of any improvement and shall apply such advances first to the payment of the cost of any such improvement on the Property before using any part of the total of the same for any other purpose.

(e) <u>Section 291-f Agreement</u>. This Mortgage is intended to be, and shall operate as, the agreement described in Section 291-f of the Real Property Law of the State of New York and shall be entitled to the benefits afforded thereby. Borrower shall (unless such notice is contained in such tenant's Lease) deliver notice of this Mortgage in form and substance acceptable to Lender, to all present and future holders of any interest in any lease, by assignment or otherwise, and shall take such other action as may now or hereafter be reasonably required to afford Lender the full protections and benefits of Section 291-f. Borrower shall request the recipient of any such notice to acknowledge the receipt thereof.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK, SIGNATURE PAGE FOLLOWS]

PLANET-00563

IN WITNESS WHEREOF, Borrower has caused this Mortgage to be duly executed on the day and year set forth in the acknowledgment attached hereto and to be effective as of the date first set forth above.

**12706 HOLDINGS INC**

By: /s/ _____
Name: **LEZANTONIO WOODBURN**
Title: **PRESIDENT**

STATE OF NEW YORK  )
                                      ) ss:
COUNTY OF QUEENS   )

On the 27TH day of MARCH, 2019, before me, the undersigned, personally appeared, LEZANTONIO WOODBURN, known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
NOTARY PUBLIC
My Commission expires:

## Schedule A Description

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of 177th Street, distant 24.83 feet southerly from the corner formed by the intersection of the westerly side of 177 Street, with the southerly side of 127th Avenue;

RUNNING THENCE westerly and parallel with the northerly side of 129th Avenue, 115 feet;

RUNNING THENCE southerly and parallel with the westerly side of 177th Street, 30 feet;

RUNNING THENCE easterly and again parallel with the northerly side of 129th Avenue, 115 feet to the westerly side of 177th Street; and

THENCE northerly along the westerly side of 177th Street, 30 feet to the point or place of BEGINNING.