# EXHIBIT J

Mortgagor does not pay all outstanding obligations on the Mortgage Loan by the scheduled maturity date, the Company may, in its reasonable discretion, grant one (1) extension of the term of the Mortgage Loan in accordance with the Underwriting Standards. The Company may not, without the prior written consent of the Purchaser, grant any extensions of the term of a Mortgage Loan that are not in accordance with the Underwriting Standards.

Subsection 10.04. Realization Upon Defaulted Mortgage Loans.

In the event that any payment due under any Mortgage Loan is not paid when the same becomes due and payable, or in the event the Company learns that the Mortgagor has failed to perform any other covenant or obligation under the Mortgage Loan and such failure continues beyond any applicable grace period, the Company shall take such action as it shall deem to be in the interest of the Purchaser. In connection therewith, the Company may order an inspection of the related Mortgaged Property and, if the Company deems it to be in the interest of the Purchaser, and subject to the Purchaser's consent, commence foreclosure proceedings in accordance with Accepted Servicing Practices. In such connection, the Company shall make all necessary and proper Servicing Advances unless it shall determine in good faith that such Servicing Advances may not be recoverable from Liquidation Proceeds of the related Mortgaged Property.

All Liquidation Proceeds with respect to any Mortgage Loan shall be applied in accordance with the Priority of Payments within two (2) Business Days of the date such funds have been received by the Company. The Company shall remit by wire transfer of immediately available funds all amounts owed to the Purchaser pursuant to the Priority of Payments to the account designated in writing by the Purchaser of record on the last day of the calendar month immediately preceding such distribution date. The Company shall be permitted to deduct directly from the Custodial Account all amounts owed to the Company pursuant to the Priority of Payments with respect to such Liquidation Proceeds.

Subsection 10.05. Establishment of Custodial Accounts; Deposits in Custodial Accounts.

The Company or its subservicer shall segregate and hold all funds collected and received pursuant to each Mortgage Loan separate and apart from any of its own funds and general assets and shall establish and maintain one or more Custodial Accounts (collectively, the "Custodial Account") in such designation as may be acceptable to the Purchaser. The Company shall provide evidence satisfactory to the Purchaser regarding the establishment and designation of the Custodial Account prior to the initial Closing Date hereunder. Such Custodial Account shall be an Eligible Account. The Custodial Account shall be insured by the FDIC in a manner which shall provide maximum available insurance thereunder and which may be drawn on by the Company.

The Company shall deposit in the Custodial Account within two (2) Business Days of the date such funds have been received by the Company, and retain therein the following payments and collections received or made by it subsequent to the related Cut-off Date:

(a)    all payments on account of principal, including Principal Prepayments, on the Mortgage Loans;

34

(b)     all payments on account of interest (including Default Interest) on the Mortgage Loans (net of the Servicing Fees which may be retained by the Company);

(c)     any Prepayment Charges (to the extent such Prepayment Charges are acquired by the Purchaser as indicated in the related Assignment and Conveyance);

(d)     all Liquidation Proceeds;

(e)     all Insurance Proceeds including all amounts received by the Company under any title insurance policy or hazard insurance policy other than proceeds to be held in the Escrow Account and applied to the restoration or repair of the Mortgaged Property or released to the Mortgagor in accordance with Accepted Servicing Practices;

(f)     all Condemnation Proceeds and all amounts in respect of condemnation proceedings or eminent domain affecting any Mortgaged Property which are not released to the Mortgagor in accordance with Accepted Servicing Practices;

(g)     all Ancillary Fees, Default Interest and Extension Fees received by the Company;

(h)     any amount required to be deposited by the Company in connection with any REO Property pursuant to Subsection 10.15; and

(i)     proceeds of any Mortgage Loan repurchased as provided in Subsection 6.03.

The foregoing requirements for deposit in the Custodial Account shall be exclusive, it being understood and agreed that payments in the nature of Ancillary Fees shall be deposited by the Company in the Custodial Account, provided further that the Company shall be entitled to receive the amount of Extension Fees, Prepayment Charges and Ancillary Fees as set forth in the Asset Management Side Letter and in accordance with the Asset Management Side Letter. The Company shall not be required to deposit in the Custodial Account, and shall be entitled to retain for its own account, all late charges and all returned item charges (e.g., insufficient fund charges).

The Company may invest the funds in the Custodial Account in Eligible Investments designated in the name of the Company, which shall mature not later than the Business Day next preceding the Remittance Date next following the date of such investment (except that (A) any investment in the institution with which the Custodial Account is maintained may mature on such Remittance Date and (B) any other investment may mature on such Remittance Date if the Company shall advance funds on such Remittance Date, pending receipt thereof to the extent necessary to make distributions to the Purchaser) and shall not be sold or disposed of prior to maturity. Notwithstanding anything to the contrary herein and above, all income and gain realized from any such investment shall be for the benefit of the Company and shall be subject to withdrawal by the Company. The amount of any losses incurred in respect of any such investments shall be deposited in the Custodial Account by the Company out of its own funds no later than one (1) Business Day following such loss.

35

Subsection 10.06. Withdrawals from the Custodial Account.

The Company shall on each Remittance Date withdraw funds from the Custodial Account to apply amounts on deposit in the Custodial Account in accordance with Subsection 10.07 below. Without limiting the foregoing, the Company may, from time to time, also make withdrawals from the Custodial Account for the following purposes:

(a)     to make Servicing Advances or reimburse itself for unreimbursed Servicing Advances;

(b)     to pay itself any other amounts due the Company hereunder;

(c)     to pay to itself any interest earned or any investment earnings on funds deposited in the Custodial Account, net of any losses on such investments;

(d)     to withdraw any amounts inadvertently deposited in the Custodial Account;

(e)     to reflect any charges for checks or bank drafts returned by the related bank for non-sufficient funds or in return of Mortgagor payments previously deposited and subsequently dishonored due to non-sufficient funds related to funds deposited into the Custodial Account and previously remitted to the Purchaser; and

(f)     to clear and terminate the Custodial Account upon the termination of this Agreement.

The Company shall keep and maintain, in an electronic format mutually acceptable to the Company and the Purchaser, separate accounting, on a Mortgage Loan by Mortgage Loan basis, and on an REO Property by REO Property basis, for the purpose of justifying any deposit or withdrawal from the Custodial Account. The Company shall also provide to the Purchaser with respect to each Mortgage Loan on a monthly basis prior to a Servicing Transfer Date for such Mortgage Loan reasonable documentation related to any Servicing Advance, Servicing Fees and any other fees or amounts paid to the Company under this Agreement. Not later than twenty (20) days after the end of each calendar month, the Company shall forward to the Purchaser a statement, setting forth the status of the Custodial Account, the Rehabilitation Holdback Account and the Escrow Account as of the last calendar day of the immediately preceding month showing, for the period for the preceding calendar month, the aggregate of deposits into and withdrawals from the Custodial Account, the Rehabilitation Holdback Account and Escrow Account.

Subsection 10.07. Distributions/Priority of Payments.

On each Remittance Date, all amounts credited to the Custodial Account at the close of business on the related Determination Date with respect to a Mortgage Loan and not withdrawn pursuant to Subsection 10.06 (with respect to such Mortgage Loan, the "Collections"), shall be applied in the following order (the "Priority of Payments"):

(1)     first, to the Company, all unreimbursed Servicing Advances with respect to such Mortgage Loan;

36

      (2)     second, to the Company, all unpaid Servicing Fees with respect to such Mortgage Loan;

      (3)     third, to the Purchaser, all interest with respect to such Mortgage Loan at the Mortgage Interest Rate, together with all previously accrued and unpaid interest at the Mortgage Interest Rate with respect to such Mortgage Loan from and after the related Cut-off Date;

      (4)     fourth, to the Purchaser, all principal payments on such Mortgage Loan;

      (5)     fifth, to the Purchaser, all Ancillary Fees, Default Interest and Extension Fees with respect to such Mortgage Loan for payment as agreed to in writing by the parties; and

      (6)     sixth, to the Purchaser, all remaining Collections after payment of the foregoing.

On each Remittance Date, the Company shall remit by wire transfer of immediately available funds all amounts owed to the Purchaser pursuant to the Priority of Payments to the account designated in writing by the Purchaser of record on the last day of the calendar month immediately preceding such Remittance Date. In accordance with the Asset Management Side Letter, the Purchaser shall remit the amount of Extension Fees, Prepayment Charges and Ancillary Fees due the Company pursuant to the Asset Management Side Letter. The Company shall be permitted to deduct directly from the Custodial Account all unreimbursed Servicing Advances and unpaid Servicing Fees pursuant to the Priority of Payments.

In the event the Company makes or has made a Servicing Advance as of or at the close of business on the related Determination Date, the Company will provide a monthly report to the Purchaser as part of or simultaneously with the report described in Subsection 10.16 hereof, identifying for each Servicing Advance, the date and amount of the Servicing Advance, the person paid, the source of funds and the reason for the Servicing Advance. Any advances incurred by the Company, the Purchaser, or a Successor Servicer on or after the applicable Closing Date (including, without limitation, Servicing Advances advanced by the Servicer at the close of business on the related Determination Date) (to the extent permitted under this Agreement) will be the responsibility of the Purchaser. Notwithstanding anything to the contrary contained herein, if at the close of business on the related Determination Date, the amount of unreimbursed Servicing Advances exceed the aggregate amount of Collections due the Purchaser, the Servicer shall so notify the Purchaser and the Purchaser shall remit the total amount of such shortfall to the Servicer on a monthly basis no later than fifteen (15) Business Days following the date of such notice.

