# EXHIBIT L

# GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT ("Guaranty Agreement") is entered into effective as of MARCH 27, 2019 by LEZANTONIO WOODBURN ("Guarantor"), with an address at 130-21 140TH STREET, JAMAICA, NY 11436 in favor of PLANET MANAGEMENT GROUP, LLC ("Lender").

## RECITALS

Lender has made or will make to 12706 HOLDINGS INC ("Borrower") a loan pursuant to that certain Loan Agreement of even date herewith between Lender and Borrower. The Loan Agreement, as in effect from time to time, is herein referred to as the "**Loan Agreement**". Capitalized terms which are not defined in this Agreement shall have the respective meanings set forth in the Loan Agreement. The loan is evidenced by the Note and payment of the Note is secured by the Secured Instrument; and

Lender was willing to make the Loan to Borrower only if Guarantor agreed to guaranty payment of the Guaranteed Obligations (defined below) to Lender in the manner hereinafter provided.

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby irrevocably and unconditionally guarantees to Lender the full and prompt payment and performance of the Guaranteed Obligations, this Guaranty Agreement being upon the following terms:

A. The term "**Guaranteed Obligations**" as used herein means:

1. The prompt and complete payment of the Debt in full when due, whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise (including amounts that would become due but for the operation of the automatic stay under § 362(a) of the Bankruptcy Code); collectively, the "**Performance Sums**"); plus

2. The prompt payment of interest at the Default Rate (as defined in the Note) which accrues on the Performance Sums from the date of demand for payment under this Guaranty Agreement from Lender to Guarantor until the Performance Sums are paid in full; plus

3. The prompt performance when due of all other obligations of Borrower under the Loan Documents; plus

4. The prompt payment upon demand of all costs and expenses of any collection or other realization under, this Guaranty Agreement, including reasonable compensation to Lender and its agents and counsel, and all expenses, liabilities and advances made or incurred by Lender in connection therewith.

B. This instrument is an absolute, present and continuing, irrevocable, and unconditional guaranty of payment and performance, and not a guaranty of collection, and Guarantor shall remain liable on its obligations hereunder until the payment and performance in full of the Guaranteed Obligations. No set-off, counterclaim, recoupment, reduction, or diminution of any obligation, or any defense of any kind or nature which Borrower may have against Lender or any other party, or which Guarantor may have against Borrower, Lender, or any other party, shall be available to, or shall be asserted by, Guarantor against Lender or any subsequent beneficiary of this Guaranty Agreement or any portion of the Debt.

14

C. If Guarantor becomes liable for any Debt owing by Borrower to Lender by endorsement or otherwise, other than under this Guaranty Agreement, such liability shall not be in any manner impaired or affected hereby, and the rights of Lender hereunder shall be in addition to any and all other rights that Lender may ever have against Guarantor. The exercise by Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy.

D. In the event of default by Borrower in payment or performance of the Guaranteed Obligations, or any part thereof, when such Guaranteed Obligations are due to be paid or performed by Borrower, Guarantor shall promptly pay or perform the Guaranteed Obligations then due in full without notice or demand, and it shall not be necessary for Lender, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or others, or to enforce any rights against any collateral which shall ever have been given to secure such Debt. FURTHER, NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS GUARANTY AGREEMENT, GUARANTOR HEREBY IRREVOCABLY AGREES THAT, UNTIL PAYMENT IN FULL TO LENDER OF THE DEBT AND THE GUARANTEED OBLIGATIONS, GUARANTOR SHALL HAVE NO RIGHT TO RECOVER FROM BORROWER ANY CLAIMS GUARANTOR HAS OR MIGHT HAVE AGAINST BORROWER (AS SUCH TERM "CLAIM" IS DEFINED IN THE UNITED STATES BANKRUPTCY CODE 11 U.S.C. § 101(5) AS AMENDED FROM TIME TO TIME) IN CONNECTION WITH PAYMENTS MADE BY OR ON BEHALF OF GUARANTOR TO LENDER UNDER THIS GUARANTY AGREEMENT INCLUDING, WITHOUT LIMITATION, ALL RIGHTS GUARANTOR MAY NOW OR HEREAFTER HAVE UNDER ANY AGREEMENT OR AT LAW OR IN EQUITY (INCLUDING, WITHOUT LIMITATION, ANY LAW SUBROGATING GUARANTOR TO THE RIGHTS OF LENDER) TO ASSERT ANY CLAIM AGAINST OR SEEK CONTRIBUTION, INDEMNIFICATION OR ANY OTHER FORM OF REIMBURSEMENT FROM BORROWER OR ANY OTHER PARTY LIABLE FOR PAYMENT OF ANY OR ALL OF THE DEBT.

