UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>EVIS NEVERLANE STEPHENS,<br><br>Debtor. | 21-42857-jmm<br><br>Chapter 13 |
| EVIS NEVERLANE STEPHENS,<br><br>Plaintiff,<br>v.<br><br>MAXINE BONAPARTE,<br>LEZANTONIO WOODBURN,<br>12706 HOLDINGS, INC.,<br>CHARLES L. MESTER, ESQ.<br>PLANET MANAGEMENT GROUP, LLC,<br>PLANET HOME LENDING, LLC d/b/a PLANET HOME SERVICING,<br>WILMINGTON SAVINGS FUND SOCIETY, FSB (WSF),<br>VERUS SECURITIZATION TRUST 2020-NPL1<br><br>Appellees. | Adversary Proceeding No. 22-01037(jmm) |

**DECLARATION IN SUPPORT OF MOTION BY DEFENDANTS AND COUNTERCLAIMANTS PLANET MANAGEMENT GROUP, LLC AND PLANET HOME LENDING, LLC d/b/a PLANET HOME SERVICING FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS AND ON CERTAIN OF THE COUNTERCLAIMS ASSERTED AGAINST PLAINTIFF PURSUANT TO FED.R.BANKR.P. 56 AND LOCAL RULE OF BANKRUPTCY PROCEDURE 7056-1**

I, Thomas O'Connell, of full age, hereby certify and declare under penalty of perjury pursuant to section 1746 of Title 28 of the United States Code:

1

1. I am employed as Senior Vice President of Defendant and Counterclaimant, Planet Home Lending, LLC d/b/a Planet Home Servicing ("PHL"). I am authorized to execute this Declaration on behalf of PHL, which is the mortgage servicer of the commercial mortgage loan at issue in this case. PHL is a fully integrated business line platform of Planet Financial Group. As such, I am authorized to submit this Declaration on behalf of PHL. I am fully aware of the underlying action, as well as the papers and proceedings heretofore had herein.

2. I make this Declaration in support of the motion by PHL and Defendant and Counterclaimant, Planet Management Group, LLC ("PMG") (PHL and PMG collectively referred to as "Planet Defendants") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which is made applicable to this Adversary Proceeding pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure on claims asserted by Plaintiff, Evis Neverlane Stephens ("Plaintiff"), and on certain Counterclaims asserted against Plaintiff by the Planet Defendants based upon my personal knowledge and based upon the information taken from business records that include physical and electronic records of loan activity, events and transactions (the "Loan Records") about the commercial mortgage loan originated and delivered by and in favor of PMG, as lender, to Defendant, 12706 Holdings Inc. ("12706 Holdings"), as borrower ("Commercial Mortgage Loan"). PHL maintains the Loan Records in its capacity as loan servicer for Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as owner trustee for Verus Securitization Trust 2020-NPL1, which is also a defendant in this Adversary Proceeding.

3. As part of my job responsibilities, I have personal knowledge of PHL's practices for creating and maintaining the Loan Records. The Loan Records are: (a) made at or near the time of the occurrence of the matters recorded; (b) made by, or from information transmitted by,

persons with personal knowledge of the matters recorded; (c) kept during the course of regularly conducted business activities. It is the regular practice of such businesses activities to make and maintain the Loan Records associated with the Commercial Mortgage Loan.

4. I am familiar with and have access to the Loan Records for the Commercial Mortgage Loan, which I have reviewed to verify the accuracy of this Declaration. The documents referenced in and attached as exhibits to this Declaration are copies of the Loan Records from the Commercial Mortgage Loan.

I. The Commercial Mortgage Loan

A. The Loan Agreement

5. On March 27, 2019, PMG, as lender, entered into a loan agreement with 12706 Holdings, as borrower, pursuant to which PMG agreed to make a commercial loan to 12706 Holdings in the principal amount of $535,000.00 (the "Loan Agreement").

6. Attached hereto as Exhibit "A" is a true and accurate copy of the Loan Agreement.

7. The Loan Agreement was executed by Defendant, Lezantonio Woodburn ("Woodburn"), in his official capacity as President of 12706 Holdings.

8. Pursuant to Section 3.2 of the Loan Agreement, the maturity date of the Commercial Mortgage Loan was April 1, 2020. Pursuant to Article 3.3(a) of the Loan Agreement, 12706 Holdings was required to make its first payment of interest on May 1, 2019, and continue on the first day of each month thereafter until the maturity date. Interest, including default interest, and late fees on the unpaid principal balance are due and owing pursuant to Articles 3.3(b) through (e) of the Loan Agreement.

