# EXHIBIT G



# MASTER MORTGAGE LOAN SALE AND SERVICING AGREEMENT

between

IRP FUND II TRUST 1A,
Purchaser

and

PLANET MANAGEMENT GROUP, LLC,
Company

Dated as of November 30, 2018

# TABLE OF CONTENTS

Section 1. Definitions. ...................................................................................1
Section 2. Purchase Agreement ..................................................................12
Section 3. Purchase Price. ..........................................................................12
Section 4. Examination of Mortgage Files. ...............................................12
Section 5. Conveyance from Company to Purchaser. ...............................13
    Subsection 5.01. Conveyance of Mortgage Loans. .................................13
    Subsection 5.02. Collateral and Servicing Files. ....................................13
    Subsection 5.03. Cooperation of Company with a Reconstitution. ..........14
Section 6. Representations and Warranties; Remedies for Breach. ...........16
    Subsection 6.01. Representations, Warranties Respecting the Company and the
        Purchaser. .........................................................................................16
    Subsection 6.02. Representations and Warranties Regarding Individual Mortgage
        Loans. ...............................................................................................20
    Subsection 6.03. Remedies for Breach of Representations and Warranties. ...........27
    Subsection 6.04. Repurchase of Mortgage Loans with Early Payment Default. ......28
Section 7. Closing. ......................................................................................28
Section 8. Closing Documents. ...................................................................29
Section 9. Costs. .........................................................................................30
Section 10. Company's Servicing Obligations. ..........................................30
    Subsection 10.01. Company to Act as Servicer; Subservicing. ...............30
    Subsection 10.02. Transfer of Servicing to Successor Servicer. .............32
    Subsection 10.03. Collection of Mortgage Loan Payments. ...................33
    Subsection 10.04. Realization Upon Defaulted Mortgage Loans. ...........34
    Subsection 10.05. Establishment of Custodial Accounts; Deposits in Custodial
        Accounts. ...........................................................................................34
    Subsection 10.06. Withdrawals from the Custodial Account. ..................36
    Subsection 10.07. Distributions/Priority of Payments. ...........................36
    Subsection 10.08. Establishment of Escrow Accounts; Deposits in Escrow
        Accounts. ...........................................................................................38
    Subsection 10.09. Withdrawals From Escrow Accounts. ........................38
    Subsection 10.10. Establishment of the Rehabilitation Holdback Account; Deposits
        in the Rehabilitation Holdback Account. ..........................................39
    Subsection 10.11. Withdrawals From the Rehabilitation Holdback Account. ..........39
    Subsection 10.12. Payment of Taxes, Insurance and Other Charges; Collections
        Thereunder. ........................................................................................40
    Subsection 10.13. Transfer of Accounts. ................................................41
    Subsection 10.14. Maintenance of Hazard Insurance. ............................41
    Subsection 10.15. Title, Management and Disposition of REO Property. ...............41
    Subsection 10.16. Remittance Reports; Special Reports. ........................42
    Subsection 10.17. Satisfaction of Mortgages and Release of Collateral Files. .......42
    Subsection 10.18. Servicing Compensation. ...........................................43
    Subsection 10.19. Right to Examine and Audit Company's Operations and Records. ...43
    Subsection 10.20. Inspections; Restoration of Mortgaged Property. .......44
    Subsection 10.21. Financial Privacy; Data Security. ..............................44
    Subsection 10.22. Fidelity Bond, Errors and Omissions Insurance. ........44

Do Not Disclose

Draft Only

for Discussion

10864740\v-5

Subsection 10.23. Financial Covenant.................................................................................45
Subsection 10.24. Establishment of and Withdrawals from the Interest Reserve
Account.............................................................................................45
Subsection 10.25. Draws.................................................................................................46
**Section 11. Additional Indemnification and Limitations on Liability.**................................46
Subsection 11.01. Additional Indemnification by the Company................................46
Subsection 11.02. Limitation on Liability of the Company and Others.....................48
Subsection 11.03. Limitation on Liability of Purchaser Trustee................................49
**Section 12. Default.**.............................................................................................................49
Subsection 12.01. Events of Default..........................................................................49
Subsection 12.02. Waiver of Defaults.......................................................................50
**Section 13. Termination.**.....................................................................................................51
**Section 14. Successor to the Company.**...............................................................................52
**Section 15. Notices.**............................................................................................................53
**Section 16. Severability Clause.**.........................................................................................54
**Section 17. Counterparts.**...................................................................................................55
**Section 18. Governing Law.**...............................................................................................55
**Section 19. Waiver of Jury Trial.**.......................................................................................55
**Section 20. Successors and Assigns.**..................................................................................55
**Section 21. Waivers; Amendment.**.....................................................................................56
**Section 22. Exhibits.**...........................................................................................................56
**Section 23. General Interpretive Principles.**......................................................................56
**Section 24. Reproduction of Documents.**..........................................................................57
**Section 25. Further Agreements.**........................................................................................57
**Section 26. Survival.**..........................................................................................................57
**Section 27. Joinder.**............................................................................................................57


For Use in

EDNY Bankruptcy

1-22-01037-jmm

Only

10964740NV-5

SCHEDULES AND EXHIBITS

EXHIBIT 1    FORM OF ASSIGNMENT AND CONVEYANCE
EXHIBIT 2    SERVICING FEES
EXHIBIT 3    [RESERVED]
EXHIBIT 4    LIST OF SERVICING FILE DOCUMENTS
EXHIBIT 5    MORTGAGE LOAN SCHEDULE FIELDS
EXHIBIT 6    FORM OF JOINDER

Confidential
Do Not Disclose
For Use In
EDNY Bankruptcy
1-22-01037-jmm
Only

10964740\V-5

## MASTER MORTGAGE LOAN SALE AND SERVICING AGREEMENT

This is a MASTER MORTGAGE LOAN SALE AND SERVICING AGREEMENT (the "Agreement"), dated as of November 30, 2018, by and between IRP Fund II Trust 1A, having an office at c/o Verus Residential Loanco, LLC 1155 F Street NW, Suite 1075, Washington DC 20004 (the "Purchaser"), and Planet Management Group, LLC, having an office at 321 Research Parkway, Suite 303, Meriden, Connecticut 06450 (the "Company").

### WITNESSETH:

WHEREAS, the Company desires to sell to the Purchaser from time to time, and the Purchaser desires to purchase from the Company from time to time certain commercial or business purpose mortgage loans (collectively, the "Mortgage Loans"), on a servicing-released basis, which Mortgage Loans and the servicing rights appurtenant thereto as described herein shall be delivered on the date provided in the related Assignment and Conveyance (as defined herein) (each such date, a "Closing Date");

WHEREAS, following each Closing Date, the Mortgagor may request additional draws with respect to the Additional Funding Loans (as defined herein);

WHEREAS, each Mortgage Loan is secured by a mortgage, deed of trust or other security instrument creating a first lien on a Mortgaged Property located in the jurisdiction indicated on the related Mortgage Loan Schedule annexed to the related Assignment and Conveyance; and

WHEREAS, the Purchaser and the Company wish to prescribe the manner of the conveyance, servicing and control of the Mortgage Loans,

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Purchaser and the Company agree as follows:

### Section 1. Definitions.

For purposes of this Agreement the following capitalized terms shall have the respective meanings set forth below.

Accepted Servicing Practices: With respect to any Mortgage Loan, procedures (including collection procedures) that (a) comply with Applicable Law, (b) are in accordance with the terms of the related Mortgage Note and Mortgage, (c) are consistent with industry practices for mortgage loans of the same type as the Mortgage Loan in the jurisdiction where the related Mortgaged Property is located, and (d) are in accordance with this Agreement.

Additional Balance: With respect to any Additional Funding Loan, any Draw made by the related Mortgagor pursuant to the related Loan Agreement on and after the related Cut-off Date.

Additional Funding Loan: A Mortgage Loan identified on the related Mortgage Loan Schedule as an Additional Funding Loan for which the Mortgagor may request additional Draws. Each Additional Funding Loan includes, without limitation, all Additional Balances, the Mortgage File, the Monthly Payments, Principal Prepayments (including any Prepayment Charges), Liquidation Proceeds, Condemnation Proceeds, Insurance Proceeds, REO Disposition Proceeds, and all other rights, benefits, proceeds and obligations arising from or in connection with such Additional Funding Loan.

Administrators: With respect to the initial Purchaser, Verus Residential Loanco, LLC. With respect to any Joining Purchaser, the administrator identified in the related Joinder Agreement.

Affiliate: With respect to any Person, any other Person controlling, controlled by or under common control with such Person. As used in this definition, "control" (including, with its correlative meanings, "controlled by" and "under common control with") means the possession, directly or indirectly, of power to direct or cause the direction of the management and policies of a Person whether through the ownership of voting securities, by contract or otherwise.

Agreement: This Master Mortgage Loan Sale and Servicing Agreement including all exhibits, schedules, amendments and supplements hereto.

Ancillary Fees: With respect to any Mortgage Loan, all payoff fees, any modification or conversion fees, assumption fees, optional insurance administrative fees and all other fees and charges collected from Mortgagors to the extent not prohibited under the Mortgage Loan documents and Applicable Law; provided, however, that the term "Ancillary Fees" shall not include any late charges or returned item charges (e.g., insufficient funds charges).

Applicable Law: All applicable federal, state or local laws, rules and regulations, as such may be amended from time to time.

Approved Draw Disbursement Procedures: The procedures consistent with Subsection 10.11 for the approval of Draw requests from a Mortgagor including compliance with the terms of the applicable Loan Agreement.

Asset Management Fee: As defined in the Asset Management Side Letter.

Asset Management Side Letter: That certain Asset Management Side Letter, dated as of the date of this Agreement, by and between the Company and the Purchaser.

