**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>EVIS NEVERLANE STEPHENS,<br><br>       Debtor. | 21-42857-jmm<br><br>Chapter 13 |
| EVIS NEVERLANE STEPHENS,<br><br>       Plaintiff,<br><br>  v.<br><br>MAXINE BONAPARTE,<br>LEZANTONIO WOODBURN,<br>12706 HOLDINGS, INC.,<br>CHARLES L. MESTER, ESQ.<br>PLANET MANAGEMENT GROUP, LLC,<br>PLANET HOME LENDING, LLC d/b/a<br>PLANET HOME SERVICING,<br>WILMINGTON SAVINGS FUND<br>SOCIETY, FSB (WSF),<br>VERUS SECURITIZATION TRUST 2020-<br>NPL1<br><br>       Appellees. | Adversary Proceeding No. 22-01037(jmm) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION BY DEFENDANTS, COUNTERCLAIMANTS AND CROSSCLAIMANTS PLANET MANAGEMENT GROUP, LLC AND PLANET HOME LENDING, LLC d/b/a PLANET HOME SERVICING FOR JUDGMENT BY DEFAULT AGAINST CROSSCLAIM DEFENDANTS 12706 HOLDINGS, INC. AND LEZANTONIO WOODBURN PURSUANT TO FED.R.CIV.P. 55, FED.R.BANKR.P. 7055 AND L.BANKR.R 7055-1**

# **TABLE OF CONTENTS**

**Page**

POINT I STANDARD OF REVIEW ............................................................................... 4

POINT II 12706 HOLDINGS AND WOODBURN HAVE DEFAULTED IN THEIR FAILURE TO RESPOND TO THE PLANET DEFENDANTS' CROSSCLAIMS ....................................... 5

POINT III THE COURT SHOULD ENTER JUDGMENT IN FAVOR OF THE PLANET DEFENDANTS ON THEIR CROSSCLAIMS ............................................................. 6

    A...........Judgment For Default Is Appropriate On The Planet Defendants' First Crossclaim For Contractual Indemnification Against 12706 Holdings .............................................. 6

    B......Judgment For Default Is Appropriate On The Planet Defendants' Second Crossclaim For Breach of Guaranty Against Woodburn ............................................................. 8

    C.........Judgment For Default Is Appropriate On The Planet Defendants' Third Crossclaim For Attorneys' Fees Against 12706 Holdings and Woodburn ....................................... 11

    D.......Judgment For Default Is Appropriate On The Planet Defendants' Fourth Crossclaim For Breach of Loan Documents Against 12706 Holdings ............................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*136 Field Point Circle Holding Co., LLC v. Invar Int'l Holding, Inc.*,
644 Fed. App'x 10 (2d Cir. 2016) ................................................................................. 8, 9, 10

*Cap. Inv. PTY, LLC v. Onestone Cap.*,
LLC, No. 23 CV 4487, 2023 WL 7004164 (S.D.N.Y. Oct. 24, 2023) .................................... 21

*Citibank, N.A. v. Plapinger*,
485 N.E.2d 974 (N.Y. 1985) ............................................................................................... 9

*Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch,
Pierce, Fenner & Smith Inc.*,
188 F.3d 31 (2d Cir. 1999) ................................................................................................. 8

*Cooperative Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*,
36 N.E.3d 80 (N.Y. 2015) ............................................................................................. 9, 10

*Double Green Produce, Inc. v. Forum Supermarket Inc.*,
387 F.Supp.3d 260 (E.D.N.Y. 2019) ................................................................................... 4

*Elevation Health, LLC v. Wong*,
No. 22 CV 10308, 2023 WL 3842256 (S.D.N.Y. June 6, 2023) ........................................... 21

*Finkel v. Romanowicz*,
577 F.3d 79 (2d Cir. 2009) ................................................................................................. 5

*Gerritsen v. Glob Trading, Inc.*,
No. 06 CV 3756, 2009 WL 262057 (E.D.N.Y. Feb. 4, 2009) ............................................... 14

*Gibbs-Alfano v. Burton*,
281 F.3d 12 (2d Cir. 2002) ................................................................................................. 7

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
875 F.3d 107 (2d Cir. 2017) ............................................................................................. 14

*Podhaskie v. Seventh Chelsea Assocs.*,
3 A.D.3d 361, 770 N.Y.S.2d 332 (1st Dep't 2004) ............................................................. 7

**Statutes**

Bankruptcy Code § 362(a) ............................................................................................... 19

Bankruptcy Code sections 522(g) and (h), 544, and 550 ................................................... 12

Home Equity Theft Prevention Act ............................................................................12

**Other Authorities**

Federal Rules of Bankruptcy Procedure Rule 7012(a) ..............................................5

Federal Rules of Bankruptcy Procedure Rule 7055...............................................1, 4

Federal Rules of Civil Procedure Rule 12(a)(1)((B)................................................5

Federal Rules of Civil Procedure Rule 54(d)(2)(B)............................................7, 13

Federal Rules of Civil Procedure Rule 55 .........................................................1, 4, 5

Local Bankruptcy Rule 7055-1 ...................................................................................1

**Suspects**

*In re Evis Neverlane Stephens* ("Stephens Bankruptcy Case") ...............................3

chapter 13 .............................................................................................................3, 13

Section 5.13...................................................................................................................6

§ A(1)-(4) .....................................................................................................................9

Section 7.4..................................................................................................................11

Section 3.4(e) ............................................................................................................12

Section 3.2..................................................................................................................14

Article 3.3(a) .............................................................................................................14

Articles 3.3(b) through (e) .......................................................................................15

Section 4.2..................................................................................................................15

Section 4.17................................................................................................................15

Article 5.10 ................................................................................................................16

Article 4.17 ................................................................................................................16

Section 4.21................................................................................................................16

Section 5.3..................................................................................................................17

Section 6......................................................................................................................17

Section 4.1 .................................................................................................................17

Section 5.5 .................................................................................................................18

Defendants, Counterclaimants, and Crossclaimants Planet Management Group, LLC ("PMG") and Planet Home Lending, LLC d/b/a Planet Home Servicing ("PHL") (collectively, the "Planet Crossclaimants") respectfully submit this Memorandum of Law in support of their application for entry of judgment by default on liability, jointly and severally, as to their Crossclaims against Defendants 12706 Holdings, Inc. ("12706 Holdings") and Lezantonio Woodburn ("Woodburn") pursuant to Rule 55 of the Federal Rules of Civil Procedure, which is made applicable to this proceeding pursuant to Rule 7055 of the Federal Rules of Bankruptcy Procedure, and pursuant to Local Bankruptcy Rule 7055-1.

