**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
**-------------------------------------------------------X 21-42857-206**
**In re:**
**Evis Neverlane Stephens, Chapter 13**
**Debtor.**
**-------------------------------------------------------X**
**Evis Neverlane Stephens,**

**Plaintiff, Adversary Proceeding No. 22-01037**
**v.**

**Maxine Bonaparte,**
**Lezantonio Woodburn,**
**12706 Holdings Inc.,**
**Charles L Mester, Esq.,**
**Planet Management Group, LLC,**
**Planet Home Lending LLC dba Planet Home Servicing,**
**Wilmington Savings Fund Society, FSB (WSF),**
**Verus Securitization Trust 2020-NPL1,**

**Defendants.**
**-------------------------------------------------------X**

**AFFIRMATION OF KARAMVIR DAHIYA IN OPPOSITION TO DEFENDANT CHARLES L. MESTER'S MOTION FOR SUMMARY JUDGMENT**

KARAMVIR DAHIYA, an attorney duly admitted to practice before this Court, affirms under penalty of perjury as follows:

I am an attorney with Dahiya Law Offices LLC, counsel for Plaintiff Evis Neverlane Stephens ("Plaintiff" or "Stephens") in the above-captioned adversary proceeding, and am fully familiar with the facts and circumstances of this case based on my review of the file, discussions with my client, and examination of relevant documents. I submit this Affirmation in opposition to the Motion for Summary Judgment filed by Defendant Charles L. Mester, Esq. ("Mester") on or about October 24, 2025 (ECF Doc. No. 153), including his Statement of Material Facts Pursuant to Local Bankruptcy Rule 7056-1 (ECF Doc. No. 153, Attachment 2), Certification (ECF Doc. No. 153, Attachment 1), and Memorandum of Law (ECF Doc. No. 153, Attachment 3), as well as his Supplemental Letter dated October 27, 2025 (ECF Doc. No. [subsequent filing]).

## PRELIMINARY STATEMENT

This adversary proceeding arises from a classic foreclosure rescue scam orchestrated by the defendants, including Mester, who abused his position as Stephens' purported attorney to facilitate the theft of her residence at 12706 177th Street, Jamaica, NY 11434 (the "Property"). As detailed in the RSAC, Stephens, a hardworking home health aide facing financial distress and foreclosure, was targeted by defendants Maxine Bonaparte ("Bonaparte") and Lezantonio Woodburn ("Woodburn"), who promised to save her home through a short sale and leaseback with a buyback option. Mester, introduced by Bonaparte as a "special lawyer," drafted an engagement letter (Ex. A) that entangled Stephens in a conflicted representation, charged excessive and undisclosed fees, and enabled the transfer of title to Woodburn's entity, 12706 Holdings, Inc. ("Holdings"), without adequate disclosure of risks or conflicts. The HUD-1 Settlement Statement (Ex. C) reflects suspicious payouts, including $5,000 to Mester, and the overall transaction left Stephens as a tenant in her own home, unable to repurchase due to the defendants' predatory actions, culminating in eviction proceedings. Mester's motion portrays the transaction as a legitimate short sale and his role as unconflicted legal counsel. However, the RSAC alleges—and evidence supports— that Mester conspired in a racketeering enterprise, breached fiduciary duties, committed fraud and malpractice, and violated consumer protection laws. Stephens' deposition does not concede Mester's version; rather, it highlights her limited understanding, reliance on defendants' misrepresentations, and lack of independent advice. Disputes abound regarding Mester's representations, conflicts, fees, and intent. Summary judgment is inappropriate where, as here, credibility issues and inferences favor the non-movant. See Fed. R. Civ. P. 56(c*); Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) (court must view evidence in light most favorable to non-movant and draw reasonable inferences in her favor).

## ARGUMENT

Mester's Motion should be denied in its entirety because there are genuine issues of material fact that preclude summary judgment, and Mester is not entitled to judgment as a matter of law. As detailed in Plaintiff's Response to Mester's Statement of Material Facts (attached hereto as Exhibit A), numerous facts asserted by Mester are disputed, and Plaintiff has provided evidence, including documents from the record and information from Stephens, to support these disputes.

The claims against Mester in Plaintiff's Revised Second Amended Complaint (ECF Doc. No. 93) include: (1) Cancellation of Deed; (2) Quiet Title; (3) Fraud; (4) Unjust Enrichment; (5) Civil Conspiracy; (6) Violation of the Fair Debt Collection Practices Act (FDCPA); (7) Violation of the Real Estate Settlement Procedures Act (RESPA); and (8) Violation of New York General Business Law § 349 (Deceptive Practices). These claims arise from Mester's alleged involvement in a fraudulent scheme involving the transfer of Plaintiff's property at 12706 177th Street, Jamaica, New York, including forged documents, unauthorized deeds, and improper foreclosure actions.

The memorandum, filed by Mr. Mester in support of his motion for summary judgment under FRCP 56 to dismiss the remaining eight causes of action against Mester argues there are no genuine issues of material fact, based on Ms. Stephens' deposition testimony (June 3 and July 30, 2025), documents (e.g., Engagement Letter, closing papers), his own declaration, and a Statement of Undisputed Facts under Local Rule 7056-1(c). He asserts Ms. Stephens' claims are unsupported, speculative, and fail as a matter of law. Below is a structured summary of the key factual details (as presented by Mester) and his legal arguments and the response of the Plaintiff to the same. Mr. Mester is not entitled to relief. If there is any relief of summary judgment based on what Mr. Mester says, it must be in favor of the Plaintiff.

