UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:

Evis Neverlane Stephens,

                              Debtor.
-------------------------------------------------------------------X

Evis Neverlane Stephens,

                            Plaintiff,

                v.

Maxine Bonaparte, Lezantonio Woodburn,
12706 Holdings Inc., Charles L Mester, Esq.,
Planet Management Group, LLC, Planet Home
Lending LLC dba Planet Home Servicing,
Wilmington Savings Fund Society, FSB (WSF),
Verus Securitization Trust 2020-NPL1,

                        Defendants.
-------------------------------------------------------------------X

Chapter 13

Case No.:  21-42857

Adv. Pro. No.:  22-01037

**MEMORANDUM DECISION AND ORDER ON MOTIONS FOR SUMMARY
JUDGEMENT FILED BY (A) WILMINGTON SAVINGS FUND SOCIETY, FSB AND
VERUS SECURITIZATION TRUST 2020 NPL1, (B) PLANET MANAGEMENT
GROUP, LLC AND PLANET HOME LENDING, LLC d/b/a PLANET HOME
<u>SERVICING; AND (C) EVIS NEVERLANE STEPHENS</u>**

Appearances:

Karamvir Dahiya, Esq.
Dahiya Law Office LLC
75 Maiden Lane, Suite 606
New York, NY  10038

*Counsel for Plaintiff Evis
Neverlane Stephens*

Jason D. St. John, Esq.
Chadwick Devlin, Esq.
Ashley M. Slater, Esq.
Akerman LLP
1251 Avenue of the Americas,
37th Floor
New York, NY 10020

*Counsel for Defendants
Wilmington Savings Fund Society,
FSB and Verus Securitization
Trust 2020-NPL1*

Ryan P. Mulvaney, Esq.
Stevens & Lee, P.C.
669 River Drive, Suite 201
Elmwood Park, NJ 07407

*Counsel for Defendants Planet
Management Group, LLC and
Planet Home Lending, LLC
d/b/a Planet Home Servicing*

**INTRODUCTION**

Evis Neverlane Stephens ("Plaintiff") alleges she is the victim of a scheme that caused her to transfer her home to Defendant 12076 Holdings Inc. ("Holdings"). Defendant Lezantonio Woodburn ("Woodburn") owns Holdings. Defendant Maxine Bonaparte ("Bonaparte") was Plaintiff's real estate agent and introduced Plaintiff to Woodburn and Charles L. Mester, Esq. ("Mester"). Mester is the attorney that represented Plaintiff in connection with the sale of Plaintiff's home to Holdings.

Plaintiff alleges that Bonaparte, Woodburn, and Mester told her they would help her save her home from foreclosure. Plaintiff alleges they told her if she transferred her home to Woodburn or Holdings, they would pay off her mortgage, she could continue to live in the home, and, at some point, they would transfer the home back to her. However, Holdings did not transfer the property back to Plaintiff and Plaintiff alleges that Woodburn and Bonaparte harassed and intimidated Plaintiff and her family to get them to vacate the home.

Plaintiff alleges that Defendant Planet Management Group ("Planet Management"), financed Holdings' acquisition of the property, Planet Home Lending, LLC d/b/a Planet Home Servicing ("Planet Servicing" and together with Planet Management, the "Planet Defendants") serviced Planet Management's mortgage, and the Planet Defendants participated in the scheme to trick Plaintiff into selling her home to Holdings. Planet Management assigned its mortgage on the Plaintiff's home to Defendant Wilmington Savings Fund Society, FSB ("Wilmington"). Wilmington serves as the owner trustee of Defendant Verus Securitization Trust 2020-NPL1 ("Verus" and together with Wilmington, the "Wilmington Defendants").

Plaintiff has moved for summary judgment to void the deed conveying her home to Holdings on the grounds the deed was procured by fraud in factum. Alternatively, she seeks to rescind the sale of her home and avoid the Wilmington Defendants' mortgage pursuant to New

2

York's Home Equity Theft Prevention Act.  Lastly, Plaintiff seeks to avoid the transfer of her home and avoid the Wilmington Defendants' mortgage based on New York's former Fraudulent Conveyance Act.

The Planet Defendants and Wilmington Defendants have moved for summary judgment to dismiss Plaintiff's claims.  Additionally, the Wilmington Defendants seek an equitable mortgage on the Residence.  For the reasons set forth below, Plaintiff's motion for summary judgement is denied and the Planet Defendants and the Wilmington Defendants' motions for summary judgment are granted.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York dated August 28, 1986, as amended by the Order dated December 5, 2012.  The Plaintiff's claims and the Wilmington Defendant's counterclaim that are the subject of this decision are core matters or related proceedings.  Plaintiff, the Planet Defendants, and the Wilmington Defendants have consented to this Court hearing and determining all claims and counterclaims in this adversary proceeding.  Pl.'s Statement Consent, Adv. Pro. ECF No. 180[1]; Letter, Adv. Pro. ECF No. 183; Letter, Adv. Pro. ECF No. 184.

## PROCEDURAL BACKGROUND

Plaintiff filed a petition for relief under chapter 13 of the Bankruptcy Code on November 15, 2021 (the "Petition Date").  Chapter 13 Voluntary Pet., ECF No.1.[2]

---

[1] Citations to "Adv. Pro. ECF No.__" are references to documents filed on the docket of *Stephens v. Bonaparte et al.*, Adv. Pro. No. 22-01037.

[2] Citations to "ECF No. __" are references to documents filed on the docket of *In re Stephens*, Case No. 21-42857 (the "Bankruptcy Case").

Plaintiff commenced this adversary proceeding on May 9, 2022, against Bonaparte, Mester, Woodburn, and Holdings.  Compl., Adv. Pro. ECF No. 1.  On December 28, 2022, Plaintiff filed an amended complaint that added the Planet Defendants and the Wilmington Defendants.  Am. Compl., Adv. Pro. ECF No. 34.

The Wilmington Defendants, the Planet Defendants, and Mester each filed motions to dismiss.  Mot. Dismiss, Adv. Pro. ECF No. 48 (the "Wilmington MTD"); Mot. Dismiss, Adv. Pro. ECF No. 51 (the "Planet MTD"); Mot. Dismiss, Adv. Pro. ECF No. 13 (the "Mester MTD").

On March 23, 2023, the Court issued a Memorandum Decision that granted the Mester MTD in part.  Mem. Decision, Adv. Pro. ECF No. 54.

On April 24, 2023, the Court entered an order directing all parties to mediation.  Order, Adv. Pro. ECF No. 65.  On October 6, 2023, the mediators reported that the parties had reached an impasse.  Mediator's Report, Adv. Pro. ECF No. 73.

On January 5, 2024, the Court granted in part the Planet MTD and the Wilmington MTD but granted Plaintiff leave to amend the complaint to allege facts establishing Plaintiff's standing to bring causes of action to avoid and recover fraudulent conveyances.  Mem. Decision Mot. Dismiss, Adv. Pro. ECF No. 81.  On February 22, 2024, Plaintiff filed a second amended complaint ("Second Amended Complaint").  Am. Compl. Revised, Adv. Pro. ECF No. 93.

The following causes of action against the Planet Defendants and the Wilmington Defendants survived the motions to dismiss:

- First Cause of Action – in which Plaintiff seeks a declaration that the deed conveying Plaintiff's property is void due to Forgery or Fraud in Factum

- Second Cause of Action – in which Plaintiff seeks rescission of the sale of her home and avoidance of the mortgages on her home based on New York's Home Equity Theft Prevention Act

- Third Cause of Action – in which Plaintiff seeks to quiet title to her home based on common law

- Tenth Cause of Action – in which Plaintiff seeks to quiet title to her home based on New York Real Property Actions and Proceedings Law, Article 15

- Fifteenth Cause of Action–A, B, C, Sixteenth Cause of Action and Seventeenth Cause of action – in which Plaintiff seeks to avoid and recover her home based on New York's former Fraudulent Conveyance Act and Bankruptcy Code sections 544 and 550, and to claim the home as exempt property

On March 6, 2024, the Wilmington Defendants answered and asserted a counterclaim against the Plaintiff seeking equitable subrogation of their mortgage on the Plaintiff's home and a cross-claim against Planet Management for damages arising from the assignment of a mortgage loan from Wilmington to Planet Management. Answer Am. Compl. with Cross-Cl. and Countercl., Adv. Pro. ECF No. 97. Plaintiff answered the Counterclaim. Answer Countercl., Adv. Pro. ECF No. 100. Planet Management answered the Wilmington Defendants' cross-claim. Answer Cross-Cl., Adv. Pro. ECF No.101.