With respect to any remittance received by the Purchaser after the Business Day on which such payment was due, the Company shall pay to the Purchaser interest on any such late payment at an annual rate equal to the Prime Rate, adjusted as of the date of each change, plus three (3) percentage points, but in no event greater than the maximum amount permitted by Applicable Law. Such interest shall be paid by the Company to the Purchaser on the date such late payment is made and shall cover the period commencing with the Business Day on which such payment was due and ending with the Business Day immediately preceding the Business Day on which such payment is made, both inclusive. The payment by the Company of any such

37

Do Not Disclose

interest shall not be deemed an extension of time for payment or a waiver of any Event of Default by the Company.

Subsection 10.08. Establishment of Escrow Accounts; Deposits in Escrow Accounts.

In connection with Mortgage Loans that the Company shall receive Escrow Payments as indicated on the related Assignment and Conveyance, the Company or its subservicer shall segregate and hold all funds collected and received pursuant to each Mortgage Loan which constitute Escrow Payments separate and apart from any of its own funds and general assets and shall establish and maintain one or more Escrow Accounts (collectively, the "Escrow Account") in such designation as may be acceptable to the Purchaser. The Company shall provide evidence satisfactory to the Purchaser regarding the establishment and designation of the Escrow Account prior to the initial Closing Date hereunder. The Escrow Account shall be an Eligible Account. The Escrow Account shall be insured by the FDIC in a manner which shall provide maximum available insurance thereunder and which may be drawn on by the Company.

The Company shall deposit in the Escrow Account within two (2) Business Days of receipt and retain therein: (a) all Escrow Payments collected on account of the Mortgage Loans, for the purpose of effecting timely payment of any such items as required under the terms of this Agreement and (b) all amounts representing proceeds of any hazard insurance policy, flood insurance policy or other insurance policy, which are to be applied to the restoration or repair of any Mortgaged Property. The Company shall make withdrawals therefrom only in accordance with Subsection 10.09 hereof. As part of its servicing duties, the Company shall pay to the Mortgagors interest on funds in the Escrow Account, to the extent required by Applicable Law, without reimbursement by the Purchaser. Any interest earned on funds in the Escrow Account not paid to Mortgagors shall be retained by the Company and may be withdrawn from the Escrow Account by the Company as provided in Subsection 10.09.

Subsection 10.09. Withdrawals From Escrow Accounts.

Withdrawals from the Escrow Account shall be made by the Company only (a) to effect timely payments of ground rents, taxes, water charges, assessments, fire and hazard insurance premiums or other items constituting Escrow Payments for the related Mortgage, (b) to reimburse the Company for any Servicing Advance made by the Company pursuant to Section 10 hereof with respect to a related Mortgage Loan, (c) to refund to any Mortgagor any escrow funds found to be in excess of the amounts required under the terms of the related Mortgage Loan, (d) for transfer to the Custodial Account upon default of a Mortgagor or in accordance with the terms of the related Mortgage Loan and if not prohibited by Applicable Law, (e) for application to the restoration or repair of the Mortgaged Property, (f) to pay to the Mortgagor, to the extent required by Applicable Law, any interest paid on the funds deposited in the Escrow Account, (g) to pay to itself any interest earned on funds deposited in the Escrow Account (and not required to be paid to the Mortgagor), (h) to withdraw suspense payments that are deposited into the Escrow Account, (i) to withdraw any amounts inadvertently deposited in the Escrow Account, (j) for transfer to the purchaser of a Mortgage Loan in connection with the sale of such Mortgage Loan, or (k) to clear and terminate the Escrow Account upon the termination of this Agreement.

The Company shall keep and maintain, in an electronic format mutually acceptable to the Company and the Purchaser, separate accounting, on a Mortgage Loan by Mortgage Loan basis, and on an REO Property by REO Property basis, for the purpose of justifying any deposit into or withdrawal from the Escrow Account.

Subsection 10.10. Establishment of the Rehabilitation Holdback Account; Deposits in the Rehabilitation Holdback Account.

The Company or its servicing agent shall segregate and hold all funds with respect to each Mortgage Loan which constitute Rehabilitation Holdback Amounts separate and apart from any of its own funds and general assets and shall establish and maintain one or more Rehabilitation Holdback Accounts (collectively, the "Rehabilitation Holdback Account"). The Company shall provide evidence satisfactory to the Purchaser regarding the establishment and designation of the Rehabilitation Holdback Account prior to the initial Closing Date hereunder. The Rehabilitation Holdback Account shall be an Eligible Account. The Rehabilitation Holdback Account shall be insured by the FDIC in a manner which shall provide maximum available insurance thereunder and which may be drawn on by the Company.

The Company shall deposit in the Rehabilitation Holdback Account, and retain therein, all Rehabilitation Holdback Amounts with respect to the applicable Mortgage Loans, for the purpose of effecting timely payment of any such items as required under the terms of this Agreement and the related Mortgage Loan documents. The Company shall make withdrawals therefrom only in accordance with Subsection 10.11 hereof. Any interest earned on Rehabilitation Holdback Amounts held in the Rehabilitation Holdback Account not paid to Mortgagors or the Purchaser shall be retained by the Company and may be withdrawn from the Rehabilitation Holdback Account by the Company as provided in Subsection 10.11.

Subsection 10.11. Withdrawals From the Rehabilitation Holdback Account.

Withdrawals from the Rehabilitation Holdback Account may be made by the Company (a) to effect timely payments of amounts due under the terms of the related Mortgage Loan documents (including, without limitation, application of any remaining Rehabilitation Holdback Amounts to the outstanding balance of such Mortgage Loan pursuant to the terms of the related Mortgage Loan documents), (b) for application to the construction or rehabilitation of a Mortgaged Property, (c) to pay to itself any interest paid on the funds deposited in the Rehabilitation Holdback Account, (d) for transfer to the purchaser of a Mortgage Loan in connection with the sale of such Mortgage Loan, (e) to withdraw any amount deposited therein in error, including, without limitation, payment to the Mortgagor of any overpayments sent to the Company in error or (f) to clear and terminate the Rehabilitation Holdback Account upon the termination of this Agreement.

Prior to the release of any Rehabilitation Holdback Amount to a Mortgagor, (a) with respect to each Rehabilitation Holdback Amount to be released to Mortgagor that is less than or equal to $50,000, the Company shall, at its own or the Mortgagor's expense, conduct a review of the completion percentage with a property visit to confirm the progress of the rehabilitation done to the related Mortgaged Property and (b) with respect to each Rehabilitation Holdback Amount to be released to Mortgagor that is greater than $50,000, the Company shall, have an inspector

39

(which may be a Company employee) acceptable to the Purchaser to conduct a review of the completion percentage to confirm the progress of the rehabilitation done to the related Mortgaged Property.

The Company shall keep and maintain, in an electronic format mutually acceptable to the Company and the Purchaser, separate accounting, on a Mortgage Loan by Mortgage Loan basis, for the purpose of justifying any deposit into or withdrawal from the Rehabilitation Holdback Account.

Subsection 10.12. <u>Payment of Taxes, Insurance and Other Charges; Collections Thereunder</u>.

With respect to each Mortgage Loan that the Company shall receive Escrow Payments as indicated on the related Assignment and Conveyance, the Company shall maintain records reflecting the status of ground rents, taxes, assessments, homeowner association fees, water charges and other charges which are or may become a lien upon the Mortgaged Property and the status of premiums for fire, hazard and, if applicable, flood insurance coverage and shall obtain, from time to time, all bills for the payment of such charges (including renewal premiums) and shall effect payment thereof prior to the applicable penalty or termination date and at a time appropriate for securing maximum discounts allowable, employing for such purpose deposits of the Mortgagor in the Escrow Account which shall have been estimated and accumulated by the Company in amounts sufficient for such purposes, as allowed under the terms of the Mortgage and Applicable Law. The Company shall effect payment of all such bills irrespective of each Mortgagor's faithful performance in the payment of same or the making of the Escrow Payments by making Servicing Advances to effect such payments, subject in each case to its ability to recover such Servicing Advances pursuant to <u>Subsection 10.06, Subsection 10.09</u> and <u>Subsection 10.01</u>. For any Mortgage Loan that is a non-escrowed loan, in the event that any ground rents, taxes, assessments, homeowner association fees, water charges and other charges in connection with a Mortgage Loan are or become delinquent, then the Company shall, subject in each case to its ability to recover such Servicing Advances pursuant to <u>Subsection 10.06, Subsection 10.09</u> and <u>Subsection 10.01</u> effect payment thereof as appropriate and prior to the related tax sale date, and any such payment shall be reimbursable as a Servicing Advance under the terms of this Agreement. Subject in each case to its ability to recover such Servicing Advances pursuant to <u>Subsection 10.06, Subsection 10.09</u> and <u>Subsection 10.01</u>, the Company or its subservicer(s) shall pay, on behalf of the related Mortgagor, any penalties, fines, similar charges or interest resulting from such delinquency, and shall be entitled to reimbursement for any such penalties, fines, similar charges or interest that it may incur as Servicing Advances under the terms of this Agreement. No costs incurred by the Company or subservicer(s) in effecting the payment of ground rents, taxes, homeowner association fees, water charges, assessments and other charges on the Mortgaged Properties or fire, hazard, or, if applicable, flood insurance premiums shall, for the purpose of calculating remittances to the Purchaser, be added to the amount owing under the related Mortgage Loans, notwithstanding that the terms of such Mortgage Loans so permit, unless such amounts are capitalized in accordance <u>Subsection 10.01</u>.