E. If acceleration of the time for payment by Borrower of all or any portion of the Debt is stayed upon the insolvency, bankruptcy, or reorganization of Borrower, the Guaranteed Obligations shall nonetheless be payable by Guarantor hereunder forthwith on demand by Lender.

F. Guarantor hereby agrees that its obligations under this Guaranty Agreement shall not be released, discharged, diminished, impaired, reduced, or affected for any reason or by the occurrence of any event, including, without limitation, one or more of the following events, whether or not with notice to or the consent of Guarantor: (a) the taking or accepting of collateral as security for any or all of the Debt or the release, surrender, exchange, or subordination of any collateral now or hereafter securing any or all of the Debt; (b) the full or partial release of Borrower or any other guarantor from liability for any or all of the Debt or the Guaranteed Obligations; (c) the dissolution, insolvency, or bankruptcy of Borrower, Guarantor, or any other party at any time liable for the payment of any or all of the Debt; (d) any renewal, extension, modification, waiver, amendment, or rearrangement of any or all of the Debt or any instrument, document, or agreement evidencing, securing, or otherwise relating to any or all of the Guaranteed Obligations; (e) any adjustment, indulgence, forbearance, waiver, or compromise that may be granted or given by Lender to Borrower or any other party ever liable for any or all of the Debt; (f) any neglect, delay, omission, failure, or refusal of Lender to take or prosecute any action for the collection of any of the Guaranteed Obligations from Borrower or Guarantor or to foreclose or take or prosecute any action in connection with any instrument, document, or agreement evidencing, securing, or otherwise relating to any or all of the Debt or

any or all of the Guaranteed Obligations; (g) the unenforceability or invalidity of any or all of the Debt or the Guaranteed Obligations or any instrument, document, or agreement evidencing, securing, or otherwise relating to any or all of the Debt or the Guaranteed Obligations; (h) any payment by Borrower or any other party to Lender is held to constitute a preference under applicable bankruptcy or insolvency law or if for any other reason Lender is required to refund any payment or pay the amount thereof to someone else; (i) the settlement or compromise of any of the Debt or the Guaranteed Obligations; (j) the non-perfection of any security interest or lien securing any or all of the Debt; (k) any impairment of any collateral securing any or all of the Debt; (l) the failure of Lender to sell any collateral securing any or all of the Debt in a commercially reasonable manner or as otherwise required by law; (m) any change in the corporate existence, structure, or ownership of Borrower; (n) the application against the Debt of the proceeds realized by Lender under any documents which secure the Debt (including, without limitation, voluntary payments, insurance or condemnation proceeds or proceeds from the sale at foreclosure of any collateral securing the Debt), except as otherwise provided in this Guaranty Agreement; or (o) any other circumstance which might otherwise constitute a defense available to, or discharge of, Borrower or Guarantor, or any other party liable for any or all of the Debt or the Guaranteed Obligations.

  G. Guarantor represents and warrants to Lender as follows:

    1. Guarantor hereby remakes all of the representations of Borrower contained in the Loan Documents, as if fully set forth herein, as if fully set forth herein.

    2. The value of the consideration received and to be received by Guarantor as a result of Lender making extensions of credit to Borrower and Guarantor executing and delivering this Guaranty Agreement is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation and such extensions of credit have benefited and may reasonably be expected to benefit Guarantor directly and indirectly.

    3. Guarantor has, independently and without reliance upon Lender and based upon such documents and information as Guarantor has deemed appropriate, made its own analysis and decision to enter into this Guaranty Agreement.