9. Pursuant to Section 4.2 of the Loan Agreement, 12706 Holdings represented and warranted that the execution, delivery and performance by 12706 Holdings, as borrower, and

Woodburn, as guarantor, of the Loan Documents to which they are parties will not violate any law or result in the imposition of any lien, charge or encumbrance upon all or any portion of the Subject Property, except for any liens in favor of PMG, as lender, as contemplated by the Loan Documents. The Loan Documents as referenced in the Loan Agreement include the Loan Agreement, the Subject Mortgage, the Note, and the Guaranty Agreement, which are all further identified below.

10. Pursuant to Section 4.17 of the Loan Agreement, 12706 Holdings represented and warranted that it is the sole owner of the property located at 127-06 177th Street, Jamaica, New York 11434 ("Subject Property"); the Subject Property is not subject to any leases; other than 12706 Holdings, no person has any possessory interest in the Subject Property or right to occupy the same; the Subject Property is not occupied and neither 12706 Holdings, as borrower, nor Woodburn, as guarantor, has any intent to occupy the Subject Property, or to permit any other person to occupy the Subject Property during the term of the Commercial Mortgage Loan.

11. Pursuant to Section 4.2 of the Loan Agreement, 12706 Holdings represented and warranted that neither 12706 Holdings, as borrower, nor Woodburn, as guarantor, had failed to disclose any fact that could cause any information described in any representation or warranty to be misleading or adversely affect the value of the Subject Property. 12706 Holdings, as borrower, and Woodburn, as guarantor, further represented and warranted that no statement of fact made by them in any of the Loan Documents contained any untrue statement of a material fact or omitted to state any material fact necessary to make statements contained in the Loan Documents not misleading. 12706 Holdings, as borrower, and Woodburn, as guarantor, further represented and warranted that there was no fact then-known to them that has not been disclosed to PMG, as lender, which adversely affects, nor as they could foresee, might adversely affect the business, operation or condition of 12706 Holdings, Woodburn or the Subject Property.

12. The Loan Agreement contained an indemnification provision. Pursuant to Article 5.13 of the Loan Agreement, 12706 Holdings, as borrower and as indemnitor, agreed, among other things, to:

> indemnify, defend and hold harmless Lender and its affiliates and their respective owners, members, managers, officers, directors, managers, agents, employees, trustees, partners, successors and permitted assigns from and against any and all losses, liabilities, claims, damages, expenses, obligations, penalties, actions, judgments, suits, costs or disbursements of any kind or nature whatsoever, including the reasonable fees and actual expenses of Lender's counsel, arising from or in connection with (i) the Loan; (ii) any failure to complete the Planned Improvements in accordance with applicable Law; (iii) any inaccuracy in or breach of any representation or warranty made by Borrower in this Agreement or any other Loan Documents; (iv) any failure of Borrower to perform any of its agreements, duties or obligations in accordance with the terms of this Agreement or any other Loan Document; (v) any investigative, administrative, mediation, arbitration, or judicial proceeding, whether or not Lender is designated a party thereto, commenced or threatened at any time (including after the repayment of the Loan) in any way related to the execution, delivery or performance of any Loan Document; (vi) any acts by Lender pursuant to Section 4.7 and Section 6.3, including all sums paid by Lender or otherwise expended thereunder; and (vii) any brokerage commissions or finder's fees claimed by any broker or other party in connection with the Loan or any of the transactions contemplated in the Loan Documents.

13. PHL is an affiliated entity of PMG, which are both platform businesses of Planet Financial Group.

14. Events of default under the Loan Agreement include, among other things, 12706 Holdings' failure to pay any principal, interest or other amount due under the Loan Documents when due, 12706 Holdings' violations of its obligations under Section 3.3(a) and/or 6.3 of the Loan Agreement, and the untruth in any material respect when made or deemed made any representation or warranty made in any Loan Document.

B. The Promissory Note

15. On March 27, 2019, 12706 Holdings executed a Promissory Note in connection with the Commercial Mortgage Loan (the "Note").

16. Attached hereto as Exhibit "B" is a true and accurate copy of the Note.

17. Pursuant to the Note, 12706 Holdings, as borrower, promised to repay $535,000.00 plus interest to PMG.

18. The Note was executed by Woodburn in his official capacity as President of 12706 Holdings.

C. The Mortgage, Security Agreement, And Fixture Filing

19. To secure repayment of the Note, 12706 Holdings executed a Mortgage, Security Agreement, And Fixture Filing on March 27, 2019 (the "Commercial Mortgage") in favor of PMG, encumbering and granting to PMG a security interest in the Subject Property.