Assignment and Conveyance: With respect to any Mortgage Loans purchased on a Closing Date, either (a) an assignment and conveyance of the Mortgage Loans purchased on such Closing Date substantially in the form annexed hereto as EXHIBIT 1

or (b) the electronic confirmation provided by the Company and the Purchaser on a loan management platform approved by the Purchaser and Company which confirmation shall constitute an electronic record of the Company and Purchaser that (i) confirms the sale by the Company and the purchase by the Purchaser of such Mortgage Loans on such Closing Date and

2

(ii) identifies each Mortgage Loan (together with the information set forth in the related Mortgage Loan Schedule).

Assignment of Mortgage:  An individual assignment of the Mortgage, notice of transfer or equivalent instrument in recordable form, sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to give record notice of the sale of the Mortgage to the assignee.

Business Day:  Any day other than a Saturday or Sunday, or a day on which banking and savings and loan institutions in any state in which the Purchaser or the Company is doing business are authorized or obligated by law or executive order to be closed.

Closing Date:  With respect to any Mortgage Loan, the "Closing Date" as set forth in the related Assignment and Conveyance.

Closing Documents:  With respect to any Closing Date, the documents required pursuant to Section 8.

Collateral File:  With respect to each Mortgage Loan, the following documents, as applicable:

(1)    The original Mortgage Note, or the original Mortgage Note with an allonge affixed thereto, endorsed, "Pay to the order of _____, without recourse" and signed in the name of the Company by an authorized officer of the Company;

(2)    The original recorded Mortgage, with evidence of recording thereon, or, if the original Mortgage has not yet been returned from the recording office, a copy of the original Mortgage along with:  (i) in the case of a delay caused by the public recording office, an officer's certificate of the Company stating that such Mortgage has been dispatched to the appropriate public recording office for recordation and that the original recorded Mortgage or a copy of such Mortgage certified by such public recording office to be a true and complete copy of the original recorded Mortgage will be promptly delivered to the Custodian upon receipt thereof by the Company; or (ii) in the case of a Mortgage where a public recording office retains the original recorded Mortgage or in the case where a Mortgage is lost after recordation in a public recording office, a copy of such Mortgage certified by such public recording office or by the title insurance company that issued the title policy to be a true and complete copy of the original recorded Mortgage;

(3)    The original Assignment of Mortgage to _____, signed in the name of the Company by an authorized officer of the Company;

(4)    The original Loan Agreement, if not included as part of the Mortgage Note or Mortgage;

(5)    The original or a photocopy, electronic copy or image of the mortgagee title insurance policy (or in the case of any such Mortgage Loan secured by a Mortgaged

3

Property located in a jurisdiction where such policies are generally not available, to the extent identified by the Company to the Purchaser, an opinion of counsel of the type customarily rendered in such jurisdiction in lieu of title insurance) or, if the policy has not yet been issued or is unavailable, a written commitment or interim binder issued by the title insurance company, certified to be true and complete by the title insurance company or escrow company; and

(6)     The original of each guarantee executed in connection with the Mortgage Note, if any.

**Commission:** The United States Securities and Exchange Commission.

**Company:** The Person identified as the "Company" in the preamble to this Agreement or its successor or permitted assign as herein provided.

**Company Indemnified Party:** The Company and their respective officers, employees, members, directors, agents, advisors and representatives.

**Company's Knowledge:** For purposes of the representations and warranties set forth in Subsection 6.01(a) and Subsection 6.02, shall mean, except where otherwise expressly set forth herein, the (a) actual state of knowledge of the executive officers of the Company directly responsible for the underwriting, origination, servicing or sale of the Mortgage Loans, or (b) if such executive officers have no actual state of knowledge, then the imputed state of knowledge, if such executive officers reasonably should have known of certain facts that would have alerted a reasonably prudent and diligent seller to have acquired such knowledge under similar circumstances.

**Condemnation Proceeds:** All awards, compensation and settlements in respect of a taking of all or part of a Mortgaged Property by exercise of the power of condemnation or the right of eminent domain.

**Custodial Account:** One or more accounts created and maintained pursuant to Subsection 10.05, each of which shall be an Eligible Account.

**Custodian:** As defined in Subsection 5.02.

**Cut-off Date:** With respect to each Mortgage Loan, the "Cut-off Date" as set forth in the related Assignment and Conveyance.

**DBRS:** DBRS, Inc. or any successor thereto.

**Default Interest:** With respect to each defaulted Mortgage Loan, the portion of each Monthly Payment with respect to such Mortgage Loan constituting additional default interest above the stated interest rate.

**Determination Date:** With respect to each Remittance Date, the last day of the calendar month prior to the month in which such Remittance Date occurs.

4

**Draw:** With respect to any Additional Funding Loan, a borrowing by the Mortgagor under the related Loan Agreement to be used in the rehabilitation of the related Mortgaged Property in accordance with the terms of such Loan Agreement.

**Draw Period:** With respect to each Additional Funding Loan, the period commencing after the date of origination of such Additional Funding Loan, during which the related Mortgagor is permitted to request Draws.

**Due Date:** With respect to each Mortgage Loan, the first day of each calendar month.

**Eligible Account:** Unless otherwise agreed to by Purchaser and the Company, any of (1) an account or accounts maintained with a federal or state chartered depository institution or trust company, the long-term unsecured debt obligations and short-term unsecured debt obligations of which (or, in the case of a depository institution or trust company that is the principal subsidiary of a holding company, the debt obligations of such holding company) are rated by each Rating Agency in one of its two highest long-term and its highest short-term rating categories, respectively, at the time any amounts are held on deposit therein; provided, that following such institution's failure to be so rated, each account shall promptly (and in any case within not more than 30 calendar days) be moved to one or more segregated trust accounts in the trust department of such institution, or to an account at another institution that complies with the above requirements, or (2) a trust account or accounts maintained with the corporate trust department of a federal or state chartered depository institution or trust company having capital and surplus of not less than $50,000,000, acting in its fiduciary capacity. Eligible Accounts may bear interest.

**Eligible Investment:** Any one or more of the obligations and securities listed below which investment provides for a date of maturity not later than the Remittance Date in each month:

> (1)    direct obligations of or obligations fully guaranteed by, (i) the United States of America, or (ii) any agency or instrumentality of the United States of America, the obligations of which are backed by the full faith and credit of the United States of America;

> (2)    federal funds, demand, money market, or time deposits in, certificates of deposits of, or banker's acceptances issued by any depository institution or trust company incorporated or organized under the laws of the United States of America or any state thereof, subject to supervision and examination by federal and/or state banking authorities, and, at the time of such investment or contractual commitment providing for such investment, whose commercial paper or other short-term debt obligations (or, in the case of a depository institution or trust company that is a subsidiary of a holding company, the commercial paper or other short-term debt obligations of such holding company) is rated by each Rating Agency in its highest short-term ratings categories and whose long-term debt obligations (or, in the case of a depository institution that is a subsidiary of a holding company, the long-term debt obligations of such holding company) are rated by each Rating Agency in one of its two highest long-term ratings categories; and

5

(3)     any money market funds the collateral of which consists of obligations fully guaranteed by the United States of America or any agency or instrumentality of the United States of America the obligations of which are backed by the full faith and credit of the United States of America (which may include repurchase obligations) and other securities and which money market funds are rated in one of the two highest rating categories by each Rating Agency for long-term unsecured debt or in the highest rating category with respect to short-term obligations.

Notwithstanding the foregoing, no instrument or security shall be an Eligible Investment if such instrument or security evidences a right to receive only interest payments with respect to the obligations underlying such instrument or if such security provides for payment of both principal and interest with a yield to maturity in excess of 120% of the yield to maturity at par or if such investment or security is purchased at a price greater than par.

Escrow Account:  One or more accounts created and maintained pursuant to Subsection 10.08, each of which shall be an Eligible Account.

Escrow Payments:  The amounts constituting ground rents, taxes, assessments, water rates, sewer rents, municipal charges, mortgage insurance premiums, fire and hazard insurance premiums, condominium charges, homeowner's association fees and any other payments required to be escrowed by the Mortgagor with the mortgagee pursuant to the terms of any Mortgage Note or Mortgage.

Event of Default:  Any one of the events enumerated in Subsection 12.01.

Extension Fees:  With respect to any Mortgage Loan, any fees associated with maturity date extensions of such Mortgage Loan made in accordance with Subsection 10.03 herein.

Fitch:  Fitch Ratings or any successor thereto.

FDIC:  The Federal Deposit Insurance Corporation or any successor thereto.

Financing Transaction:  Any transaction in which the Purchaser obtains financing from a third party that is secured by some or all of the Mortgage Loans and the Purchaser's rights with respect thereto.

Fixed-Rate Mortgage Loan:  A Mortgage Loan with respect to which the Mortgage Interest Rate set forth in the Mortgage Note is fixed for the term of such Mortgage Loan.

Insurance Proceeds:  With respect to each Mortgage Loan, proceeds of insurance policies insuring the Mortgage Loan or the related Mortgaged Property.

Interest Reserve:  With respect to each Mortgage Loan, the amount of funds held by the Company as of the related Closing Date for purposes of paying any interest payable by a Mortgagor under the related Mortgage Note on each Due Date.

Interest Reserve Account:  One or more accounts created and maintained by the Company pursuant to Subsection 10.24, which shall be an Eligible Account.

6

<u>Joinder Agreement</u>: A joinder agreement in the form of <u>Exhibit 6</u> hereto.

<u>Joining Purchaser</u>: Any person joined to this Agreement as a "Purchaser" pursuant to a Joinder Agreement.

<u>Joining Purchaser Trustee</u>: With respect to any Joining Purchaser that is a trust, the trustee identified in the applicable Joinder Agreement.

<u>Liquidation Proceeds</u>: Amounts, other than Insurance Proceeds and Condemnation Proceeds, received in connection with the liquidation of a defaulted Mortgage Loan or REO Property through trustee's sale, foreclosure sale, deed in lieu of foreclosure, REO Disposition or otherwise.