## PRELIMINARY STATEMENT

Pursuant to a loan agreement between PMG and 12706 Holdings, 12706 Holdings was provided a commercial bridge loan by PMG relative to property located at 127-06 177th Street, Jamaica, New York 11434 ("Subject Property"). That loan was later serviced by PHL.

In consideration for and to induce PMG to enter into the Loan Agreement and the related loan documents such as the promissory note, mortgage, and guaranty, 12706 Holdings made several representations and warranties to and in favor of PMG. For example, 12706 Holdings represented and warranted that it was the sole owner of the Subject Property at the time it entered into the loan documents. 12706 Holdings represented and warranted that the execution, delivery and performance by 12706 Holdings, as borrower, and Woodburn, as guarantor, of the loan documents to which they are parties will not violate any law or result in the imposition of any lien, charge or encumbrance upon all or any portion of the Subject Property, except for any liens in favor of PMG, as lender, as contemplated by the loan documents. 12706 Holdings also represented that the Subject Property is not subject to any leases; other than 12706 Holdings, no person has any possessory interest in the Subject Property or right to occupy the same; the Subject Property is not occupied and neither 12706 Holdings, as borrower, nor Woodburn, as guarantor, has any

1

intent to occupy the Subject Property, or to permit any other person to occupy the Subject Property during the term of the loan.

12706 Holdings further represented and warranted that neither it, as borrower, nor Woodburn, as guarantor, failed to disclose any fact that could cause any information described in any representation or warranty to be misleading or adversely affect the value of the Subject Property. 12706 Holdings, as borrower, and Woodburn, as guarantor, further represented and warranted that no statement of fact made by them in any of the loan documents contained any untrue statement of a material fact or omitted to state any material fact necessary to make statements contained in the loan documents not misleading. 12706 Holdings, as borrower, and Woodburn, as guarantor, further represented and warranted that there was no fact then-known to them that has not been disclosed to PMG, as lender, which adversely affects, nor as they could foresee, might adversely affect the business, operation or condition of 12706 Holdings, Woodburn or the Subject Property.

12706 Holdings represented and warranted that, to agree to enter into the loan documents agreed to indemnify, defend and hold harmless PMG and its affiliates including, but not limited to, PHL, from and against any and all losses, liabilities, claims, damages, expenses, obligations, penalties, actions, judgments, suits, costs or disbursements of any kind or nature whatsoever, including the reasonable fees and actual expenses of Lender's counsel, arising from or in connection with, among other things, the loan and failure of 12706 Holdings to perform its agreements, duties or obligations in accordance with the terms of the loan.

Not only has 12706 Holdings failed to remit payment pursuant to the loan documents as set forth more fully herein and failed to disclose to PMG that the Subject Property would be occupied contrary to its representations and warranties, it has failed to indemnify PMG and PHL

12/10/2025 SL1 3881488v1 117589.00002

in this Adversary Proceeding and PHL in the underlying bankruptcy case involving Debtor, Evis Neverlane Stephens ("Stephens), captioned *In re Evis Neverlane Stephens* ("Stephens Bankruptcy Case") pending under Case No. 21-42857. In addition, Woodburn has failed to honor his contractual obligations pursuant to a guaranty agreement to undertake 12706 Holdings' contractual obligations pursuant to the loan documents.

Neither 12706 Holdings nor Woodburn answered the Planet Crossclaimants' Crossclaims. Default was entered on the record during a pretrial conference on November 5, 2024, and on December 12, 2024. Accordingly, the Planet Defendants seek judgment by default on liability on their Crossclaims.

## STATEMENT OF FACTS

To avoid repetition, the Planet Crossclaimants respectfully refer the Court to the Planet Crossclaimants' Crossclaims for which default has been entered, and to the Declarations of Janina Woods, Thomas O'Connell, and Ryan P. Mulvaney, Esq. for a recitation of the relevant facts as to their substantive arguments.

## PROCEDURAL HISTORY

On November 15, 2021, Plaintiff filed a voluntary petition for chapter 13 bankruptcy, which is pending under Bankruptcy Case No. 21-42857 ("Stephens Bankruptcy Case"). (Mulvaney Dec. ¶ 3); (*see also* E.D.N.Y. Bankruptcy Case No. 21-42857)). On May 9, 2022, Plaintiff commenced this Adversary Proceeding against only Defendants Bonaparte, Woodburn, 12706 Holdings, and Mester. (Mulvaney Dec. ¶ 4); (*see also* Adv. Pro. ECF Nos. 1 – 5). On November 1, 2022, Plaintiff filed a motion for leave to file an Amended Adversary Complaint, which the Court granted on December 1, 2022. (Mulvaney Dec. ¶ 5); (*see also* Adv. Pro. ECF Nos. 22, 25, ECF Entry (Dec. 1, 2022)). On December 18, 2022, Plaintiff filed an Amended Adversary Complaint joining, among other new defendants, the Planet Crossclaimants.

12/10/2025 SL1 3881488v1 117589.00002

(Mulvaney Dec. ¶ 6); (*see also* Adv. Pro. ECF Nos. 28, 34). The Planet Crossclaimants, among others, moved to dismiss the Amended Adversary Complaint, which the Court granted in part, and denied in part, by memorandum decision dated January 5, 2024, and an order dated January 12, 2024. (Mulvaney Dec. ¶ 7); (*see also* Adv. Pro. ECF Nos. 51, 62, 81, 83). The operative pleading is the Revised SAC, which Plaintiff filed on February 22, 2024. (Mulvaney Dec. ¶ 8); (*see also* Adv. Pro. ECF No. 93).

On June 10, 2024, the Planet Crossclaimants filed an Answer the Revised SAC and asserted Counterclaims against Plaintiff on March 6, 2024, and Crossclaims against 12706 Holdings and Woodburn (some, only to the extent that the Commercial Mortgage and Deed are voided and rescinded). (Mulvaney Dec. ¶ 9); (*see also* Adv. Pro. ECF Doc. 102). 12706 Holdings and Woodburn failed to respond to the Planet Crossclaimants' Crossclaims and, as a result, default was noted on the record during a November 5, 2024, pretrial conference. (Mulvaney Dec. ¶¶ 10-11). The Planet Crossclaimants now move for judgment by default on liability, jointly and severally, on their Crossclaims against 12706 Holdings and Woodburn.

## LEGAL ARGUMENT

## POINT I

## STANDARD OF REVIEW

Rule 7055 of the Federal Rules of Bankruptcy Procedure makes Rule 55 of the Federal Rules of Civil Procedure applicable in adversary proceedings. "Pursuant to Rule 55 of the Federal Rules of Civil Procedure, there is a two-step process for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *Double Green Produce, Inc. v. Forum Supermarket Inc.*, 387 F.Supp.3d 260, 265 (E.D.N.Y. 2019) (internal citations and quotations omitted).