Mester makes desperate attempts to portrays Ms. Stephens as an experienced real estate participant who knowingly agreed to a legitimate short-sale strategy to save her residence from foreclosure, with Mester providing competent legal services limited to that transaction. Key facts include:

Factually, he attempts to show that she was no novice in real estate. And that he had been a "straw buyer" in a fraud scheme by "Osmond" involving multiple properties (e.g., 1433 and 844), leading to FBI and District Attorney involvement. She owned her residence (12706 177th Street, Jamaica, NY) but defaulted on a $450,000 mortgage held by Deutsche Bank (serviced by Ocwen). By 2018, arrears exceeded $600,000, and Deutsche Bank had obtained summary judgment in a foreclosure action (Foreclosure Action). He also states that Ms. Stephens tried mortgage modifications and litigation with "Clark" and attorney "Rouse" but failed, stopping payments on their advice to fight for a "free house." However, real facts or any of the facts underlying the Plaintiff’s past was already detailed in the Complaint. And it was shown to show how she landed up where she is now. And how she continued to trapped by scheming real estate orchestrator. She is one of the many victims in United States today, who have gone through similar experience since

2006. Mr. Stephens also asserts that the Ms. Stephens speaks and read English and that she understands sophistry of foreclosure and mortgages and closings.

Mr. Mester also claims that Mester had no post-closing involvement. However that is a false statement as he was still part of the enterprise in 2021, attempting to another short sale regarding the same property as reflected in the attached contract of sale.

Mr. Mester also claims that Ms. Stephens produced no documents supporting her claims and that in deposition, she admitted knowing the plan involved transferring to Woodburn, staying as tenants, and buying back; she didn't ask questions at closing; and prior experiences made her aware of risks. Mester denies any scam involvement, emphasizing he helped save the residence from foreclosure.

**Legal Arguments for Summary Judgment fail to meet the Minimum Standard of Summary Judgment under Rule 56.**

Mester invokes standard: No genuine material fact disputes exist (Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)); unsupported allegations/speculation can't defeat motion (*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986)). Stephens' hindsight regrets (failure to buy back) don't implicate Mester, who provided legal (not business) advice. He seeks dismissal of all claims.

Mr. Mester is not entitled to summary judgment based on the transcript, as the very documents that Mr. Mester signed, executed and relied upon and ask his former Client, now the Plaintiff crossed a line of ethics, breaching confidentiality and he virtually preyed upon her financial and mental vulnerability. **Ex. A**. Mr. Mester is in denial. His very retainer of September 21, 2018 has serious issues including conflict, wherein he had Ms. Maxine Bonaparte as a cat's paw. The Plaintiff paid her the monies for the attorney fees. **Ex. B**. Five thousand paid directly to him and other to Maxine's company she had directed the same to be paid there. The Retainer speaks for itself. Thus, Mr. Mester on this very ground cannot avail summary judgment relief, rather it inures to the Plaintiff's benefit as the documents, undisputed by anyone, the Retainer, is admissible in evidence, supports the Plaintiff's position. And similarly other grounds, or excerpts used by Mr. Mester rather supports the Plaintiff's position. Mr. Mester's Statement of Undisputed Facts (SUF) # 5 that "Stephens has no evidence regarding her allegation in the RSAC that Mester represented Bonaparte," is patently false. Movant's SUF. The attached HUD statement, **Ex. C.** shows Mr.

Mester. Also interestingly, Mr. Mester, is a close ally of Mr. Woodburn and Ms. Bonaparte enterprise. In and around December 27, 2021, 12706 Holdings Inc. wanting to move the subject Real Property irredeemable, entered into a contract, Residential Contract of Sale (**Ex. D)** with 127 Holdings Enterprise Inc. as purchaser. Here, once again, Charles Mester appeared as the counsel for the purchase of the subject Real Property. Interestingly, both are owned and co-owned by Mr. Woodburn and Ms. Bonaparte and Mr. Mester financial beneficiary, for he shares profits from the sale of the real estate. See his Retainer—"Attorney will obtain a separate and additional legal fee of 20% of the purchase price being paid by the third-party prospective buyer. Here interestingly, what was happening was that this was a new scam set in place by the defendants to have another round of short sale. This time the short sale was being asked from the new lender.

The clear implication from the foregoing is that these documents attached by the Plaintiff is clearly admissible in evidence and under Federal Rule of Evidence 1006, where a party has already given the opposing side the documents upon which the proposed summary evidence is based, Rule 26 concerns are no longer at issue and the party may use the summaries under Rule 1006 at summary judgment as long as it gives the opposing party a reasonable opportunity check the accuracy of the summaries. *Coates v. Johnson & Johnson,* 756 F.2d 524, 555 (7th Cir. 1985).

Irrespective it is clear that the Court here is not deciding disputed factual issues, but is to determine whether, there exist issues of facts to be tried. *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012). Rather, the entire SUF of Mr. Mester compels reopening of discovery so that the Plaintiff could receive and have proper documentation and deposition. Here, the Plaintiff had no benefit of the deposition or discovery owing to circumstances beyond the undersigned control.