On June 10, 2024, the Planet Defendants answered the Second Amended Complaint, counterclaimed against Plaintiff for an equitable lien, equitable subrogation of their mortgage, and money damages for unjust enrichment. Answer Am. Compl. Countercl., Adv. Pro. ECF No. 102. The Planet Defendants asserted crossclaims against Holdings for indemnification, breach of contract, and attorney's fees, costs and expenses. *Id.* at ¶¶ 56-60;66-76. The Planet Defendants also asserted crossclaims against Woodburn to recover on a guaranty and for attorney's fees, costs and expenses. *Id.* at ¶¶ 61-72.

On July 31, 2024, Plaintiff's counsel informed the Court he had been suspended from practice. Letter, Adv. Pro. ECF No.106. On November 5, 2024, Narissa Joseph appeared as counsel for the Plaintiff. Notice of Appearance, Adv. Pro. ECF No. 111. On August 4, 2025, after entry of an order lifting his suspension, Plaintiff's original counsel appeared as counsel for

Plaintiff.  Letter, Adv. Pro. ECF No. 133.  On August 28, 2025, Plaintiff answered the Planet Defendants' counterclaim.  Answer Countercl., Adv. Pro. ECF No. 146.

On October 17, 2025, the Wilmington Defendants moved for summary judgment seeking dismissal of Plaintiff's remaining causes of action and judgment in favor of the Wilmington Defendants on its counterclaim for equitable subrogation of its mortgage on Plaintiff's home. Mot. Summ. J., Adv. Pro. ECF No. 150.  Plaintiff filed her objection on December 19, 2025. Mem. Law Opp'n, Adv. Pro. ECF No. 168.  The Wilmington Defendants filed their reply on January 9, 2026.  Reply Mem. Law Further Supp., Adv. Pro. ECF No. 170.

On October 24, 2025, Plaintiff moved for summary judgment seeking judgment against all defendants on all remaining causes of action and dismissing Wilmington's counterclaim for equitable subrogation.  Pl.'s Mot. Summ. J., Adv. Pro. ECF Nos. 152, 154, 155.  The Wilmington Defendants objected to Plaintiff's motion for summary judgment.  Mem. Law Opp'n, Adv. Pro. ECF Nos. 158, 159, 160.  The Planet Defendants also objected to Plaintiff's motion for summary judgment.  Mem. Law Opp'n, Adv. Pro. ECF No. 169.  Plaintiff replied to both Wilmington Defendants' and Planet Defendants' motions for summary judgment on January 26, 2026.  Reply, Adv. Pro. ECF Nos. 174, 175.

On December 10, 2025, the Planet Defendants moved for summary judgment.  Mot. Summ. J., Adv. Pro. ECF Nos. 163, 164.  Plaintiff objected on January 24, 2026.  Mem. Law Opp'n, Adv. Pro. ECF No. 173.  The Planet Defendants did not reply to Plaintiff's opposition.

Woodburn, Bonaparte, and Holdings have not answered or otherwise responded to the Plaintiff's Second Amended Complaint or the cross-claims.  To date, Plaintiff has not moved for default judgment against Woodburn, Bonaparte, or Holdings.  Mester filed opposition to Plaintiff's motion for summary judgment.  Opp'n Mot. Summ. J., Adv. Pro. ECF No. 166.

Plaintiff replied to Mester's opposition.  Reply, Adv. Pro. ECF No. 176.  Plaintiff's claims against Mester will be considered in a separate decision.

## FACTS

Plaintiff purchased a house commonly known as 127-06 177th Street, Jamaica, New York (the "Residence") in 2006.  Pl. Statement Undisputed Material Facts ¶ 3, Adv. Pro. ECF No. 152-3 ("Pl. Facts"); Planet Defendants' Statement of Undisputed Facts ¶ 1, Adv. Pro. ECF No. 164-1 ("Planet Facts"); Wilmington Defendants' Statement of Undisputed Facts ¶ 1, Adv. Pro. ECF No.150-49 ("Wilmington Facts").

Plaintiff financed the purchase of the Residence with a loan from Novastar Mortgage, Inc., in the original principal amount of $630,000.00 (the "2006 Mortgage").  Pl. Facts ¶ 3; Wilmington Facts ¶ 2; Planet Facts ¶ 2.

Ocwen Loan Servicing LLC ("Ocwen") was the servicer for the 2006 Mortgage.  Wilmington Facts ¶ 4; Planet Facts ¶ 4.  In 2010, Ocwen agreed to modify the 2006 Mortgage, after Plaintiff fell behind on her mortgage payments.  Wilmington Facts ¶¶ 3, 5, 15; Planet Facts ¶¶ 3, 5.

Plaintiff stopped making mortgage payments after receiving the modification.  Stephen's Dep. Tr. 118:19-24 ("Stephen's Dep. Tr."), Mulvaney Dec., Ex. D, Adv. Pro. ECF No. 164-8.  Plaintiff stopped making payments based on her conversation with John Clark.  *Id.* at 118:2-120:25.  Plaintiff said she met John Clark prior to 2006 when he helped her with real estate matters unrelated to the Residence.  *Id.* at 45:7-20.  Plaintiff said that John Clark told her something "about robo signing," and based on John Clark's advice, Plaintiff believed she could keep the Residence without paying the 2006 mortgage.  *Id.* at 120:19-25.

7

In 2015, Deutsche Bank National Trust Company as Trustee for Novastar Mortgage Funding Trust, Series 2006-5 Novastar Home Equity Loan ("Deutsche Bank") commenced an action (the "2015 Foreclosure Action") to foreclose the 2006 Mortgage.   Pl. Facts ¶ 4 ; Wilmington Facts ¶ 7; Planet Facts ¶ 7.  John Clark introduced Plaintiff to Mr. Rouse, an attorney who represented Plaintiff in the 2015 Foreclosure Action.  Stephen's Dep. Tr. 47:20-48:6; 114:16-115:8.  The New York state court granted Deutsche Bank's motion for summary judgment and entered an order of reference dated August 4, 2017.   Wilmington Facts ¶ 8; Planet Facts ¶ 8.

At some point, John Clark's nephew, Otis, introduced Plaintiff to Bonaparte.  Stephen's Dep. Tr. 129:16-25, 130:3-21.  Bonaparte advised she could save the Residence from foreclosure by putting the Residence in Woodburn's name temporarily and then putting the Residence back in Plaintiff's name.  *Id.* at 131:17-22.  Bonaparte introduced Plaintiff to Mester, an attorney.  *Id.* at 133:8-25,134:1-3.  Plaintiff met with Bonaparte, Otis, and Mester around September 21, 2018.  Stephen's Dep. Tr. at 135:15-23; Wilmington Facts ¶ 11; Planet Facts ¶ 11.

Plaintiff signed a contract, dated July 2018 (the "Sale Contract"), to sell the Residence to Holdings.  Stephen's Dep. Tr. 188-190:2-20; Stephen's Dep. Tr., Ex. J, Adv. Pro. ECF No. 150-15.  Plaintiff and Holdings closed the sale on March 27, 2019 (the "Transfer Date").  Pl. Facts ¶ 26-28; Wilmington Facts ¶ 16; Planet Facts ¶ 16.

Plaintiff claims Woodburn, Holdings, and Bonaparte failed to reconvey the Residence back to her.  Am. Compl. Revised, ¶¶ 28, 33, 55, 56, Adv. Pro. ECF No. 93.  Plaintiff also alleges that Woodburn and Bonaparte harassed Plaintiff and her family to compel them to vacate the Residence.  *Id.* at ¶31-35.  Further, Plaintiff alleges Woodburn and Bonaparte bullied Plaintiff and her husband into signing an occupancy agreement that restricted Plaintiff to using

8

only a part of the Residence and imposed onerous terms.  Am. Compl. Revised, ¶ 31-35, Adv. Pro. ECF No. 93; Pl. Facts, ¶ 33-40.  Moreover, Plaintiff alleges that Woodburn and Bonaparte rented portions of the Residence to other people.  Am. Compl. Revised, ¶34, Adv. Pro. ECF No. 93

Holdings financed its purchase of the Residence with a $535,000 loan from Planet Management (the "2019 Loan"), secured by a mortgage on the Residence (the "2019 Mortgage").  Pl. Facts ¶ 29; Wilmington Facts ¶ 24; Planet Facts ¶ 25.  Loan proceeds of $337,500 were wired to Ocwen, and Ocwen accepted the $337,500 in full satisfaction of the 2006 Mortgage.  Wilmington Facts ¶23-26; Planet Facts ¶ 23.  Deutsche Bank then discontinued the 2015 Foreclosure Action and released the 2006 Mortgage on the Residence.  Wilmington Facts ¶ 27-29; Planet Facts ¶ 27-29.