40

Subsection 10.13. Transfer of Accounts.

The Company may transfer the Custodial Account, the Rehabilitation Holdback Account or the Escrow Account, and/or any funds deposited therein, to an Eligible Account at a different depository institution provided that the Company shall deliver to the Purchaser prior written notice of any such transfer.

Subsection 10.14. Maintenance of Hazard Insurance.

If a Mortgagor with respect to a Mortgage Loan fails to maintain fire and hazard insurance with extended coverage customary in the area to the extent required pursuant to the related Mortgage, the Company shall cause to be maintained for each Mortgage Loan fire and hazard insurance with extended coverage customary in the area where the Mortgaged Property is located by a Qualified Insurer in an amount which is at least equal to the lesser of (a) the replacement value of the Mortgaged Property or (b) the outstanding principal balance owing on the Mortgage Loan. If the Mortgaged Property is a condominium unit, it may be included under the coverage afforded by a blanket policy. If the Mortgaged Property is in an area identified in the Federal Register by the Federal Emergency Management Agency as a special flood hazard area (and such flood insurance has been made available), the Company will cause to be maintained a flood insurance policy meeting the requirements of the National Flood Insurance Program, in an amount representing coverage not less than the lesser of (A) the outstanding principal balance of the Mortgage Loan, (B) the replacement value of the related Mortgaged Property and (C) the maximum amount of insurance which is available under the Flood Disaster Protection Act of 1973, as amended, at the time of origination. If the Mortgaged Property is a condominium, it may be included under the flood coverage afforded by a blanket policy. Any amounts collected by the Company under any such policies (other than amounts to be deposited in the Escrow Account and applied to the restoration or repair of the property subject to the related Mortgage or property acquired in liquidation of the Mortgage Loan, or to be released to the Mortgagor in accordance with Accepted Servicing Practices) shall be deposited in the Custodial Account, subject to withdrawal pursuant to Subsection 10.06. All policies required hereunder shall be endorsed with standard mortgagee clauses with loss payable to Company, and shall provide for at least thirty (30) days prior written notice of any cancellation, reduction in amount or material change in coverage to the Company. The Company shall not interfere with the Mortgagor's freedom of choice in selecting either its insurance carrier or agent; provided, however, that the Company shall not accept any such insurance policies from insurance companies unless such companies are Qualified Insurers.

Subsection 10.15. Title, Management and Disposition of REO Property.

In the event that title to the Mortgaged Property is acquired in foreclosure or by deed in lieu of foreclosure, the deed or certificate of sale shall be taken in the name of the Purchaser or its nominee. The Purchaser shall pay the Company all Servicing Advances associated with managing the REO Property through its disposition. The Company may deduct such Servicing Advances from the proceeds of the sale of the REO Property (providing summary details and documentary evidence of such costs) or withdraw funds from the Custodial Account as permitted under Subsection 10.06Subsection 10.06.

41

10984740.V-5

The Company shall either itself or through an agent selected by the Company administer the REO Property in the same manner that it administers other foreclosed property for its own account; provided, however, the Company or its agent shall not sell or rent any REO Property without the prior written consent of the Purchaser. Any disbursement in excess of $10,000 in connection with an REO Property shall be made only with the prior written approval of the Purchaser.

The Company shall cause to be deposited in the Custodial Account within three (3) Business Days of receipt all revenues received with respect to renting the related REO Property (net of costs and expenses and of any reserves reasonably required from time to time to be maintained to satisfy anticipated liabilities for such costs and expenses). The Company shall make distributions as required on each Remittance Date to the Purchaser of the net cash flow from the REO Property (which shall equal the revenues from such REO Property net of costs and expenses and of any reserves reasonably required from time to time to be maintained to satisfy anticipated liabilities for such costs and expenses). The Company shall keep and maintain, in an electronic format reasonably acceptable to the Purchaser and available to the Purchaser upon written request, separate accounting, on both an aggregate and an REO Property by REO Property basis, of all revenues and expenses received and incurred hereunder.

Subsection 10.16. Remittance Reports; Special Reports.

On each Remittance Date, the Company shall forward to the Purchaser and the Administrator a report in an electronic format containing data elements reasonably requested by the Purchaser on a loan-by-loan basis as of the Determination Date. Such reports shall include, any and all information with respect to modifications and extensions granted and other actions taken pursuant to Subsection 10.01 and Subsection 10.03 hereof. All monthly reports required to be delivered to the Purchaser pursuant to this Agreement shall be in an electronic format mutually acceptable to the Company and the Purchaser.

Upon the foreclosure sale of any Mortgaged Property or the acquisition thereof by the Purchaser or its designee pursuant to a deed in lieu of foreclosure, the Company shall submit to the Purchaser and the Administrator a liquidation report with respect to such Mortgaged Property. The Company must submit foreclosure sale results to the Purchaser and the Administrator for all Mortgage Loans within five (5) Business Days after the foreclosure sale is held, in a form mutually acceptable to the parties.

Subsection 10.17. Satisfaction of Mortgages and Release of Collateral Files.

Upon the payment in full of any Mortgage Loan, or the receipt by the Company of a notification that payment in full will be escrowed in a manner customary for such purposes, the Company will prepare and process, and deliver to the Purchaser, any required satisfaction or release of the Mortgage. No later than ten (10) Business Days following its receipt of such notification and satisfaction or release (if required), the Purchaser shall deliver, or cause to be delivered, to the Company the related Collateral File and the release or satisfaction properly executed by the owner of record of the Mortgage or its duly appointed attorney in fact. If required under Applicable Law, the Company shall deliver the canceled Mortgage Note to the Mortgagor in a timely manner.

42

If the Company satisfies or releases a Mortgage without first having obtained payment in full of the indebtedness secured by the Mortgage (other than in connection with a short sale, other loss mitigation or foreclosure avoidance strategy, or otherwise with the consent of the Purchaser), the Company shall (i) within fifteen (15) days of discovery thereof, reinstate such Mortgage and (ii) to the extent the Company is unable to reinstate the related Mortgage within such fifteen (15) day period, deposit into the Custodial Account the entire outstanding principal balance of the related Mortgage Loan, less any payment received by Company in consideration for the satisfaction or release which shall already have been so deposited, within two (2) Business Days following such fifteen (15) day period, and the Purchaser shall assign all of its rights with respect to such Mortgage Loan to the Company. The Company shall maintain the fidelity bond and errors and omissions insurance policy as provided for in Subsection 10.22.

Subsection 10.18. Servicing Compensation.

As compensation for its services hereunder, the Purchaser shall pay the Company the Servicing Fees with respect to each month or partial month during which the Company services any Mortgage Loans. Payment of Servicing Fees shall be made on each Remittance Date pursuant to Subsection 10.07 and upon payment in full of each Mortgage Loan (excluding Default Interest) or the repurchase of such Mortgage Loan in accordance with Subsection 6.03. Unless otherwise agreed to in writing by the parties, additional servicing compensation in the form of Ancillary Fees shall be remitted to the Company by the Purchaser. In the event that the Purchaser receives any Ancillary Fees, the Purchaser shall hold the portion of such Ancillary Fees Company is owed in trust for the Company and pay over such amounts to the Company as may be provided in writing by the parties hereto.

Subsection 10.19. Right to Examine and Audit Company's Operations and Records.

The Purchaser (or its representative) and any state or federal regulatory authority that has supervisory and examination authority over the Purchaser shall have the right to reasonably examine and audit the Company's and any of the Company's subservicers' mortgage loan servicing operations, including all of the servicing systems, computer systems, books, records or other information of the Company and any of the Company's subservicers, with respect to only this Agreement and the Mortgage Loans, during normal business hours, or as otherwise acceptable to the Company, upon reasonable advance notice. The Company shall facilitate such audits and in connection therewith shall provide the Purchaser and such regulatory authorities reasonable access to the Company's and any of the Company's subservicers' offices, servicing systems, computer systems, books and records with respect to only this Agreement and the Mortgage Loans during normal business hours or as otherwise acceptable to the Company. The Purchaser may only exercise this right once each calendar year, provided that the Purchaser may reasonably exercise this right at any time during an Event of Default.