  H. Guarantor covenants and agrees that, as long as the Debt or the Guaranteed Obligations or any part thereof is outstanding:

    1. Guarantor will furnish to Lender as soon as available, and in any event within Thirty (30) days after the end of each fiscal year, beginning with the fiscal year ending **December 31, 2019**, a certificate of Guarantor to Lender (i) stating that no default under this Guaranty Agreement and no event which with notice or lapse of time or both would be a default under this Guaranty Agreement has occurred and is continuing, or if in Guarantor's opinion a default under this Guaranty Agreement has occurred and is continuing, a statement as to the nature thereof and (ii) disclosing and certifying as to all material changes in Guarantor's debt or net worth or otherwise certifying that there has been no material change in Guarantor's personal debt or net worth since the previous financial statement delivered to Lender.

    2. Guarantor will furnish promptly to Lender written notice of the occurrence of any default under this Guaranty Agreement.

    3. Guarantor will furnish promptly to Lender such additional information concerning Guarantor as Lender may reasonably request.

4.      Guarantor will obtain at any time and from time to time all authorizations, licenses, consents or approvals as shall now or hereafter be necessary or desirable under all applicable laws or regulations or otherwise in connection with the execution, delivery and performance of this Guaranty Agreement and will promptly furnish copies thereof to Lender.

1.      Guarantor hereby agrees that the Subordinated Debt (as hereinafter defined) shall be subordinate and junior in right of payment to the prior payment in full of all Debt, and Guarantor hereby assigns the Subordinated Debt to Lender as security for the payment of the Guaranteed Obligations. From and after the occurrence of an Event of Default, if any sums shall be paid to Guarantor by Borrower or any other person or entity on account of the Subordinated Debt, such sums shall be held in trust by Guarantor for the benefit of Lender and shall forthwith be paid to Lender without affecting the liability of Guarantor under this Guaranty Agreement and may be applied by Lender against the Debt or the Guaranteed Obligations in such order and manner as Lender may determine in its sole discretion. Upon the request of Lender, Guarantor shall execute, deliver, and endorse to Lender such documents and instruments as Lender may request to perfect, preserve, and enforce its rights hereunder. For purposes of this Guaranty Agreement, the term "Subordinated Debt" means all debt, liabilities, and obligations of Borrower to Guarantor, whether such debt, liabilities, and obligations now exist or are hereafter incurred or arise, or whether the obligations of Borrower thereon are direct, indirect, contingent, primary, secondary, several, joint and several, or otherwise, and irrespective of whether such debt, liabilities, or obligations are evidenced by a note, contract, open account, or otherwise, and irrespective of the person or persons in whose favor such debt, obligations, or liabilities may, at their inception, have been, or may hereafter be created, or the manner in which they have been or may hereafter be acquired by Guarantor; provided, however, that the term "Subordinated Debt" shall not mean or include any distributions by Borrower to its direct beneficial owners pursuant to the organizational documents of Borrower at any time when no Event of Default exists.

1.      Guarantor agrees that any and all liens, security interests, judgment liens, charges, or other encumbrances upon Borrower's assets securing payment of any Subordinated Debt shall be and remain inferior and subordinate to any and all liens, security interests, judgment liens, charges, or other encumbrances upon Borrower's assets securing payment of the Debt or any part thereof, regardless of whether such encumbrances in favor of Guarantor or Lender presently exist or are hereafter created or attached. Without the prior consent of Lender until the Debt has been paid in full, Guarantor shall not (i) file suit against Borrower or exercise or enforce any other creditor's right it may have against Borrower, or (ii) foreclose, repossess, sequester, or otherwise take steps or institute any action or proceedings (judicial or otherwise, including without limitation the commencement of, or joinder in, any liquidation, bankruptcy, rearrangement, debtor's relief or insolvency proceeding) to enforce any liens, security interests, collateral rights, judgments or other encumbrances held by Guarantor on any assets of Borrower.

2.      In the event of any receivership, bankruptcy, reorganization, rearrangement, debtor's relief, or other insolvency proceeding involving Borrower as debtor, Lender shall have the right to prove and vote any claim under the Subordinated Debt and to receive directly from the receiver, trustee or other court custodian all dividends, distributions, and payments made in respect of the Subordinated Debt. Lender may apply any such dividends, distributions, and payments against the Guaranteed Obligations in such order and manner as Lender may determine in its sole discretion. Guarantor hereby appoints Lender as Guarantor's attorney-in-fact, which appointment is coupled with an interest and is irrevocable and with full power of substitution, to enable Lender to act in the place of Guarantor with respect to (i) any claim under the Subordinated Debt or (ii) the receipt of any such dividends, distributions and payments.