20. Attached hereto as Exhibit "C" is a true and accurate copy of the Commercial Mortgage.

21. The Commercial Mortgage was recorded on July 18, 2019, in the Office of the City of Register of the City of New York under CRFN: 2019000227660 and bears Document ID 2019041000506001.

22. The Commercial Mortgage was executed by Woodburn in his official capacity as President of 12706 Holdings.

23. Pursuant to the Commercial Mortgage, upon the occurrence and continuance of an event of default, interest on the outstanding principal balance of the Commercial Mortgage Loan and, to the extent permitted by applicable law, overdue interest and other amounts due shall accrue at the default rate calculated from the date of default.

24. The funds from the Commercial Mortgage Loan satisfied obligations under a mortgage executed and delivered on August 29, 2006, by Plaintiff to Mortgage Electronic Registration Systems, Inc., as nominee for Novastar Mortgage, Inc., its successors and assigns, encumbering the Subject Property as security for a loan and debt in the principal sum of $630,000.00 (the "2006 Mortgage"), which was recorded in the Office of the City Register of the City of New York on August 14, 2007, under CRFN 2007000419551, and encumbered the Subject Property as set forth in the 2006 Mortgage and was security for the corresponding note.

25. The HUD-1 Settlement Statement attached as an exhibit to the Amended Complaint in which the Planet Defendants were first named as defendants in the Adversary Proceeding reflects payment of the 2006 Mortgage. That HUD-1 was signed by 12706 Holdings.

26. Attached hereto as Exhibit "D" is a true and accurate copy of the HUD-1 Settlement Statement.

27. As is standard in the mortgage lending industry, a title report ("Title Report") was obtained and a policy of title insurance was issued to PMG by WFG National Title Insurance Company ("WFG National") assuring PMG that the Commercial Mortgage Loan to 12706 Holdings would be in first lien position ("Title Policy").

28. Attached hereto as Exhibits "E" and "F" are a true and accurate copies of the Title Report and the Title Policy.

29. The Title Report showed that the pending foreclosure against Plaintiff was dated nine days before (March 18, 2019) the closing of the Commercial Mortgage Loan (March 27, 2019).

30. Consistent with a Master Mortgage Loan Sale and Servicing Agreement ("Master Servicing Agreement") between PMG and IRP Fund II Trust 1A, an affiliate of Verus Residential

Loanco, LLC, IRP Fund II Trust 1A purchased the Commercial Mortgage Loan from PMG on April 30, 2019.

31. Attached as Exhibit "G" is a true and accurate copy of the Master Servicing Agreement.

32. Pursuant to an Assignment of Mortgage ("Assignment") that was recorded on May 12, 2022, the Subject Mortgage was assigned to PHL, as servicer for Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as owner trustee for Verus Securitization Trust 2020-NPL1, which is the owner trustee of Verus Securitization Trust 2020-NPL1, the trust that now owns the Commercial Mortgage Loan.

33. Attached hereto as Exhibit "H" is a true and accurate copy of the Assignment.

34. PHL did not originate and was not involved with originating the Commercial Mortgage Loan. PHL is not a lender. PHL is and functions only as a mortgage servicer. As such, PHL did not fund the Commercial Mortgage Loan and did disburse funds to 12706 Holdings for the Commercial Mortgage Loan.

35. In its capacity as loan servicer, PHL generally handles the day-to-day management of mortgage loans after the loans have closed and have funded. That day-to-day management generally includes collecting, receiving and processing payments on the loans, managing escrow accounts on the loans, sending out monthly and annual statements and invoices on the loans, sending out communications related to any delinquencies on the loans, and being the main point of contact for borrowers for their loan-related issues, questions, and foreclosures and bankruptcies. With respect to foreclosures and bankruptcies, PHL manages the process for owners of the loans that PHL services, which can include handling all communications with borrowers and/or borrowers' counsel, trying to identify and work with borrowers and/or borrowers' counsel on loss

mitigation, commencing foreclosures and addressing bankruptcy cases, adversary proceedings or any other litigation related to the loans either in PHL's name or in the name of the owner of the loan, managing the foreclosures, bankruptcy cases and other litigated matters and, if necessary, property preservation and foreclosure sales.