<u>Loan Agreement</u>: With respect to any Additional Funding Loan, the credit line account agreement executed by the related Mortgagor and any amendment or modification thereof.

<u>Master Servicer</u>: Any master servicer appointed by the Purchaser in connection with <u>Subsection 5.03</u> hereof.

<u>Maximum Loan Amount</u>: With respect to any Additional Funding Loan, the maximum Unpaid Principal Balance permitted under the terms of the related Loan Agreement.

<u>Monthly Payment</u>: With respect to any Mortgage Loan, the principal and/or interest payable by a Mortgagor under the related Mortgage Note on each Due Date, plus any Default Interest due under the related Mortgage Note as of such Due Date.

<u>Moody's</u>: Moody's Investors Service, Inc. or its successor in interest.

<u>Mortgage</u>: The mortgage, deed of trust or other instrument creating a first lien on Mortgaged Property securing the Mortgage Note.

<u>Mortgage File</u>: With respect to each Mortgage Loan, the Collateral File and the Servicing File, referred to collectively.

<u>Mortgage Interest Rate</u>: With respect to each Mortgage Loan and as of any date of determination, the annual rate of interest (which may be fixed or adjustable) provided for in the related Mortgage Note and set forth in the related Mortgage Loan Schedule.

<u>Mortgage Loan</u>: Each business or commercial purpose mortgage loan (including, without limitation, each Additional Funding Loan), sold, assigned and transferred to the Purchaser pursuant to this Agreement and the related Assignment and Conveyance and identified on the related Mortgage Loan Schedule, which Mortgage Loan includes, without limitation, the Mortgage File, the Monthly Payments, Principal Prepayments, Liquidation Proceeds, Condemnation Proceeds, Insurance Proceeds, Ancillary Fees, Extension Fees, Default Interest, REO Disposition proceeds, and all other rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan (including the Servicing Rights).

7

Mortgage Loan Package: A group of Mortgage Loans delivered or to be delivered by Company to Purchaser on a Closing Date.

Mortgage Loan Schedule: With respect to the Mortgage Loans sold on each Closing Date, the schedule containing the information in Exhibit 5 annexed as Schedule 1 to the related Assignment and Conveyance delivered on such Closing Date in such format as the parties hereto may agree.

Mortgage Note: The original executed note or other evidence of the Mortgage Loan indebtedness of a Mortgagor.

Mortgaged Property: The real property securing the Mortgage Loan, as more fully set forth in the Underwriting Standards, none of which is a cooperative or a mobile or manufactured home.

Mortgagor: The obligor on a Mortgage Note.

OFAC Regulations: As defined in Subsection 6.02(w).

Person: An individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

Prepayment Charge: With respect to any Mortgage Loan, the premiums, fees, or charges, if any, due in connection with a full or partial Principal Prepayment of such Mortgage Loan pursuant to the terms of the related Mortgage Note.

Prepayment Period: Except as otherwise agreed in writing by the Company and the Purchaser, the calendar month preceding the month in which the related Remittance Date occurs.

Prime Rate: The prime rate announced to be in effect from time to time, as published as the average rate in *The Wall Street Journal*.

Principal Prepayment: Any full or partial payment or other recovery of principal on a Mortgage Loan which is received in advance of its scheduled Due Date, which is not accompanied by an amount of interest representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment.

Priority of Payments: As defined in Subsection 10.07.

Purchase Price: The price paid on a Closing Date by the Purchaser to the Company in exchange for the Mortgage Loans purchased on such Closing Date as calculated as provided in Section 3.

Purchase Price Percentage: With respect to each Mortgage Loan, the percentage of par as stated in the related Assignment and Conveyance.

10964740\W-5

Purchaser:  The Person identified as the "Purchaser" in the preamble to this Agreement and any "Joining Purchaser" or any of their respective successors or permitted assigns as herein provided.

Purchaser Indemnified Party:  The Purchasers (including Persons that previously were Purchasers under this Agreement), and any Trustee, any Administrator, and their respective officers, employees, members, directors, agents, advisors and representatives.

Purchaser Trust Agreement:  The Amended and Restated Trust Agreement, dated as of August 22, 2018, by and among, Invictus Residential Pooler II, L.P., as grantor, Verus Residential Loanco, LLC, as administrator, and Wilmington Savings Fund Society, FSB, as trustee.

Purchaser Trustee:  Wilmington Savings Fund Society, FSB, not in its individual capacity but solely in its capacity as trustee under the Purchaser Trust Agreement, together with its permitted successors and assigns.

Qualified Insurer:  An insurance company duly qualified as such under the laws of the states in which the Mortgaged Property is located, duly authorized and licensed in such states to transact the applicable insurance business and to write the insurance provided.

Rating Agencies:  S&P, Moody's, Fitch and DBRS.

Refinanced Mortgage Loan:  A Mortgage Loan the proceeds of which were not used to purchase the related Mortgaged Property.

Regulation AB:  Subpart 229.1100 – Asset Backed Securities (Regulation AB), 17 C.F.R. §§ 229.1100-229.1123, as such may be amended from time to time, including amendments contained in Release Nos. 33-9117 and 34-61858 upon effectiveness, and subject to such clarification and interpretation as have been provided by the Commission in the adopting release (Asset-Backed Securities, Securities Act Release No. 33-8518, 70 Fed. Reg. 1,506, 1,531 (Jan. 7, 2005)) and Asset-Backed Securities Disclosure and Registration, Securities Act Release No. 33-9638, 79 Fed. Reg. 57,184 (Sept. 24, 2014)) or by the staff of the Commission, or as may be provided by the Commission or its staff from time to time.

Rehabilitation Holdback Account:  One or more accounts maintained in accordance with Subsection 10.10, each of which shall be an Eligible Account.

Rehabilitation Holdback Amounts:  With respect to each Mortgage Loan, if applicable, amounts withheld by the Company from the proceeds of such Mortgage Loan which are to be used in the rehabilitation of the related Mortgaged Property in accordance with the terms of the related Mortgage Loan documents.

Remittance Date:  The tenth (10th) day of each month, commencing on the tenth (10th) day of the month next following the month in which the related Cut-off Date occurs, or if such tenth (10th) day is not a Business Day, the first Business Day immediately succeeding such tenth (10th) day.

9

REO Disposition:  The final sale by the Company of any REO Property in accordance with 0.

REO Property:  A Mortgaged Property acquired by the Company on behalf of the Purchaser as described in 0.

Repurchase Price:  With respect to any Mortgage Loan, a price equal to, without duplication, (a) the Purchase Price, plus (b) interest on the Purchase Price at the Mortgage Interest Rate from and including the last paid-through date to but not including the date of repurchase, plus (c) all unreimbursed Servicing Advances incurred by the Purchaser or its servicer following the Closing Date, plus (d) reasonable out-of-pocket costs and expenses incurred by the Purchaser to effectuate the repurchase of such Mortgage Loan, plus (e) any and all damages and reasonable fees, costs and expenses (including reasonable attorney fees) incurred with respect to such Mortgage Loan by the Purchaser resulting from any violation of any Applicable Law by the Company, including but not limited to, applicable predatory or abusive-lending law, minus (f) any amounts received or advanced in respect of such repurchased Mortgage Loan that are being held in the Custodial Account for distribution in the month of repurchase.

S&P:  Standard & Poor's Rating Services, a Standard & Poor's Financial Services LLC business or its successor in interest.

Securitization Transaction:  Any transaction involving either (a) a sale or other transfer of some or all of the Mortgage Loans directly or indirectly to an issuing entity, in connection with an issuance of publicly offered or privately placed, rated or unrated mortgage-backed securities, or trustee or custodian in connection with the issuance of participation certificates or (b) an issuance of publicly offered or privately placed, rated or unrated securities by an entity other than the Purchaser, the payments on which are determined primarily by reference to one or more portfolios of mortgage loans consisting, in whole or in part, of some or all of the Mortgage Loans, or such other similar transaction or structure.

Servicing Advances:  All ordinary and reasonable "out-of-pocket" costs and expenses incurred by the Company relating to the servicing, administration, management, maintenance, property protection, disposition, operation, liquidation, sale, enforcement proceedings or foreclosure of the related Mortgage Loan or REO Property, including, but not limited to, the cost of (i) preservation, restoration and repair of a Mortgaged Property, (ii) any enforcement or judicial proceedings with respect to a Mortgage Loan, including foreclosure actions, (iii) the management and liquidation of REO Property, (iv) taxes, assessments, water rates, sewer rents and other charges which are or may become a lien upon the Mortgaged Property, and fire and hazard insurance coverage, as required pursuant to Subsection 10.12 and (v) legal counsel (including court filing fees), arbitrators, appraisers (including broker price opinions), real estate brokers, environmental consultants, environmental assessments or inspections, environmental remediation, insurance, property managers, tax services, receivers, state and federal regulatory agencies incident to their audits or inquiries, tax searches, title, structural reviews, surveys, property inspections, arbitration filing fees, and mortgage filings, releases and recordings.

10964740-NV-5

Servicing Fee:  With respect to each Mortgage Loan and REO Property, the fees and other amounts the Purchaser shall pay to the Company as provided in Exhibit 2 and elsewhere in this Agreement.

Servicing Fee Percentage:  The Servicing Fee Percentage as set forth on Exhibit 2.

Servicing File:  Any and all electronic or paper documents or information customarily retained in a servicing or origination file, including, but not limited to, those documents listed on Exhibit 4 to this Agreement pertaining to any Mortgage Loan.

Servicing Rights:  Any and all of the following:  (i) any and all rights to service and administer the Mortgage Loans and REO Properties subject to this Agreement; (ii) all agreements or documents creating, defining or evidencing any such servicing rights to the extent they relate to such servicing rights and all rights of the Company thereunder; and (iii) copies of all documents, files, records, data, or other information relating to the Mortgage Loans and REO Properties or relating to the past, present or future servicing and administration of the Mortgage Loans and REO Properties; provided, however that Company shall, for so long as it is servicer hereunder, be entitled to the Servicing Fee as set forth in Section 10.18 herein.