When a defendant defaults, the Court is required to accept all the factual allegations in the complaint as true and draw all reasonable inferences in favor of the movant, here, the Planet Defendants. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). The Court also must determine whether the allegations in the Crossclaims establish the liability of 12706 Holdings and Woodburn as a matter of law. *Id.* Here, those requirements are met for the Planet Crossclaimants' Crossclaims.

## POINT II

### 12706 HOLDINGS AND WOODBURN HAVE DEFAULTED IN THEIR FAILURE TO RESPOND TO THE PLANET CROSSCLAIMANTS' CROSSCLAIMS

12706 Holdings and Woodburn have failed to defend within the meaning of Rule 55. On June 10, 2024, the Planet Crossclaimants filed an Answer to the Revised SAC and asserted, among other things, Crossclaims against 12706 Holdings and Woodburn. (Mulvaney Dec. ¶ 8); (Adv. Pro. ECF No. 102). Pursuant to Rule 12(a)(1)((B) of the Federal Rules of Civil Procedure and Rule 7012(a) of the Federal Rules of Bankruptcy Procedure, answers to the Planet Crossclaimants' Counterclaims were due from 12706 Holdings and Woodburn within twenty-one days after being served. Thus, 12706 Holdings and Woodburn were required to file answers to the Planet Crossclaimants' Crossclaims by July 1, 2024. (Mulvaney Dec. ¶ 9). Neither filed an answer to the Crossclaims and, as a result, the Planet Crossclaimants requested entry of default on July 23, 2024. (Mulvaney Dec. ¶ 10); (*see also* Adv. Pro. ECF Nos. 104, 105). On November 5, 2024, and on December 12, 2024, the Court noted the defaults of 12706 Holdings and of Woodburn to the Planet Crossclaimants' Crossclaims on the record. (Mulvaney Dec. ¶ 11); (*see also* Adv. Pro. Text Order (Nov. 5, 2024). Accordingly, this motion for judgment on the Planet Crossclaimants' Crossclaims is ripe for disposition and should be granted.

12/10/2025 SL1 3881488v1 117589.00002

# POINT III

## THE COURT SHOULD ENTER JUDGMENT IN FAVOR OF THE PLANET CROSSCLAIMANTS ON THEIR CROSSCLAIMS

A.    Judgment For Default Is Appropriate On The Planet Crossclaimants' First Crossclaim For Contractual Indemnification Against 12706 Holdings

The Loan Agreement at issue here contained an indemnification provision. (Woods PMG Dec. ¶¶ 5, 12, Ex. A); (O'Connell PHL Dec. ¶¶ 5, 12, Ex. A); (Mulvaney Dec. Ex. A (Crosscl. ¶ 13)). Pursuant to Section 5.13 of the Loan Agreement, 12706 Holdings, as borrower and as indemnitor, agreed, among other things, to:

> indemnify, defend and hold harmless Lender and its affiliates and their respective owners, members, managers, officers, directors, managers, agents, employees, trustees, partners, successors and permitted assigns from and against any and all losses, liabilities, claims, damages, expenses, obligations, penalties, actions, judgments, suits, costs or disbursements of any kind or nature whatsoever, including the reasonable fees and actual expenses of Lender's counsel, arising from or in connection with (i) the Loan; (ii) any failure to complete the Planned Improvements in accordance with applicable Law; (iii) any inaccuracy in or breach of any representation or warranty made by Borrower in this Agreement or any other Loan Documents; (iv) any failure of Borrower to perform any of its agreements, duties or obligations in accordance with the terms of this Agreement or any other Loan Document; (v) any investigative, administrative, mediation, arbitration, or judicial proceeding, whether or not Lender is designated a party thereto, commenced or threatened at any time (including after the repayment of the Loan) in any way related to the execution, delivery or performance of any Loan Document; (vi) any acts by Lender pursuant to Section 4.7 and Section 6.3, including all sums paid by Lender or otherwise expended thereunder; and (vii) any brokerage commissions or finder's fees claimed by any broker or other party in connection with the Loan or any of the transactions contemplated in the Loan Documents.

(Woods PMG Dec. ¶ 12, Ex. A (Loan Agmt. § 5.13)); (O'Connell PHL Dec. ¶ 12, Ex. A (Loan Agmt. § 5.13)); (Mulvaney Dec. Ex. A (Crosscl. ¶¶ 13, 57)). PHL is an affiliated entity of PMG

as contemplated by the indemnification clause, and both entities are platform businesses of Planet Financial Group. (Woods PMG Dec. ¶ 1); (O'Connell PHL Dec. ¶ 1).

Under New York law, "[i]t is axiomatic that an indemnity contract is interpreted to effectuate the intention of the parties as expressed in the unequivocal language of the contract." *Gibbs-Alfano v. Burton*, 281 F.3d 12, 19 (2d Cir. 2002). New York courts, in construing an indemnity agreement, look at the "purpose of the entire agreement and the surrounding facts and circumstances." *Podhaskie v. Seventh Chelsea Assocs.*, 3 A.D.3d 361, 362, 770 N.Y.S.2d 332, 334 (1st Dep't 2004) (citing *Szalkowski v. Asbestospray Corp.*, 259 A.D.2d 867, 869, 686 N.Y.S.2d 243 (3d Dep't 1999)).

Here, the Planet Crossclaimants allege in their Crossclaims that, pursuant to the terms of the indemnification provision set forth in the Loan Agreement, 12706 Holdings was obligated to, and failed to, indemnify, defend and hold harmless the Planet Crossclaimants from for any and all losses, liabilities, claims, damages, expenses, obligations, penalties, actions, judgments, suits, costs or disbursements of any kind or nature whatsoever, including the reasonable fees and actual expenses, incurred and to be incurred by the Planet Crossclaimants as a result of the Adversary Proceeding and the Stephens Bankruptcy Case. (Mulvaney Dec. Ex. A (First Crosscl. ¶¶ 57-59)); (Woods Dec. ¶¶ 42, 44); (O'Connell Dec. ¶ 47). The Planet Crossclaimants also allege that, by virtue of 12706 Holdings' failure to indemnify the Planet Crossclaimants, the Planet Crossclaimants have sustained and will continue to sustain damages, costs and expenses as a result of this Adversary Proceeding and as a result of their enforcement of the Loan Documents. (*Id.* (First Crosscl. ¶ 60)); (Woods PMG Dec. ¶ 44); (O'Connell PHL Dec. ¶ 47). Accordingly, the Court should grant the Planet Crossclaimants' motion for judgment by default on liability, jointly and severally, on their First Crossclaim. Pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil

Procedure, the Planet Crossclaimants will submit a separate application outlining the attorneys' fees and costs within fourteen days of entry of judgment in this action, to be supplemented to the extent that the Planet Crossclaimants remain defendants in the Adversary Proceeding, or if Plaintiff is successful on any of her claims for damages against the Planet Crossclaimants.