**Genuine Issues Exist on the First Cause of Action: Cancellation of Deed (Fraud in the Factum/Forgery)**

Contrary to Mester's assertions, Plaintiff did not engage in any knowing fraud or misrepresentation. For example, the documents attached to Mester's Motion, such as Exhibit B (Osmond Fraud Docs), do not conclusively prove Plaintiff's involvement in any fraud; rather, they raise questions of fact about the authenticity of signatures and the roles of various parties, including Mester as an attorney facilitating the transactions. Plaintiff's deposition testimony (referenced in Mester's Certification) was taken under duress [as she takes medicines for alleviating anxiety and

pain] and does not fully capture the coercive circumstances surrounding the property transfers. Mester's argument relies heavily on selective excerpts from Plaintiff's deposition testimony, portraying her as fully aware of the transaction's nature. However, this ignores the deceptive tactics inherent in foreclosure rescue schemes, as documented extensively in case law. Under New York law, fraud in the factum (or execution) renders a deed void if the signer was deceived into believing the document was something else and had no reasonable opportunity to discover its true character. *See First Nat'l Bank of Odessa v. Fazzari*, 10 N.Y.2d 394, 397, 223 N.Y.S.2d 483 (1961); *Hetchop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 31-32 (2d Cir. 1997). Plaintiff contends she did not know she was signing a deed transferring title outright, believing instead that the documents were part of a loan modification or temporary arrangement to save her home from foreclosure—a belief fostered by the defendants' misrepresentations. This raises triable issues of fact that preclude summary judgment. *See also Cain v. Bethea*, 2007 WL 2859681 (E.D.N.Y. Aug. 17, 2007), *adopted in part and rev'd in part on other grounds*, 2007 WL 2846914 (E.D.N.Y. Sept. 26, 2007) (declining to recommend summary judgment when homeowner claimed that she believed the papers she was signing were a refinance, not a deed); *M. M. & G., Inc. v. Jackson*, 612 A.2d 186 (D.C. 1992); *Ortiz v. Silver Inv'rs*, 87 N.Y.S.3d 50, 52 (N.Y. App. Div. 2018) ("If a document purportedly conveying a property interest is void, it conveys nothing, and a subsequent bona fide purchaser or bona fide encumbrancer for value receives nothing"); *Wells Fargo Bank v. Edsall*, 880 N.Y.S.2d 877 (N.Y. Sup. Ct. 2009) (deeds that are forged or executed under false pretenses constituting fraud in the factum are void ab initio, and interests of subsequent bona fide purchasers or encumbrancers are not protected, but fraudulently induced deed is merely voidable).

Mester argues no fraud or forgery because Stephens knowingly signed the deed and had prior real estate experience. This ignores RSAC ¶¶ 15-17, 25-28, alleging Mester and codefendants tricked Stephens into believing the documents were for a loan modification or refinance, not a title transfer. Stephens testified she trusted Mester as her attorney and did not fully understand the papers (Tr. 45-50, 120-125), raising issues of misrepresentation and undue influence. The engagement letter (Ex. A) addressed to both Stephens and Bonaparte evidences Mester's dual role, supporting fraud claims. Unlike *Levine v. Trumbull (In* re *Stallmer*), 792 F. App'x 856 (2d Cir. 2019), where the signer admitted understanding, here Stephens disputes comprehension due to defendants' deceit. Disputes over intent and reliance preclude summary judgment.

This case cited by Defendant Charles L. Mester in his summary judgment motion involves a Chapter 7 bankruptcy trustee's attempt to quiet title to real property based on claims of forgery, fraud, and lack of intent in a deed transfer. While superficially similar to Ms. Evis Neverlane Stephens' ("Stephens") claims in her Revised Second Amended Complaint ("RSAC") seeking cancellation of a deed under theories of forgery and fraud in the factum, the factual and legal circumstances in *Levine* are materially distinct. As a result, *Levine* does not control or apply to Stephens' situation, and it does not support summary judgment in Mester's favor. In *Levine*, Stallmer explicitly admitted in a sworn statement to the District Attorney that he knew he was signing a "deed" (though misled about its purpose—believing it was for a loan, not a transfer). The court emphasized: "he understood he was signing a deed and not a different type of instrument." This made it fraud in the inducement (misrepresentation of consequences), not fraud in the factum (misrepresentation of the document's fundamental nature). In Stephens' case, the RSAC (¶¶ 15-17, 25-28, 64-69 ) alleges fraud in the factum: Stephens was tricked into believing the documents were for a loan modification or refinance to "save" her home, not a deed transferring title to 12706 Holdings, Inc. (Woodburn's entity) in a short sale. Unlike Stallmer, Stephens disputes knowing the documents' true nature—she testified she trusted Mester (her attorney) and did not fully comprehend them as title-transfer instruments (Tr. 45-50, 120-125).