IRP Fund II Trust 1A ("IRP") purchased the 2019 Loan and the 2019 Mortgage from Planet Management on April 30, 2019.  Wilmington Facts ¶ 33; Planet Facts ¶ 30.  Verus was formed in 2020 to issue a securitization of non-performing mortgage assets.  Dellovo Dec. ¶ 8, Adv. Pro. ECF No. 150-36.  IRP transferred the 2019 Loan to Verus.  *Id.*  Wilmington serves as the owner trustee of the Verus trust.  *Id.* at ¶ 9.  On May 2, 2022, Planet Management assigned the 2019 Mortgage to Wilmington, as owner trustee for Verus.  *Id.* at ¶10.

## DISCUSSION

### I.    Standards for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

"In ruling upon a summary judgment motion, the court's job is not to resolve disputed issues of fact, but to determine whether a genuine issue of fact exists." *Bethpage Fed. Credit Union v. Freidman (In re Kabbalah Taxi Inc.)*, No. 17-45743-cec, Adv. Pro. No. 18-1016-cec, 2018 WL 3569314, at *2 (Bankr. E.D.N.Y. July 20, 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

"When viewing the evidence, the court must 'assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [the non-movant's] favor.'" *Weinstock v. Columbia Univ*., 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Delaware & Hudson Ry. Co. v. Consol. Rail Corp*., 902 F.2d 174, 177 (2d Cir. 1990)).

A movant has the initial burden of establishing the absence of any genuine issue of material fact, which burden may be discharged by pointing out the absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323–25. Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. "The nonmoving party must show that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements." *Rosenman & Colin LLP v. Jarrell (In re Jarrell)*, 251 B.R. 448, 450–51 (Bankr. S.D.N.Y. 2000) (internal citations omitted).

**First Cause of Action**
**Cancellation of Deed Based upon Forgery or Fraud in Factum**
**(Against All Defendants)**

Plaintiff seeks summary judgment that her conveyance of the Residence to Holdings is void because the deed was procured by fraud in factum. [3]  Pl. Mem. of Law 48, Adv. Pro. ECF No. 152-1 ("Pl. MOL").  Plaintiff claims she did not knowingly convey title and believed the documents she signed at closing were for a loan modification.  *Id*.  Further, Plaintiff argues the 2019 Mortgage is void because the deed is void.  *Id.* at 49.  The Planet Defendants and the Wilmington Defendants seek summary judgment dismissing Plaintiff's First Cause of Action, alleging that Plaintiff knew she was signing a deed that conveyed the Residence to Holdings. Planet Defendants' Mem. of Law 5-8, Adv. Pro. ECF No.163-3; Wilmington Defendants' Mem. of Law 3-5, Adv. Pro. ECF No. 150-49.

Fraud in the factum, also known as fraud in the execution, is a claim that a party was induced to sign something entirely different than what the party thought they were signing. *Ackerman v. Ackerman,* 120 A.D.3d 1279, 1280 (App. Div. 2d Dep't 2014); *Whitehead v. Town House Equities, Ltd.*, 8 A.D.3d 367, 368 (App. Div. 2d Dep't 2004).  If the grantor is tricked into signing a deed believing it to be some other instrument, the signature is a forgery, and the deed is invalid "to the same extent that it would have been if the grantor's signature had been actually forged by a third person."  *Grimes v. Green Point Sav. Bank (In re Grimes)*, 147 B.R. 307, 313 (Bankr. E.D.N.Y. 1992); *see also First Natl. Bank of Odessa v. Fazzari*, 10 N.Y.2d 394, 397 (1961) (finding fraud in the factum where party signed promissory note believing it to be statement of wages earned); *JPMorgan Chase Bank, Nat'l Ass'n v. Kalpakis*, 30 Misc.3d

---

[3] Plaintiff alleged in the Second Amended Complaint that her signature was forged.  Am. Compl. Revised ¶67, Adv. Pro. ECF No. 93 ("Because of the forgery of plaintiff's name to the grant deed or the fraud in the factum in obtaining plaintiff's signature, the subject grant deed is null and void *ab* initio").  Plaintiff does not allege forgery in her motion for summary judgment.

1236(A) (Sup. Ct. Suffolk Cnty. 2011) ("[It is] well settled that deeds and encumbrances that are forged or executed under false pretenses are the result of fraud in the factum (a/k/a fraud in the execution) and are void *ab initio*."), *aff'd sub nom. JP Morgan Chase Bank, Nat'l Ass'n v. Kalpakis*, 91 A.D.3d 722 (App. Div. 2d Dep't 2012).

To prevail on a claim for fraud in the factum, the claimant must prove "there [was] a 'misrepresentation as to the character or essential terms of a proposed contract,' and the party signed without knowing or having a 'reasonable opportunity to know of its character or essential terms.'" *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 31–32 (2d Cir. 1997) (quoting Restatement (Second) of Contracts § 163 cmt. a (Am. L. Inst. 1981)).

Plaintiff failed to introduce evidence supporting her claim of fraud in the factum. Plaintiff testified she understood that by signing the deed, she was transferring the Residence to someone else. Stephen's Dep. Tr. 132:17-133:7; 167:17-24; 333:13-15; 343:20-23. Plaintiff also testified she agreed to pay Bonaparte $10,000 for transaction costs and to negotiate with Ocwen for the Residence to be sold to Woodburn in a short sale. *Id.* at 300:6-7; 342:14-17. Further, Plaintiff signed the Sale Contract, which is some evidence that Plaintiff knew she was transferring the Residence. Moreover, Plaintiff testified she regretted not selling the Residence to someone else for $10,000. *Id.* at 161:9-19.

Plaintiff testified she transferred the Residence to avoid foreclosure and to get the Residence back one day. *Id.* at 132:7-9 ("[Bonaparte] told me, I know a friend. If I put the property in their name, I will get back my house."); *Id*. at 331:20-332:6 (Plaintiff testified the Residence would be put into Woodburn's name, she would get nothing but, after a while, she would get the Residence back.). Plaintiff testified that she believed after the Residence was transferred, Plaintiff could stay in the Residence for two years and pay $2,500 monthly (toward

the mortgage on the Residence), then Holdings would convey the Property back to Plaintiff; provided Plaintiff continued to pay the 2019 Mortgage. *Id.* at 297:22-298:1; 298:11-14; 299:9-15; 299:20-300:20; 300:8-17; 301:19-302:6.  Plaintiff testified she made the $2,500 monthly payments, until Bonaparte told her to stop. *Id.* at 329:18-25- 330:2-14.  Plaintiff also testified she could get the Residence back if she refinanced the 2019 Mortgage. *Id.* at 337:22-338:9.[4]

Although Plaintiff's testimony that she transferred the Residence with the belief the Residence would be conveyed back to her is not refuted, her testimony does not support a claim of fraud in factum.  To the contrary, her testimony evidences she knew she was conveying the Residence to Holdings, but Holdings breached its agreement to convey the Residence back to her.

Plaintiff points to deposition testimony that she claims evidences that she signed the documents under duress believing the documents were to refinance the 2006 mortgage, not to transfer title.  Pl. Mem Opp'n Planet Def. Mot. Summ. J. 3, Adv. Pro. ECF No. 173.  The portions of the deposition cited by Plaintiff, however, relate to Plaintiff's other real estate transactions, not Plaintiff's transfer of the Residence to Holdings.  Stephen's Dep. Tr. 50-60 (Plaintiff describing transfer of 1487 East 53rd Street to Mr. Clarke); *Id.* at 80-90 (Plaintiff describing her purchase of Residence, not her sale of Residence to Holdings and documents related to 1487 East 53rd Street.).[5]

---

[4] Plaintiff did not produce documents memorializing an agreement for Holdings, Woodburn, or Bonaparte to convey the Residence to Plaintiff.