The Company will make available to the Purchaser reasonable access to the Company's management team and personnel regarding the Company's Mortgage Loan origination operations, including quarterly telephone conferences, and related information reasonably requested. Following request by the Purchaser, the Company shall provide the Purchaser with relevant information about the Company's platform loan origination activity, sales and loan performance.

43

DO NOT DISCLOSE

Subsection 10.20. Inspections; Restoration of Mortgaged Property.

(a)     The Company shall inspect the Mortgaged Property as often as deemed necessary by the Company in accordance with Accepted Servicing Practices, in each case, to assure itself that the value of the Mortgaged Property is being preserved. The Company shall keep a written report of each such inspection and shall provide a copy of such inspection to the Purchaser upon the request of the Purchaser.

(b)     The Company need not obtain the approval of the Purchaser prior to releasing any Insurance Proceeds or Condemnation Proceeds to the Mortgagor to be applied to the restoration or repair of the Mortgage Property if such release is in accordance with Accepted Servicing Practices. For claims greater than $10,000, the Company shall comply with the following conditions in connection with any such release of Insurance Proceeds or Condemnation Proceeds, as applicable:

(i)     the Company shall receive satisfactory independent verification of completion of repairs and issuance of any required approvals with respect thereto;

(ii)     the Company shall take all steps necessary to preserve the priority of the lien of the Mortgage, including, but not limited to, requiring waivers with respect to mechanics' and materialmen's liens;

(iii)     the Company shall verify that the Mortgage Loan is not in default; and

(iv)     pending repairs or restoration, the Company shall place the Insurance Proceeds or Condemnation Proceeds in the Escrow Account

If the Purchaser is named as an additional loss payee, the Company is hereby empowered to endorse any loss draft issued in respect of such a claim in the name of the Purchaser.

Subsection 10.21. Financial Privacy; Data Security.

The Company shall maintain administrative, technical, and physical safeguards designed to (i) protect the security, confidentiality, and integrity of all nonpublic personal information obtained in servicing the Mortgage Loans, including Mortgagor names, addresses, and account numbers; (ii) protect against any anticipated threats or hazards to the security or integrity of nonpublic personal information; and (iii) protect against unauthorized access to or use of nonpublic personal information or associated records which could result in substantial harm or inconvenience to any Mortgagor.

Subsection 10.22. Fidelity Bond, Errors and Omissions Insurance.

The Company shall maintain, at its own expense, a blanket fidelity bond and an errors and omissions insurance policy, with broad coverage with a Qualified Insurer on all officers, and employees acting in any capacity with regard to the Mortgage Loans to handle funds, money, the Mortgage Notes and the Mortgages relating to the Mortgage Loans. The fidelity bond shall be in the form of the Mortgage Banker's Blanket Bond and shall protect and insure the Company

44

against losses, including forgery, theft, embezzlement, misrepresentation and fraud. The errors and omissions insurance policy shall protect and insure the Company against losses due to errors and omissions and negligent acts of such Persons. Such errors and omissions insurance policy shall also protect and insure the Company against losses in connection with the failure to maintain any insurance policies required pursuant to this Agreement and the release or satisfaction of a Mortgage Loan without having obtained payment in full of the indebtedness secured thereby. No provision of this Subsection 10.22 requiring the fidelity bond and errors and omissions insurance policy shall diminish or relieve the Company from its duties and obligations as set forth in this Agreement. The minimum coverage under any such bond and insurance policy shall be at least equal to the corresponding amounts required under the Fannie Mae Guidelines or the Freddie Mac Guidelines; provided that in no event shall such amount be less than $500,000. Upon request of the Purchaser, the Company shall cause to be delivered to the Purchaser a true copy of the fidelity bond and errors and omissions insurance policy.

Subsection 10.23, Financial Covenant.

The Company shall provide the Purchaser with (i) quarterly financial statements consisting of a balance sheet and income statement and reasonably detailed information regarding the Company's servicing portfolio, each reasonably acceptable to the Purchaser, no later than forty-five (45) calendar days following the end of each quarter, and (ii) annual audited financial statements of the Company no later than ninety (90) days after the end of each year, no later than the date of this Agreement.

The Company shall maintain at all times a net worth of eighty million dollars ($80,000,000).

Subsection 10.24, Establishment of and Withdrawals from the Interest Reserve Account.

The Company or its subservicer shall establish an Interest Reserve Account and provide evidence satisfactory to the Purchaser regarding the establishment and designation of the Interest Reserve Account on or prior to the initial Closing Date hereunder. The Interest Reserve Account shall be an Eligible Account. The Interest Reserve Account shall be insured by the FDIC in a manner which shall provide maximum available insurance thereunder and which may be drawn on by the Company.

For each Mortgage Loan for which an Interest Reserve exists as of the applicable Closing Date, the Company shall deposit in the Interest Reserve Account within five (5) Business Days of the applicable Closing Date hereunder an amount equal to the amount of Interest Reserve existing as of the applicable Closing Date with respect to such Mortgage Loan(s).

Withdrawals from the Interest Reserve Account may be made by the Company (a) to pay any interest payable by a Mortgagor under the related Mortgage Note on any Due Date, (b) to pay to itself any interest paid on the funds deposited in the Interest Reserve Account, (c) for transfer to the purchaser of a Mortgage Loan in connection with the sale of such Mortgage Loan, (d) to withdraw any amount deposited therein in error, including, without limitation, payment to the Mortgagor of any overpayments sent to the Company in error or (e) to clear and terminate the Interest Reserve Account upon the termination of this Agreement.

45

The Company shall keep and maintain, in an electronic format mutually acceptable to the Company and the Purchaser, separate accounting, on a Mortgage Loan by Mortgage Loan basis, for the purpose of justifying any deposit into or withdrawal from the Interest Reserve Account.

Subsection 10.25. Draws.

With respect to each Additional Funding Loan, the Company shall process Draw requests from Mortgagors pursuant to the Approved Draw Disbursement Procedures. Any Draws made shall be added to the Unpaid Principal Balance of the related Mortgage Loan. Under no circumstances shall any Draws which are in excess of the related Maximum Loan Amount for such Additional Funding Loan be funded.

With respect to any Additional Funding Loan and any Draw request received following the Cut-off Date, no later than one (1) Business Day following the Company's receipt of such Draw request from a Mortgagor, the Company shall notify the Purchaser. No later than one (1) Business Day following the Company's completion of the Approved Draw Disbursement Procedures, the Company shall notify the Purchaser. No later than one (1) Business Day following the Purchaser's receipt of notice from the Company that the Approved Draw Disbursement Procedures have been completed, the Purchaser shall or shall cause the amount of such approved Draw to be disbursed to the Company. No later than one (1) Business Day following receipt by the Company of such approved Draw amount, the Company shall disburse such Draw amount to the related Mortgagor.

From time to time with respect to the Mortgage Loans, in accordance with Applicable Law and the terms of the Additional Funding Loan, the Company shall be entitled to accept Draw requests in accordance with the Approved Draw Disbursement Procedures or enforce a termination of future Draws. The Company shall notify the Purchaser if it determines that any Draw request does not comply with the Approved Draw Disbursement Procedures or if the Company would otherwise recommend the denial of a Draw request. After the Cut-off Date with respect to a Mortgage Loan, the Company shall obtain the prior written consent of the Purchaser prior to the termination of all future Draws with respect to any Additional Funding Loan.

With respect to each Additional Funding Loan, the Company shall prepare and deliver to the Mortgagor any and all necessary notices required under Applicable Law and the terms of the related Mortgage Loan regarding the maturity date if required under Applicable Law.

**Section 11.** Additional Indemnification, Indemnification Procedures and Limitations on Liability.

Subsection 11.01. Additional Indemnification and Indemnification Procedures by the Company.

In addition to the indemnification payment provided in Subsection 6.03(b) (but without duplication of any Losses), and only in connection with its Mortgage Loan servicing obligations hereunder, the Company shall indemnify each Purchaser Indemnified Party and hold the Purchaser Indemnified Parties harmless against any and all Losses that the Purchaser Indemnified Parties sustain resulting from the failure of the Company, as servicer, to perform its obligation to service the Mortgage Loans in compliance with the terms of this Agreement in all

46

material respects. The indemnification provided by the Company herein shall be with respect to Losses involving third-parties and Losses between any indemnified party and the Company. This Subsection 11.01 shall be the sole and exclusive remedy, other than with respect to the Purchaser's rights set forth in Section 13, for any failure of the Company to perform its obligation to service or administer the Mortgage Loans.