17

J.      No amendment or waiver of any provision of this Guaranty Agreement nor consent to any departure by Guarantor therefrom shall in any event be effective unless the same shall be in writing and signed by Lender. No failure on the part of Lender to exercise, and no delay in exercising, any right, power, or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power, or privilege. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

K.      Any acknowledgment or new promise, whether by payment of principal or interest or otherwise and whether by Borrower or others (including, without limitation, Guarantor), with respect to any of the Debt shall, if the statute of limitations in favor of Guarantor against Lender shall have commenced to run, toll the minning of such statute of limitations and, if the period of such statute of limitations shall have expired, prevent the operation of such statute of limitations.

L.      This Guaranty Agreement is for the benefit of Lender and its successors and assigns, and in the event of an assignment of the Debt, or any part thereof, the rights and benefits hereunder, to the extent applicable to the portion of the Debt so assigned, may be transferred with such Debt. This Guaranty Agreement is binding not only on Guarantor, but on Guarantor's successors and assigns.

M.      Guarantor recognizes that Lender is relying upon this Guaranty Agreement and the undertakings of Guarantor hereunder in making extensions of credit to Borrower and further recognizes that the execution and delivery of this Guaranty Agreement is a material inducement to Lender in making extensions of credit to Borrower. Guarantor hereby acknowledges that there are no conditions to the full effectiveness of this Guaranty Agreement.

N.      Guarantor hereby irrevocably submits generally and unconditionally for itself and in respect of its property to the jurisdiction of any state/local court, or any United States federal court, sitting in the State of New York, or any other forum selected by Lender, over any suit, action or proceeding arising out of or relating to this Agreement. Guarantor hereby irrevocably waives, to the fullest extent permitted by Law, any objection that Guarantor may now or hereafter have to the laying of venue in any such court and any claim that any such court is an inconvenient forum. Guarantor hereby agrees and consents that, in addition to any methods of service of process provided for under applicable Law, all service of process in any such suit, action or proceeding in any state court, or any United States federal court, sitting in the State of New York, or such other state as Lender may select, may be made by certified or registered mail, return receipt requested, directed to Guarantor at Guarantor's address for notice set forth in Section S. of this Agreement, and service so made shall be complete five (5) days after the same shall have been so mailed. Nothing herein shall affect the right of Lender to serve process in any manner permitted by Law or limit the right of Lender to bring proceedings against Guarantor in any other court or jurisdiction.

O.      Guarantor hereby waives promptness, diligence, notice of any default under the Debt or of Borrower's failure to pay or perform the Guaranteed Obligations, demand of payment, notice of acceptance of this Guaranty Agreement, presentment, notice of protest, notice of dishonor, notice of the incurring by Borrower of additional Debt, and all other notices and demands with respect to the Debt and this Guaranty Agreement.

P.      Guarantor hereby represents and warrants to Lender that Guarantor has adequate means to obtain from Borrower on a continuing basis information concerning the financial condition and assets of

18

Borrower and that Guarantor is not relying upon Lender to provide (and Lender shall have no duty to provide) any such information to Guarantor either now or in the future.

Q. In case any one or more of the provisions contained in this Guaranty Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Guaranty Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

R. The Loan Documents are being delivered, and are intended to be performed, in the State of New York and the laws of the State of New York of the United States of America shall govern the rights and duties of the parties hereto and the validity, construction, enforcement and interpretation of the Loan Documents, provided, however, that with respect to the creation, perfection, priority and enforcement of the liens and security interests created by this Agreement, the Security Instrument and the other Loan Documents, and the determination of deficiency judgments, the Laws of the State where the Property is located shall apply.

S. Any notice, request, statement, consent, waiver or demand required or permitted to be given under this Agreement shall be in writing and either shall be sent by overnight air courier service, registered mail (postage prepaid, return receipt requested) or personally delivered to a representative of the receiving party, or sent by telecopy (provided an identical notice is also sent simultaneously by mail, overnight courier, or personal delivery as otherwise provided in this Section S.). All such communications shall be mailed, sent or delivered, addressed to the party for whom it is intended at its address set forth below.