36. PHL's only role with the Commercial Mortgage Loan was to provide the services identified in the preceding paragraph for PMG when it held the Commercial Mortgage and, subsequently, Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as owner trustee for Verus Securitization Trust 2020-NPL1. PHL did not participate in, was not a party to, was not involved in, and had no knowledge of any negotiations that led to 12706 Holdings' acquisition of the Subject Property from Plaintiff and did not attend the closing of the Commercial Mortgage Loan. PHL's capacity as mortgage servicer did not commence until after the closing of the Commercial Mortgage Loan. Aside from providing ordinary mortgage servicing services as set forth above with respect to the Commercial Mortgage Loan, PHL provided no other services related to the Commercial Mortgage Loan.

D. Guaranty Agreement

37. Woodburn, in his personal and individual capacity, entered into a Guaranty Agreement effective as of March 27, 2019, in connection with the Commercial Mortgage Loan.

38. Attached hereto as Exhibit "I" is a true and accurate copy of the Guaranty Agreement.

39. Pursuant to the Guaranty Agreement, Woodburn, as guarantor, irrevocably and unconditionally guaranteed the full and prompt payment and performance of the Guaranteed Obligations of 12706 Holdings. The Guaranteed Obligations include (1) the prompt and complete payment of the Debt (defined by the Loan Agreement as the outstanding principal amount set forth

in, and evidenced by, the Loan Agreement and the Note together with all interest accrued and unpaid thereon and all other sums due to PMG in respect of the Loan under the Note, the Loan Agreement, the Security Instrument or any other Loan Document) in full when due, whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise (including amounts that would become due but for the operation of the automatic stay under § 362(a) of the Bankruptcy Code) (collectively defined as the "Performance Sums"); (2) the prompt payment of interest at the Default Rate (as defined in the Note) which accrues on the Performance Sums from the date of demand for payment under the Guaranty Agreement from PMG, as lender, to Woodburn, as guarantor, until the Performance Sums are paid in full; (3) the prompt performance when due of all other obligations of 12706 Holdings under the Loan Documents; (4) the prompt payment upon demand of all costs and expenses of any collection or other realization under the Guaranty Agreement including reasonable compensation to PMG, as lender, and its agents and counsel, and all expenses, liabilities and advances made or incurred by PMG, as lender, in connection therewith.

40. Pursuant to its terms, the Guaranty Agreement is an absolute, present and continuing, irrevocable, and unconditional guaranty of payment and performance.

II. 12706 Holdings Breaches the Loan Documents; Plaintiff's Claims; Planet Defendants' Incurring Fees and Costs

42. 12706 Holdings failed to comply with the Loan Documents by failing to indemnify PHL pursuant to the Loan Agreement with respect to this Adversary Proceeding and the underlying bankruptcy.

43. 12706 Holdings also failed to comply with the Loan Documents by failing to remit payments pursuant to the Loan Agreement, the Commercial Mortgage and the Note. At the time that the Stephens Bankruptcy Case was commenced, the Commercial Mortgage Loan was

contractually due for November 1, 2019. 12706 Holdings failed to comply with the conditions of the Loan Documents by failing to make the payment that became due on November 1, 2019, and each subsequent payment. PHL has not collected any post-petition payments from 12706 Holdings, as borrower, or Woodburn, as guarantor, during the underlying Chapter 13 bankruptcy case captioned *In re Evis Neverlane Stephens* ("Stephens Bankruptcy Case") pending under Case No. 21-42857.

44. As a result, on July 26, 2022, PHL, in its capacity as servicer for WSF, appeared in the Stephens Bankruptcy Case. When the Stephens Bankruptcy Case was commenced on November 15, 2021, the Commercial Mortgage Loan was contractually due from 12706 Holdings for November 1, 2019.

45. On October 6, 2022, PHL, in its capacity as servicer for Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as owner trustee for Verus Securitization Trust 2020-NPL1, filed a motion for relief from the automatic stay to permit PHL, its successors and/or assigns, to enforce the Commercial Mortgage on the Subject Property on behalf of Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as owner trustee for Verus Securitization Trust 2020-NPL1. The motion for relief from stay has been carried and remains pending since its filing until resolution of this Adversary Proceeding.

46. Woodburn failed to comply with the Guaranty Agreement by failing to promptly and completely pay and perform 12706 Holdings' contractual obligations under the Commercial Mortgage Loan in light of 12706 Holdings' defaults.

47. PHL has incurred and will continue to incur attorneys' fees, costs and expenses in connection with enforcing rights under the Loan Documents, by being a party to this Adversary Proceeding, and by appearing in the Stephens Bankruptcy Case.

I hereby certify and declare under penalty and perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge. I am aware that if any of the statements made by me are willfully false, I am subject to punishment.

Dated: December 9, 2025        By: _____
                                   Thomas O'Connell, Senior Vice President
                                   Planet Home Lending, LLC