Servicing Transfer Date:  With respect to each sale and purchase of Mortgage Loans as contemplated hereunder, and in the event the Purchaser shall also instruct Company to transfer the servicing of any Mortgage Loan as permitted under this Agreement, the servicing transfer date as set forth in the related Assignment and Conveyance, or such other date as the Purchaser and the Company may mutually agree.

Static Pool Information:  Static pool information as described in Item 1105(a)(1)-(3) and 1105(c) of Regulation AB.

Trustees:  The Purchaser Trustee and each Joining Purchaser Trustee.

Underwriting Standards:  With respect to any Mortgage Loan, the written underwriting and sales guidelines identified in the related Mortgage Loan Schedule, Assignment and Conveyance or such other mutually agreed upon transaction document or confirmation, which shall have been in effect as of the origination date of such Mortgage Loan and delivered by (or on behalf of) the Company to the Purchaser.

Unpaid Principal Balance:  As to each Mortgage Loan (other than an Additional Funding Loan) as of any date of determination, the principal balance of the Mortgage Loan as of the related Cut-off Date.  As to each Additional Funding Loan, (i) the principal balance of such Additional Funding Loan at the related Cut-off Date, plus (ii) any Additional Balances in respect of such Additional Funding Loan incurred on or prior to the related Cut-off Date, plus (iii) any related Additional Balances incurred after the related Cut-off Date.

Whole Loan Transfer:  The sale or transfer by the Purchaser of some or all of the Mortgage Loans in a whole loan format pursuant to a separate agreement.

11

### Section 2. Purchase Agreement

The Company agrees to sell, and the Purchaser agrees to purchase, from time to time, on the related Closing Date, those certain Mortgage Loans identified in the related Mortgage Loan Schedule in accordance with the Underwriting Standards, on a servicing released basis, having an aggregate Unpaid Principal Balance on the related Cut-off Date in an amount as set forth in the related Assignment and Conveyance plus all Additional Balances or such other amount as agreed to by the Purchaser and the Company on the related Closing Date; provided that, the Purchaser shall fund the Draws following the Cut-off Date to the extent the Draw requests are in compliance with the Approved Draw Disbursement Procedures. Such conveyance shall be deemed to be made with respect to each Additional Funding Loan: (1) with respect to the Cut-off Date Unpaid Principal Balances, as of the applicable Closing Date; and (2) with respect to the amount of each Additional Balance created after the related Cut-off Date.

### Section 3. Purchase Price.

The Purchase Price for each Mortgage Loan listed on the Mortgage Loan Schedule shall be the Purchase Price Percentage multiplied by the Unpaid Principal Balance of such Mortgage Loan as of the related Cut-off Date. In addition to the Purchase Price as described above, the Purchaser shall pay to the Company, at closing, accrued interest at the Mortgage Interest Rate on the Unpaid Principal Balance of each Mortgage Loan as of the related Cut-off Date from the last paid-through date through the day prior to the related Closing Date, both inclusive.

The Purchaser shall own and be entitled to receive with respect to each Mortgage Loan purchased, (i) all principal payments received after the related Cut-off Date (including, without limitation, related to any Additional Balances), (ii) all other recoveries of principal collected after the related Cut-off Date, (iii) all payments of interest collected on the Mortgage Loans after the related Cut-off Date, (iv) all Prepayment Charges that Purchaser is entitled to as set forth on the related Mortgage Loan Schedule and (v) all right, title and interest in any related Rehabilitation Holdback Amounts as of the related Cut-off Date.

### Section 4. Examination of Mortgage Files.

(a)     In addition to any rights granted to the Purchaser hereunder to review the Mortgage Loan Documents prior to the Closing Date, the Purchaser shall be entitled to conduct a due diligence review of the Mortgage Files. Such review by the Purchaser or its designee shall not impair or diminish the rights of the Purchaser or any of its successors under this Agreement with respect to a breach of the representations and warranties contained in this Agreement. The fact that the Purchaser or its designee has conducted or has failed to conduct any partial or complete examination of the Mortgage Files shall not affect the Purchaser's or any of its successors' rights to demand repurchase or other relief or remedy provided for in this Agreement. Any review by the Purchaser or its designee of the Mortgage File shall in no way alter or reduce the Company's obligations hereunder.

(b)     The Company shall, within a reasonable period of time prior to the initial Closing Date, provide the Purchaser with the Underwriting Standards applicable to the Mortgage Loans to be sold under this Agreement. From time to time during the term of this Agreement,

12

the Underwriting Standards may be amended by Company upon thirty (30) days' prior written notice to, and approval in writing of, Purchaser; provided, however, such approval shall not obligate Purchaser to purchase any Mortgage Loan underwritten pursuant to such amended Underwriting Standards. Such amended Underwriting Standards shall be deemed to have been approved by Purchaser in writing unless objected to within ten (10) days after delivery of such amended Underwriting Standards. The relevant Underwriting Standards that were used to underwrite each Mortgage Loan shall be identified on the related Mortgage Loan Schedule.

**Section 5.** Conveyance from Company to Purchaser.

Subsection 5.01. Conveyance of Mortgage Loans.

The Company, simultaneously with the payment of the Purchase Price by the Purchaser, does hereby sell, transfer, assign, set over and convey to the Purchaser without recourse, but subject to the terms of this Agreement, all right, title and interest of the Company in and to the Mortgage Loans listed on the related Mortgage Loan Schedule, together with the related Collateral Files and all rights and obligations arising under the documents contained therein (including the right to any Prepayment Charges payable with respect thereto), including the Servicing Rights associated therewith.

Following the related Closing Date, ownership of the related Mortgage Loans and the related Collateral Files shall be vested solely in the Purchaser. All rights arising out of the Mortgage Loans, inclusive of the Servicing Rights, including, but not limited to, all funds received by the Company after the related Cut-off Date on or in connection with a Mortgage Loan as provided in Section 3 shall be vested in the Purchaser; provided, however, that any funds received on or in connection with a Mortgage Loan that belongs to the Purchaser as provided in Section 3 shall be received and held by the Company as custodian for the benefit of the Purchaser as the owner of the Mortgage Loans pursuant to the terms of this Agreement.

Subsection 5.02. Collateral and Servicing Files.

The Company shall be responsible for maintaining a Servicing File for each Mortgage Loan. The Servicing Files shall appropriately reflect the sale of the related Mortgage Loan to the Purchaser and the ownership thereof by the Purchaser.

Wells Fargo Bank, N.A. or any other Person selected by the Purchaser from time to time shall be the custodian of the Collateral Files ("Custodian"). For each Mortgage Loan, the Company shall deliver the contents of the Collateral File in the Company's possession to the Custodian at least two (2) Business Days prior to the related Closing Date (or such other time period agreed to by the Company and the Purchaser). The Company shall deliver to the Custodian any remaining Collateral File documents that it receives after the Collateral File has been delivered to the Custodian within seven (7) days of the Company's receipt of such documents. Until any Collateral File documents are delivered to the Custodian, the Company shall hold such documents in trust on behalf of the Purchaser.

The Company shall be responsible for all costs and expenses relating to the delivery of the Collateral File to the Custodian described in the immediately preceding paragraph, and the Purchaser shall be responsible for all other costs and expenses relating to the Custodian.

13

Subsection 5.03. Cooperation of Company with a Reconstitution.

The Company and the Purchaser agree that, with respect to some or all of the Mortgage Loans, on one or more dates (each a "Reconstitution Date") at the Purchaser's sole option, the Purchaser may effect a sale or financing (each, a "Reconstitution") of some or all of the Mortgage Loans then subject to this Agreement, without recourse, to:

      (i)    one or more third party purchasers in one or more Whole Loan Transfers (for up to three (3) Whole Loan Transfers with respect to any Mortgage Loan Package purchased on any given Closing Date; provided that this limitation shall not apply to Whole Loan Transfers involving affiliates of the Purchaser); or



      (ii)    one or more trusts or other entities to be formed as part of one or more Securitization Transactions; or

      (iii)    one or more lenders in one or more Financing Transactions.

On such date, the Mortgage Loans transferred (and not assigned under this Agreement) shall, unless otherwise mutually agreed upon by the Purchaser and the Company, cease to be covered by this Agreement as a Mortgage Loan and the Company shall cease to service such Mortgage Loans under this Agreement. With respect to each Reconstitution, the Company agrees to deliver to the Purchaser and the Master Servicer appointed in respect of such Reconstitution, on or prior to the date which is ten (10) Business Days prior to the related Reconstitution Date, or such other number of days prior to the related Reconstitution Date as may be mutually agreed by the Purchaser and the Company, all information reasonably requested by Purchaser and in the possession or control of the Company with respect to each Mortgage Loan included in such Reconstitution, including (but not limited to) a Mortgage Loan Schedule with respect to each Mortgage Loan included in such Reconstitution. The Company agrees to execute (i) in connection with a Whole Loan Transfer, an assignment, assumption and recognition agreement, a seller's warranties and servicing agreement or a participation and servicing agreement, (ii) in connection with a Securitization Transaction, a pooling and servicing agreement or reconstitution agreement, and (iii) in connection with a Financing Transaction, a letter agreement in a form to be mutually agreed to by the Company, Purchaser and Purchaser's lender, and if applicable, an account control agreement with respect to the Custodial Account and Rehabilitation Holdback Account, each in form and substance acceptable to the Purchaser, the Company and all other necessary parties (collectively the agreements referred to herein are designated, the "Reconstitution Agreements"). The Company agrees that, in connection with any Reconstitution, it will execute and provide to Purchaser or its designees such representations, warranties, documentation and other agreements as is required under this Agreement or by the applicable Rating Agency.