B.   Judgment For Default Is Appropriate On The Planet Crossclaimants' Second Crossclaim For Breach of Guaranty Against Woodburn

To induce PMG, as the lender, to enter into the Loan Agreement, Woodburn, in his personal and individual capacity, entered into a Guaranty Agreement effective March 27, 2019 ("Guaranty").  (Woods PMG Dec. ¶ 24, Ex. D); (O'Connell PHL Dec., ¶ 24, Ex. D); (Mulvaney Dec. Ex. A (First Crosscl. ¶ 24)).  "[T]o enforce a written guaranty, 'all that the creditor need prove is an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guaranty.'"  *136 Field Point Circle Holding Co., LLC v. Invar Int'l Holding, Inc.*, 644 Fed. App'x 10, 11-12 (2d Cir. 2016) (quoting *City of New York v. Clarose Cinema Corp.*, 256 A.D.2d 69, 71 (N.Y. App.  Div. 1998)).  "'[B]road, sweeping and unequivocal language' in an absolute and unconditional guaranty generally 'forecloses any challenge to the enforceability and validity of the documents which establish defendant's liability for payments arising under the [underlying] agreement, as well as to any other possible defense to his liability for the obligations.'"  *136 Field Point Circle*, 644 Fed. App'x at 12 (quoting *Cooperative Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 36 N.E.3d 80, 86 (N.Y. 2015).  "Absolute and unconditional guaranties have in fact been found to preclude guarantors from asserting a broad range of defenses under New York law."  *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 188 F.3d 31, 35 (2d Cir. 1999); *136 Field Point Holding*, 644 Fed. App'x at 12 (where guaranty provides that it is "'absolute and unconditional irrespective of . . . any lack of validity or enforceability of the

8

agreement . . . or . . . any other circumstance which might otherwise constitute a defense,' the

guarantor is precluded from asserting a defense as to the 'existence of a valid underlying debt.'")

(quoting *Cooperatieve Centrale*, 36 N.E.3d at 86-87); *Cooperatieve Centrale*, 36 N.E.3d at 85

("This Court has acknowledged the application of these absolute guaranties even to claims of

fraudulent inducement in the execution of the guaranty."); *Citibank, N.A. v. Plapinger*, 485 N.E.2d

974, 977 (N.Y. 1985) (holding same).

As discussed above, the Planet Crossclaimants must make a three-pronged showing to

obtain judgment to enforce the Guaranty. First, they must prove an absolute and unconditional

guaranty. Second, they must prove the underlying debt. Third, they must show that Woodburn,

as the guarantor, has failed to perform under the Guaranty. *136 Field Point Circle*, 644 Fed. App'x

at 11-12. The Planet Crossclaimants discuss, and demonstrate, each prong in turn.

1. The Guaranty Is Absolute and Unconditional

The Guaranty defines the Guaranteed Obligations as, among other things, "[t]he prompt

performance when due of all other obligations of Borrower [12706 Holdings] under the Loan

Documents[.]" (Woods PMG Dec., Ex. D (Guaranty § A(1)-(4))); (O'Connell PHL Dec., Ex. D

(Guaranty § A(1)-(4)). The Guaranty contains the following provision:

> This instrument is an absolute, present and continuing, irrevocable,
> and unconditional guaranty of payment and performance, and not a
> guaranty of collection, and Guarantor shall remain liable on its
> obligations hereunder until the payment and performance in full of
> the Guaranteed Obligations. No set-off, counterclaim, recoupment,
> reduction, or diminution of any obligation, or any defense of any
> kind or nature which Borrower may have against Lender or any
> other party, or which Guarantor may have against Borrower, Lender,
> or any other party, shall be available to, or shall be asserted by,
> Guarantor against Lender or any subsequent beneficiary of this
> Guaranty Agreement or any portion of the Debt.

(Woods PMG Dec. ¶ 27, Ex. D (Guaranty § B)); (O'Connell PHL Dec. ¶ 27, Ex. D (Guaranty

§ B)); (Mulvaney Dec. Ex. A (First Crosscl. ¶ 25)). Pursuant to New York law, the inclusion of

that provision would bar Woodburn from asserting any affirmative defenses – including fraudulent inducement – had he ever responded to the Crossclaims. *136 Field Point Circle*, 644 Fed. App'x at 12; *Cooperative Centrale*, 36 N.E.3d at 86.

Moreover, the Guaranty "is for the benefit of Lender and its successors and assigns[,]" meaning that, not only would PMG and PHL, as an affiliated entity of PMG, benefit from the Guaranty but so too would Verus/WSF. (Woods PMG Dec. Ex. D (Guaranty § L)); (O'Connell PHL Dec. Ex. D (Guaranty § L)). Also, notice is not required for the prompt performance of Woodburn's obligations under the Guaranty. (Woods PMG Dec. Ex. D (Guaranty § D)); (O'Connell PHL Dec. Ex. D (Guaranty § D)).

The guaranty incorporates the "absolute, present and continuing, irrevocable, and unconditional" language. Accordingly, the Planet Defendants have established the first prong of the analysis.

      2.    <u>The Planet Crossclaimants Have Established That The Guaranty Has Triggered</u>

The Planet Crossclaimants have already demonstrated that they have incurred and continue to incur attorneys' fees and costs associated with this Adversary Proceeding and associated with PHL's involvement in the Stephens Bankruptcy Case for which 12706 Holdings has failed to indemnify the Planet Crossclaimants. Furthermore, the Planet Crossclaimants have demonstrated that, if Plaintiff is successful in any of her remaining claims against the Planet Crossclaimants, then 12706 Holdings is obligated to indemnify the Planet Crossclaimants against any damages. The Planet Crossclaimants have also demonstrated Woodburn's obligations to guarantee the obligations of 12706 Holdings, which are evidenced and acknowledged by Woodburn's notarized signature to the Guaranty, and to his signature to the other Loan Documents on behalf of 12706 Holdings. (Woods PMG Dec. Exs. A-D); (O'Connell PHL Dec. Exs. A-D).

Accordingly, the Planet Crossclaimants have demonstrated the existence of the underlying obligations by 12706 Holdings, including indemnification.