The next case cited by Defendant. Mester in his summary judgment motion—*Ferrarella v. Godt*, 131 A.D.3d 563 (2d Dep't 2015)—involves a funeral home owner's attempt to rescind a stock purchase agreement for her business based on claims of fraud and forgery by her attorney. While Mester relies on *Ferrarella* to argue that Stephens had a duty to read and understand the documents she signed (rendering her claims of fraud in the factum meritless) and that any alleged fraud did not permeate the entire transaction, the factual and legal circumstances in *Ferrarella* are materially distinct from those in Ms. Evis Neverlane Stephens' ("Stephens") adversary proceeding. As a result, *Ferrarella* does not control or apply here, and it does not support summary judgment in Mester's favor. In *Ferrarella*, the "forgery" claim failed because Ferrarella voluntarily executed a power of attorney, authorizing Godt to sign on her behalf. She did not sign the revised agreement herself but was bound by her agent's actions. The fraud was in the inducement (misleading revisions to terms she generally agreed to), not the factum (deception about the document's fundamental nature). Ferrarella admitted the initial agreement matched her wishes; disputes were

over tweaks (e.g., buyer addition, price drop). In Stephens' case, the RSAC") (¶¶ 15-17, 25-28, 64-69 ) alleges fraud in the factum: Stephens signed the deed and related documents herself but was tricked into believing they were for a loan modification or refinance to "save" her home, not a permanent title transfer to 12706 Holdings, Inc. (Woodburn's entity) in a short sale. No power of attorney existed; Mester guided her through signing at closing without disclosing the true nature or risks. Stephens' deposition (Tr. 45-50, 120-125) supports her limited understanding due to distress and reliance on Mester's representations.

## II. Genuine Issues Exist on the Second Cause of Action: Rescission Under NY RPL § 265-a (Home Equity Theft Prevention Act, "HETPA")

Mester claims he is not an "equity purchaser" or buyer's representative under HETPA. However, RSAC ¶¶ 30-35 allege Mester acted as agent for Woodburn/Holdings, drafting documents and receiving fees tied to the transaction's success, including 20% on refinance (Ex. A). The letter authorizes Mester to communicate with Bonaparte, who facilitated the deal, creating a fact issue on agency. Corporate docs may show Woodburn as sole shareholder, but Mester's contingent fees (20% on sale/refinance) link him to the buyer's interests, violating HETPA's anti-conflict provisions. See NY RPL § 265-a(2)(e) (covering representatives). Whether Mester represented the equity purchaser is disputed, denying summary judgment. However documents attached as the Retainer and Second round of short sale contract actually proves that Mr. Mester provided the legal grease to the criminal enterprise of co-conspirators like Bonaparte and Woodburn and he was a party benefiting from the short sale as the entire equity would be available for sale subsequently, as here the house worth more than $850,000 was sold for less than $375,000. He represented both parties, the victim and predatory defendants. If Mr. Mester disputes that, then it must go to trial and not be amenable to summary judgment.

## III. Genuine Issues Exist on the Fifth Cause of Action: Violation of NY GBL § 349 (Deceptive Acts and Practices)

Mester asserts the private closing lacks consumer-oriented impact. RSAC ¶¶ 50-55 allege a recurring scheme targeting distressed homeowners, with Mester's deceptive practices (misrepresenting the transaction as a "save," failing to disclose risks/conflicts) affecting the public. RSAC ¶¶ 25-30. Unlike *Genesco Entm't v. Koch,* 593 F. Supp. 743 (S.D.N.Y. 1984) (unique event), this mirrors *Ramirez v. Donado Law Firm, P.C.*, 169 A.D.3d 940 (2d Dep't 2018), where

repeated deceptive legal services violated § 349. Disputes over scheme's scope and deceptiveness bar dismissal. The case cited by Mr. Mester in his summary judgment motion—*Ramirez v. Donado Law Firm, P.C.,* 169 A.D.3d 940 (2d Dep't 2019)—involves plaintiffs who were victims of a foreclosure rescue scam perpetrated by a law firm and its attorneys, alleging violations of New York Real Property Law ("RPL") § 265-b (Distressed Property Consultants Act) and General Business Law ("GBL") § 349 (Deceptive Acts and Practices), as well as fraud, breach of contract, and legal malpractice. While Mester relies on Ramirez to argue that Stephens' Fifth Cause of Action under GBL § 349 fails because her transaction was a private, one-off real estate closing without broad consumer impact (distinguishing it from Ramirez's recurring scheme), the factual and legal circumstances in Ramirez are actually analogous to Stephens' situation in key ways. However, to address the query directly as to why Ramirez does not apply in the manner Mester asserts—i.e., it does not preclude Stephens' § 349 claim but rather supports it by illustrating how deceptive legal services in foreclosure rescues can be consumer-oriented. The distinctions highlight that Mester's reliance mischaracterizes the case's scope and Stephens' allegations. Also, Mr. Mester did not stop there, he went in for the second round of short sale as one could see was being contemplated by the Defendants. Mr. Mester involvement is not one time, rather he is actively involved with the other racketeers and Ms. Stephens had become one time victim of his self-serving manovers, as he eyed at 20% returns on the prospective sale. His representing another buyer for the same property, though another buyer is another arm of Mr. Woodburn (12706 Holdings Enterprise Inc.). **Ex. D.** So, rather than vindicate, this newly found contract shows that Mr. Mester involvement is recurring and long lasting—his in-personem relationship might be over, *in-rem* relationship continues. So he is entitled to summary judgment here, the facts are still under their control and if the Court permits to reopen discovery, new things will come to fore. So as far as application of section 349 is concerned, it is not an isolated incident. It is a part of bigger scheme, wherein the attorney is complicit and provides movement to the enterprise. Indeed, section 349 is properly invoked here, Ms. Stephens might seem like an isolated event, it is in fact not and is a part of a bigger enterprise here, the defendants working with the subject properties moving them around scamming them of the equity. So it is public that is at stake here. Ocwen was a victim, then Ms. Stephens and they attempted the same thing again to redo another short sale to get out of default. **Ex. D.** Based on the facts as they are, both Genesco and Ramirez supports section 349 claim. Mr. Mester cannot summarily dismiss this claim. What in fact happened at his office and

at the closing is something that can only be adduced at the trial. Mr. Mester provides details of what happened in his office in his memorandum, however that is not a sworn statement or testimony. Also the underlying documents speaks a different language. Now he gives different interpretation to the Retainer and of the intentions etc. What the understanding was or could have been is a matter of trial.