[5] Plaintiff's brief cites "Dep. Tr., June 3, 2025, at 50-60, 80-90; July 30, 2025, at 20-30".  Plaintiff was deposed on June 3, 2025 and July 30, 2025.  Plaintiff's citation to Dep. Tr. July 30, 2025, 20-30 is error.  The July 30, 2025 deposition starts at page 268 since it is the continuation of Plaintiff's June 3, 2025 deposition.  Pages 20 to 30 of the PDF version of the July 30, 2025 deposition transcript are page numbers 286-296.  Plaintiff's testimony concerns verification of documents, documents Plaintiff reviewed to prepare for the deposition, Holdings' attempts to collect money from Plaintiff after the Transfer Date, and Plaintiff's loan to purchase the Residence,  Pages 20 to 30 of the June 3, 2025, deposition concern Plaintiff's income, employment, and decision to purchase the Residence, not the Debtor's transfer of the Residence to Holdings in 2019.

Therefore, Plaintiff has failed to prove that Holdings procured the deed to the Residence through fraud in the factum, Plaintiff's motion for summary judgment on the First Cause of Action is denied, and the Planet Defendants' and the Wilmington Defendants' motions to dismiss the First Cause of Action is granted.

<h3 style="text-align:center">Second Cause of Action[6]<br>Recission of Equity Purchase Contract and Grant Deed, Declaratory Relief and Damages<br>(Against all Defendants)</h3>

Plaintiff seeks summary judgment that she may rescind[7] the deed transferring the Residence to Holdings and avoid the 2019 Mortgage under New York's Home Equity Theft Prevention Act ("HETPA").  HETPA is:

> intended to prevent abusive and fraudulent practices by purchasers of distressed properties who falsely promise to "save" properties and to reconvey them to the homeowners at a future date.  The Act regulates certain sales of distressed properties, and imposes stringent procedural and substantive requirements for sales contracts ("covered contracts") between homeowners ("equity sellers") and purchasers ("equity purchasers").  [HETPA] imposes potential civil and criminal penalties for violations on both equity purchasers as well as lending institutions, and creates a right of rescission extending for two years after a sale.

Damaris E. Torrent, Prac Commentaries, McKinney's Cons Laws of NY, N.Y. Real Prop. Law § 265-a.

Homeowners seeking rescission under HETPA must show:  (1) the seller is an equity seller; (2) the purchaser is an equity purchaser; (3) the agreement between the equity seller and the equity purchaser is a covered contract; (4) the covered contract does not comply with

---

[6] Plaintiff's Memoranda of Law erroneously refers to her claim under New York Real Property Law Section 265-a(8) as the First Cause of Action.  Pl. Mem. Law, Adv. Pro. ECF No. 152-2, 12-15.  This cause of action is asserted as the Second Cause of Action in the Second Amended Complaint.  Am. Compl. Revised, Adv. Pro. ECF No. 93, at ¶¶ 70-84.

[7] Plaintiff's Memoranda of Law concludes by requesting an award of "actual and statutory damages, including $25,000 per RPL § 265-a violation, lost equity, attorneys' fees, and punitive damages as pled."  Pl. Mot. Summ. J 50, Adv. Pro. ECF No. 152-1.  However, Plaintiff has not briefed the issue of damages or provided evidentiary support for an award of damages as against the Wilmington Defendants or the Planet Defendants under HETPA or otherwise.

HETPA; and (5) the equity seller complied with HETPA's requirements for rescinding a covered contract.  *Id.*  The burden of proof is on the equity seller to prove its claim by a preponderance of the evidence.

<u>Plaintiff is an Equity Seller</u>

HETPA defines "equity seller" as "a natural person who is a property owner or homeowner at the time of the equity sale."  N.Y. REAL PROP. Law § 265-a (2)(f) (McKinney 2026).  Plaintiff is an equity seller because she is a natural person, and she owned the Residence as of the Transfer Date.  Pl. Facts ¶ 3; Planet Counterstatement of Undisputed Facts ¶ 3, Adv. Pro. ECF No. 169-2.

<u>Holdings and Planet are Equity Purchasers</u>

HETPA defines "equity purchaser" as "any person who or entity which acquires title to any residence in foreclosure . . .  except a person who acquires such title as a bona fide purchaser or encumbrancer for value.  N.Y. REAL PROP. Law § 265-a (2) (McKinney 2026).

Holdings is an equity purchaser because it is an entity that acquired title to the Residence while it was in foreclosure.  Planet Management contends it is not an equity purchaser because it is a good faith encumbrancer for value.

Respecting good faith purchasers or encumbrancers for value, HETPA provides:

> The provision of [New York Real Property Law Section 265-a(8) which grants equity sellers the right of rescission] shall not affect the interest of a bona fide purchaser or encumbrancer for value if such purchase or encumbrance occurred prior to the recording of the notice of rescission . . . .  Knowledge that the property was residential real property in foreclosure or, where applicable, default shall not impair the status of such persons or entities as bona fide purchasers or encumbrancers for value.  This subdivision shall not be deemed to abrogate any duty of inquiry which exists as to rights or interests of person in possession of the residential real property in foreclosure, or where applicable, default.

N.Y. REAL PROP. Law § 265-a (8)(c) (McKinney 2026).  Generally, a mortgagee is under a duty of inquiry if it is "aware of facts that would lead a reasonable, prudent lender to make inquiries

15

of the circumstances of the transaction at issue."  N.Y. REAL PROP. Law § 266 (McKinney

2026); *see also Miller-Francis v. Smith-Jackson*, 113 A.D.3d 28, 34 (App. Div. 1st Dep't 2013)

("If a 'reasonable inquiry' would reveal some evidence of fraud, then failure to 'make some

investigation' will divest the mortgagee of bona fide encumbrancer status"); *Lucia v. Goldman*,

68 A.D.3d 1064, 1066 (App. Div. 2d Dep't 2009) (finding an allegation that mortgagee's agent

was present at closing where transaction details were discussed was sufficient to allege that

mortgagee was chargeable with notice of the alleged fraud and HETPA violations).  Based on the

foregoing, a mortgagee should have a duty of inquiry under HETPA if the mortgagee is aware of

facts that would lead a reasonable, prudent lender to inquire whether the transaction complied

with HETPA.  If a reasonable inquiry would reveal some evidence that the transaction violated

HETPA, the mortgagee would not be good faith encumbrancer.

In connection with the origination of, and due diligence related to, the 2019

Mortgage, Planet Management received, among other things:

> the Title Report; the Title Policy; the Loan Agreement; the Commercial
> Mortgage; the Note; the Guaranty; the appraisal of the Subject Property; the
> Deed and Transfer Documents; . . . Declaration of Non-Owner Occupancy
> executed by 12706 Holdings; . . . Certificate of Business Purpose of Loan signed
> by 12706 Holdings . . . .

Dec. in Support of Mot. Summ. J. ("Woods Aff.") ¶ 54, Adv. Pro. ECF No. 164-40.

The deed that Planet Management received indicated that Plaintiff resided at the

Residence.  Woods Aff. Ex. M-13.  From the Title Report, Planet Management knew the

Residence was in foreclosure and the foreclosure sale was scheduled to occur nine days

prior to the 2019 Mortgage Loan closing.  Woods Aff. ¶ 41; Woods Aff. Ex. F, Part 1,

Ex. F, Part 2; Ex. G.

Schedule B to the Title Insurance Policy that Planet Management received prior to the

closing lists exceptions from title insurance coverage, and states in relevant part:

16

21.  Please advise the [title insurance] Company prior to closing if any mortgage on the property is in arrears two or more months, or if the mortgage pay off letter discloses any late payment charges.  In either situation, a copy of the contract of sale must be delivered to the company prior to closing so that the company can review the contract for compliance with the Home Equity Theft Prevention Act.  Failure to notify the Company of either of these facts and to deliver a copy of the contract prior to closing will result in a delay in the closing while the Company reviews the contract for compliance with the Home Equity Theft Prevention Act.

42.  At closing, the seller(s) must provide an affidavit that they are vacating the subject premises and the purchaser(s) must provide an affidavit that they are planning to occupy the premises or, they are a relative of the seller, a referee for the foreclosing lender or a not-for profit/public housing authority or, the sale is authorized by state statute or pursuant to a court order.  An affidavit stating that the purchaser is a bona-fide purchaser for value is not sufficient.  Otherwise an exception must be taken in both the owner and loan policy to the effect that "Policy will except and not cover any harm, loss or damage including but not limited to legal fees and expenses and/or loss of title arising from any violation of the Home Equity Theft Prevention Act."  The exception does not have to be raised when the seller does not occupy the property as his/her/their principal residence.  If this is the case, please take an affidavit to that effect.

Woods Aff. Ex. F, Part 1, Schedule B ¶¶ 21, 42.