If a claim covered by the preceding paragraph, Subsection 6.03(b) or Subsection 6.03(c) is made by a third party, the indemnification provided by the Company herein shall be with respect to third-party claims and claims directly between any indemnified party and the Company (including any Mortgagor) with respect to this Agreement or any Mortgage Loan, the party obligated to indemnify the other parties under this Agreement (the "Indemnifying Party") shall assume (with the prior written consent of the applicable Indemnified party (the "Indemnified Party"), not to be unreasonably withheld) the defense of any such indemnifiable claim and pay all expenses in connection therewith, including counsel fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered against the applicable Indemnified Party in respect of such claim. The Indemnifying Party shall follow any reasonable written instructions received from the applicable Indemnified Party in connection with any such claim. The Indemnifying Party may not enter into any settlement without the prior written consent of the applicable Indemnified Party, which consent shall not be unreasonably withheld. An Indemnified Party shall have the right to select separate counsel and to otherwise separately defend itself at its expense but shall not consent to the entry of a judgment or enter into any settlement with respect to the claim without the prior written consent of the Indemnifying Party which consent shall not be unreasonably withheld; provided, however, that any exercise of such rights by an Indemnified Party shall not relieve the Indemnifying Party of its obligations and liabilities hereunder. Notwithstanding the foregoing, to the extent that (i) the Indemnifying Party elects not to defend such claim (or fails to elect such defense within twenty (20) Business Days of notifying, or being notified by the, applicable Indemnified Party of the same) and the applicable Indemnified Party defends against or otherwise handles any such claim or (ii) in the reasonable opinion of counsel for the applicable Indemnified Party, there is a material conflict or reasonably likely material conflict of interest between the applicable Indemnified Party and the Indemnifying Party in such claim, or (iii) the Indemnifying Party is not diligently defending the claim, then in each case (A) the applicable Indemnified Party may retain counsel of its own choosing, with the fees and expenses of defending and settling such claim (including the costs and expenses of preparing for such claim and including any fees for any expert) being at the expense of the Indemnifying Party and the applicable Indemnified Party may control and assume the defense of such claim and (B) the Indemnifying Party may participate in such defense with counsel of its choice and at its own expense. The parties hereto agree to cooperate fully with each other in connection with the defense, negotiation or settlement of any such claim and cooperate in such a manner as to preserve in full (to the extent possible) the confidentiality of all confidential information and the attorney-client and work-product privileges. Notwithstanding anything in this Agreement to the contrary, the Purchaser shall reimburse the Company for all amounts paid by it pursuant to the defense of any claim relating to the servicing or administration of any Mortgage Loan or REO Property, except to the extent the claim results from the failure of the Company to service the Mortgage Loans or REO Properties in compliance with the terms of this Agreement in all material respects.

47

**Subsection 11.02.** Limitation on Liability of the Company and Others.

(a) Neither the Company nor any of the directors, officers, employees, agents or representatives of the Company shall be under any liability to the Purchaser for any action taken or for refraining from the taking of any action in good faith in connection with (i) this Agreement, (ii) the written direction of any Purchaser Indemnified Party, or (iii) for errors in judgment, nor shall the Company have any liability that results from Purchaser's failure to perform any of its obligations hereunder; provided, however, that this provision shall not protect the Company or any such Person in accordance with Applicable Law or this Agreement against any material breach of warranties or representations made herein, or failure to perform its obligations in compliance with any standard of care set forth in this Agreement in all material respects, or any liability which would otherwise be imposed by reason of any material breach of the terms and conditions of this Agreement by the Company. The Company and any director, officer, employee, agent or representative of the Company may rely in good faith on any document of any kind *prima facie* properly executed and submitted by any Person respecting any matters arising hereunder. The Company shall not be under any obligation to appear in, prosecute or defend any legal action, except (x) as a plaintiff, or (y) as a named defendant because of its alleged breach of its obligation to sell or duty to service the Mortgage Loans in accordance with this Agreement; provided, however, that the Company may, with the consent of the Purchaser, appear in, prosecute, or defend any such action which it may deem necessary or desirable in respect to this Agreement and the rights and duties of the parties hereto. In such event, the legal expenses and costs of such action and any liability to the extent resulting directly from compliance with the immediately preceding sentence shall be expenses, costs and liabilities for which the Purchaser shall be liable, and the Company shall be entitled to reimbursement therefor from the Purchaser upon written demand except when such expenses, costs and liabilities are subject to the Company's indemnification under Subsection 11.01.

(b) Purchaser acknowledges and agrees that, notwithstanding any contrary provision in this Agreement, Company's obligations set forth in Subsection 6.03 or Subsection 11.01 shall not apply with respect to a Mortgage Loan, and Purchaser shall not have any other recourse or remedy under this Agreement at law or in equity against Company with respect to such Mortgage Loan, other than pursuant to Section 13, with respect to any fact or circumstance that was disclosed to Purchaser by Company in writing on or before the related Closing Date or any Losses with respect to such Mortgage Loan arising out of the Purchaser's gross negligence, willful misconduct, bad faith or material breach of the Purchaser's duties pursuant to this Agreement after the Closing Date.

(c) EACH OF THE PARTIES TO THE FULLEST EXTENT PERMITTED BY LAW IRREVOCABLY WAIVES ANY RIGHTS THAT THEY MAY HAVE TO PUNITIVE, SPECIAL, INCIDENTAL, INDIRECT (INCLUDING, WITHOUT LIMITATION, LOST PROFITS), EXEMPLARY AND CONSEQUENTIAL DAMAGES IN RESPECT OF ANY CLAIM BASED UPON, ARISING OUT OF, OR IN CONNECTION WITH, THIS AGREEMENT OR ANY OTHER AGREEMENT, INSTRUMENT OR DOCUMENT CONTEMPLATED BY THIS AGREEMENT OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS OR ACTIONS OF ANY OF THEM RELATING TO ANY SUCH CLAIM.

48

Subsection 11.03. Limitation on Liability of Purchaser Trustee.

It is expressly understood and agreed by the parties hereto that, notwithstanding any document or instrument to the contrary, (i) if this Agreement is executed by Wilmington Savings Fund Society, FSB ("WSFS"), not individually or personally but solely as Purchaser Trustee, in the exercise of the powers and authority conferred and vested in the Purchaser Trustee under the Purchaser Trust Agreement, subject to the protections, indemnities and limitations from liability afforded to the Purchaser Trustee thereunder, (ii) each of the representations, covenants, undertakings and agreements herein made on the part of the Purchaser is made and intended not as personal representations, covenants, undertakings and agreements by WSFS but is made and intended for the purpose of binding only the Purchaser and its assets, (iii) nothing herein contained shall be construed as creating any liability on WSFS, individually or personally, to perform any agreement, undertaking or covenant, either expressed or implied, contained herein of the Purchaser, all such liability, if any, being expressly waived by the parties hereto, (iv) WSFS has not verified or made any investigation as to the accuracy or completeness of any representations and warranties, if any, made by the Purchaser and (v) under no circumstances shall WSFS be personally liable for the payment of any indebtedness or expenses of the Purchaser under this Agreement or be liable for the breach or failure of any obligation, representation, undertaking, warranty or covenant made or undertaken by the Purchaser under this Agreement or any other related documents. All recourse against the Purchaser Trustee shall be limited to the trust estate of the Purchaser. The provisions of this Subsection 11.03 shall apply equally and without diminishment to any Joining Purchaser Trustee, *mutatis mutandis*. Anything in this Agreement to the contrary notwithstanding, each of the Purchaser Trustee and any Joining Purchaser Trustee shall be an express third-party beneficiary to this Agreement, entitled to enforce its respective rights under Subsection 11.03 and Section 21 as if a direct party hereto.

Section 12. Default.

Subsection 12.01. Events of Default.

In case one or more of the following Events of Default by the Company shall occur and be continuing, that is to say:

(1)     any failure by the Company to remit to the Purchaser any payment required to be made pursuant to Subsection 10.07 which continues unremedied for a period of two (2) Business Days after the date upon which written notice of such failure, requiring the same to be remedied, shall have been given to the Company by the Purchaser; or

(2)     failure on the part of the Company duly to observe or perform in any material respect any other of the material servicing covenants or agreements on the part of the Company set forth in Section 10 of this Agreement which continues unremedied for a period of thirty (30) days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Company by the Purchaser; provided, however, that in the case of a failure that cannot be cured within such thirty (30) day period, the cure period shall be extended by an additional thirty (30) day period if the Company is diligently pursuing remedial action and such failure is reasonably anticipated to be cured during such period; or

49

(3)     a decree or order of a court or agency or supervisory authority having jurisdiction for the appointment of a conservator or receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshalling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against the Company and such decree or order shall have remained in force undischarged or unstayed for a period of sixty (60) days; or

(4)     the Company shall consent to the appointment of a conservator or receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshalling of assets and liabilities or similar proceedings of or relating to the Company or of or relating to all or substantially all of its property or an attempt by the Company, without the consent of the Purchaser, to sell or otherwise dispose of all or substantially all of its property or assets; or

(5)     the Company shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of any applicable insolvency or reorganization statute, make an assignment for the benefit of its creditors, or voluntarily suspend payment of its obligations; or

(6)     the Company shall be merged or consolidated into any Person where the Company is not the surviving entity in the merger or consolidation, other than with an Affiliate, or the Servicer shall assign or transfer or attempt to assign or transfer all or part of its rights and obligations hereunder to any person other than an Affiliate, in each case except as permitted by this Agreement; provided, however, the Company may not enter into any such transaction with an Affiliate unless the Company or the Affiliate will be able to fulfill the obligations of the Company hereunder following such transaction; or

(7)     the Company transfers or otherwise disposes of all or substantially all of its assets to any Person other than an Affiliate, except as permitted by this Agreement; provided, however, the Company may not enter into any such transaction with an Affiliate unless the Company or the Affiliate will be able to fulfill the obligations of the Company hereunder following such transaction; or

(8)     the failure of the Company to maintain any required license to service the Mortgage Loans in any jurisdiction where the Mortgaged Properties are located;

then, and in each and every such case, so long as an Event of Default shall not have been remedied, the Purchaser, by notice in writing to the Company may, in addition to whatever rights the Purchaser may have at law or in equity to damages, including injunctive relief and specific performance, terminate all the rights and obligations of the Company as servicer under this Agreement without the payment of any termination fees. On or after the receipt by the Company of such written notice, all authority and power of the Company to service the Mortgage Loans under this Agreement shall on the date set forth in such notice pass to and be vested in the successor appointed pursuant to 0.