If to Lender:    105 MAXESS ROAD, SUITE N107, MELVILLE, NY 11747

If to Guarantor: 130-21 140TH STREET, JAMAICA, NY 11436

Any communication so addressed and mailed shall be deemed to be given on the earliest of (i) when actually delivered, (ii) on the second business day after deposit with an overnight air courier service, or (iii) in the case of registered mail on the third day following the day on which it was mailed and any communication so delivered in person shall be deemed to be given when receipted for by, or actually received by Lender or Guarantor, as the case may be. If given by facsimile, a notice shall be deemed given and received when the facsimile is transmitted to the party's facsimile number specified above, and confirmation of complete receipt is received by the transmitting party during normal business hours or on the next business day if not confirmed during normal business hours, and an identical notice is also sent simultaneously by mail, overnight courier, registered mail or personal delivery as otherwise provided in this Section S. Either party may designate a change of address by written notice to the other by giving at least ten (10) days prior written notice of such change of address.

T. THIS GUARANTY AGREEMENT EMBODIES THE FINAL, ENTIRE AGREEMENT OF PAYMENT AND PERFORMANCE OF GUARANTOR AND LENDER WITH RESPECT TO GUARANTOR'S GUARANTY OF THE GUARANTEED OBLIGATIONS AND SUPERSEDES ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF. THIS GUARANTY AGREEMENT IS INTENDED BY GUARANTOR AND LENDER AS A FINAL AND COMPLETE EXPRESSION OF THE TERMS OF THE GUARANTY AGREEMENT, AND

19

NO COURSE OF DEALING BETWEEN GUARANTOR AND LENDER, NO COURSE OF PERFORMANCE, NO TRADE PRACTICES, AND NO EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OR OTHER EXTRINSIC EVIDENCE OF ANY NATURE SHALL BE USED TO CONTRADICT, VARY, SUPPLEMENT OR MODIFY ANY TERM OF THIS GUARANTY AGREEMENT. THERE ARE NO ORAL AGREEMENTS BETWEEN GUARANTOR AND LENDER.

U. GUARANTOR, AND BY ITS ACCEPTANCE HEREOF, LENDER, EACH HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY AND WAIVE ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY GUARANTOR AND LENDER AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. GUARANTOR AND LENDER ARE EACH HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.

V. GUARANTOR HEREBY EXPRESSLY AND UNCONDITIONALLY WAIVES, IN CONNECTION WITH ANY SUIT, ACTION OR PROCEEDING BROUGHT BY OR ON BEHALF OF LENDER ON THIS GUARANTY, ANY AND EVERY RIGHT GUARANTOR MAY HAVE TO (I) INJUNCTIVE RELIEF, (II) INTERPOSE ANY COUNTERCLAIM THEREIN (OTHER THAN COMPULSORY COUNTERCLAIMS), AND (III) HAVE THE SAME CONSOLIDATED WITH ANY OTHER OR SEPARATE SUIT, ACTION OR PROCEEDING. NOTHING HEREIN CONTAINED SHALL PREVENT OR PROHIBIT GUARANTOR FROM INSTITUTING OR MAINTAINING A SEPARATE ACTION AGAINST LENDER WITH RESPECT TO ANY ASSERTED CLAIM.

IN WITNESS WHEREOF, Guarantor has duly executed this Guaranty Agreement as of the Execution Date.

By: _____
Name: **LEZANTONIO WOODBURN**

STATE OF **NEW YORK**    )
                         ss:
COUNTY OF **QUEENS**     )

On the **27TH** day of **MARCH, 2019**, before me, the undersigned personally appeared **LEZANTONIO WOODBURN**, personally known to me or proved to me on the basis of satisfactory evidence to be the individuals whose names are subscribed to be within the instrument and acknowledged to me that he/she/they execute the same in his/her/their capacities and that by his/her/their signatures on the instrument, the individual(s) or the person upon behalf of which the individuals acted, executed the instrument.

_____
Notary Public, State of New York

ANOKYE S. BISSETT
NOTARY PUBLIC-STATE OF NEW YORK
No. 02BI6158374
Qualified in Queens County
My Commission Expires June 11, 2019