In connection with each Securitization Transaction, the Company agrees to (1) enter into and deliver certain additional documents, instruments or agreements, including, but not limited to, negative assurance letters, assignment, assumption and recognition agreements, and enforceability opinions, as may be reasonable and necessary to effect one or more Securitization Transactions, (2) cooperate with parties to the Securitization Transaction to provide information, certifications, accountant's reports or other related documents in order to facilitate compliance

109647404\V-5

by such parties with the provisions of Regulation AB, as such may be revised, supplemented or amended from time to time, and related rules and regulations of the Commission, and (3) following the Reconstitution Date, the appointment of an "independent reviewer" that will have access to the Mortgage Files to determine if a breach of a representation or warranty of a Mortgage Loan exists and submit to arbitration to resolve any dispute arising out of or relating in any way to the Company's failure to repurchase a Mortgage Loan following either discovery by or notice to the Company of any breach of a representation or warranty which materially and adversely affects the value of a Mortgage Loan or the Mortgage Loans or the interest of the Purchaser or the issuing entity of the related Securitization Transaction.

In the case of mandatory arbitration described in part (3) of the immediately preceding paragraph, if it is determined that the Company has an obligation to repurchase the Mortgage Loan subject to the arbitration, the Company shall pay the reasonable legal fees incurred by the Purchaser or the trust for the Securitization Transaction in such arbitration, and if it is determined that the Company has no obligation to repurchase the Mortgage Loan subject to the arbitration, the Purchaser or, if a Securitization Transaction, the trust for the Securitization Transaction shall pay the reasonable legal fees incurred by the Company in such arbitration.

With respect to each Whole Loan Transfer, Financing Transaction and each Securitization Transaction entered into by the Purchaser, the Company agrees (1) to cooperate with the Purchaser and the Master Servicer and any prospective purchaser and any Rating Agency with respect to all reasonable requests and due diligence procedures, which may include any required originator review by a Rating Agency (which may involve an on-site visit by a Rating Agency or its designee and/or furnishing written responses and requested information to a Rating Agency questionnaire) and diligence on the related Mortgagors under the Mortgage Loans being transferred, including, but not limited to, third-party fraud review; (2) to execute, deliver and perform all reasonable Reconstitution Agreements required by the Purchaser or required by any Rating Agency; (3) to restate the representations and warranties set forth in Subsection 6.02 of this Agreement as of the related Closing Date for such Mortgage Loans; and (4) to promptly deliver to Purchaser and any prospective purchaser or Rating Agency within three (3) Business Days after reasonable request by the Purchaser therefore, information, in form and substance satisfactory to the entity making such request, about the Mortgage Loans, the Underwriting Standards and servicing procedures, about the Company, of the Mortgage Loans or any other information reasonably requested by the Purchaser or required by the Rating Agency. The Company shall use commercially reasonable efforts to provide to such Master Servicer or issuer, as the case may be, and any other participants or Purchasers in such Reconstitution (including the sponsor of such Reconstitution): (i) any and all information and appropriate verification of information which may be reasonably available to the Company or its affiliates, whether through letters of its auditors and counsel or otherwise, as the Purchaser, the Master Servicer or any such other participant shall reasonably request related to the Reconstitution; (ii) such additional reasonable representations, warranties, covenants, opinions of counsel, letters from auditors, and certificates of public officials or officers of the Company as are customarily provided by the Company; and (iii) to execute, deliver and satisfy all conditions set forth in any reasonable indemnity agreement requested by the Purchaser, the Master Servicer or any such participant. Moreover, the Company agrees to cooperate with all reasonable requests made by the Purchaser or the Master Servicer to effect such Reconstitution Agreements. The Company shall be given the opportunity to review and reasonably negotiate in good faith the content of the

15

Reconstitution Agreements that relate to or impact the Company. The Company shall indemnify each Purchaser Indemnified Party, the Master Servicer, and each affiliate designated by the Purchaser or the Master Servicer and each Person who controls the Purchaser, the Master Servicer or such affiliate, and each of their respective and officers, employees, members, directors and representatives and hold each of them harmless from and against any Losses that each of them may sustain in any way related to (i) either (A) any untrue statement of a material fact contained or alleged to be contained in any information provided by or on behalf of the Company regarding the Company, the Company's, or other originator's Static Pool Information, the Company's servicing practices or performance, the Company's representations with respect to the Mortgage Loans or the Underwriting Standards set forth in any offering document prepared in connection with any Reconstitution and provided by the Company specifically for inclusion in such offering document (collectively, the "Company Information"), (B) the omission or alleged omission to state in any Company Information a material fact required to be stated in such Company Information or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading. For purposes of the previous sentence, "Purchaser" shall mean the Person then acting as the Purchaser under this Agreement and any and all Persons who previously were "Purchasers" under this Agreement. The Company may condition the provision of any information pursuant to this Subsection 5.03 on the Purchaser entering into a confidentiality agreement in form and substance reasonably acceptable to the Company.

All Mortgage Loans not sold or transferred pursuant to a Reconstitution shall remain subject to this Agreement and with respect thereto this Agreement shall remain in full force and effect, including without limitation Company's repurchase rights under Subsection 6.03. Anything to the contrary herein notwithstanding, Company shall not be required to undertake any action or make any representation or warranty in connection with a Reconstitution that would create an undue burden or hardship to Company as a result of such action or obligation and Purchaser shall reimburse or cause parties to the Reconstitution to reimburse the reasonable costs of Company in complying with this Subsection 5.03 (other than its indemnification obligations hereunder). With respect to the Company's indemnification obligations hereunder, the Company shall have the right to control the defense with counsel of its choosing, subject to the consent of the indemnified party, such consent not to be unreasonably withheld, conditioned or delayed. The indemnified party shall cooperate with the Company and provide the Company all such information relating to the claim for which indemnification is sought as the Company may request.

Anything to the contrary herein notwithstanding, Purchaser shall reimburse the Company upon request for all reasonable costs and expenses incurred by the Company in connection with any Reconstitution, including without limitation reasonable attorneys' fees and costs.

<u>**Section 6.**</u> Representations and Warranties; Remedies for Breach.

Subsection 6.01. <u>Representations, Warranties Respecting the Company and the Purchaser.</u>

        (a)    The Company represents and warrants to the Purchaser as of the date of this Agreement and each Closing Date:

(i)    The Company is duly organized, validly existing and in good standing under the laws of the jurisdiction in which it is organized. The Company has all licenses necessary to carry on its business as now being conducted to the extent necessary to ensure the enforceability of each Mortgage Loan and to perform its duties as asset manager under the Asset Management Side Letter and no such licenses have been revoked or suspended. The Company has the power and authority to execute and deliver this Agreement and perform its obligations under this Agreement.

(ii)    The Company has duly authorized the execution, delivery and performance of this Agreement, has duly executed and delivered this Agreement, and this Agreement, assuming due authorization, execution and delivery by the Purchaser, constitutes a legal, valid and binding obligation of the Company, enforceable against it in accordance with its terms except as the enforceability thereof may be limited by receivership, bankruptcy, insolvency or reorganization or principals of public policy. The Company has taken all requisite action to make this Agreement valid and binding upon it in accordance with the terms of this Agreement.

(iii)    The execution and delivery of this Agreement by the Company and the performance of and compliance with the terms of this Agreement will not violate the Company's organizational or other governance document or constitute a default under or result in a breach or acceleration of, any material contract, agreement or other instrument to which the Company is a party or which may be applicable to the Company or its assets, except as may have been waived by the counterparty thereto.

(iv)    The Company is not in violation of, and the execution and delivery of this Agreement by the Company and its performance and compliance with the terms of this Agreement will not constitute a violation with respect to, any order or decree of any court or any order of any federal, state, municipal or governmental agency having jurisdiction over the Company or its assets, which violation would likely have consequences that would materially and adversely affect the condition (financial or otherwise) or the operation of the Company or its assets or would likely have consequences that would materially and adversely affect the performance of its obligations and duties hereunder.

(v)    There are no actions, suits or proceedings or investigations pending, or to Company's Knowledge, threatened, against the Company before any court, administrative agency or other tribunal that, if determined adversely to the Company, would likely materially and adversely affect the sale of the Mortgage Loans to the Purchaser, the ability of the Company to service the Mortgage Loans hereunder in accordance with the terms hereof, or the Company's ability to perform its obligations under this Agreement.

(vi)    The Company is not in material default under any agreement, contract, instrument or indenture to which the Company is a party or by which it

17

(or any of its assets) is bound, which default would have a material adverse effect on the ability of the Company to perform under this Agreement, nor has any event occurred which, with the giving of notice, the lapse of time or both, would constitute a default under any such agreement, contract, instrument or indenture and have a material adverse effect on the ability of the Company to perform its obligations under this Agreement.

(vii)    The consummation of the transactions contemplated by this Agreement are in the ordinary course of business of the Company, and the transfer, assignment and conveyance of the Mortgage Notes and the Mortgages by the Company pursuant to this Agreement are not subject to the bulk transfer or any similar statutory provisions.

(viii)   The Company is solvent and the sale of the Mortgage Loans will not cause it to become insolvent.

(ix)    The Servicing Fees payable to the Company hereunder constitutes fair compensation for the servicing of the Mortgage Loans hereunder.

(x)     The Company intends to account for the disposition of the Mortgage Loans pursuant to this Agreement as sales for accounting purposes.