3.      The Planet Crossclaimants' Have Established Woodburn's Failure to Perform

12706 Holdings has failed to perform its obligations under the Loan Documents. (Mulvaney Dec. Ex. A (Crosscl. ¶¶ 4-76)); (Woods PMG Dec. ¶ 42); (O'Connell PHL Dec. ¶¶ 42-46). Woodburn has failed to perform his obligations pursuant to the Guaranty. (Mulvaney Dec. Ex. A (Crosscl. ¶¶ 61-65)); (Woods PMG Dec. ¶ 43); (O'Connell PHL Dec. ¶ 46).

Accordingly, the Planet Crossclaimants have established the three prongs necessary to enforce the Guaranty. Woodburn, for his part, has failed to proffer any answer or defense in response to the Planet Crossclaimants' Crossclaims, and cannot now. The Planet Crossclaimants, therefore, have established their right to recover under the Guaranty. Accordingly, the Court should enter judgment on liability on the Planet Crossclaimants' Second Crossclaim, jointly and severally, and permit the Planet Crossclaimants to submit a certification of fees and costs associated with this and the Stephens Bankruptcy Case.

C.      Judgment For Default Is Appropriate On The Planet Crossclaimants' Third Crossclaim For Attorneys' Fees Against 12706 Holdings and Woodburn

As it relates to attorneys' fees and costs, Section 7.4 of the Loan Agreement requires 127806 Holdings, as borrower, in relevant part to:

> [R]eimburse Lender for all amounts expended, advanced or incurred by Lender to collect the Note, or to enforce the rights of Lender under this Agreement or any other Loan Document, including as contemplated by Section 6.3, or to defend or assert the rights and claims of Lender under the Loan Documents (by litigation or other proceedings), which amounts will include all court costs, reasonable attorneys' fees (whether incurred at the trial or appellate level, in an arbitration proceeding, in bankruptcy (including, without limitation, any adversary proceeding, contested matter or motion) or otherwise) and expenses, fees of auditors and accountants, and investigation expenses as may be incurred by Lender in connection with any such matters (whether or not litigation is instituted), together with interest

> at the Default Rate on each such amount from the date of disbursement until the date of reimbursement to Lender, all of which shall constitute part of the Loan and shall be evidenced and secured by the Loan Documents.

(Woods PMG Dec. Ex. A (Loan Agmt. § 7.4)); (O'Connell PHL Dec. Ex. A (Loan Agmt. § 7.4)). Notably, the Loan Agreement provides that 12706 Holdings' obligations to reimburse the Planet Crossclaimants for their attorneys' fees and costs is a cross-obligation, meaning that 12706 Holdings' obligation arises from any of the Loan Documents.

Similarly, the Commercial Mortgage, which secured the performance of all obligations in all Loan Documents, requires 12706 Holdings reimburse the Planet Crossclaimants for fees and costs associated with their protection and preservation of the security interest under the Loan Documents. (Woods PMG Dec. Ex. C (Commercial Mort. § 3.4)); (O'Connell PHL Dec. Ex. C (Commercial Mort. § 3.4)). In particular, Section 3.4(e) requires 12706 Holdings to reimburse the Planet Crossclaimants for "pay[ing,] purchas[ing,] contest[ing] or compromis[ing] any encumbrance, claim, charge, lien or debt which, in the judgment of the Lender, may affect the security of this Mortgage or be prior or superior hereto[.]" (Woods PMG Dec. Ex. C (Commercial Mort. § 3.4(e))); (O'Connell PHL Dec. Ex. C (Commercial Mort. § 3.4(e))). Clearly, Plaintiff's remaining claims against the Planet Crossclaimants (and Verus) in this Adversary Proceeding contest and challenge the Commercial Mortgage. (ECF No. 93 (Revised SAC (asserting claims to void the deed pursuant to fraud or forgery (First Cause of Action) and pursuant to Home Equity Theft Prevention Act (Second Cause of Action), and to avoid and recover Subject Property and avoid Commercial Mortgage under Bankruptcy Code sections 522(g) and (h), 544, and 550 (Fifteenth, Sixteenth and Seventeenth Causes of Action))). Accordingly, pursuant to the Commercial Mortgage, the Planet Crossclaimants are entitled to reimbursement of their attorneys' fees and costs for this Adversary Proceeding and for PHL's involvement in the Stephens

Bankruptcy Case. As a result of the Adversary Proceeding, the Planet Crossclaimants have incurred and continue to incur attorneys' fees and costs. (Mulvaney Dec. ¶ 12); (Woods PMG Dec. ¶ 44); (O'Connell PHL Dec. ¶ 47).

On November 15, 2021, Plaintiff filed a Voluntary Petition for Chapter 13 bankruptcy, which is pending under Bankruptcy Case No. 21-42857. (Mulvaney Dec. ¶ 3). On October 6, 2022, PHL filed a motion for relief from the automatic stay, which has been carried until the conclusion of the Adversary Proceeding, which Plaintiff commenced on May 1, 2011. (Mulvaney Dec. ¶ 12); (*see also* Stephens Bankruptcy Case, ECF No. 53). Since PHL appeared in the Stephens Bankruptcy Case, PHL has incurred attorneys' fees and costs. (Mulvaney Dec. ¶ 12); (O'Connell Dec. ¶ 47).

The Planet Crossclaimants have established that they have incurred and continue to incur attorneys' fees and costs associated with this Adversary Proceeding, and that PHL has incurred and continues to incur attorneys' fees and costs in the Stephens Bankruptcy Case, and have established that they are entitled to reimbursement of those fees and costs. Both 12706 Holdings and Woodburn, for their part, have failed to proffer any answer or defense in response to the Planet Crossclaimants' Crossclaims, and cannot now.

Accordingly, the Court should enter judgment on liability on the Planet Crossclaimants' Third Crossclaim against 12706 Holdings and Woodburn, jointly and severally, and permit the Planet Crossclaimants to submit a certification of fees and costs associated with this and the underlying bankruptcy case. In accordance with Federal Rule of Civil Procedure 54(d)(2)(B), the Planet Crossclaimants will submit a separate application outlining attorneys' fees and costs within fourteen days of entry of judgment in this action.

D.    Judgment For Default Is Appropriate On The Planet Crossclaimants' Fourth Crossclaim For Breach of Loan Documents Against 12706 Holdings

In their Fourth Crossclaim, the Planet Crossclaimants asserted a claim for breach of the Loan Documents.  Here, the Planet Crossclaimants seek judgment by default on liability because this Crossclaim and any damages resulting therefrom is contingent on Plaintiff being successful on her claims to avoid the Commercial Mortgage.