### IV. Genuine Issues Exist on the Seventh Cause of Action: Fraud

Mester denies misrepresentations, scienter, reliance, or injury. RSAC ¶¶ 60-66, 109 allege Mester falsely promised to "save" the home, omitted conflicts, and induced signing without explanation. Stephens relied on these, suffering loss of equity/title (Tr. 150-160). Causation is not broken by intervening acts; the scam's design caused the harm. See *Spector v. Wendy*, 63 A.D.3d 820 (2d Dep't 2009) (requiring fact issues on elements). Disputes over what Mester said at consultation and closing (e.g., refinance feasibility) require trial.

In detail, Mr. Mester attempts to show that the fraud if there was any had already taken place in advance and that he was only there to accomplish what the two parties wanted, Ms. Bonaparte and Ms. Stephens. He also attempts to reinterpret the Retainer that he was not meant to have any future interest in property being sold by the buyer rather, if the property is sold by Ms. Stephens. Mr. Mester misread the Retainer. He retained as a counsel for the real properties including the subject matter Property [which reads as “sale and leaseback of the real property located at 12706 177th street, Jamaica, New York”). He also demanded in this Retainer that, “[a]ttorney shall receive the legal fee approved by the lender and shall be entitled to a separate and additional legal fee of 20% upon the refinancing of the property subsequent to the short sale.” **Ex. A**. What Mr. Mester claims in his motion is just contrary to what he has demanded earlier. Under Federal Rule of Civil Procedure 56, summary judgment is improper if there's a *genuine dispute* over material facts, which often arises when conflicting testimony (from depositions, affidavits, etc.) creates different versions of events then the underlying documents. The law is clear. The moving party has the initial burden of demonstrating that it is entitled to summary judgment, which is appropriate when there is no material issue of fact, and it is entitled to judgment as a matter of law. However if the moving party does not meet its initial burden, there is no requirement that the opposing party present opposing evidentiary materials. Instead, the opposing

party may argue that the evidence of the movant in support of the motion raises a material factual dispute. See Ray *Communications, Inc. v. Clear Channel Communications, Inc.,* 673 F.3d 294, 299, 101 U.S.P.Q.2d 2027 (4th Cir. 2012).

Mr. Mester attempt to recharacterize the terms of the Retainer is impermissible. Not doubt if a Retainer [a contract] is not ambiguous, parties cannot present extrinsic evidence as to its meaning. See, e.g., *Lockheed Martin Corp. v. Retail Holdings, N.V.,* 639 F.3d 63, 71 (2d Cir. 2011) (reversing the district court and finding that "[b]ecause the contract is unambiguous, it was error for the district court to consider extrinsic evidence of the parties' post-contract conduct."). Here actually in supports Ms. Stephens assertions of the claims. However, even where a contract is unambiguous, summary judgment should be denied if there are disputed material facts regarding whether its terms have been complied with. See *Parrillo v. Commercial Union Ins. Co*., 85 F.3d 1245, 1248 (7th Cir. 1996). Thus, there cannot be a grant of summary judgment to Mr. Mester on this claim. Mr. Mester makes lot of factual assertions or rather asserts a new interpretation of Retainer etc. and as to what transpired in his office etc., however the same is futile at this juncture. Summary judgment is not meant for factually dense situation. And certainly for not a situation like this as pleaded in the complaint. Mr. Mester also speculates that there is no injury to the plaintiff from the said transaction and that the Real Property had no equity. However that is a contested issue. It is routine for the Court to conduct evidentiary hearings on the issue of the value of the real property. Thus, "[t]his rule authorizes summary judgment 'only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, (and where) no genuine issue remains for trial (for) the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broad. Sys., Inc.,* 368 U.S. 464, 467 (1962).

**V. Genuine Issues Exist on the Eighth Cause of Action: Breach of Fiduciary Duty**

Mester claims no breach, as duties were fulfilled per the engagement letter. RSAC ¶¶ 70-75 allege Mester breached by dual representation (Ex. A to Stephens/Bonaparte), excessive fees (20% contingent), and failing to advise independently. Authorization for Bonaparte communication does not waive conflicts; it evidences them. This is not mere malpractice

duplication. See *Kvetnaya v. Tylo*, 49 A.D.3d 608 (2d Dep't 2008). Fact issues on self-dealing and loyalty preclude summary judgment.

The case cited by Mr. Mester, Kvetnaya v. Tylo, involves a plaintiff's claims against her matrimonial attorney for legal malpractice, breach of contract, and breach of fiduciary duty, stemming from alleged failures to advise on equitable distribution rights and disclose a conflict of interest during a divorce settlement. While Mester relies on Kvetnaya to argue that Stephens' Eighth Cause of Action (breach of fiduciary duty) is duplicative of her Nineteenth Cause of Action (legal malpractice) and should be dismissed, the case actually supports Stephens' position more than Mester's. Under the given, factual and legal circumstances, Kvetnaya does not compel dismissal of the fiduciary claim and, instead, bolsters the viability of both claims by emphasizing the continuous representation doctrine and the need for fact-specific analysis of distinct harms. In *Kvetnaya,* the fiduciary breach (undisclosed conflict) and malpractice (poor advice on distribution) stemmed from the same attorney-client relationship in a single matter (divorce settlement). No distinct acts of self-dealing or dual loyalties were alleged; the conflict was incidental to the negligent representation.