Planet Management admits it obtained a title report and title insurance policy "[a]s is standard in the mortgage lending industry."  Woods Aff. ¶ 38.  The title insurance policy, title report, and deed put Planet on notice that:  Plaintiff was an individual; she resided in the Residence; and the 2006 Mortgage was in foreclosure.  Those documents also put Planet Management on notice that the Residence was "residential real property" as that term is used in HETPA.  Planet Management does not allege it received, prior to closing on the 2019 Mortgage, a copy of the Sale Contract or Plaintiff's affidavit that the Residence was not her principal residence. [8]  Further, Planet Management does not allege it received Holding's affidavit that it

---

[8] Plaintiff executed an "Affidavit of 'Arm's Length Transaction" representing that "[t]here are no agreements . . . between the parties that the [Plaintiff] will remain in the [Residence] as a tenant or later obtain title or ownership of the [Residence], except to the extent that the [Plaintiff] is permitted to remain as a tenant [in the Residence] for a short terms, as is common and customary in the market, but no longer than ninety (90) days, in order to facilitate relocation."  Stephens Dep. Tr., Ex. R annexed as Ex. E. to Mulvaney Dec., Adv. Pro. ECF 169-28.  The affidavit is on Ocwen Loan Servicing LLC letterhead, suggesting Plaintiff delivered the affidavit to Ocwen.  The Planet Defendants do not allege they received the Affidavit prior to closing.

was planning to occupy the Residence.  To the contrary, Planet Management admits it received

Holding's affidavit that it did not intend to occupy the Residence.  Woods Aff. Ex. M-12.

Schedule B of Planet Management's title insurance policy instructed Planet Management

to obtain the Sale Contract and affidavits from the Plaintiff and Holdings to enable the insurance

company to determine whether the transaction was HETPA compliant.  Planet Management does

not contend it received those documents prior to closing the 2019 Mortgage.  Had it obtained the

Sale Contract, it would have known that the Sale Contract did not comply with HETPA.  *See*

*infra* at 19-21.

Under HETPA, Planet Management's knowledge of the foreclosure sale would not

deprive Planet Management of its good faith encumbrancer status.  N.Y. REAL PROP. Law §265-

a (8)(c) (McKinney 2026).  However, once Planet Management had notice that:  the Residence

was "residential real property," Plaintiff may be an "equity seller," Holdings may be an "equity

purchaser," and its title insurer required additional documents to determine whether the sale

complied with HETPA, Planet Management had a duty of inquiry.  If Planet management had

made a reasonable inquiry, it would have learned that the Plaintiff was an equity seller, Holdings

was an equity purchaser, the Residence was residential real property, and the Sale Contract did

not comply with HETPA.  The Court finds Planet Management's failure to make inquiry by

obtaining a copy of the Sale Contract, Plaintiff's affidavit that she did not reside in the

Residence, or Holding's affidavit concerning its intent to reside in the Residence prior to closing

the 2019 Mortgage, all as required by the title insurance policy,  was not reasonable, especially

in light of Planet Management's admission that obtaining title insurance was the industry

standard.  Therefore, Planet Management is not a good faith encumbrancer and is an equity

purchaser under HETPA.

Wilmington admits that prior to acquiring the loan from Planet Management, Verus received a title report, dated March 12, 2019, the Loan Policy of Title Insurance issued by WFG National Title Insurance Company, Declaration of Non-Owner Occupancy executed by Holdings, and the Certificate of Business Purpose of Loan signed by Holdings.  Wilmington Facts ¶¶ 35, 37; Dellavo Dec. ¶ 6, Adv. Pro. ECF No. 150-36.  Therefore, like Planet Management, Wilmington had notice that the Plaintiff was an equity seller, Holdings was an equity purchaser, and the Sale Contract was potentially a covered contract under HETPA.  Like Planet Management, Wilmington does not allege it requested a copy of the Sale Contract or performed other diligence to determine whether the sale violated HETPA.  Therefore, Wilmington is not a good faith encumbrancer and is an equity purchaser under HETPA.

The Sale Contract Qualifies as a Covered Contract

HETPA defines a covered contract as:

> any contract, agreement, or arrangement, or any term thereof, between an equity purchaser and equity seller which:
>
> (i) is incident to the sale of a residence in foreclosure; or
>
> (ii) is incident to the sale of a residence in foreclosure or default where such contract, agreement or arrangement includes a reconveyance arrangement; or
>
> (iii) is incident to the sale of a residence that is the collateral for a "distressed home loan" as defined in paragraph (d) of subdivision one of section two hundred sixty-five-b of this article.

N.Y. REAL PROP. Law § 265-a (2)(c) (McKinney 2026).

HETPA defines "residence" as residential real property consisting of one to four-family dwelling units, one of which the equity seller occupies or occupied at a time immediately prior to the equity sale as his or her primary residence.  N.Y. REAL PROP. Law § 265-a (2)(k) (McKinney 2026).  HETPA defines "foreclosure" to include "an active notice of pendency filed in court . . .

or a foreclosure action . . . has been commenced against the subject property. . . ." N.Y. REAL PROP. Law § 265-a (2)(g) (McKinney 2026).  HETPA defines "distressed home loan" to include a loan incurred by a homeowner primarily for personal, family or household purposes, secured by a mortgage on residential real property.  N.Y. REAL PROP. Law §§ 265-a (2)(c)(iii), 265-b (1)(d) (McKinney 2026).

As set forth above, Plaintiff is an equity seller, and Holdings, Planet Management, and Wilmington are equity purchasers.  The Residence is a two-family house in which Plaintiff resided immediately prior to Plaintiff's sale of the Residence to Holdings.  Pl. Facts ¶ 2; Resp. and Counterstatement of Undisputed Facts ("Planet Response") ¶ 2, Adv. Pro. ECF No. 169-1; Stephen's Dep. Tr. 216:18-25.  Therefore, the Residence is a "residence" or "residential real property" as defined by HETPA.  Deutsche Bank commenced a foreclosure action and filed a notice of pendency prior to the date of the Sale Contract.  Pl. Facts ¶ 4; Planet Response, ¶ 4. Plaintiff was in default under her mortgage prior to the date of the Sale Contract.  Stephen's Dep. Tr. 234:25-236:7.  Accordingly, the Sale Contract is a covered contract under HETPA section 265-a (2)(i).  Under HETPA section 265-a (2) (iii), Plaintiff may rescind the conveyance of the Residence and void the 2019 Mortgage, if the Sale Contract does not comply with HETPA, and Plaintiff complies with HETPA's requirements to effectuate rescission.

The Sale Contract Does Not Comply With HETPA

HETPA requires covered contracts to include a notice to the equity seller that the equity seller may cancel the contract and to provide the date and time of the deadline for cancellation. N.Y. REAL PROP. Law § 265-a (4)(i) (McKinney 2026).  That notice must be in "immediate proximity to the space reserved for the equity seller's signature" and in "at least fourteen point bold type." *Id.* Additionally, the covered contract must be accompanied by a form providing

20

instructions for the cancellation of the covered contract.  N.Y. REAL PROP. Law 265-a (4)(i), (6)

(McKinney 2026).

The Sale Contract does not comply with HETPA because the Sale Contract lacks

the cancellation notice.  Sale Contract, Stephen's Dep. Tr. Ex. J, Mulvaney Dec. Ex. D,

Adv. Pro. ECF No. 169-20.  Further, there is no evidence that Plaintiff was provided with

the instructions to cancel the Sale Contract.

Plaintiff Failed to Comply with HETPA's Requirements Regarding Rescission

A HETPA violation may entitle an equity seller to rescind a conveyance of real

property; provided the equity seller seeks rescission within "two years from the date of

the recording of the conveyance of the residential real property in foreclosure or, where

applicable, default."  N.Y. REAL PROP. Law § 265-a (8)(a) (McKinney 2026).  To

exercise the right of rescission, the equity seller must:

(1) give written notice to the equity purchaser and his or her successor in interest, if the successor is not a bona fide purchaser or encumbrancer.  The notice of rescission shall contain the name of the equity seller and the name of the equity purchaser in addition to any successor in interest holding record title to the residential real property and shall particularly describe such residential real property;

(2) record such notice with the county clerk of the county in which the property is located, within two years of the date of the recording of the conveyance to the equity purchaser; and

(3) return to the equity purchaser any consideration received from the equity purchaser as part of the original transaction.