Subsection 12.02. Waiver of Defaults.

The Purchaser may waive any default by the Company in the performance of its obligations hereunder and its consequences. Upon any such waiver of a past default, such

10964740AV-5

default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been remedied for every purpose of this Agreement. No such waiver shall extend to any subsequent or other default or impair any right consequent thereon except to the extent expressly so waived.

### Section 13. Termination.

The obligations and responsibilities of the Company, as servicer, shall terminate upon written notice to the Company or Purchaser, as applicable, in the event of: (i) an Event of Default as set forth in Subsection 12.01, (ii) the distribution to the Purchaser of the final payment or liquidation with respect to the last Mortgage Loan being serviced by the Company hereunder (or advances of same by the Company) or the disposition of all property acquired upon foreclosure or deed in lieu of foreclosure with respect to the last Mortgage Loan being serviced by the Company hereunder and the remittance of all funds due hereunder unless terminated on an earlier date at the option of the Purchaser pursuant to Section 12, (iii) by mutual consent of the Purchaser and the Company in writing, or (iv) at the sole option of the Purchaser, without cause, upon thirty (30) days prior written notice to the Company. This Section 13 sets forth the exclusive manner in which this Agreement and the rights, obligations and responsibilities of the Company, as servicer, may be terminated. Upon written request from the Purchaser in connection with any such termination, the Company shall prepare, execute and deliver, any and all documents and other instruments, place in the Purchaser's possession all Servicing Files, and do or accomplish all other acts or things necessary or appropriate to effect the purposes of such notice of termination, whether to complete the transfer and endorsement or assignment of the Mortgage Loans and related documents at the Company's sole expense in the event of termination pursuant to Subsection 12.01 and at Purchaser's cost and expense with respect to any other termination, which shall be reimbursed to the Company upon demand. The Company agrees to reasonably cooperate with the Purchaser and such successor in effecting the termination of the Company's obligations and responsibilities as servicer, including, without limitation, the transfer to such successor for administration by it of all cash amounts which shall at the time be credited by the Company to the Custodial Account, the Rehabilitation Holdback Account or Escrow Account or thereafter received with respect to the Mortgage Loans, other than such amounts as are payable to the Company. In the event the Company is terminated as servicer with respect to some or all of the Mortgage Loans in accordance with clause (iv) above, the Purchaser shall reimburse the Company for all unreimbursed Servicing Advances upon the transfer of servicing to a successor servicer. Anything to the contrary herein notwithstanding, upon any termination of Company as servicer with respect to some or all of the Mortgage Loans, excluding a termination by Purchaser pursuant to Subsection 12.01 herein or a termination as a result of the repurchase of such affected Mortgage Loan by Company, but including, without limitation, a termination of the Company as servicer in connection with a Reconstitution under Subsection 5.03 herein, Purchaser shall within three (3) Business Days of the effective date of such termination, pay to the Company the net present value of the Servicing Fee that the Company would have received had the Company continued to service each Mortgage Loan from the termination date to the original maturity date (as of the related Closing Date) for such Mortgage Loan, at a discount rate equal to 10%.

51

## Section 14. Successor to the Company.

Prior to termination of the Company's obligations and responsibilities under this Agreement pursuant to Section 13, the Purchaser shall (i) assume all of the Company's obligations and responsibilities under this Agreement, or (ii) appoint a successor which shall assume all of such obligations and responsibilities. In connection with such appointment and assumption, the Purchaser may make such arrangements for the compensation of such successor out of payments on the Mortgage Loans as it and such successor shall agree. In the event that the Company's obligations and responsibilities as servicer under this Agreement should be terminated pursuant to Section 13, the Company shall discharge such obligations and responsibilities during the period from the date it acquires knowledge of such termination until the effective date thereof, which in no event shall be later than sixty (60) days after acquiring such knowledge, with the same degree of care it is obligated to exercise under this Agreement, and the Company shall be entitled to the Servicing Fee and other amounts as provided in this Agreement through the effective date of termination and completion of transfer of servicing to any successor servicer, regardless of the reason for termination and including any termination pursuant to Section 12.01. The termination of the Company as servicer pursuant to Section 13 shall not become effective until a successor shall be appointed pursuant to this 0 and shall in no event relieve the Company of (i) the representations and warranties made pursuant to Subsection 6.01 and Subsection 6.02 and the remedies available to the Purchaser under Subsection 6.03 or (ii) any obligation to indemnify any Purchaser Indemnified Party hereunder with respect to matters accruing prior to the date of such termination; which in each such instance shall be applicable to the Company notwithstanding any such termination of the Company, or the termination of this Agreement. The obligations of the Purchaser hereunder, including, without limitation, the obligation to indemnify the Company as provided in Subsection 6.03(c), and any other rights of the Company and its officers, employees or agents hereunder, including, without limitation, limitations on liability provided for in Subsection 11.022, shall survive termination of the Company as servicer or this Agreement.

Any successor appointed as provided herein shall execute, acknowledge and deliver to the Company and to the Purchaser an instrument accepting such appointment, whereupon such successor shall become fully vested with all the obligations and responsibilities of the Company, with like effect as if originally named as a party to this Agreement; provided, however, that such successor shall not assume any and all liabilities arising out of the Company's acts as servicer. Any termination of the Company as servicer pursuant to Section 13 shall not affect any claims that the Purchaser may have against the Company arising prior to any such termination or remedies with respect to such claims.

The Company shall timely deliver to the successor the funds in the Custodial Account, the Rehabilitation Holdback Account and the Escrow Account and the Servicing Files and related documents and statements held by it hereunder and the Company shall account for all funds. The Company shall execute and deliver such instruments and do such other things all as may reasonably be required to more fully and definitely vest and confirm in the successor all such obligations and responsibilities of the Company as servicer. The Purchaser shall cause the successor to make arrangements to promptly reimburse the Company for amounts the Company actually expended as servicer pursuant to this Agreement (including any outstanding Servicing Advances and Servicing Fees) which the successor is entitled to retain hereunder and which

52

would otherwise have been recovered by the Company pursuant to this Agreement but for the appointment of the successor servicer.

The Purchaser shall pay the Company all reasonable costs and expenses incurred by the Company relating to transferring the servicing of the Mortgage Loans to a successor servicer unless such transfer results from the Purchaser terminating this Agreement in connection with any Event of Default by the Company as servicer hereunder.

### Section 15. Notices.

All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at the address as follows:

    (i)    if to the Purchaser:

        IRP Fund II Trust 1A
        c/o Wilmington Savings Fund Society, FSB
        500 Delaware Avenue, 11th Floor
        Wilmington, Delaware 19801
        Attention: Corporate Trust - IRP Fund II Trust 1A

        with a copy to the Administrator:

        IRP Fund II Trust 1A
        c/o Verus Residential Loanco, LLC
        1155 F Street NW, Suite 1075
        Washington DC, 20004
        Attention: Chris DeMulder
        Email: cdemulder@invictuscp.com

        with a copy to:

        Email: legal@verusmc.com


Do Not Disclose For Use In EDNY Bankruptcy 1-22-01037-jmm Only

53

(ii)     if to the Company:

Planet Management Group, LLC
321 Research Parkway, Suite 303
Meriden, Connecticut 06450
Attention: Sandra Jarish
Email: sjarish@planethomelending.com

with a copy to:

Planet Home Lending, LLC
5401 W. Kennedy Blvd., 3rd Floor
Tampa, Florida 33609
Attention: Legal

with a copy to:

Cecil E. Martin, III
McGuireWoods LLP
500 East Pratt Street, Suite 1000
Baltimore, MD 21202

or such other address as may hereafter be furnished to the other party by like notice. Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

In addition to the foregoing, any request by the Company for the Purchaser's "prior written consent" or other communications or notice between the Administrator on behalf of the Purchaser and the Company pursuant to the terms of this Agreement may be made by electronic mail at the address set forth above.

**Section 16. Severability Clause.**

Any part, provision, representation or warranty of this Agreement which is prohibited or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof. Any part, provision, representation or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any Mortgage Loan shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by Applicable Law, the parties hereto waive any provision of law which prohibits or renders void or unenforceable any provision hereof. If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate, in good-faith, to

54

develop a structure the economic effect of which is nearly as possible the same as the economic effect of this Agreement without regard to such invalidity.

Section 17. Counterparts.

This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument. A signature of a party to this Agreement sent by facsimile, electronic mail (including a scanned .pdf copy sent by electronic mail or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g. www.docusign.com), or other electronic transmission shall have the same force and effect as an original signature of such party.