(b)     The Purchaser represents and warrants to the Company as of the date of this Agreement and each related Closing Date that:

(i)     The Purchaser is duly organized, validly existing and in good standing under the laws of the jurisdiction in which it is organized and has all licenses necessary to carry on its business as now being conducted and is qualified, licensed and in good standing in each state where it is required to be so licensed or qualified in order to conduct its business;

(ii)    The Purchaser has the full power and authority to purchase each Mortgage Loan, and to execute, deliver and perform, and to enter into and consummate, all transactions contemplated by this Agreement. The Purchaser has duly authorized the execution, delivery and performance of this Agreement, has duly executed and delivered this Agreement, and this Agreement, assuming due authorization, execution and delivery by the Purchaser, constitutes a legal, valid and binding obligation of the Purchaser, enforceable against it in accordance with its terms except as the enforceability thereof may be limited by receivership, bankruptcy, insolvency or reorganization or principles of equity or public policy;

(iii)   The execution and delivery of this Agreement by the Purchaser and the performance of and compliance with the terms of this Agreement will not violate the Purchaser's organizational or other governance document or constitute a default under or result in a breach or acceleration of, any material contract, agreement or other instrument to which the Purchaser is a party or which may be applicable to the Purchaser or its assets, except as may have been waived by the counterparty thereto;

18

(iv)     The Purchaser is not in violation of, and the execution and delivery of this Agreement by the Purchaser and its performance and compliance with the terms of this Agreement will not constitute a violation with respect to, any order or decree of any court or any order or regulation of any Governmental Authority having jurisdiction over the Purchaser or its assets, which violation would likely have consequences that would materially and adversely affect the condition (financial or otherwise) or the operation of the Purchaser or its assets or would likely have consequences that would materially and adversely affect the performance of its obligations and duties hereunder;

(v)     There are no actions, suits or proceedings pending, or to its knowledge, threatened, against the Purchaser before any court, administrative agency or other tribunal that, if determined adversely to the Purchaser, would likely materially and adversely affect the purchase of the Mortgage Loans from the Seller or the Purchaser's ability to perform its obligations under this Agreement;

(vi)     No consent, approval, authorization or order of any court or Governmental Authority is required for the execution, delivery and performance by the Purchaser of, or compliance by the Purchaser with, this Agreement or the consummation of the transactions contemplated by this Agreement, except for such consents, approvals, authorizations or orders, if any, that have been obtained prior to the Closing Date; and

(vii)     PURCHASER ACKNOWLEDGES AND AGREES THAT (I) PURCHASER (A) POSSESSES BUSINESS EXPERIENCE AND INDUSTRY KNOWLEDGE SUFFICIENT TO MAKE AN INFORMED INVESTMENT DECISION TO PURCHASE THE MORTGAGE LOANS, (B) RECEIVED FROM COMPANY ALL DOCUMENTS AND INFORMATION DEEMED NECESSARY AND APPROPRIATE BY PURCHASER TO MAKE AN INFORMED INVESTMENT DECISION TO PURCHASE THE MORTGAGE LOANS, (C) CONDUCTED ALL ANALYSES, INQUIRIES, INSPECTIONS, INVESTIGATIONS, AND REVIEWS DEEMED NECESSARY AND APPROPRIATE BY PURCHASER TO MAKE AN INFORMED INVESTMENT DECISION TO PURCHASE THE MORTGAGE LOANS, AND (D) DECIDED TO PURCHASE THE MORTGAGE LOANS WITHOUT RELIANCE UPON ANY ORAL OR WRITTEN REPRESENTATION, WARRANTY, OR OTHER STATEMENT (EXCEPT THOSE EXPRESSLY MADE BY COMPANY IN SUBSECTIONS 6.01(a) and 6.02 AND (II) THE COMPANY HAS NOT MADE AND HEREBY DISCLAIM ALL EXPRESS AND IMPLIED REPRESENTATIONS AND WARRANTIES (EXCEPT THOSE EXPRESSLY MADE BY THE COMPANY IN SUBSECTIONS 6.01(a) and 6.02 OF EVERY KIND AND TYPE DIRECTLY OR INDIRECTLY RELATING TO ANY MORTGAGE LOAN, ANY LOAN DOCUMENT, ANY MORTGAGED PROPERTY, ANY MORTGAGOR, OR THE COMPANY.

19

Subsection 6.02. <u>Representations and Warranties Regarding Individual Mortgage Loans</u>.

The Company hereby represents and warrants to the Purchaser that, as to each Mortgage Loan, as of the related Closing Date for such Mortgage Loan, or such other date expressly provided below:

(a) <u>Type of Loan</u>. (i) The Mortgage Loan is primarily for business or commercial purposes (as referenced in the Truth and Lending Act and its implementing regulation, Regulation Z) and not primarily for personal, family or household purposes and (ii) the Mortgaged Property securing the related Mortgage is non-owner occupied. The Mortgage Loan is not subject to the Truth in Lending Act and its implementing Regulation, Regulation Z, and the Real Estate Settlement Procedures Act and its implementing regulation, Regulation X. The Mortgagor has executed a business purpose affidavit stating that the Mortgage Loan is for commercial or business purposes only and that the Mortgagor is not and will not occupy or claim the property as a primary or secondary residence.

(b) <u>Property Valuation</u>. The Mortgage File contains an internal analysis of the value of the related Mortgaged Property completed in accordance with the Underwriting Standards by the Company, a third party appraisal, comparative market analysis or broker price opinion.

(c) <u>Source of Loan Payments</u>. Except for a Mortgage Loan with an Interest Reserve Account established upon origination to make Monthly Payments and as identified on the Mortgage Loan Schedule, no portion of the Mortgage Loan proceeds has been escrowed for the purpose of making Monthly Payments on behalf of the Mortgagor and no payments due and payable under the terms of the Mortgage Note and Mortgage, except for seller or builder concessions, have been paid by any person (other than the Mortgagor and any guarantor) who was involved in, or benefited from, the sale or purchase of the Mortgaged Property or the origination, refinancing, sale, purchase or servicing of the Mortgage Loan.

(d) <u>Data</u>. The information set forth in the related Mortgage Loan Schedule delivered to the Purchaser on the Closing Date is complete, true and correct in all material respects.

(e) <u>Underwriting</u>. Each Mortgage Loan was (i) underwritten in accordance with the Underwriting Standards in effect at the time of origination as set forth on the related Mortgage Loan Schedule or (ii) underwritten with exceptions to the applicable Underwriting Standards that are reasonable and documented compensating factors.

(f) <u>Compliance with Applicable Law</u>. All requirements of Applicable Law applicable to the solicitation, origination, servicing and collection of the Mortgage Loan have been complied with.

(g) <u>Ownership</u>. Immediately upon the payment of the Purchase Price by the Purchaser to the Company and the execution and delivery of the Assignment and Conveyance, the Purchaser will be the sole owner and holder of the Mortgage Loan and the related Mortgage Note and the Mortgage are not assigned or pledged, and the Purchaser will have good, indefeasible and marketable title thereto, free and clear of any liens, claims, encumbrances,

20

participation interests, equities, pledges, charges, or security interests of any nature, other than those created by the Purchaser, the related Mortgage and those for materialmen's or mechanic's liens for amounts not yet due, current real property taxes and assessments not yet due and payable, and has full right and authority to transfer, assign and sell the Mortgage Loan to the Purchaser.

(h)    Enforceability and Validity of Lien.    Upon recording, the Mortgage is a valid, subsisting, enforceable and perfected first lien on the Mortgaged Property, including all buildings, improvements, additions, alterations and replacements made at any time with respect to the Mortgaged Property.  The lien of the recorded Mortgage is subject only to:  (i) the lien of current real property taxes and assessments not yet due and payable; (ii) covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording acceptable to mortgage lending institutions generally which do not materially and adversely affect the value of the Mortgaged Property; and  (iii) other matters which do not individually or in the aggregate, materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property.  The Mortgage has been recorded or is in the process of being recorded in the appropriate jurisdiction wherein such recordation is required to perfect the lien.  The Mortgage Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage.

(i)    Collateral File and Servicing File.    The Collateral File and Servicing File for the related Mortgage Loan is complete in all material respects, except as noted in the Mortgage Loan Schedule.

(j)    No Prior Modifications, Satisfaction, Cancellation or Rescission.    The terms of the Mortgage Note and Mortgage have not been impaired, waived, altered or modified in any respect.  No Mortgagor has been released, in whole or in part, from the terms of the Mortgage Note and the Mortgage.  The Mortgage has not been satisfied, canceled, subordinated or rescinded, in whole or in part, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would affect any satisfaction, release, cancellation, subordination or rescission.  The Company has not waived the performance by the Mortgagor of any action, if the Mortgagor's failure to perform such action would cause the Mortgage Loan to be in default, nor has the Company waived any default resulting from any action or inaction by the Mortgagor.

(k)    Payments Current.    All payments due on a Mortgage Loan on or prior to the related Closing Date have been made as of the related Closing Date or such Mortgage Loan is not delinquent in payment by thirty (30) or more days and no payment with respect to such Mortgage Loan has been thirty (30) days or more delinquent since the origination of such Mortgage Loan.

(l)    Validity of Mortgage Loan Documents.    The Mortgage Note and the Mortgage are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms, subject to receivership, bankruptcy, insolvency, moratorium and other principles of equity affecting the rights of creditors generally and principles of public policy, whether considered in a proceeding at law or in equity.  All parties to

21

the Mortgage Note and the Mortgage had legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note and the Mortgage, and the Mortgage Note and the Mortgage have been duly and properly executed by such parties.

(m)  Title Insurance. Except as otherwise permitted in certain jurisdictions as set forth in the definition of Collateral File, a first-lien Mortgage Loan is covered by an American Land Title Association ("ALTA") lender's title insurance policy, issued by a Qualified Insurer, insuring the Company, its successors and assigns, as to the first priority lien of the Mortgage in the original principal amount of the Mortgage Loan, subject only to the exceptions contained in clauses (i), (ii), and (iii) of clause (h) above and against any loss by reason of the invalidity or unenforceability of the lien resulting from the provisions of the Mortgage providing for adjustment to the Mortgage Interest Rate and Monthly Payment. Additionally, such lender's title insurance policy affirmatively insures ingress and egress, and against encroachments by or upon the Mortgaged Property or any interest therein. Where required by Applicable Law, the Mortgagor has been given the opportunity to choose the carrier of such lender's title insurance policy. The Company, its successors and assigns, are the sole insureds of such lender's title insurance policy, and such lender's title insurance policy is valid and remains in full force and effect, all premiums thereon have been paid, and no claims have been made thereunder, and will be in full force and effect upon the consummation of the purchase of the Mortgage Loans as contemplated by this Agreement. The assignment to the Purchaser of the Company's interest in such lender's title insurance policy does not require any consent of or notification to the title insurer that has not been obtained or made. No claims have been made under such lender's title insurance policy, and the Company has not done, by act or omission, anything which would impair the coverage of such lender's title insurance policy. In connection with the issuance of such lender's title insurance policy, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other Person, and no such unlawful items have been received, retained or realized by the Company, its Affiliates or assigns.