"To state a claim for breach of contract under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages."  *Nick's Garage, Inc. v. Progressive Cas.  Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (cleaned up).  "Where, as here, a court is determining whether a plaintiff has adequately stated a cause of action for breach of contract, all contractual ambiguities should be resolved in favor of the plaintiff."  *Gerritsen v. Glob Trading, Inc.*, No. 06 CV 3756, 2009 WL 262057, at *4 (E.D.N.Y. Feb. 4, 2009) (citing *Subaru Distribs.  Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005)).

On March 27, 2019, PMG, as lender, entered into a loan agreement with 12706 Holdings, as borrower, pursuant to which PMG agreed to make a commercial loan to 12706 Holdings in the principal amount of $535,000 (the "Loan Agreement").  (Woods PMG Dec. ¶¶ 5, 6, Ex. A); (O'Connell PHL Dec. ¶¶ 5, 6, Ex. A); (Mulvaney Dec. Ex. A (Crosscl. ¶ 7)).  The Loan Agreement was executed by Woodburn in his official capacity as President of 12706 Holdings.  (Woods PMG Dec. ¶ 7, Ex. A); (O'Connell PHL Dec. ¶ 7, Ex. A); (Mulvaney Dec. Ex. A (Crosscl. ¶ 8)).

Pursuant to Section 3.2 of the Loan Agreement, the maturity date of the Commercial Mortgage Loan was April 1, 2020.  (Woods PMG Dec. ¶ 8, Ex. A (Loan Agmt. p. 36, § 3.2)); (O'Connell PHL Dec. ¶ 8, Ex. A (Loan Agmt. p. 36, § 3.2)); (Mulvaney Dec. Ex. A (Crosscl. ¶ 9)).  Pursuant to Article 3.3(a) of the Loan Agreement, 12706 Holdings was required to make its first

payment of interest on May 1, 2019, and continue on the first day of each month thereafter until the maturity date. (Woods PMG Dec. Ex. A (Loan Agmt. p. 37, § 3.3(a))); (O'Connell PHL Dec. Ex. A (Loan Agmt. p. 37, § 3.3(a))); (Mulvaney Dec. Ex. A (Crosscl. ¶ 9)). Interest, including default interest, and late fees on the unpaid principal balance are due and owing pursuant to Articles 3.3(b) through (e) of the Loan Agreement. (Woods PMG Dec. Ex. A (Loan Agmt. pp. 37-38, § 3.3(b)-(e))); (O'Connell PHL Dec. Ex. A (Loan Agmt. pp. 37-38, § 3.3(b)(e))); (Mulvaney Dec. Ex. A (Crosscl. ¶ 9)).

Pursuant to Section 4.2 of the Loan Agreement, 12706 Holdings represented and warranted that the execution, delivery and performance by 12706 Holdings, as borrower, and Woodburn, as guarantor, of the Loan Documents to which they are parties will not violate any law or result in the imposition of any lien, charge or encumbrance upon all or any portion of the Subject Property, except for any liens in favor of PMG, as lender, as contemplated by the Loan Documents. (Woods PMG Dec. ¶ 9, Ex. A (Loan Agmt. p. 41, § 4.2)); (O'Connell PHL Dec. ¶ 9, Ex. A (Loan Agmt. p. 41, § 4.2)); (Mulvaney Dec. Ex. A (Crosscl. ¶ 10)). The Loan Documents as referenced in the Loan Agreement include the Loan Agreement, the Subject Mortgage, the Note, and the Guaranty Agreement. (Woods PMG Dec. ¶ 9, Ex. A (Loan Agmt. p. 34, Recitals (D))); (O'Connell PHL Dec. ¶ 9, Ex. A (Loan Agmt. p. 34, Recitals (D))); (Mulvaney Dec. Ex. A (Crosscl. ¶ 3)).

Pursuant to Section 4.17 of the Loan Agreement, 12706 Holdings represented and warranted that it was the sole owner of the property located at 127-06 177th Street, Jamaica, New York 11434 ("Subject Property"); the Subject Property was not subject to any leases; other than 12706 Holdings, no person had any possessory interest in the Subject Property or right to occupy the same; the Subject Property was not occupied, and neither 12706 Holdings, as borrower, nor Woodburn, as guarantor, has any intent to occupy the Subject Property, or to permit any other

person to occupy the Subject Property during the term of the Commercial Mortgage Loan. (Woods PMG Dec. ¶ 10, Ex. A (Loan Agmt. p. 43, § 4.17)); (O'Connell PHL Dec. ¶ 10, Ex. A (Loan Agmt. p. 43, § 4.17)); (Mulvaney Dec. Ex. A (Crosscl. ¶ 11)). The representation and warranty that no person would occupy the Subject Property was reiterated in Article 5.10 of the Loan Agreement. (Woods PMG Dec. Ex. A (Loan Agmt. p. 45, § 5.10)); (O'Connell PHL Dec. Ex. A (Loan Agmt. p. 45, § 5.10)). By virtue of Plaintiff's allegations in the Revised SAC and Plaintiff's deposition testimony that she and her family have consistently resided at the Subject Property and have never been removed from the Subject Property, both 12706 Holdings and Woodburn have breached Article 4.17 of the Loan Agreement. (ECF No. (Revised SAC ¶¶ 1, 4); (Mulvaney Dec. Ex. B (Tr.D1[1] 9:9-23; 24:2-12; 216:18-25)).

Pursuant to Section 4.21 of the Loan Agreement, 12706 Holdings represented and warranted that neither 12706 Holdings, as borrower, nor Woodburn, as guarantor, had failed to disclose any fact that could cause any information described in any representation or warranty to be misleading or adversely affect the value of the Subject Property. (Woods PMG Dec. ¶ 11, Ex. A (Loan Agmt. p. 44, § 4.21)); (O'Connell PHL Dec. ¶ 11, Ex. A (Loan Agmt. p. 44, § 4.21)); (Mulvaney Dec. Ex. A (Crosscl. ¶ 12)). 12706 Holdings, as borrower, and Woodburn, as guarantor, further represented and warranted that no statement of fact made by them in any of the Loan Documents contained any untrue statement of a material fact or omitted to state any material fact necessary to make statements contained in the Loan Documents not misleading. (Woods PMG Dec. ¶ 11, Ex. A (Loan Agmt. p. 44, § 4.21)); (O'Connell PHL Dec. ¶ 11, Ex. A (Loan Agmt. p. 44, § 4.21)); (Mulvaney Dec. Ex. A (Crosscl. ¶ 12)). 12706 Holdings, as borrower, and Woodburn, as guarantor, further represented and warranted that there was no fact then-known to

---

[1] The citation to "Tr.D1" refers to the first day of Plaintiff's deposition, which occurred on June 3, 2025. The citation to "Tr.D2" refers to the second day of Plaintiff's deposition, which occurred on July 30, 2025.

them that has not been disclosed to PMG, as lender, which adversely affects, nor as they could foresee, might adversely affect the business, operation or condition of 12706 Holdings, Woodburn or the Subject Property. (Woods PMG Dec. ¶ 11, Ex. A (Loan Agmt. p. 44, § 4.21)); (O'Connell PHL Dec. ¶ 11, Ex. A (Loan Agmt. p. 44, § 4.21)); (Mulvaney Dec. Ex. A (Crosscl. ¶ 12)).