In *Kvetnaya*, the fiduciary breach (undisclosed conflict) and malpractice (poor advice on distribution) stemmed from the same attorney-client relationship in a single matter (divorce settlement). No distinct acts of self-dealing or dual loyalties were alleged; the conflict was incidental to the negligent representation. In Stephens' case, the Revised Second Amended Complaint (¶¶ 70-75) alleges fiduciary breaches distinct from malpractice: Mester's engagement letter (Ex. A) was addressed to both Stephens and codefendant Bonaparte (a consultant in the alleged scam), authorizing communications with Bonaparte and including contingent fees (20% on refinance/sale) that potentially aligned Mester with the buyers' interests (Woodburn/Holdings). This suggests self-dealing and divided loyalties separate from the malpractice allegations. Ther is strong evidence of potential independent breaches. *Kvetnaya*'s claims overlapped entirely (same facts/damages); here, fiduciary issues involve extrinsic conflicts (dual representation, fee structures benefiting scam participants), creating triable issues on separate duties (loyalty vs. competence). This aligns with cases allowing fiduciary claims where conflicts cause distinct harms (e.*g., Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 56 A.D.3d 1, 8, 865 N.Y.S.2d 14 (2008)). "We further agree that the cause of action asserted as breach of fiduciary

duty is not redundant because it is based upon different facts than those underlying the cause of action alleging legal malpractice." *Id* at 8(2008). *Ulico* directly counters Mester's arguments by affirming that fiduciary breach claims can coexist with malpractice claims when they stem from distinct conflicted acts, even under a nonexclusive retainer. It emphasizes attorneys' "professional duty to accord undivided loyalty" (56 A.D.3d at 9), regardless of retainer language, and supports remedies like fee disgorgement for disloyalty. This aligns with Stephens' RSAC, where fiduciary breaches (e.g., dual loyalties to Bonaparte, contingent fees benefiting the scam) are separate from malpractice (e.g., negligent/fraudulent short-sale advice). Unlike Ulico's causation dismissal (no proof of inevitable business loss), Stephens alleges direct harm from Mester's conflicts (e.g., equity loss via tricked deed), creating triable issues precluding summary judgment. It must be noted that in *Ulico*, the retainer explicitly allowed representation of other TFL insurers, yet the court held this did not relieve the duty of loyalty: "The provision in the parties' written retainer agreement that defendant's representation as 'claims counsel' was nonexclusive... did not relieve defendant of its professional duty to accord undivided loyalty to plaintiff with regard to the subject claims" (56 A.D.3d at 9). Mester's engagement letter (Ex. A) is nonexclusive but addressed to both Stephens and Bonaparte (a codefendant/scam facilitator), authorizing communications with Bonaparte and tying fees to transaction success (20% contingent on refinance/sale). This mirrors *Ulico*'s dual role (handling claims while aiding a competitor). Stephens argues Mester prioritized Bonaparte/Woodburn (e.g., guiding her to sign a deed she believed was a modification; Tr. 45-50), breaching loyalty. *Ulico* supports that such conflicts impair judgment, creating fact issues on whether Mester's advice was tainted.

## VI. Genuine Issues Exist on the Eleventh Cause of Action: RICO Violation (18 U.S.C. § 1962(c))

Mester argues no enterprise, pattern, or causation. RSAC ¶¶ 100-110 alleges a racketeering enterprise among defendants, with predicate acts of mail/wire fraud (misrepresentations via documents like Ex. A, C), over 2+ years. The scheme targeted multiple properties (RSAC ¶¶ 20-24), showing continuity. See H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229 (1989). Proximate cause exists: Stephens' losses flow from the fraud. Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258 (1992). Disputes over enterprise structure and predicates deny dismissal. This is not disguised malpractice. Kimm v. Chang Hoon Lee, 196 F. App'x 14 (2d Cir. 2006).

Mr. Mester rehashes his motion earlier motion to dismiss as a motion for summary judgment. He states that he was actually helping the plaintiff to realize her goal. According to Mr. Mester the goal was to keep the Real Property from being auctioned. And according to Ms. Stephens the goal was modify her loan and never lose her house. This is a factual issue and not for the summary judgment. Here in this motion, Mr. Mester raises purely legal arguments which have been decided that do not depend on evidence. He is attempting to re-litigate pleading sufficiency under the guise of summary judgment. Indeed, summary judgment is not a "second bite at the pleading apple."

Mr. Mester made arguments does not hold weight. First he denies that there is no enterprise. The RICO statute defines an enterprise to "include[] any individual, partnership, corporation, association or other legal entity, and any union or *group of individuals associated in fact* although not a legal entity." 18 U.S.C. §1961(4). The Supreme Court held in 1981 that an enterprise can be a legitimate or illegitimate entity such as a group of criminal conspirators. *United States v. Turkette*, 452 U.S. 576, 580-593 (1981). Even legitimate entities or person can be an enterprise. Id. And the Association in Fact Enterprise as was pleaded can be a proper enterprise for civil RICO purposes. *Boyle v. United States,* 556 U.S. 938 (2009) (reiterating description of "association-in-fact" enterprises set forth in *Turkette*). Also a member of the enterprise like Mr. Mester does not have to continue to be the participant for whole tenure of the Enterprise. *United States v. Weinstein,* 762 F.2d 1522, 1537 n.13 (11th Cir. 1985) (emphasizing that a "continuing unit" does not require participation of all members throughout the life of the enterprise). So Mr. Mester is a proper participator of the enterprise. Even lawful entities can be enterprises for RICO purposes.