N.Y. REAL PROP. Law § 265-a (8)(b) (McKinney 2026).  The equity purchaser and their

successors in interest (excluding bona fide purchasers or encumbrancers for value) have twenty

days after the delivery of the notice to reconvey title to the property free and clear of

encumbrances created subsequent to the rescinded transaction and which are due to the actions of

the equity purchaser.  *Id.*  Upon failure to reconvey title within such time, the equity seller may

21

bring an action to enforce the rescission and for cancellation of the covered contract and deed.
*Id.*

Plaintiff provided the Court with a document titled "Recission Notice Pursuant To Real Property Law 265-a." Recission Notice, Adv. Pro. ECF No. 154-21. The notice states, among other things, that the equity purchaser is Holdings. The notice is signed by Plaintiff's counsel of record in this adversary proceeding and is dated November 18, 2021. *Id.* Plaintiff also provided an image of a document signed by Plaintiff's counsel of record in this adversary proceeding, dated November 18, 2021, that states:

> TO THE CLERK OF THE COUNTY OF QUEENS, NEW YORK
>
> You are hereby directed to Index the foregoing Rescission Notice pursuant to Real Property Law §265-a98) [*sic*] to the names of each of the following individuals' entities and attorneys.

*Id.* The names on the list are: Holdings, Woodburn, and United American Title Agency, LLC. *Id.* Plaintiff also includes images of three Certified Mail Receipts, dated November 19, 2021, indicating mail was sent to Holdings, Woodburn, and United American Title Agency, LLC. *Id.* Plaintiff did not provide the Court with the Recording and Endorsement Cover Page for the deed conveying the Residence from Plaintiff to Holdings or other evidence of the date on which that deed was recorded.

Neither Plaintiff's conveyance of the Residence to Holdings nor Holding's conveyance of the 2019 Mortgage to Planet Management are subject to rescission because Plaintiff has not satisfied her burden of proof that she complied with HETPA section 265-a (8)(b). First, the notice of rescission is not authenticated. Notwithstanding that the notice is signed by Plaintiff's attorney and was filed on the Adversary Proceeding docket by Plaintiff's attorney, Plaintiff has not provided an affidavit, from someone with firsthand knowledge that the notice is a true and correct copy of the notice purportedly

22

delivered to Holdings, Woodburn and the title company.  Second, Plaintiff failed to provide proof of service of the notice.  The images of the certified mail receipts are insufficient to prove service because there is no affidavit from someone with firsthand knowledge that the notice was served on Holdings, Woodburn, and United American Title Agency, LLC.  Third, Plaintiff failed to provide proof that the notice was recorded, or the notice was delivered to or received by the Queens County Clerk.

Importantly, the notice does not name Planet Management or Wilmington as equity purchasers and does not allege service of the rescission notice on the Planet Defendants or the Wilmington Defendants.  Even if the notice of recission was timely served and recorded, the notice would not affect a rescission of the 2019 Mortgage due to Plaintiff's failure to include Planet Management or Wilmington on the notice.

Finally, Plaintiff does not provide evidence that she intends to return to Planet Management the consideration she received for the Residence, which is a condition to rescission under HETPA.  N.Y. REAL PROP. Law § 265-a (8)(b)(3) (McKinney 2026). To the contrary, Plaintiff argues "[n]o tender is required given nominal consideration and fraud.  Pl. MOL 15-16.  Plaintiff contends she received no consideration or only nominal consideration for the residence.  *Id*. at 2, 6, 12.  However, the Residence's sale price of $337,000 was wired to Ocwen to satisfy Plaintiff's obligations under the 2006 Mortgage. Planet Facts ¶ 19; Wilmington Facts ¶ 26.  After receipt, Deutsche Bank discontinued the 2015 Foreclosure Action.   Planet Facts ¶¶ 30-32; Wilmington Facts ¶¶ 27-29. Notwithstanding the proceeds for the Residence were not paid directly to Plaintiff, Plaintiff received the benefit of $337,500 of the loan proceeds because the proceeds satisfied Plaintiff's debt to Deutsche Bank in full.  *See Thales Alenia Space France v.*

*Thermo Funding Co., LLC*, No. 13-CV-712, 2014 WL 3887711, at \*4 (S.D.N.Y. Aug. 7, 2014) (Under New York law, promisee may pay consideration to the promisor or some other person); *Cnty. Tr. Co. of New York v. Mara*, 242 A.D. 206, 210-11 (App. Div. 1st Dep't 1934) ("To have an adequate consideration for a promise, the benefit need not move to the promisor, and the discharge of one person from liability under a debt is a sufficient consideration for the promise of another to pay"); *Corning Federal Credit Union v. Georgilis*, 217 A.D.3d 828, 830 (App. Div. 2d Dep't 2023) (mortgagee's payment of real property grantor's creditors, including prior mortgagee, is consideration for purposes of New York's former Debtor and Creditor Law 273); *see also* 22 N.Y. Jur. 2d Contracts § 62 ("Consideration may be given to the promisor or to some other person or by the promisee or by some other person. Thus, to constitute an adequate consideration for a promise, the benefit need not move to the promisor as it may move to a third person.").

For the reasons set forth above, Plaintiff's motion for summary judgment to rescind the deed and avoid the 2019 Mortgage under HETPA is denied and the Planet Defendants' and the Wilmington Defendants' motions to dismiss the Second Cause of Action are granted.

**Third Cause of Action**
**Quiet Title**
**(Against all Defendants and Does 1 through 200, inclusive)**

**Tenth Cause of Action**
**New York Real Property Actions and Proceedings Law, Article 15[9]**

In an action to quiet title, the plaintiff must prove actual or constructive possession of the property and the existence of a removable cloud on the property, which can be a deed or other instrument, that is invalid or inoperative. *Nurse v. Rios*, 160 A.D.3d 888, 888 (App. Div. 2d Dep't 2018) (collecting cases); *see Acocella v. Wells Fargo Bank, NA,* 139 A.D.3d 647, 649 (App. Div. 2d Dep't 2016).

Under Article 15 of the New York Real Property Actions and Proceedings law, "a person [that] claims an estate or interest in real property . . . may maintain an action against any other person . . . to compel the determination of any claim adverse to that of the plaintiff which the defendant makes." N.Y. REAL PROP. Acts. Law § 1501 (McKinney 2023). Claims under Article 15 are similar but not identical to actions to quiet title. The difference is that in Article 15 proceedings, "the law permits the defendant, who has been brought in as a claimant, to set up its own title and demand affirmative relief." 17 Theodore Z. Wyman, J.D., Carmody-Wait § 101:4 (2d ed. 2023). "To obtain summary judgment in an action to quiet title pursuant to RPAPL Article 15, the movant must establish, prima facie, that it holds title, or that the nonmovant's title claim is without merit." *Corriette v. Mele*, 244 A.D.3d 679, 682 (App. Div. 2d Dep't 2025).

Plaintiff's arguments are not clear, but it appears Plaintiff seeks summary judgment on her Third and Tenth Causes of Action to restore her to title to the Residence, free of the 2019 Mortgage, because her transfer of the Residence to Holdings is subject to rescission under

---

[9] The Amended Complaint does not identify the Defendants that are the subject of this cause of action.

HETPA or void due to fraud in the factum. Pl. MOL 31-32. The Wilmington Defendants seek judgment dismissing Plaintiff's Third and Tenth Causes of Action arguing that Plaintiff failed to prove that Holdings acquired the deed to the Residence by fraud and Wilmington is a good faith encumbrancer. Wilmington Mem. Law Supp. Mot. Summ. J., Adv. Pro. ECF 150-48. Although Plaintiff moved for summary judgment on these claims, Plaintiff objected to Wilmington's request for summary judgement arguing there are material facts in dispute. Pl. Mem. Law Opp'n 12, Adv. Pro. ECF No. 168-2. In that regard, Plaintiff argues there is a dispute as to whether Plaintiff occupies the Residence. *Id.* at 13. However, Wilmington does not contend that Plaintiff lacks possession of the Residence. Wilmington Reply Mem. Law 8, Adv. Pro. ECF No. 170.

As set forth above, Plaintiff is not entitled to rescission under HETPA or to avoid the transfer of the Residence to Holdings based on fraud in the factum. *See supra* at 14, 24. Also, as discussed above, under New York Real Property Law section 266, the rights of a bona fide encumbrancer for value will be protected, unless it appears that such purchaser or incumbrancer had previous notice, whether actual or constructive, of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor. *See supra* at 16; *see In re Doresca*, No. 8-16-75006-LAS, Adv. Pro. No. 8-17-8213-LAS, 2023 WL 2639573, at *6 (Bankr. E.D.N.Y. Mar. 24, 2023). "A mortgagee will be charged with constructive notice if it is aware of facts that would lead a reasonable, prudent lender to make inquiries of the circumstances of the transaction at issue. . . . If a 'reasonable inquiry' would reveal some evidence of fraud, then failure to 'make some investigation' will divest the mortgagee of bona fide encumbrancer status." *Miller-Francis*, 113 A.D.3d at 34 (citations omitted); *see Lucia*, 68 A.D.3d at 1066 (finding an allegation that mortgagee's agent was present at closing where

26

transaction details were discussed was sufficient to allege that mortgagee was chargeable with notice of the alleged fraud and HETPA violations).