Section 18. Governing Law.

THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO CONFLICT OF LAWS RULES (OTHER THAN SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW WHICH SHALL GOVERN) AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Section 19. Waiver of Jury Trial.

EACH OF THE COMPANY AND THE PURCHASER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY AND ALL RIGHTS IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OR ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS AGREEMENT, OR ANY OTHER DOCUMENTS AND INSTRUMENTS EXECUTED IN CONNECTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN), OR ACTIONS OF THE COMPANY OR THE PURCHASER. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PURCHASER TO ENTER INTO THIS AGREEMENT.

With respect to any claim or action arising hereunder, the parties (a) irrevocably submit to the nonexclusive jurisdiction of the courts of the State of New York and the United States District Court for the Southern District of New York, and appellate courts from any thereof, and (b) irrevocably waive any objection which such party may have at any time to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement brought in any such court, and irrevocably waive any claim that any such suit action or proceeding brought in any such court has been brought in an inconvenient forum.

Section 20. Successors and Assigns.

This Agreement shall bind and inure to the benefit of and be enforceable by the Company and the Purchaser and their respective successors and permitted assigns. This Agreement shall not be assigned, pledged or hypothecated by the Company to a third party without the consent of the Purchaser; provided, however, the Company may assign this Agreement to an Affiliate

55

following at least thirty (30) days prior written notice to the Purchaser, provided, that the Company may not assign this Agreement to an Affiliate unless the Affiliate will be able to fulfill the obligations of the Company hereunder following such assignment.

### Section 21. Waivers; Amendment.

No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced. This Agreement may be amended from time to time by the Purchaser and the Company by written agreement executed and delivered by the Company and the Purchaser. No amendment shall be effective unless in writing and signed by the Purchaser Trustee, on behalf of the Purchaser, and, if applicable, any Joining Purchaser Trustee, on behalf of the applicable Joining Purchaser.

### Section 22. Exhibits.

The exhibits to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

### Section 23. General Interpretive Principles.

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

    (a) the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

    (b) accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

    (c) references herein to "Articles," "Sections," "Subsections," "Paragraphs," and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

    (d) reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

    (e) the words "herein," "hereof," "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision; and

    (f) the term "include" or "including" shall mean without limitation by reason of enumeration.

56

### Section 24. Reproduction of Documents.

This Agreement and all documents relating thereto, including, without limitation, (i) consents, waivers and modifications which may hereafter be executed, (ii) documents received by any party at the closing, and (iii) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process. The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

### Section 25. Further Agreements.

The Company and the Purchaser each agree to execute and deliver to the other such reasonable and appropriate additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of this Agreement.

### Section 26. Survival.

Each party agrees that the representations, warranties and agreements made by the Company herein shall survive the delivery and payment for the Mortgage Loans for the applicable statute of limitations period. Each party agrees that any agreements it makes herein shall survive the termination of the Company or this Agreement for the applicable statute of limitations period.

### Section 27. Joinder.

From time to time, the Company and Purchaser may enter into Joinder Agreements in order that certain additional Persons (each such Person, a "Joining Purchaser") may become subject to this Agreement as "Purchaser" hereunder, which Joinder Agreement will reflect that such Joining Purchaser shall be deemed to be a "Purchaser" under this Agreement. The obligations of the Purchaser and the Joining Purchaser under this Agreement are not joint but are several with regard to the Mortgage Loans.

*[signatures appear on the following page]*



57

IN WITNESS WHEREOF, the Company and the Purchaser have caused their names to be duly signed hereto as of the date first above written.

**IRP FUND II TRUST 1A**
(Purchaser)

By: Verus Residential Loanco, LLC, not in its individual capacity but solely as Administrator

By: _____
Name: Chris Demuth
Title: Authorized Signer

PLANET MANAGEMENT GROUP, LLC
(Company)

By: _____

Name:  Allyson Jackson

Title:   Senior Vice President

## EXHIBIT 1

### FORM OF ASSIGNMENT AND CONVEYANCE

On this _____ day of _____, 20___, Planet Management Group, LLC, as company and servicer (the "Company") under that certain Master Mortgage Loan Sale and Servicing Agreement, dated as of [DATE] (the "Agreement"), does hereby sell, transfer, assign, set over and convey to [PURCHASER ENTITY] as purchaser (the "Purchaser") under the Agreement, without recourse, but subject to the terms of the Agreement, all rights, title and interest of the Company in and to the Mortgage Loans listed on the Mortgage Loan Schedule attached hereto as Schedule I, including any related Servicing Rights appurtenant thereto, all on the terms and conditions provided in the Agreement.

The Company confirms to the Purchaser that the representation and warranties set forth in Subsection 6.01 and Subsection 6.02 of the Agreement are true and correct with respect to the Company and the Mortgage Loans listed on the Mortgage Loan Schedule attached hereto as of the date hereof.

For purposes of the Mortgage Loans to be sold pursuant to this Assignment and Conveyance, the following terms shall have the following meanings:

Cut-off Date:                                  [_____], 20[__].

Closing Date:                                  [_____], 20[__].

Cut-off Date Principal Balance:    $[_____].

Purchase Price Percentage:          With respect to each Mortgage Loan, the percentage of par set forth on Schedule II attached hereto.

Mortgage Loans with
Escrow Payments:                          As set forth on Schedule III attached hereto.

Servicing Transfer Date:                [_____], 20[__].

Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Agreement.

[It is expressly understood and agreed by the parties hereto that, notwithstanding any document or instrument to the contrary, (i) if this Agreement is executed by Wilmington Savings Fund Society, FSB ("WSFS"), not individually or personally but solely as Purchaser Trustee, in the exercise of the powers and authority conferred and vested in the Purchaser Trustee under the Purchaser Trust Agreement, subject to the protections, indemnities and limitations from liability afforded to the Purchaser Trustee thereunder, (ii) each of the representations, covenants, undertakings and agreements herein made on the part of the Purchaser is made and intended not as personal representations, covenants, undertakings and agreements by WSFS but is made and intended for the purpose of binding only the Purchaser and its assets, (iii) nothing herein contained shall be construed as creating any liability on WSFS, individually or personally, to

Exhibit 1-1

perform any agreement, undertaking or covenant, either expressed or implied, contained herein of the Purchaser, all such liability, if any, being expressly waived by the parties hereto, (iv) WSFS has not verified or made any investigation as to the accuracy or completeness of any representations and warranties, if any, made by the Purchaser and (v) under no circumstances shall WSFS be personally liable for the payment of any indebtedness or expenses of the Purchaser under this Agreement or be liable for the breach or failure of any obligation, representation, undertaking, warranty or covenant made or undertaken by the Purchaser under this Agreement or any other related documents. All recourse against the Purchaser Trustee shall be limited to the trust estate of the Purchaser. Anything in this Agreement to the contrary notwithstanding, the Purchaser Trustee shall be an express third-party beneficiary to this Agreement, entitled to enforce its rights under Subsection 11.03 and Section 21 of the Agreement as if a direct party thereto.[1]

[Signature Page Follows]



Do Not Disclose

For Use In EDNY Bankruptcy 1-22-01037-jmm Only

---

[1] NTD: To be used only if Administrator will not be signing on behalf of Purchaser

Exhibit 1-2

IN WITNESS WHEREOF, the Purchaser and Company have caused their names to be signed hereto as of the date first above written.

**PLANET MANAGEMENT GROUP, LLC**
(Company)

By:_____
Name:_____
Title:_____

**[PURCHASER ENTITY]**
(Purchaser)

By: Verus Residential Loanco, LLC, not in its individual capacity but solely as Administrator

By:_____
Name:_____
Title:_____

Exhibit 1-3

SCHEDULE I

MORTGAGE LOAN SCHEDULE

Confidential
Do Not Disclose


For Use In
EDNY Bankruptcy
1-22-01037-jmm
Only

Exhibit 1-4

SCHEDULE II

PURCHASE PRICE PERCENTAGE SCHEDULE

Confidential

Do Not Disclose

For Use In

EDNY Bankruptcy

1-22-01037-jmm

Only

Exhibit 1-5

SCHEDULE III

MORTGAGE LOANS WITH ESCROW PAYMENTS

Confidential

Do Not Disclose

For Use In

EDNY Bankruptcy

1-22-01037-jmm

Only

Exhibit 1-6

## EXHIBIT 2

### SERVICING FEES

**Servicing Fee**

With respect to each Mortgage Loan, the Purchaser shall pay to the Company a monthly servicing fee (the "Servicing Fee") for each month or partial month equal to [Redacted] basis points ([Redacted]) (the "Servicing Fee Percentage") of the outstanding unpaid principal balance on such Mortgage Loan as of the first day of each month, divided by 12. For each month that there are insufficient funds received from the Mortgagor to pay such Servicing Fee, the Servicing Fee shall accrue until paid and the Company shall be entitled to offset such Servicing Fee from all other amounts due to the Purchaser.