(n)  Hazard and Flood Insurance. All buildings on the Mortgaged Property are insured by a Qualified Insurer against loss by fire and such hazards as are covered under a standard extended coverage endorsement in an amount which is not less than the lesser of (i) 100% of the replacement value of the Mortgaged Property and (ii) the outstanding principal balance of the Mortgage Loan. If the Mortgaged Property is a condominium unit, it may be included under the coverage afforded by a blanket policy. If the improvements on the Mortgaged Property are in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards, then a flood insurance policy meeting the requirements of the then current guidelines of the Federal Insurance Administration is in effect with a generally acceptable insurance carrier. Such flood insurance policy is in an amount representing coverage not less than the least of (A) the outstanding principal balance of the Mortgage Loan, (B) the replacement value of the related Mortgaged Property and (C) the maximum amount of insurance which is available under the Flood Disaster Protection Act of 1973, as amended, at the time of origination. If the Mortgaged Property is a condominium, it may be included under the flood coverage afforded by a blanket policy. All individual insurance policies contain a standard mortgagee clause naming the Company and its successors and assigns as mortgagee, and all premiums thereon have been paid. The Mortgage obligates the Mortgagor thereunder to maintain a hazard insurance policy at the Mortgagor's cost and expense, and on the

22

Mortgagor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at such Mortgagor's cost and expense, and to seek reimbursement therefor from the Mortgagor. Each such insurance policy is the valid and binding obligation of the insurer, is in full force and effect, and will be in full force and effect and inure to the benefit of the Purchaser upon the consummation of the transactions contemplated by this Agreement. No such insurance policy may be reduced, terminated or canceled without prior written notice to the mortgagee and no such notice has been received by the Company as of the Closing Date. All premiums due and owing on such insurance policies have been paid. In connection with the placement of any such insurance, no unlawful commission, fee, kickback or other compensation has been or will be received by the Company or its Affiliates.

(o)     No Default.   There is no monetary default or, to the Company's Knowledge, no other default, breach, violation or event of acceleration existing under the Mortgage or the Mortgage Note, and the Company has not waived any default, breach, violation or event of acceleration.   No foreclosure action is currently pending or, to the Company's Knowledge, being threatened with respect to the Mortgage Loan.

(p)     No Defenses.  The Mortgage Note and the Mortgage are not subject to any valid right of rescission, set-off, counterclaim or defense, including, without limitation, the valid defense of usury, nor will the operation of any of the terms of the Mortgage Note or the Mortgage, or the exercise of any right thereunder, render either the Mortgage Note or the Mortgage unenforceable, in whole or in part, or subject to any valid right of rescission, set-off, counterclaim or defense, including without limitation the valid defense of usury, and no such right of rescission, set-off, counterclaim or defense has been asserted, or to the Company's Knowledge, threatened with respect thereto.

(q)     Customary Provisions.  The Mortgage and related Mortgage Note contain customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including, (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (ii) otherwise by judicial or other foreclosure.

(r)     Deeds of Trust.  In the event the Mortgage constitutes a deed of trust, a trustee, duly qualified under Applicable Law to serve as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become payable by the mortgagee to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor.

(s)     Recordation of Mortgage.  The related original Mortgage is recorded or has been submitted for recordation in the jurisdiction in which the related Mortgaged Property is located.  The Assignment of Mortgage, upon the insertion of the name of the assignee and recording information, is in recordable form (other than the name of the assignee if in blank) and is acceptable for recording under the laws of the jurisdiction in which the related Mortgaged Property is located.

(t)     Acceleration of Payments.  The Mortgage contains an enforceable provision, to the extent not prohibited by Applicable Law, for the acceleration of the payment of

23

the outstanding principal balance of the Mortgage Loan in the event that the Mortgaged Property is sold or transferred without the prior written consent of the mortgagee thereunder.

(u)  Servicing and Collection Practices.  The servicing and collection practices used by the Company with respect to the Mortgage Loan have been in accordance with Accepted Servicing Practices.

(v)  Sole Collateral.  Except as identified on the Mortgage Loan Schedule, as of the related Closing Date, the Mortgage Note is not and has not been secured by any collateral other than the lien of the corresponding Mortgage.

(w)  Compliance with Anti-Money Laundering Laws.  The Company has complied with all applicable anti-money laundering laws and regulations, including without limitation the Patriot Act with respect to the origination of each Mortgage Loan and has established an anti-money laundering compliance program if required by applicable anti-money laundering laws and regulations.  No Mortgage Loan is in violation of Executive Order 13224 or the regulations promulgated by the Office of Foreign Assets Control of the United States Department of the Treasury (the "OFAC Regulations"), and no Mortgagor or guarantor on the Mortgage Loan is listed as a "specially designated national" or "blocked person" for purposes of the OFAC Regulations.

(x)  Taxes and Assessments.  As of the related Closing Date, all real estate taxes, governmental assessments, other outstanding governmental charges (including, without limitation, water and sewage charges) or homeowner association dues or fees, or installments thereof, that are due and would be a lien on any Mortgaged Property prior to the related Closing Date have been paid, or an escrow of funds has been established in an amount sufficient to cover such payments and reasonably estimated interest and penalties, if any, thereon.  For purposes of this representation and warranty, real estate taxes, governmental assessments, other outstanding governmental charges, homeowner association dues and fees and installments thereof shall not be considered delinquent until the due date.

(y)  Condemnation.  As of the related Closing Date, there is no proceeding pending or, to the Company's Knowledge, threatened for the total or partial condemnation of any Mortgaged Property or the taking by eminent domain and no notice of any such pending or threatened proceeding has been received.

(z)  Access; Utilities; Separate Tax Lots.  Each Mortgaged Property (a) is located on or adjacent to a public road and has direct legal access to such road, or has access via an irrevocable easement or irrevocable right of way permitting ingress and egress to/from a public road, (b) is served by or has uninhibited access rights to public or private water and sewer (or well and septic) and electricity all of which are appropriate for the current use of such Mortgaged Property, and (c) constitutes one or more separate tax parcels which do not include any property which is not part of such Mortgaged Property or is subject to an endorsement under the related title policy insuring such Mortgaged Property.

24

(aa)  Local Law Compliance.  The terms of the related loan documents require the related Mortgagor to cause the Mortgaged Property to comply in all material respects with all applicable governmental regulations, zoning and building laws, regulations and ordinances.

(bb)  Licenses and Permits.  Each Mortgagor covenants in the loan documents that it shall keep all material licenses, permits and applicable governmental authorizations necessary for its operation of each related Mortgaged Property in full force and effect, and all such licenses, permits and applicable governmental authorizations are in effect.  The Company is not aware of any Mortgagor, guarantor or other obligor on any Mortgage Loan having received notice of any noncompliance with any use or occupancy law, ordinance, regulation, standard, license or certificate with respect to any Mortgaged Property.

(cc)  Whole Loan.  Each Mortgage Loan is a whole loan and not a participation interest in a Mortgage Loan.

(dd)  Mortgage Provisions.  The Mortgage Note or the Mortgage contain provisions regarding the rights and remedies of the holder thereof for the realization against the related Mortgaged Property of the principal benefits of the security intended to be provided thereby, including realization by judicial or, if applicable, non-judicial foreclosure, subject to receivership, bankruptcy, insolvency, moratorium and other laws and principles of equity affecting the rights of creditors and principles of public policy, whether considered in a proceeding at law or in equity.

(ee)  Environmental Conditions.  With respect to each Mortgage Loan, to the Company's Knowledge, at the time of its origination, each related Mortgaged Property was in compliance with all then applicable environmental laws pertaining to environmental hazards (including, without limitation, asbestos), except for non-compliance that is not reasonably likely to result in a material adverse effect on the value, use or operation of such Mortgaged Property or the value of such Mortgage Loan.  There is no pending, or to the Company's Knowledge, threatened action or proceeding directly involving any Mortgaged Property in which compliance with any environmental law, rule or regulation is at issue, except for non-compliance that is not reasonably likely to result in a material adverse effect on the value, use or operation of such Mortgaged Property or the value of such Mortgage Loan, which has been disclosed in writing to Purchaser prior to the Closing Date.

(ff)  No Contingent Interest or Equity Participation.  No Mortgage Loan has a shared appreciation feature or a negative amortization feature or an equity participation by the Company.

(gg)  Actions Concerning Loan.  As of the date of origination and as of the related Closing Date, there was no filed, or to the Company's Knowledge, threatened, action, suit or proceeding, arbitration or governmental investigation involving the Mortgage Loan and the Mortgaged Property, an adverse outcome of which would materially and adversely affect the validity or enforceability of the related Mortgage Note and Mortgage.

25

(hh) **Bankruptcy.** As of the date of origination of the related Mortgage Loan and as of the related Closing Date, no Mortgagor or guarantor on the Mortgage Loan is a debtor in a state or federal bankruptcy proceeding.

(ii) **Costs.** All costs, fees, and expenses incurred in making or closing the Mortgage Loan and the recording of the related Mortgage were paid as of the related Closing Date. The Mortgagor is not entitled to any refund of any amounts paid or due under the Mortgage Note, Mortgage or any other related loan document, except for refunds of excess escrowed amounts contained in the any Escrow Account resulting from the reconciliation of estimated and actual amounts due for escrowed items.