Section 5.3 required 12706 Holdings to "defend the title to the [Subject] Property and every part thereof and the validity and priority of the liens created by the Security Instrument against the claims of all persons whatsoever." (Woods PMG Dec. Ex. A (Loan Agmt. p. 45, § 5.3)); (O'Connell PHL Dec. Ex. A (Loan Agmt. p. 45, § 5.3)). 12706 Holdings – and Woodburn, who was obligated to undertake the contractual obligations of 12706 Holdings pursuant to the Guaranty – failed to defend the title to the Subject Property by their failure to respond to the Revised SAC. (Mulvaney Dec. ¶ 9).

Section 6 defines and expressly provides seven "Events of Default" in addition to other defaults set forth elsewhere in the Loan Agreement. (Woods PMG Dec. Ex. A (Loan Agmt. p. 50, § 6)); (O'Connell PHL Dec. Ex. A (Loan Agmt. p. 50, § 6)); (Mulvaney Dec. Ex. A (First Crosscl. ¶ 14)). Those events include, among other things, 12706 Holdings' failure to pay any principal, interest or other amount due under the Loan Documents when due; 12706 Holdings' violations of its obligations under Section 4.1 and/or 6.3 of the Loan Agreement; 12706 Holdings' failure to perform or observe any of the agreements and covenants not otherwise covered by an Event of Default or in any of the other Loan Documents; any representation or warranty made in any of the Loan Documents that proves to be untrue in any material respect; and the untruth in any material respect when made or deemed made any representation or warranty made in any Loan Document. (Woods PMG Dec. Ex. A (Loan Agmt. p. 50, §§ 6.1 – 6.7)); (O'Connell PHL Dec. Ex. A (Loan Agmt. p. 50, § 6.1 – 6.7)).

17

On March 27, 2019, 12706 Holdings executed a Promissory Note in connection with the Commercial Mortgage Loan (the "Note"). (Woods PMG Dec. ¶¶ 14-15, Ex. B); (O'Connell PHL Dec. ¶¶ 15-16, Ex. B); (Mulvaney Dec. Ex. A (First Crosscl. ¶ 15)). Pursuant to the Note, 12706 Holdings, as borrower, promised to repay $535,000 plus interest to PMG. (Woods PMG Dec. ¶ 16, Ex. B (Note, p. 4)); (O'Connell PHL Dec. ¶ 17, Ex. B (Note, p. 4)); (Mulvaney Dec. Ex. A (First Crosscl. ¶ 16)). The Note was executed by Woodburn in his official capacity as President of 12706 Holdings. (Woods PMG Dec. ¶ 17, Ex. B (Note, p. 7)); (O'Connell PHL Dec. ¶ 18, Ex. B (Note, p. 7)); (Mulvaney Dec. Ex. A (First Crosscl. ¶ 17)).

To secure repayment of the Note, 12706 Holdings executed a Mortgage, Security Agreement, And Fixture Filing on March 27, 2019 (the "Commercial Mortgage") in favor of PMG, encumbering and granting to PMG a security interest in the Subject Property. (Woods PMG Dec. ¶¶ 18-19, Ex. C); (O'Connell PHL Dec. ¶¶ 19-20, Ex. C); (Mulvaney Dec. Ex. A (First Crosscl. ¶ 18)). The general covenant that no person would occupy the Subject Property was reiterated in the Commercial Mortgage at Section 5.5, titled "No Occupancy," pursuant to which 12706 Holdings represented, warranted, covenanted and agreed that "Borrower shall not, nor shall Borrower permit any other person to, occupy the [Subject] Property." (Woods PMG Dec. Ex. C (Commercial Mort. p. 9, § 5.5)); (O'Connell PHL Dec. Ex. C (Commercial Mort. p. 9, § 5.5)). The Commercial Mortgage was executed by Woodburn in his official capacity as President of 12706 Holdings. (Woods PMG Dec. Ex. C (Commercial Mort. p. 12); (O'Connell PHL Dec. Ex. C (Commercial Mort. p. 12); (Mulvaney Dec. Ex. A (First Crosscl. ¶ 20)). By virtue of 12706 Holdings' failure to pay the Commercial Mortgage and by permitting Plaintiff to reside in the Subject Property, 12706 Holdings breached the Commercial Mortgage. (O'Connell PHL Dec.

¶ 43); (ECF No. (Revised SAC ¶¶ 1, 4); (Mulvaney Dec. Ex. A (First Crosscl. ¶¶ 28-29)), Ex. B (Tr.D1 9:9-23; 24:2-12; 216:18-25)).

Woodburn, in his personal and individual capacity, entered into a Guaranty Agreement effective as of March 27, 2019, in connection with the Commercial Mortgage Loan. (Woods PMG Dec. ¶¶ 24-25, Ex. D); (O'Connell PHL Dec. ¶¶ 24-25, Ex. D); (Mulvaney Dec. Ex. A (Crosscl. ¶ 24)). Pursuant to the Guaranty Agreement, Woodburn, as guarantor, irrevocably and unconditionally guaranteed the full and prompt payment and performance of the Guaranteed Obligations of 12706 Holdings. (Woods PMG Dec. ¶¶ 26, 27, Ex. D (Guaranty § B)); (O'Connell PHL Dec. ¶¶ 26, 27, Ex. D (Guaranty § B)); (Mulvaney Dec. Ex. A (Crosscl. ¶¶ 25, 63)). The Guaranteed Obligations pursuant to the Guaranty, which secured the Loan Agreement, the Commercial Mortgage, and the Note, include (1) the prompt and complete payment of the Debt (defined by the Loan Agreement as the outstanding principal amount set forth in, and evidenced by, the Loan Agreement and the Note together with all interest accrued and unpaid thereon and all other sums due to PMG in respect of the Loan under the Note, the Loan Agreement, the Security Instrument or any other Loan Document) in full when due, whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise (including amounts that would become due but for the operation of the automatic stay under § 362(a) of the Bankruptcy Code) (collectively defined as the "Performance Sums"); (2) the prompt payment of interest at the Default Rate (as defined in the Note) which accrues on the Performance Sums from the date of demand for payment under the Guaranty Agreement from PMG, as lender, to Woodburn, as guarantor, until the Performance Sums are paid in full; (3) the prompt performance when due of all other obligations of 12706 Holdings under the Loan Documents; (4) the prompt payment upon demand of all costs and expenses of any collection or other realization under the Guaranty Agreement