Next Mr. Mester claims that there is no continuity and that, "Stephens met Mester on September 21, 2018 and concluded her relationship with Mester at the Closing on March 27, 2019, a time period substantially less than two years. Therefore, Stephens' allegations lack continuity." Movant p. 24. However, that is disputed. Mr. Mester was actively involved with the Defendants Woodburn and others in December of 2021 to represent the purchaser of the subject Real Property. **Ex. D.** Also, it does not matter, how long he was involved in this enterprise. As in *Weinstein* case, it does not require that all participants and enterprise life be pari passu.

Next Mr. Mester argues that the issues related to interstate commerce is missing. This provision of effect on interstate commerce has been liberally construed, with even slight interstate involvement held sufficient to establish jurisdiction. The mailing, wiring of monies and use of banks with prior dealing with the short sale correspondence with Ocwen bank etc. is a clear indicator of the effect on interstate commerce. *DeFalco v. Bernas,* 244 F.3d 286, 309 (2d Cir. 2001) ("The law in this Circuit does not require RICO plaintiffs to show more than a minimal effect on interstate commerce."); *United States v. Miller,* 116 F.3d 641, 674 (2d Cir. 1997); *United States v. Mannino,* 635 F.2d 110, 118 (2d Cir. 1980) (purchase of a home in a neighboring state was sufficient to satisfy interstate commerce requirement). See also, *Calica v. Independent Mortgage Bankers, Ltd.,* 1989 WL 117057 at *2 (E.D.N.Y. Sept. 28, 1989) (it is not difficult to establish the required nexus between the enterprise and interstate commerce). Mr. Mester says that no evidence has been put forth, when the fact of closing and transfer of monies through banking crosses state lines the effect is clear.

Next, he claims that there is no proximate cause. And then he claims that his representation is an isolated fact, however the facts belies the same. He was and stayed as member of this enterprise of association in fact. He had prior dealing and continued to deal with the other racketeers as is clear from Ex. D., a contract in December of 2021. How deep is he involved could have been gauged by the discovery. But certain facts are outstanding and injury to Ms. Stephens was proximately caused by Mr. Mester moving the wheel of Association in fact Enterprise. Also, a plaintiff in a section 1962(c) case based on a pattern of mail or wire fraud need not allege that the injury was caused by the plaintiff's reliance on any false representations. In 2008, the Supreme Court ruled in *Bridge v. Phoenix Bond & Indemnity Co.* that such a RICO plaintiff could satisfy the proximate cause requirement by pleading that the injury suffered was proximately caused by misrepresentations made to a third party that relied on them, rather than to the plaintiff. *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 128 S. Ct. 2131, 2145, 170 L. Ed. 2d 1012 (2008). Here it was way more proximate. How and what extent was Mr. Mester involved is now a matter of trial and Mr. Mester cannot avoid it rehashing the same arguments that he had used before.

**VII. Genuine Issues Exist on the Twelfth Cause of Action: Conspiracy to Violate RICO (18 U.S.C. § 1962(d))**

Next Mr. Mester claims that since the substantive application is questioned, he cannot be held liable for violation section 1962(d). To bolster his argument, Mr. Mr. Mester gets into the thicket of factual assertions, recharacterize the transaction and creates more disputing essentially supporting denial of his own motion. He says that his involvement was only to effectuate what Ms. Bonaparte and Ms. Stephens had already decided. It was a sale lease back. Mr. Mester however does not discuss his continuing relationship with the defendants, Ms. Bonaparte and Mr. Woodburn before meeting Ms. Stephens and after the closing in 2018 of the house. Mr. Mester by his own admission has clearly endorsed the factual underpinning of NY Real Property Law 265-a. Also, how he was an accessory to this whole deprivation of the Real Property of Ms. Stephens. He did not counsel her at the table where the closing occurred. He did not tell her anything in his office. He achieved what he wanted and he was clearly eyeing to sell the property further to maximize the value that they scammed from Ocwen and of course Ms. Stephens.

Section 1962(d) declares it unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of section 1962. Relying on traditional conspiracy law, which provides that, so long as they share a common purpose, conspirators are liable for the acts of their co-conspirators, the Supreme Court has ruled that RICO does not require that the defendant must commit or agree to commit two or more predicate offenses in order to violate section 1962(d). Salinas v. United States, 522 U.S. 52 (1997). Indeed, "[t]he interplay between subsections (c) and (d) does not permit us to excuse from the reach of the conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense." *Id* at 65. All what Mr. Mester had to do to violate the RICO conspiracy, need only "intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense[;] . . . it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." Id. See also *Wiwa v. Royal Dutch Petroleum Co.,* 2002 WL 319887, at *26 (S.D.N.Y. Feb. 28, 2002) (co-conspirators need not know of all violations by the other conspirators in furtherance of the conspiracy; finding plaintiff alleged RICO conspiracy claim). Mr. Mester clearly in violation of the substantive offenses, cannot now claim that Plaintiff has no evidence to prove their case, when facts are so clearly littered around the documents that the Ms. Stephens could provide. This is not claim amenable to summary judgment, it must be tried. As substantive RICO survives, so does conspiracy. RSAC ¶¶ 115-120 alleges agreement to commit predicates.