To obtain the protections of a good faith encumbrancer for value, Wilmington would bear the ultimate burden of proof to show that Planet Management, the assignor, had no knowledge of the alleged fraud or of facts that would have led a reasonable mortgagee to make inquiry of the possible fraud at the time the 2019 Mortgage was granted to Holdings, or, if Planet Management was on notice, it conducted reasonable diligence. *JP Morgan Bank v. Munoz*, 85 A.D. 3d 1124, 1126 (App. Div. 2d Dep't 2011); *see Pennymac Corp. v. Dean-Phillips,* 189 A.D.3d 1603, 1604 (App. Div. 2d Dep't 2020) (Finding mortgagee was not bona fide encumbrancer for value based on failure to make inquiry. Mortgagee's assignee was not encumbrancer for value because "[a]n assignee stands in the shoes of the assignor and takes the assignment subject to any preexisting liabilities"); *Rambaran*, 97 A.D.3d at 804 ("[a]n assignee stands in the shoes of the assignor and takes the assignment subject to any preexisting liabilities").

Plaintiff argues she was defrauded in a foreclosure rescue scam as evidenced by the occupancy agreement that Woodburn imposed on Plaintiff as a condition to remining in possession of the Residence. Pl. Mem. Law Opp'n 12-13, Adv. Pro. ECF No. 168-2. However, Plaintiff does not allege the Planet Defendants had notice or knowledge of the occupancy agreement. In that regard, Plaintiff alleges she executed the occupancy agreement ten months after Planet Management closed on the 2019 Mortgage and loan. Pl. Facts ¶ 34 ("On January 1, 2020, a "Contract - Use and Occupancy Agreement" was executed between [Holdings] (as owner) and Calvin Stephens, [Plaintiff], John Doe(s), and Jane Doe(s) (as occupants) for the [Residence]"). Further, Plaintiff has not provided evidence that the Wilmington Defendants had notice of the occupancy agreement when the 2019 Mortgage was assigned from Planet

27

Management to Wilmington.  *See* Wilmington Facts ¶¶ 35, 37; Dellavo Dec. ¶ 6, Adv. Pro. ECF No. 150-36.  Plaintiff has not come forward with any other evidence from which this Court can conclude that the Planet Defendants had notice of the "rescue scam" prior to the Transaction Date or that the Wilmington Defendants had notice of the alleged scam prior to acquiring the 2019 Loan or the 2019 Mortgage.

As set forth above, the Planet Defendants and the Wilmington Defendants had notice that Plaintiff's sale of the Residence violated HETPA, and for that reason, the Court determined that the Planet Defendants and the Wilmington Defendants were not good faith encumbrancers under HETPA.  However, HETPA permits equity sellers to rescind sales even if there is no fraud. Instead, rescission is permitted if the covered contract fails to include the HETPA disclosures.  In contrast, New York Real Property Law section 266 would permit a court to avoid a transfer only if there is fraud.  Although the title report, the title insurance policy, and Holdings affidavit put the Planet Defendants and the Wilmington Defendants on notice of a HETPA violation, those documents did not put the Planet Defendants or the Wilmington Defendants on notice of fraud.

As Plaintiff has failed to introduce evidence that the Planet Defendants or the Wilmington Defendants had notice of any facts, whether actual or constructive, of Holdings', Woodburn's, or Bonaparte's alleged scheme to defraud Plaintiff, the Planet Defendants and the Wilmington Defendants are good faith encumbrancers, as defined by New York Real Property Law section 266, notwithstanding the Planet Defendants and Wilmington Defendants are not good faith encumbrancers and are equity purchasers under HETPA.

Therefore, the Wilmington Defendants' motion for summary judgement is granted and Plaintiff's Third and Tenth Causes of Action are dismissed solely to the extent those causes of action seek to avoid the 2019 Mortgage.

**Fifteenth Cause of Action A**
**(Fraudulent Conveyance, Section 273 of NY Debtor Creditor Law)**
**(Against All Defendants)**

**Fifteenth *[sic]* Cause of Action B**
**(Fraudulent Conveyance, Section 275 of NY Debtor Creditor Law)**
**(Against All Defendants)**

**Fifteenth *[sic]* Cause of Action C**
**(Fraudulent Conveyance, Section 273 and 275 of NYCD law, 11 U.S.C. §544)**
**(Against All Defendants)**

**Sixteenth Cause of Action**
**(Recovery of Fraudulent Transfer under 11 U.S.C. § 550)**
**(Against All Defendants)**

**Seventeenth Cause of Action**
**Avoidance of and Recovery of Fraudulent Transfers from Planet Enterprise**

Plaintiff seeks judgment under Bankruptcy Code sections 522(g) and (h) and New York's

Fraudulent Conveyance Act ("UFCA")[10] sections 273 and 275, avoiding the Plaintiff's transfer of

the Residence to Holdings, avoiding Holding's conveyance of the 2019 Mortgage to Planet

Management, recovering the 2019 Mortgage lien from Wilmington, and exempting the

Residence.  Pl. Mot. Summ. J. 34-19, Adv. Pro. ECF No. 152-1.

Bankruptcy Code section 522(h) states:

(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to
the extent that the debtor could have exempted such property under subsection
(g)(1) of this section if the trustee had avoided such transfer, if--

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549,
or 724(a) of this title or recoverable by the trustee under section 553 of this title;
and

(2) the trustee does not attempt to avoid such transfer.

11 U.S.C. § 522(h).  Bankruptcy Code section 522(g) states:

---

[10] In December 2019, New York's Fraudulent Conveyance Act (the "UFCA") was repealed and replaced with the
Uniform Voidable Transactions Act (the "UVTA").  The UVTA became effective on April 4, 2020, but does not
apply to transfers occurring before the UVTA's effective date.  N.Y. Debt. & Cred. Law § Ch. 12, art. 10, Refs
Annos (McKinney 2020).  Accordingly, the Court analyzes these causes of action under the UFCA.

> (g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if--
>
> (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
>
> (B) the debtor did not conceal such property; or
>
> (2) the debtor could have avoided such transfer under subsection (f)(1)(B) of this section.

11 U.S.C. § 522(g). Under Bankruptcy Code sections 522(g) and (h), "a debtor may avoid a transfer if 1) it is avoidable by the trustee under sections 544 or 548; 2) the trustee does not attempt to avoid the transfer; 3) the debtor could exempt the property if the trustee recovered it under section 550; 4) the transfer was involuntary; and 5) the debtor did not conceal the property." *Davis v. Suderov (In re Davis)*, 169 B.R. 285, 290 (E.D.N.Y. 1994).

There is no dispute: the Chapter 13 Trustee is not attempting to avoid the Plaintiff's transfer of the Residence or the 2019 Mortgage; Plaintiff could exempt the Residence if the Chapter 13 Trustee had recovered it under Bankruptcy Code section 550; or that Plaintiff did not attempt to conceal the Residence.

However, before considering whether Plaintiff's transfer was involuntary and voidable as a fraudulent conveyance, the Court must determine whether Plaintiff has standing to bring state law fraudulent conveyance claims under Bankruptcy Code section 544. *Densmore v. Litton Loan Servicing, L.P. (In re Densmore)*, 445 B.R. 307, 312 (Bankr. D. Vt. 2011) ("The Court is obligated to raise an issue implicating standing *sua sponte*, even if the parties fail to raise it, because it implicates the Court's subject matter jurisdiction.").

The Plaintiff would have standing to bring fraudulent conveyance claims under Bankruptcy Code section 544 only if the trustee would have standing to bring such claims. 11

30

U.S.C. § 522(h)(1).  A trustee has standing to avoid transfers under Bankruptcy Code section 544

if there exists an unsecured creditor, with an allowable claim against the bankruptcy estate, that

could avoid the transfer under applicable state law.  *Mendelsohn v. Kovalchuk (In re APCO*

*Merch. Servs., Inc.*), 585 B.R. 306, 314 (Bankr. E.D.N.Y. 2018).