**Third Party Fees:**

In addition to the Servicing Fee, the Purchaser shall be responsible for all third party fees incurred in connection with Mortgage Loans and the REO Disposition, which shall be treated as Servicing Advances by the Company. Those fees include, without limitation, attorneys' fees, appraisal costs, title and escrow fees, property maintenance fees, etc., and, except as provided in the next sentence, this provision shall not in any way be deemed to limit the Company's right to seek reimbursement for Servicing Advances. The Company shall not incur third party fees in excess of $10,000, without the prior written consent of the Purchaser.



Exhibit 2-1

EXHIBIT 3

[RESERVED]

Confidential
Do Not Disclose

For Use In
EDNY Bankruptcy
1-22-01037-jmm
Only

Exhibit 3-1

## EXHIBIT 4

### LIST OF SERVICING FILE DOCUMENTS

With respect to each Mortgage Loan and if applicable and available, the related Servicing File shall include, without limitation, a copy of each document included in the Collateral File and each of the following items:

1.  Mortgage Loan application information.

2.  Mortgage Loan closing statement.

3.  Credit report on Mortgagor if a natural person.

4.  Property valuation report.

5.  Photograph of the Mortgaged Property.

6.  Sales Contract.

7.  Hazard insurance policy.

8.  Flood Insurance policy.

9.  Payment history.

10. Borrower authorization

11. Preliminary Title Commitment

12. Final Title Policy (if available)

13. Flood Certificate

14. Executed Loan Documents

15. Organizational Documents of Mortgagor (Articles of organization, by-laws, operating agreement, etc.) if not a natural person.

Exhibit 4-1

109647404\V-5

## EXHIBIT 5

### MORTGAGE LOAN SCHEDULE FIELDS

| |
|---|
| Loan ID |
| LLC Name |
| Borrower Name |
| Address |
| City |
| State |
| Zip |
| Full Loan Amount |
| Current Loan Amount (UPB at Closing) |
| Amount Lent For Purchase of Property |
| Holdback Amount |
| Funded Holdback |
| Unfunded Holdback |
| Closing Fees, Costs, and Points |
| Repair Reserve |
| Interest Reserve |
| Down Payment |
| Renovation Total Budget |
| Note Rate |
| Servicing Fee |
| Asset Management Fee |
| Base Interest Rate |
| Property Purchase Price |
| Property Purchase Date |
| Appraisal Value (As Is Valuation) |
| Appraisal Date (As Is Valuation) |
| ARV Value (After Renovation Value) |
| ARV Date (After Renovation Value) |
| Loan Less Fees & Reserves to Value (AIV) |
| LTC (Full Loan To Full Costs including renovation budget) |
| Loan to Value (ARV) |
| Loan Origination Date |
| Loan Maturity Date |
| FICO |
| Occupancy |
| Paid Through Date |
| Loan Purpose |
| Prop Type |
| Borrower Experience (# of Years) |
| Borrower Experience (# of flips total) |
| Borrower Experience (# of flips in the last 2 years) |

Exhibit 5-1

| |
|---|
| Loans taken with Lender |
| Loans Outstanding with Lender |
| Loans retired with Lender |
| Underwriting Standards (without regard to any agreed upon exceptions) |

Confidential

Do Not Disclose

For Use In

EDNY Bankruptcy

1-22-01037-jmm

Only

Exhibit 5-2

10964740\1V-5



## EXHIBIT 6

### FORM OF JOINDER AGREEMENT

This JOINDER TO MASTER MORTGAGE LOAN SALE AND SERVICING AGREEMENT (this "Joinder"), dated as of November 30, 2018, is made by [_____] (the "Joining Purchaser"), PLANET MANAGEMENT GROUP, LLC (the "Company") and IRP FUND II TRUST 1A (the "Initial Purchaser").

### RECITALS

WHEREAS, the Initial Purchaser and the Company are parties to that certain Master Mortgage Loan Sale and Servicing Agreement, dated as of November 30, 2018 (the "Agreement"). Unless otherwise defined herein, capitalized terms used in this Joinder shall have the meaning set forth in the Agreement.

WHEREAS, the Joining Purchaser desires to join in the Agreement and the Initial Purchaser and the Company desire to permit the Joining Purchaser to join in the Agreement;

NOW, THEREFORE, in consideration of the foregoing and for other valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Joining Purchaser, intending to be legally bound, hereto agrees as follows:

SECTION 1. Joinder. The Joining Purchaser hereby joins in the Agreement as a party thereto and (i) makes all covenants and agreements of the Initial Purchaser therein, with respect to the Joining Purchaser, (ii) is entitled to the benefit of and to enforce all rights, representations, warranties, covenants, agreements and obligations owed to the Initial Purchaser under the Agreement with respect to those Mortgage Loans purchased by the Joining Purchaser under the Agreement and (iii) agrees to be bound by the Agreement as if it was a party thereto on the date the same was executed with respect to the Mortgage Loans purchased by the Joining Purchaser under the Agreement. The obligations of the Initial Purchaser and the Joining Purchaser under the Agreement are not joint but are several with regard to the Mortgage Loans.

SECTION 2. Notices. All notices to the Joining Purchaser required to be given pursuant to Section 15 of the Agreement shall be sent to [_____], Attention: [_____].

SECTION 3. Severability. In case any provision of this Joinder shall be invalid, illegal, or unenforceable, such provision shall be deemed to have been modified to the extent necessary to make it valid, legal, and enforceable. The validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

SECTION 4. No Modification Except in Writing. None of the terms of this Joinder may be modified, waived, altered, amended, supplemented, extended, consolidated, replaced, exchanged or otherwise changed except by an instrument in writing duly executed by all of the parties hereto.

Exhibit 6-1

SECTION 5. Miscellaneous.

Subsection 5.01.     This Joinder shall inure to the benefit of and be binding upon the Joining Purchaser and its successors and assigns.

Subsection 5.02.     The Joining Purchaser confirms and ratifies the terms and provisions of the Agreement and agrees that the Agreement remains in full force and effect as of the date hereof.

Subsection 5.03.     This Joinder shall be construed in accordance with the laws of the State of New York, without regard to conflicts of law principles, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

Subsection 5.04.     Any reference to the Agreement in any other documents shall hereafter mean the Agreement, as modified by this Joinder, as the same may be subsequently amended, modified, altered, supplemented, extended, consolidated, replaced, exchanged or otherwise changed.

Subsection 5.05.     This Joinder may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument. The parties agree that this Joinder, any documents to be delivered pursuant to this Joinder and any notices hereunder may be transmitted between them by email and/or by facsimile. The parties intend that faxed signatures and electronically imaged signatures such as .pdf files shall constitute original signatures and are binding on all parties. The original documents shall be promptly delivered, if requested.

Subsection 5.06.     It is expressly understood and agreed by the parties hereto that, notwithstanding any document or instrument to the contrary, (i) if this Joinder is executed by Wilmington Savings Fund Society, FSB ("WSFS"), not individually or personally but solely as Purchaser Trustee, in the exercise of the powers and authority conferred and vested in the Purchaser Trustee under the Purchaser Trust Agreement, subject to the protections, indemnities and limitations from liability afforded to the Purchaser Trustee thereunder, (ii) each of the representations, covenants, undertakings and agreements herein made on the part of the Purchaser is made and intended not as personal representations, covenants, undertakings and agreements by WSFS but is made and intended for the purpose of binding only the Purchaser and its assets, (iii) nothing herein contained shall be construed as creating any liability on WSFS, individually or personally, to perform any agreement, undertaking or covenant, either expressed or implied, contained herein of the Purchaser, all such liability, if any, being expressly waived by the parties hereto, (iv) WSFS has not verified or made any investigation as to the accuracy or completeness of any representations and warranties, if any, made by the Purchaser and (v) under no circumstances shall WSFS be personally liable for the payment of any indebtedness or expenses of the Purchaser under this Joinder or be liable for the breach or failure of any obligation, representation, undertaking, warranty or covenant made or undertaken by the Purchaser under this Joinder or any other related documents. All recourse against the Purchaser Trustee shall be limited to the trust estate of the Purchaser. Anything in this Joinder to the contrary notwithstanding, the Purchaser Trustee shall be an express third-party beneficiary to this

Exhibit 6-2

Joinder, entitled to enforce its rights under <u>Subsection 11.03</u> and <u>Section 21</u> of the Agreement as if a direct party thereto.

[SIGNATURE PAGES FOLLOW]

Confidential

Do Not Disclose

For Use In

EDNY Bankruptcy

1-22-01037-jmm

Only

Exhibit 6-3

10964740AV-5

IN WITNESS WHEREOF, the undersigned have caused this JOINDER TO MASTER MORTGAGE LOAN SALE AND SERVICING AGREEMENT to be duly executed all as of the day and year first above written.

_____
(Joining Purchaser)

By: _____
Name:
Title:

**PLANET MANAGEMENT GROUP, LLC**
(Company)

By: _____
Name:
Title:

**IRP FUND II TRUST 1A**
(Initial Purchaser)

By: Verus Residential Loanco, LLC, not in its
individual capacity but solely as Administrator

By: _____
Name:
Title:

Confidential Do Not Disclose

For Use In EDNY Bankruptcy 1-22-01037-jmm Only