(jj) **No Encroachments.** Except for encroachments that (i) do not materially and adversely affect the current marketability or principal use of the Mortgaged Property, or (ii) are intended to be remedied by the Mortgagor as part of its improvement or rehabilitation of the property: all improvements that were included for the purpose of determining the value of the related Mortgaged Property at the time of the origination of such Mortgage Loan are within the boundaries of the related Mortgaged Property, except for encroachments that are insured against by the applicable title policy.

(kk) **Servicemembers Civil Relief Act.** No Mortgagor has notified the Company that it is requesting relief, and to the Company's Knowledge, there has not been any relief requested by any Mortgagor under the Servicemembers Civil Relief Act, as amended.

(ll) **No Fraud.** No fraud with respect to a Mortgage Loan has taken place on the part of the Company or, to Company's Knowledge, any Mortgagor.

(mm) **Mechanics' Liens.** There are no mechanics' or materialmen's or similar liens, encumbrances or claims which have been filed for work, labor or material (and to Company's Knowledge, no rights are outstanding that under Applicable Law could give rise to such liens) affecting the related Mortgaged Property which are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage.

(nn) **Additional Funding Loans.** With respect to each Additional Funding Loan, (1) the documents in the Collateral File do not allow the Mortgagor to re-borrow amounts that have been paid off under the terms of the Mortgage Note, (2) all Draws that have been made have been made in accordance with the terms of the documents in the Collateral File, and (3) any Draws made to the Mortgagor have been consolidated with the Unpaid Principal Balance secured by the Mortgage.

(oo) **Due Diligence Results.** With respect to any Mortgage Loan for which the Company has received the diligence results and/or reports from one or more third party due diligence providers that were requested by the Company, excluding standard underwriting documentation, all such diligence results and/or reports were provided to the Purchaser prior to the applicable Closing Date.

26

Subsection 6.03. <u>Remedies for Breach of Representations and Warranties</u>.

(a) It is understood and agreed that the representations and warranties set forth in <u>Subsection 6.01</u> and <u>Subsection 6.02</u> shall survive the sale of the Mortgage Loans to the Purchaser for (i) twelve (12) months from the related Closing Date, provided that if a Mortgage Loan is sixty (60) or more days delinquent at any time during the twelve month period following the related Closing Date, such survival period shall be eighteen (18) months from the related Closing Date, and shall inure to the benefit of the Purchaser, subject to the limitations set forth in <u>Subsection 11.02</u>, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination or lack of examination of any Mortgage File. For purposes of this Agreement, a breach of the representations and warranties set forth in <u>Subsection 6.01</u> and <u>Subsection 6.02</u>, which materially and adversely affects the value of the Mortgage Loans or the interest of the Purchaser in such Mortgage Loans (or which materially and adversely affects the value of a Mortgage Loan or the interests of the Purchaser in the related Mortgage Loan in the case of a representation and warranty relating to a particular Mortgage Loan) is referred to in this Agreement as a "<u>Breach</u>".

Upon discovery by Company or Purchaser of a Breach, the party discovering such Breach shall give prompt written notice to the other describing the Breach with sufficient particularity. Each of the Company and Purchaser agree to cooperate in good faith upon receipt of any such notice. Within sixty (60) days of notice by a party to the other party requesting cure of a Breach (the "<u>Cure Period</u>") of a representation and warranty, the Company shall diligently attempt to promptly cure such Breach in all material respects. The Purchaser shall use commercially reasonable efforts to provide copies of any documents or reasonable assistance requested by the Company to assist in curing such Breach. The Company hereby covenants and agrees that if any such Breach is not cured in all material respects within the Cure Period, the Company shall, at the Purchaser's option, subject to the limitations set forth in <u>Subsection 11.02</u>, either (i) repurchase such Mortgage Loan at the Repurchase Price or (ii) make a reconciliation payment in an amount equal to the reduction in value of such Mortgage Loan as a result of such Breach, such reconciliation payment as mutually determined by the Company and the Purchaser and such reconciliation payment to be made in the manner set forth herein in respect of the Repurchase Price of a repurchased Mortgage Loan. Any repurchase of a Mortgage Loan(s) pursuant to the foregoing provisions of this <u>Subsection 6.03</u> shall occur on a date reasonably designated by the Purchaser and shall be accomplished by, at the Purchaser's option, (i) deposit in the Custodial Account of the amount of the Repurchase Price for distribution to the Purchaser on the next scheduled Remittance Date or (ii) wire transfer of the Repurchase Price of immediately available funds into an account designated by the Purchaser. The Purchaser shall provide the Company at least five (5) Business Days advance notice of such date and such date shall not be before the tenth (10th) Business Day following the expiration of the applicable Cure Period.

At the time of repurchase of any Mortgage Loan, the Purchaser shall reassign the repurchased Mortgage Loan to the Company free and clear of any liens and encumbrances arising through the actions of the Purchaser or its affiliates, and the Purchaser shall deliver, or cause to be delivered, to the Company the related Collateral File, and the Purchaser shall promptly execute and deliver such instruments and promptly do, or cause to be done, such other things, all as may reasonably be required to fully vest ownership of such Mortgage Loan in the

27

Company. Upon such repurchase, the related Mortgage Loan Schedule shall be amended to reflect the withdrawal of the repurchased Mortgage Loan from this Agreement.

(b)     In addition to the cure, reconciliation or repurchase obligation of the Company, (but without duplication of Losses), the Company shall indemnify each Purchaser Indemnified Party and hold them harmless against any and all claims, losses, damages, penalties, fines, forfeitures, reasonable legal fees and judgments and related court costs, and any other reasonable out-of-pocket costs, fees and expenses (collectively, "Losses") incurred by any Purchaser Indemnified Party resulting from any Breach of the representations and warranties contained in Subsection 6.01(a) and Subsection 6.02 of this Agreement. The indemnification provided by the Company herein shall be with respect to third-party claims and claims directly between any Purchaser Indemnified Party and the Company. For purposes of this Agreement, "Losses" shall be limited to actual and direct Losses.

Any cause of action against the Company relating to or arising out of the Breach of any representations and warranties made in Subsections 6.01(a) and 6.02 shall accrue as to any Mortgage Loan upon (i) discovery of such Breach by the Purchaser and (ii) failure by the Company to cure such Breach (if cure is permitted pursuant to this Agreement) or repurchase such Mortgage Loan as specified above.

Notwithstanding anything in this Agreement to the contrary, it is understood and agreed that the obligations of the Company set forth in this Subsection 6.03 to cure, repurchase a Mortgage Loan or make a reconciliation or indemnification payment, as applicable but without duplication, constitute the sole remedies of the Purchaser respecting a Breach (or any other breach) of the representations and warranties made in Subsection 6.01(a) and Subsection 6.02 of this Agreement.

(c)     The Purchaser shall indemnify the Company and each Company Indemnified Party and hold them harmless against any and all Company Losses resulting from (a) the failure of the Purchaser to perform in all material respects any of its obligations under this Agreement or (b) the breach of the Purchaser's representations and warranties contained in Subsection 6.01(b) hereof. The indemnification provided by the Purchaser herein shall be with respect to third-party claims and claims directly between any Company Indemnified Party and the Purchaser.

Subsection 6.04. Repurchase of Mortgage Loans with Early Payment Default. Except as otherwise set forth in the applicable Assignment and Conveyance, in the event that the related Mortgagor fails to make the first Monthly Payment due to the Purchaser after the related Closing Date prior to the sixtieth (60th) day after such Monthly Payment is due, at the Purchaser's option the Company shall repurchase the affected Mortgage Loan at the Repurchase Price within thirty (30) days after receipt of written notice thereof.

Section 7. Closing.

The closing for the Mortgage Loans to be purchased on the respective Closing Dates shall be subject to each of the following conditions unless otherwise waived by the prejudiced party(ies):

28

(a)     all of the representations and warranties made by the Company under this Agreement shall be true and correct as of the related Closing Date and no event shall have occurred which, with notice or the passage of time, would constitute a default under this Agreement or the related Assignment and Conveyance;

(b)     the Purchaser shall have received, or the Purchaser's attorneys shall have received in escrow, all applicable Closing Documents as specified in Section 8, in such forms as are agreed upon and acceptable to the Purchaser, duly executed by all signatories other than the Purchaser as required pursuant to the terms hereof;

(c)     the Company shall have received, or the Company's attorneys shall have received in escrow, all applicable Closing Documents as specified in Section 8, in such form as are agreed upon and acceptable to the Company, duly executed by all signatories other than the Company as required pursuant to terms of such documents; and

(d)     all other terms and conditions of this Agreement shall have been complied with.

Subject to the foregoing conditions, the Purchaser shall pay to the Company on such Closing Date the Purchase Price for the related Mortgage Loans, plus accrued interest pursuant to Section 3, by wire transfer of immediately available funds to the account designated by the Company.

<u>Section 8.</u> Closing Documents.

(a)     On or before the initial Closing Date (or as otherwise specified below), each party hereto shall submit to the other party (or its attorneys) the following documents:

1.     this Agreement, in four counterparts (with respect to the initial closing only); and

2.     an officer's certificate of the Company that certifies that attached thereto are the organizational documents of the Company, the resolutions of the Company consenting to this Agreement and all transactions contemplated hereby and the incumbency of the officers of the Company, in form and substance reasonably satisfactory to the Purchaser.

(b)     On or before each Closing Date (or as otherwise specified below), each party hereto shall submit to the other party (or its attorneys) the following documents, as applicable:

1.     an Assignment and Conveyance;

2.     the related Mortgage Loan Schedule;

3.     an executed security release certification from the Company's financing source if any of the Mortgage Loans is subject to any security interest, pledge or hypothecation in favor of such source;

29