including reasonable compensation to PMG, as lender, and its agents and counsel, and all expenses, liabilities and advances made or incurred by PMG, as lender, in connection therewith. (Woods PMG Dec. ¶¶ 26, 27, Ex. D (Guaranty § A(1)-(4))); (O'Connell PHL Dec. ¶¶ 26, 27, Ex. D (Guaranty § A(1)-(4))); (Mulvaney Dec. Ex. A (Crosscl. ¶¶ 25, 62)). The Guaranty Agreement is an absolute, present and continuing, irrevocable, and unconditional guaranty of payment and performance. (Woods PMG Dec. ¶¶ 26, 27, Ex. D (Guaranty § B)); (O'Connell PHL Dec. ¶¶ 26, 27, Ex. D (Guaranty § B)); (Mulvaney Dec. Ex. A (Crosscl. ¶¶ 26, 63)).

12706 Holdings has failed to comply with the Loan Documents by failing to remit payments pursuant to the Loan Agreement, the Commercial Mortgage and the Note for which PHL must enforce as mortgage servicer. (Woods PMG Dec. ¶¶ 42, 43); (O'Connell PHL Dec. ¶¶ 42-46) (Mulvaney Dec. Ex. A (Crosscl. ¶¶ 28, 75)). At the time that the Stephens Bankruptcy Case was commenced, the Commercial Mortgage Loan was contractually due for November 1, 2019. (O'Connell PHL Dec. ¶ 44); (Mulvaney Dec. Ex. A (Crosscl. ¶ 28)). 12706 Holdings failed to comply with the conditions of the Loan Documents by failing to make the payment that became due on November 1, 2019, and each subsequent payment. (O'Connell PHL Dec. ¶ 43); (Mulvaney Dec. Ex. A (Crosscl. ¶ 28)). The Planet Defendants have not collected any post-petition payments from 12706 Holdings, as borrower, or Woodburn, as guarantor, during the Stephens Bankruptcy Case. (O'Connell PHL Dec. ¶ 43); (Mulvaney Dec. Ex. A (Crosscl. ¶ 28)).

12706 Holdings also failed to comply with the Loan Documents by failing to indemnify the Planet Defendants pursuant to the Loan Agreement with respect to this Adversary Proceeding and the Stephens Bankruptcy Case. (Woods PMG Dec. ¶ 42); (O'Connell PHL Dec. ¶ 42); (Mulvaney Dec. Ex. A (Crosscl. ¶¶ 27, 65)). In addition, Woodburn failed to comply with the Guaranty Agreement by failing to promptly and completely pay and perform 12706 Holdings'

contractual obligations under the Commercial Mortgage Loan in light of 12706 Holdings' defaults, including the obligation to indemnify the Planet Defendants. (Woods PMG Dec. ¶ 43); (O'Connell PHL Dec. ¶¶ 42, 46); (Mulvaney Dec. Ex. A (Crosscl. ¶¶ 30, 65)). The Planet Defendants have incurred and paid, and will continue to incur and pay attorneys' fees, costs and expenses in connection with enforcing rights under the Loan Documents, by being a party to this Adversary Proceeding, and by appearing in the Stephens Bankruptcy Case for which it should be reimbursed pursuant to the Loan Documents. (Woods PMG Dec. ¶ 44); (O'Connell PHL Dec. ¶ 47); (Mulvaney Dec. ¶ 12, Ex. A (Crosscl. ¶¶ 32, 60, 65, 72, 76)).

Here, the Planet Defendants allege that the Loan Agreement, Commercial Mortgage, Note and Guaranty constitute valid and binding contracts between 12706 Holdings and PMG and, as to the Guaranty, between Woodburn and PMG. (Mulvaney Dec. Ex. A (Crosscl. ¶¶ 7-8, 15, 17, 18, 20, 25)). Thus, the Planet Crossclaimants have alleged the first element of a breach of contract claim – the formation of a contract between the parties. *See*, *e.g.*, *Cap. Inv. PTY, LLC v. Onestone Cap.*, LLC, No. 23 CV 4487, 2023 WL 7004164, at *2 (S.D.N.Y. Oct. 24, 2023) (finding that plaintiff's allegation that the parties formed a contract by entering into a loan agreement was sufficient to establish the first element of a breach of contract claim). As set forth above and in their Fourth Crossclaim, the Planet Crossclaimants also allege that 12706 Holdings has failed to perform its contractual obligations under the Loan Documents. The Planet Crossclaimants have therefore established 12706 Holdings' failure to perform under the Loan Documents. Finally, the Planet Crossclaimants have alleged that they have suffered damages as a result of 12706 Holdings' breaches, together with attorney's fees and costs incurred in connection therewith. (Woods PMG Dec. ¶¶ 42-44); (O'Connell PHL Dec. ¶¶ 42-47); (Mulvaney Dec. Ex. A (Crosscl. ¶¶ 72-75)). Accordingly, the Planet Crossclaimants have adequately pleaded all

21

elements of their crossclaim for breach of the Loan Documents against 12706 Holdings. *Elevation Health, LLC v. Wong*, No. 22 CV 10308, 2023 WL 3842256, at *2 (S.D.N.Y. June 6, 2023) (finding that plaintiff's allegation that it suffered damages as a result of defendant's breach was sufficient to establish the fourth element of breach of contract claim).

Accordingly, the Court should grant the Planet Crossclaimants' motion by entering judgment by default on liability, jointly and severally, against 12706 Holdings on the Planet Crossclaimants' Fourth Crossclaim.

## CONCLUSION

The Planet Crossclaimants respectfully request that the Court grant their motion for default judgment in its entirety and jointly and severally in light of the Guaranty.

STEVENS & LEE, P.C.

Dated: December 10, 2025          By:     /s/ Ryan P. Mulvaney
New York, New York                       Ryan P. Mulvaney, Esq.
                                         669 River Drive
                                         Suite 201
                                         Elmwood Park, New Jersey 07074
                                         and
                                         485 Madison Avenue
                                         20th Floor
                                         New York, New York 10022
                                         Telephone:  (201) 857-6777
                                         Facsimile:  (610) 371-8597
                                         ryan.mulvaney@stevenslee.com
                                         *Counsel for Defendants,*
                                         *Planet Management Group, LLC and Planet*
                                         *Home Lending, LLC d/b/a Planet Home*
                                         *Servicing*

22