Objective was fraudulent, not legitimate. Fact issues on agreement persist, and whatever we see actually supports Ms. Stephen's position.

### VIII. Genuine Issues Exist on the Nineteenth Cause of Action: Legal Malpractice

Mester denies negligence or causation. RSAC ¶¶ 150-155 alleges Mester failed to pursue the best for the Debtor and or provide competent advice, rather provided conflicted advice, and caused loss of home. "But for" his actions, Stephens could have defended foreclosure or avoided scam. See Bryant v. Silverman, 284 F. Supp. 3d 458 (S.D.N.Y. 2018). Intervening events do not break chain where foreseeable. Stagl v. Delta Airlines, Inc., 52 F.3d 463 (2d Cir. 1995). Disputes over reasonable strategy and outcomes require denial.

Mr. Mester argues at length that this is what his Client, Ms. Stephens wanted and this is what she got. And that she and Ms. Bonaparte had made up their mind, that he just officially presided over the closing and was done with it. However, the facts are way more stacked against Mr. Mester.

The case cited by Mr. Mester in his motion—*In re Modikhan*, No. 19-46591-jmm (Bankr. E.D.N.Y. Nov. 27, 2024)—involves a pro se debtor's malpractice claim against her Chapter 13 bankruptcy attorney in the context of an alleged loan modification scam. While Mester relies on Modikhan to argue that Stephens' Nineteenth Cause of Action (legal malpractice) fails for lack of causation and damages (similar to the court's grant of summary judgment there). *Modikhan* granted summary judgment only because no causation/damages (meritless underlying claims). It favors Stephens by implying survival where, as here, genuine disputes exist (e.g., scam viability, Mester's negligence rather complicity causing title loss). NY elements of malpractice Stephens meets: Relationship (Ex. A), negligence and fraud (conflicts, poor advice, greed in the outcome like self dealing), cause/damages (equity loss). It all supports denial of summary judgment (Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)).

In order to render summary judgment for a party, a court must find that judgment should be rendered for a party as a matter of law. *Ellington v. City of East Cleveland*, 689 F.3d 549, 556–58 (6th Cir. 2012) (affirming the granting of summary judgment against plaintiff, a deputy clerk of a municipal council, on claims under the Fair Labor Standards Act and state statutes for violations of the minimum wage and overtime provisions, because the trial court, relying on the "legislative employee" exception to each statute, correctly concluded that the plaintiff was not an

employee covered by these statutes). Here, the RSAC has detailed factual background of what really happened, further buttressed with exhibits.

Here, Mester makes lot of imputation, conclusory allegations and attempts to recharacterize the facts. However that itself does not provide a basis for summary judgment, rather it creates a issues for the Court to decide if the factual strife is material and germane to the outcome of the case. A mere statement that an opposing party will not be able to meet its burden of proof at trial is not sufficient. One must demonstrate that the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine factual dispute. Mr. Mester provide no affirmative evidence, other that the Court must look at the facts as he describes them. it is clear that a party moving for summary judgment, who does not have the burden of proof at trial, has two ways of meeting its initial burden of demonstrating there is no material issue of fact and judgment should be entered in its favor as a matter of law. Mr. Mester fails in both aspects. Mr. Mester claims that he received no payment from Ms. Stephens, however the closing documents shows he received a payment of $5000 statement. See Ex. B (Checks paid) and C (HUD statement). Also he continued to have interest in the real property as a lawyer for orchestrating this scheme of short sale and scamming the equity. Mr. Mester had a 20% interest in the sale of properties. It is unclear as there was no discovery on this, if Mr. Mester made monies on financing after the approval of short sale. There is doubt that Mr. Mester continued with his interest in the Real Property for a second round of contemplated short sale. Ex. D. The parties are same. The plain meaning and reading of the Retainer shows a party complicit in denial of competent advice to the Client and safeguarding his own interest.

Here, Mester has not met his burden. For instance, his claim that Plaintiff "admitted" to certain facts in prior proceedings is disputed, as those admissions were not voluntary and are contradicted by evidence in the Docket (Exhibits to Mester's Motion) and Plaintiff's Complaint. Courts in the Second Circuit have held that summary judgment is inappropriate where credibility issues exist, such as disputes over intent in fraud claims. *See Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir. 1984) (summary judgment improper where material facts depend on credibility determinations). Fraud claims, in particular, often involve questions of intent and knowledge that are ill-suited for summary disposition. *Wechsler v. Hunt Health Sys., Ltd.*, 198 F. Supp. 2d 508, 514 (S.D.N.Y. 2002); *see also Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011) (non-movant need only show genuine issue, not prevail); *Hicks v. Baines*, 593

F.3d 159, 166 (2d Cir. 2010) (speculation alone insufficient, but here evidence of scam raises genuine dispute).

Wherefore the Defendant, Mr. Charles Mester's motion be denied in its entirety.

**Dated: New York, New York**
**January 20, 2026**

**Dahiya Law Offices, LLC**
*Counsel for the Plaintiff*

*/s/karamvirdahiya*
Karamvir Dahiya
111 John Street Suite 1860
New York NY 10038
Tel: 212 766 8000
karam@dahiya.law