> As stated by Judge Louis Scarcella in *In re APCO Merch. Servs., Inc.*:

> The power given to a trustee under § 544(b) to avoid a transfer or obligation is derivative, that is, there must be an actual existing creditor holding an allowable unsecured claim who would have had that right outside of bankruptcy.  "In order for a trustee to maintain an action for avoidance of a fraudulent conveyance, the trustee must show that at least one of the present unsecured creditors of the estate holds an allowable claim, against whom the transfer or obligation was invalid under applicable state or federal law."

585 B.R. at 314 (quoting *Young v. Paramount Commc'ns Inc. (In re Wingspread Corp.)*, 178

B.R. 938, 945 (Bankr. S.D.N.Y. 1995)).  The burden of proof is on Plaintiff to prove she has

standing under 544(b) to bring the UFCA claims.  *Id.*

Constructive fraudulent conveyances under former New York Debtor and Creditor Law

Sections 273 and 275 are avoidable only by existing creditors and not by future creditors.  *Shelly*

*v. Doe*, 249 A.D.2d 756, 757-58 (App. Div. 3d Dep't 1998).  Therefore, Plaintiff must prove

there is a creditor that had an allowable claim as of the Petition Date that also had a claim as of

the Transfer Date.  *Silverman v. Sound Around, Inc. (In re Allou Distributors, Inc.)*, 392 B.R. 24,

31-32 (Bankr. E.D.N.Y. 2008).  Although the creditor must be the same creditor on both the

Transfer Date and the Petition Date, the creditor need not hold the same claim on the Petition

Date as it did on the Transfer Date.  *In re Allou Distributors, Inc.,* 392 B.R. 24, 34 (Bankr.

E.D.N.Y. 2008).  For example, a creditor whose claim is based on a revolving line of credit (e.g.,

credit card debt) that was owed a debt when a transfer was made where the account balance was

bought to zero after the transfer, may be a qualifying creditor if the debtor then incurred

31

additional charges and a balance was owed as of the petition date. *In re Bushey*, 210 B.R. 95, 101 (6th Cir. BAP 1997).

Plaintiff has not identified a qualifying creditor in her Motion for Summary Judgment. At oral argument, Plaintiff requested the Court take judicial notice of the proofs of claim filed on the claims register of this case. A bankruptcy judge may take judicial notice of a bankruptcy court's records. *See* Fed. R. Evid. 201(c); *Staten Island Savings Bank v. Scarpinito (In re Scarpinito)*, 196 B.R. 257, 267 (Bankr. E.D.N.Y. 1996). Additionally, a properly executed and filed proof of claim is *prima facie* evidence of the validity and amount of a claim. Fed. R. Bankr. P. 3002(f). However, a court may not infer the truth of the facts contained in documents of which it has taken judicial notice, unless the contents are otherwise admissible under the rules of evidence. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (courts may take judicial notice of publicly filed documents but not for the truth of the matters asserted). Accordingly, the Court may take judicial notice that creditors filed proofs of claim, the claims are valid, and the creditors were owed the amounts set forth on the proofs of claim as of the Petition Date. However, the proofs of claim are not prima facie evidence of, and the Court may not take judicial notice that, the creditors that filed the claims were creditors as of the Transfer Date. Rather, Plaintiff was required to introduce some evidence that one of Plaintiff's creditors was owed a debt as of the Transfer Date. Based on the foregoing, Plaintiff's claims to avoid and recover the Residence must be dismissed due to Plaintiff's failure to prove standing. *Ries v. Wintz Props., Inc. (In re Wintz Cos.)*, 230 B.R. 848, 858 (B.A.P. 8th Cir. 1999).

As the Plaintiff has not established standing, the Court will not address the elements of the Plaintiff's causes of action, except to note that as set forth above, the record would support a finding that the Plaintiff's transfer of the Residence was voluntary because she knew she was

32

transferring ownership, even if she hoped Holdings would convey the Residence back to her. The record also would support a finding that Plaintiff received consideration for the transfer because Holdings caused Planet Management to transfer over $300,000 to Ocwen in full satisfaction of the 2006 Mortgage loan.

Therefore, Plaintiff's motion for summary judgment on her Fifteenth Cause of Action (A, B, and C), Sixteenth Cause of Action, and Seventeenth Cause of Action is denied and those causes of action are dismissed as against the Planet Defendants and the Wilmington Defendants.

**Wilmington Defendants' Counterclaim for Equitable Subrogation**

Wilmington seeks equitable subrogation to the 2006 Mortgage if the Court avoids the 2019 Mortgage.  Although the Court is dismissing Plaintiff's claims to avoid the Mortgage, the Court will address Wilmington's counterclaim.

"Under the doctrine of equitable subrogation, where the 'property of one person is used in discharging an obligation owed by another or a lien upon the property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee or lien-holder.'" *Lucia v. Goldman*, 145 A.D.3d 767, 769 (App. Div. 2d Dep't 2016); *see Wells Fargo Bank, N.A. v. Dalfin*, 169 A.D.3d 970, 972 (App. Div. 2d Dep't 2019) (Mortgagee may be entitled to equitable subrogation even if mortgagor's signature was forged provided mortgagee had not actively engaged in fraud and lacked actual notice of fraud or had unclean hands); *Lombard v. Yacoob*, 168 A.D.3d 919 (App. Div. 2d Dep't 2019) (mortgage assignee entitled to equitable lien on real property for paying off mortgagor's original mortgage, notwithstanding deed and original mortgage had been avoided because deed had been procured through a home rescue scam).

33

In *Lucia v. Goldman*, the court granted a mortgagee an equitable subrogation lien, notwithstanding the mortgagee's lien was avoided under HETPA because the mortgagee was not a good faith encumbrancer. 145 A.D.3d at 768. The trial court found that the mortgagee failed to recognize certain warning signs at the closing, which would have led a reasonable, prudent lender to make further inquiry before proceeding with the transaction. *Id.* However, the trial court also found the mortgagee did nothing to actively facilitate the equity purchaser's fraud and the equity seller would receive a windfall if the mortgagee did not receive an equitable lien because the mortgagee paid the equity seller's existing mortgage and other amount on behalf of the equity seller. *Id.* The equity seller appealed arguing the trial court erred in awarding the mortgagee an equitable subrogation lien because the trial court already had determined the mortgagee was not a good faith encumbrancer. *Id.* Therefore, the request for equitable subrogation should have been denied under the doctrine of unclean hands. *Id.* at 769. The Appellate Division, however, affirmed the trial court reasoning:

> The doctrine of unclean hands applies when the offending party "is guilty of immoral, unconscionable conduct" directly related to the subject matter in litigation and which conduct injured the party seeking to invoke the doctrine. Here, although Chase was charged with knowledge of information which would have caused a prudent lender to inquire as to the circumstances of the transaction, the Supreme Court did not find that it had actual notice of the fraud or that it did anything to actively facilitate the fraud. There was no evidence that Chase "was a willing participant in a mortgage [rescue] scheme". Accordingly, the plaintiff failed to show that Chase was guilty of immoral, unconscionable conduct, and the court properly imposed equitable liens against the premises for the portion of the Chase mortgage which was used to satisfy the plaintiff's prior mortgage and amounts advanced by Chase for the payment of real estate taxes and insurance.

*Lucia*, 145 A.D.3d at 769 (internal citations omitted).

Here, Plaintiff has failed to introduce evidence that the Planet Defendants or the Wilmington Defendants had actual notice of the alleged fraud or that they actively participated in the fraud. Further, Planet Management funded a $337,500 payment to Ocwen that satisfied the

2006 Mortgage in full, and Plaintiff would receive a windfall if the 2019 mortgage lien were to be avoided and Wilmington did not receive an equitable subrogation lien.  Therefore, if the Court had avoided the 2019 Mortgage, Wilmington, as successor to Planet Management, would have been entitled to an equitable subrogation lien on the Residence.

### CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is denied to the extent Plaintiff requested judgment against the Planet Defendants and the Wilmington Defendants on Plaintiff's First, Second, Third, Tenth, Fifteenth (A, B, and C), Sixteenth, and Seventeenth Causes of action.  The Planet Defendants' and the Wilmington Defendants' motions for summary judgment are granted and those causes of action are dismissed as to the Planet Defendants and the Wilmington Defendants.

**SO ORDERED**:

Dated: July 1, 2026
    Brooklyn, New York

_____
Jil Mazer-Marino
Chief United States Bankruptcy Judge

35